**GAROFOLO LAW GROUP, P.C.**
JOSEPH A. GAROFOLO, State Bar No. 214614
E-mail: jgarofolo@garofololaw.com
KELLY A. WEEKES, State Bar No. 269959
E-mail: kweekes@garofololaw.com
22 Battery St., Suite #1000
San Francisco, CA 94111
Tel: 415-981-8500
Fax: 415-981-8870

**ARI LAW, P.C.**
ALI AALAEI, State Bar No. 254713
E-mail: ali@arilaw.com
BO ZENG, State Bar No. 281626
E-mail: bozeng@arilaw.com
22 Battery St., Suite #1000
San Francisco, CA 94111
Tel: 415-357-3600
Fax: 415-357-3602

Attorneys for Plaintiffs
CIRCLE CLICK MEDIA LLC,
METRO TALENT, LLC, and
CTNY INSURANCE GROUP LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CIRCLE CLICK MEDIA LLC, a California limited liability company; METRO TALENT, LLC, a California limited liability company; and CTNY INSURANCE GROUP LLC, a Connecticut limited liability company, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>REGUS MANAGEMENT GROUP, LLC, a Delaware limited liability company; REGUS BUSINESS CENTRE LLC, a Delaware limited liability company; REGUS PLC, a Jersey, Channel Islands, public limited company; HQ GLOBAL WORKPLACES LLC, a Delaware limited liability company; and DOES 1-50,<br><br>Defendants. | Case No. 3:12-CV-04000 SC<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Circle Click Media LLC, Metro Talent, LLC, and CTNY Insurance Group LLC, on behalf of themselves and all others similarly situated, and demanding a trial by jury, allege as follows:

## I.       INTRODUCTION

1.       This class action lawsuit arises out of the unfair and deceptive business practices of Defendants Regus Management Group, LLC, Regus Business Centre LLC, Regus plc, and HQ Global Workplaces LLC (individually and/or collectively, "Regus" or "Defendants").   Regus leases commercial office space throughout California and New York and holds itself out as the world's largest provider of flexible workplaces.  Regus fails to adequately disclose various fees when advertising and renting its space, employs numerous policies and practices to collect unfair fees from its tenants, and leads tenants into reasonably believing that the total price that they will pay for Regus' office space is less than the amount that Regus actually charges.  Regus also incorrectly represents that the purported terms and conditions of the office space are set forth in a simple one-page document.  After clients sign Regus' agreement indicating the total monthly payment, Regus routinely assesses additional unfair charges to tenants.  Regus' business practices constitute a systematic and widespread failure to adequately disclose charges to its office space clients.

2.       Regus' egregious and unscrupulous business practices have harmed Plaintiffs and, upon information and belief, numerous other persons in California and New York.  This class action is brought on behalf of Plaintiffs, and on behalf of all others similarly situated, and seeks relief, including, but not limited to, punitive damages, from Regus for its conduct.

## II.       JURISDICTION AND VENUE

3.       **Jurisdiction.**  This case is subject to original jurisdiction in this Court pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 ("CAFA"), because at least one member of each class has a different citizenship from a defendant and the total amount in controversy exceeds $5,000,000.   Thus, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

4.     Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated in this District.

5.     **Intradistrict Assignment.**  Pursuant to Civil Local Rule 3-2(c) and (d), assignment to the San Francisco Division is proper because a substantial part of the events or omissions which give rise to claims set forth herein occurred in San Francisco.

### III.     PARTIES

**A.     Plaintiffs**

6.     Plaintiff Circle Click Media LLC ("Circle Click") is, and at all times relevant hereto was, a California limited liability company, organized, existing, and operating under the laws of California, with a principal place of business in San Francisco, California.

7.     Plaintiff Metro Talent, LLC ("Metro Talent") is, and at all times relevant hereto was, a California limited liability company, organized, existing, and operating under the laws of California, with a principal place of business in California.

8.     Plaintiff CTNY Insurance Group LLC ("CTNY") is, and at all times relevant hereto was, a Connecticut limited liability company organized and existing under the laws of Connecticut doing business in New York.

**B.     Defendants**

**i)     Regus Management Group, LLC**

9.     Defendant Regus Management Group, LLC ("Regus Management") is a limited liability company organized and existing under the laws of Delaware doing business in California. Regus Management is owned entirely by Regus plc and, upon information, is an affiliate of Regus Business Centre LLC and HQ Global Workplaces LLC.

10.     Regus Management entered into agreements with Circle Click and Metro Talent in California.  Defendant Regus Management has purposefully availed itself of the privilege of conducting activities within California and the claims of Plaintiffs Circle Click and Metro Talent arise out of Regus Management's California-related activities.

- 3 -

11.     Regus Management conducts activities in California that are substantial and continuous and systematic.  Such activities have, upon information and belief, been conducted for at least several years, and include, *inter alia*, the following:

a.     Regus Management is registered to do business with the California Secretary of State and has designated an agent for service of process in California;

b.     Upon information and belief, Regus Management enters into agreements with tenants in Bakersfield, Campbell, Carlsbad, Costa Mesa, El Segundo, Folsom, Glendale, Irvine, Laguna Hills, Long Beach, Los Angeles, Mountain View, Newport Beach, Ontario, Orange, Palo Alto, Pasadena, Petaluma, Pleasanton, Redwood City, Riverside, Rolling Hills, Roseville, Sacramento, San Bruno, San Diego, San Francisco (17 locations in San Francisco), San Jose, San Mateo, San Rafael, San Ramon, Santa Clara, Santa Monica, West Hollywood, Walnut Creek, and Woodland Hills (the "California Locations");

c.     Upon information and belief, Regus Management has employees in the California Locations;

d.     Upon information and belief, Regus Management leases office space in the California Locations;

e.     Upon information and belief, Regus Management derives substantial revenues from operations within California; and

f.     Upon information and belief, Regus Management markets and advertises to tenants in California via the internet.

**ii)     Regus Business Centre LLC**

12.     Defendant Regus Business Centre LLC ("Regus Business Centre") is a limited liability company organized and existing under the laws of Delaware doing business in California. Upon information and belief, Regus Business Centre is a subsidiary of Regus plc and an affiliate of Regus Management and HQ Global Workplaces LLC.

13.     Upon information and belief, Regus Business Centre conducts activities in California that are substantial and continuous and systematic.  Such activities have, upon

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:12-CV-04000 SC

information and belief, been conducted for at least several years, and include, *inter alia*, the following:

         a.       Regus Business Centre is registered to do business with the California Secretary of State and has designated an agent for service of process in California;

         b.       Upon information and belief, Regus Business Centre leases office space in the California Locations;

         c.       Upon information and belief, Regus Business Centre derives substantial revenues from operations within California; and

         d.       Upon information and belief, Regus Business Centre markets and advertises to tenants in California via the internet.

       **iii)**     **Regus plc**

      14.     Defendant Regus plc is a foreign public limited company incorporated and registered in Jersey, Channel Islands.  Regus plc conducts its activities in California and New York through its subsidiaries and affiliates.  Regus plc is, and at all times relevant hereto was, the parent company, directly or indirectly, of Regus Management, Regus Business Centre, and HQ Global Workplaces LLC, and, upon information and belief, directly exercised control over the conduct of each.

      15.     Regus plc conducts activities in California that are substantial and continuous and systematic.  Such activities have, upon information and belief, been conducted for at least several years, and include, *inter alia*, the following:

         a.       Regus plc offers licensed California real estate brokers and agents referral fees for introductions and/or referrals of tenants to Regus;

         b.       Regus plc Chief Executive Officer Mark Dixon has communicated to Plaintiff Circle Click and, upon information and belief, other California tenants;

         c.       Regus plc generates e-mails from California to one or more tenants in California as part of its business operations; and

         d.       Upon information and belief, Regus plc has derived substantial revenues

from operations in California.

      e.      Regus plc owns and operates the internet website www.regus.com (the "Regus Website" or the "Website") which currently i) lists office space for lease in the California Locations, ii) hosts and provides interactive features including, but not limited to, "Book a Tour" of office space, request a "Quick Quote," and "Contact Us,"  and iii) upon information and belief, earns substantial revenues from transactions with California businesses at the California Locations.

16.      Upon information and belief, Regus Management, Regus Business Centre, and HQ Global Workplaces LLC perform services of special importance to Regus plc.  Upon information and belief, but for Regus Management, Regus Business Centre, and HQ Global Workplaces LLC, Regus plc would have to perform California business operations itself; however, Regus plc has incorporated subsidiaries and uses instrumentalities to operate and administer Regus plc's California operations.  Upon information and belief, Regus plc uses Regus Management and HQ Global Workplaces LLC as marketing conduits.

17.      Upon information and belief, at all times relevant hereto, Defendants Regus Management, Regus Business Centre, and HQ Global Workplaces LLC were acting as the agents, ostensible agents, employees, servants, partners, aiders and abettors, co-conspirators, and/or joint venturers of Regus plc, and in performing the acts and course of conduct set forth herein, Defendants were acting within the course and scope of such agency or employment, and Defendant Regus plc approved, ratified, permitted, condoned and/or affirmed the acts and course of conduct set forth herein.

**iv)**      **HQ Global Workplaces LLC**

18.      Defendant HQ Global Workplaces LLC ("HQ"), is a company organized under the laws of Delaware doing business in California.

19.      HQ submits Regus invoices to California tenants and, upon information and belief, HQ had responsibility for refunding the security deposits relating to the agreements with Circle Click and Metro Talent in California.  Defendant HQ has purposefully availed itself of the privilege of conducting activities within California and the claims of Plaintiffs Circle Click and

1   Metro Talent arise out of HQ's California-related activities.

2       20.     HQ conducts activities in California that are substantial and continuous and

3   systematic.  Such activities have, upon information and belief, been conducted for at least several

4   years, and include, *inter alia*, the following:

5           a.      HQ is registered to do business with the California Secretary of State and

6   has designated an agent for service of process in California;

7           b.      Upon information and belief, HQ submits Regus invoices to tenants in the

8   California Locations and HQ has responsibility for refunding security deposits to numerous

9   tenants in the California Locations;

10          c.      Upon information and belief, HQ processes payments assessed to tenants in

11  California;

12          d.      Upon information and belief, HQ derives substantial revenues from

13  operations within California; and

14          e.      Upon information and belief, HQ markets to tenants in California via the

15  internet.

16      **v)      The Defendants Are the Alter Egos of Each Other**

17      21.     There is such unity of interest and ownership that separate personalities of the

18  Defendants no longer exist and failure to disregard their separate identities would result in fraud

19  and/or injustice.  Regus makes no distinction between entities when using the Regus logo in

20  connection with marketing.  Regus describes its own operations to its potential and actual tenants

21  as if such operations are conducted by a single entity.  Without distinction between entities, Regus

22  indicates that its "Locations in California" include all of the California Locations.  Regus

23  represents to its investors that Regus is a unified entity.  Regus employees make no distinction

24  regarding their employer and simply indicate that they are employed by "Regus" in

25  communications with tenants.  Upon information and belief, officers and directors of Regus plc,

26  including, but not limited to, Mark Dixon, exercise control over the internal affairs and/or daily

27  operations of Regus Management, Regus Business Centre, and HQ.

28

22.     Plaintiffs are ignorant of the true names and capacity of Defendants sued herein as Does 1-50, and alleges that Does 1-50 are agents of the other Defendants, and therefore, sue these Defendants by such fictitious names.  Plaintiffs will amend this Complaint to allege their true names and capacities of Does 1-50 when ascertained.

## IV.     FACTS COMMON TO PLAINTIFFS AND THE CLASSES

**A.     Advertising Scheme**

23.     Regus advertises its office space for rent on the Regus Website, www.craigslist.com ("Craigslist"), television, and radio.

24.     Since at least October 8, 2003, Regus has represented on its Website (available to California and New York viewers), and, upon information and belief, other advertising mediums, that it offers a simple one-page agreement, significant savings as compared to traditional offices, and flexible office space arrangements.

25.     On October 8, 2003, in pertinent part, the Regus Website advertised the following:

- **Save money**
  Independent surveys show that you can **save up to 78 %** [sic] compared to traditional office costs. There's no need to tie up capital - with Regus, you have the offices you need when and where you need them.

- **Flexibility for your business**
  Walk into a **Regus office** and **get down to business instantly** ,[sic] taking advantage of opportunities as they arise. With Regus, you only pay for what you need when you need it.

- **Keep it simple**
  Our plain-English, one page contract takes **just 10 minutes to complete** . [sic]  It really is that simple.

(Emphasis in original).

26.     On November 26, 2004, in pertinent part, the Regus Website advertised the following:

- Fully equipped offices – "on demand" and ideal for up to 10 people.
- World-class offices in prime buildings across the globe, and right next door.
- Onsite IT support and business services.
- Videoconferencing, meeting rooms and training rooms available.
- No up front capital expenditure required.

• Flexible terms and one-page agreements.

***

1. What is an executive suite ? [sic] How is it different from a traditional office?

Regus executive offices, in our 700 prime business centres, are conveniently located near major transportation hubs. With Regus executive suites you get a complete, professional executive office environment included in one monthly fee. You'll also get professional receptionists, state-of-the-art telecom and IT services, kitchen areas and cyber cafés.

With traditional office space, you must navigate the costly and time-consuming world of setting up and configuring your workspace. Before you can be productive you must:

• pay for altering office space

• sign a fixed-length office lease

• provide office furniture

• contract with multiple service providers (phone, Internet, maintenance)

• hire an office staff

• buy or rent office equipment

• build or configure connectivity infrastructure

• spend time, resources and money

With Regus executive suites, your office space solutions are a single phone call or mouse click away. Simply plug in your PC and start working…leave the rest to us. The Regus Business Centre network provides a professional executive office environment with high quality facilities and resources - instantly.

2. What types of terms come with Regus executive suites?

With traditional office space you often need an attorney to negotiate a complicated office lease before you can rent or lease an office. But using a Regus executive suite for your office space solution couldn't be easier, especially when compared to renting traditional office space. We have a one-page executive office agreement instead of a 20-page office space

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:12-CV-04000 SC

lease. We give you control over the term of your executive office agreement – from 3 months to 5 years - so you have the ability to grow, as your business needs change. And with our professional executive office staff you have on-demand access to administrative support and office equipment without hiring a permanent staff or capital investment. With Regus executive suites, your office space solutions are a single phone call or mouse click away. The Regus Business Centre network provides a professional executive office environment with high quality facilities and resources - instantly.

27.     On November 18, 2005, and February 20, 2006, in pertinent part, the Regus Website advertised the following:

**Match our office rental options to your business needs**

With 750 prime locations worldwide, we are the global leader in providing all types of businesses with professional, fully equipped office space for rent. Our sensible pricing, flexible lease terms and simple, one-page agreements make us your only choice for staying agile in a dynamic business environment. Contact us today to learn about our office rental and executive suite options.

(Emphasis in original).

28.     On April 13, 2007, in pertinent part, the Regus Website advertised the following:

**Match our office rental options to your business needs**

With 950 prime locations worldwide, we are the global leader in providing all types of businesses with professional, fully equipped office space for rent. Our sensible pricing, flexible lease terms and simple, one-page agreements make us your only choice for staying agile in a dynamic business environment. Contact us today to learn about our office rental and executive suite options.

(Emphasis in original).

29.     On July 2, 2008, in pertinent part, the Regus Website advertised the following:

**Key Benefits**

- **Flexibility** - you can grow, relocate or downsize with minimal disruption.
- **Ease** – From your contract, to move in and your time with us. We make having an office simple.
- **Support** – there is a team of business professionals in your building as an extension of your team.

- **A global network** – our worldwide network of 950 locations in 70 countries means your business is wherever you are and you are in good hands.
- **Affordability** – our solutions are designed to fit within your budget at a fixed monthly price on terms to suit you.

(Emphasis in original).

30.     On June 25, October 3, November 25, and December 2, 2009, January 2, February 11, March 31, April 29, May 31, June 23, and September 19, 2010, January 5, and May 25, 2011, and April 30, 2012, and upon information and belief, at least from June 25, 2009, through the present, Regus Website has advertised the following in document entitled "A Smart Way of Working:"

Offices

Fully furnished and equipped

***

It all adds up

Save up to 60% on office costs
• 50-60% saving on offices…

One monthly invoice…          All inclusive simple monthly payments.

***

Simple, easy and flexible
• Simple one page agreement
• No additional complications
• Single monthly invoice
• Sign today, start tomorrow
• Flex your requirements
• Agreements can be transferred to any other Regus location

31.     Upon information and belief, on or about March 9, 2012, Regus broadcasted a commercial featuring actress LeeAnne Locken wherein Regus represents:

I don't have a lease so I don't have to budget for stuff like phones, IT guys, and artwork for the lobby.  Instead, I pay one low monthly rate that gives me a beautiful lobby that impresses my clients, a friendly receptionist, a fully furnished office, a place to meet, and a place to

brainstorm with my fellow new way workers.  We wonder why more people don't realize that the new way to work is the best way to work….Call 1-800-OFFICES or visit regus.com/tv.

32.    Regus posts listings of office space for lease on Craigslist directed to California and New York tenants, which advertisements include the monthly payment amount along with statements suggesting that the price listed is all inclusive.  Regus Craigslist postings routinely show pictures of fully furnished offices with desks and telephones.

**B.    Monthly Fees Charged to Tenants**

33.    Defendants provide a one-page office agreement (the "Office Agreement") to tenants that identifies the location of the office to be leased, the duration of the lease, the amount of the first month's fee, the amount of the security deposit, and the "monthly payment" thereafter.

34    Defendants provide the Office Agreement to tenants as either a hard copy version or an online version.  The two versions of the Office Lease do not differ in any material way.

35.    After tenants begin their lease, Regus routinely assesses total monthly amounts that exceed the total monthly payments indicated in the Office Agreement.

36.    The Office Agreement fails to disclose any goods, services, penalties, and/or taxes for which Regus assesses charges and the amounts or methods of calculation of Regus' charges associated with such goods, services, penalties, and/or taxes.

37.    Regus also makes available to tenants a two-column document written in extremely small type that is no greater than five-point Tahoma font (the "Fine Print").  If the Fine Print were written in 12-point Tahoma font, the document would extend onto eight pages.

38.     The Fine Print fails to indicate the amounts of any fees charged by Regus.

39.    Once tenants enter into a lease with Regus, tenants cannot cancel the lease prior to the expiration of its term.

40.    If tenants fail to pay the fees invoiced by Regus, they are subject to penalties.

41.    Regus fails to adequately disclose fees in excess of the monthly payment indicated in the Office Agreement.  The fees charged by Regus in excess of the monthly payment indicated in the Office Agreement are unfair and unreasonable.

42.     Regus has acted unfairly and deceptively towards its tenants by systematically charging tenants fees in excess of the monthly payment indicated in the Office Agreement.

### V.     PLAINTIFFS' FACTS

**A.     Plaintiff Circle Click**

43.     Plaintiff Circle Click executed an Office Agreement for two offices at 50 California Street, 15th Floor, San Francisco, California 94111, on or about April 29, 2011.  The Office Agreement commences on May 1, 2011, and concludes on May 31, 2012.

44.     The Office Agreement indicates that the total initial payment (including the security deposit) is $4,921.  The Office Agreement indicates that the total monthly payment after the first month is $2,461.

45.     Circle Click paid a security deposit to Regus.

46.     Circle Click received invoices during the following months for the following amounts:

| Month | Amount |
|---|---|
| April 2011 | $2,559.67 |
| May 2011 | $2,280.54 |
| June 2011 | $2,618.02 |
| July 2011 | $3,247.89 |
| August 2011 | $6,653.79 |
| September 2011 | $3,350.78 |
| October 2011 | $3,175.00 |
| November 2011 | $3,161.48 |
| December 2011 | $3,154.71 |
| January 2012 | $1,621.35 |
| February 2012 | $3,154.71 |
| March 2012 | $3,154.86 |

| April 2012 | $3,157.56 |
|------------|-----------|
| May 2012 | $1,533.54 |

47.     In addition, Circle Click was charged $1,660.22 for June of 2012 despite the fact that the Office Agreement expired in May of 2012.

48.     During the term of Circle Click's tenancy, Regus charged Circle Click for all of the following:

a.     **Kitchen amenities.**  Regus assessed a $30 per person monthly charge to Plaintiff Circle Click in excess of the monthly office payment amount indicated in the Office Agreement.  Neither Regus' practice of assessing this charge nor the amount of the charge is disclosed in the Office Agreement or the Fine Print.  The charge was assessed regardless of whether any kitchen amenities were used.

b.     **Telephone line.**  Regus assessed a $49.00 charge per month per person to Circle Click for telephone lines.  Neither Regus' practice of assessing this charge nor the amount of the charge is disclosed in the Office Agreement or the Fine Print.

c.     **Telecom handset.**  Regus assessed a $99.00 charge per month per office to Circle Click for use of "Telecom Handset" that had already been installed in the offices rented by Circle Click.  Neither Regus' practice of assessing this charge nor the amount of the charge is disclosed in the Office Agreement or the Fine Print.  Upon information and belief, the retail value of the two handsets provided by Regus does not exceed $99.00, yet Regus charged Circle Click a total of $222.75 (including purported taxes) per month for use of the handsets during the term of the Office Agreement.

d.     **"Free Talk."**  Notwithstanding its name, Regus assessed a $49.00 charge per month to Circle Click for "Free Talk."  Neither Regus' practice of assessing this charge nor the amount of the charge is disclosed in the Office Agreement or the Fine Print.  The "Free Talk" charge purportedly includes unlimited local and long distance charges.

e.     **Local telephone.**  Regus assessed charges to Circle Click for local

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:12-CV-04000 SC

telephone usage.  Neither Regus' practice of assessing this charge nor the amount of the charge is disclosed in the Office Agreement or the Fine Print.  This charge for local telephone usage was assessed in addition to the "Free Talk" charge.

f.      **Long distance telephone.**  Regus assessed charges to Circle Click for long distance telephone usage.  Neither Regus' practice of assessing this charge nor the amount of the charge is disclosed in the Office Agreement or the Fine Print.  This charge for long distance telephone usage was assessed in addition to the "Free Talk" charge.

g.      **International telephone.**  Regus assessed charges to Circle Click for calls to Canada.  Neither Regus' practice of assessing this charge nor the amount of the charge is disclosed in the Office Agreement or the Fine Print.  This charge for international telephone usage was assessed in addition to the "Free Talk" charge.

h.      **Internet bandwidth.**  Regus assessed a total monthly charge of $250 (comprised of $150.00 for "BoD 512k Package" and two $50.00 "BoD Infrastructure Fee[s]") to Circle Click for internet bandwidth.  Neither Regus' practice of assessing this charge nor the amount of the charge is disclosed in the Office Agreement or the Fine Print.

i.      **"Office Restoration" and/or "Wear and Tear."**  Regus assessed charges to Circle Click purportedly for "office restoration service" or "wear and tear."  Neither Regus' practice of assessing these charges nor the amount of the charges is disclosed in the Office Agreement.  The amount of these charges is not disclosed in the Fine Print and bears no reasonable relationship to the service purportedly performed.

j.      **"Business Continuity Service."**  Regus assessed charges to Circle Click purportedly for handling mail, faxes, telephone calls, and visitors upon expiration of the Office Agreement.  Neither Regus' practice of assessing these charges nor the amount of the charges is disclosed in the Office Agreement.  The amount of this charge is not disclosed in the Fine Print and bears no reasonable relationship to the services purportedly performed.

k.      **Taxes.**  Regus assessed charges to Circle Click as taxes on, *inter alia*, the telecom handset and kitchen amenities fees.  Neither the amount nor the percentage of these

charges is disclosed in the Office Agreement or the Fine Print.  In addition, the basis and calculation for the taxes is not adequately disclosed in monthly invoices.

l.        **Penalties.**  Regus assessed charges to Circle Click as a "Penalty" equal to $25 plus 5% of the amount due on overdue balances under $1,000 or $50 plus 5% of the amount due on overdue balances of $1,000 or greater.  Neither Regus' practice of assessing these charges nor the amount of the charges is disclosed in the Office Agreement.  The amount of these charges is not disclosed in the Fine Print and does not represent the result of a reasonable effort by Regus to estimate fair compensation for any loss that Regus may sustain.

49.       With respect to the phone and internet charges set forth in items of the preceding paragraph, Regus caused Circle Click to incur such charges because of Regus' practice of refusing to permit tenants to use voice over IP ("VOIP") without paying additional fees or allowing tenants to contract with outside vendors.  Such practice is not disclosed in the Office Agreement or the Fine Print.

50.       Regus used the security deposit paid by Circle Click as leverage to compel payment of other charges allegedly due under the Office Agreement.

51.       Regus' charges have caused Plaintiff Circle Click to suffer harm in the amount of the unfair and unreasonable fees paid by Circle Click to Regus.

**B.       Plaintiff Metro Talent**

52.       Plaintiff Metro Talent executed an Office Agreement for one office at 6303 Owensmouth Avenue, 10th Floor, Woodland Hills, California 91367, on or about October 8, 2011. The Office Agreement commenced on November 1, 2011, and concludes on April 30, 2013.

53.       The Office Agreement indicates that the total initial payment (including the security deposit) is $1,545.  The Office Agreement indicates that the total monthly payment after the first month is $515.

54.       Metro Talent paid a security deposit to Regus.

55.       Metro Talent received invoices during the following months for the following amounts:

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:12-CV-04000 SC

| Month | Amount |
|---|---|
| October 2011 | $518.85 |
| November 2011 | $518.85 |
| December 2011 | $518.85 |
| January 2012 | $569.79 |
| February 2012 | $518.85 |
| March 2012 | $518.85 |
| April 2012 | $518.85 |
| May 2012 | $520.91 |
| June 2012 | $586.16 |
| July 2012 | $651.20 |
| August 2012 | $520.91 |
| September 2012 | $518.85 |

56.     During the term of Metro Talent's tenancy, Regus charged Metro Talent for the following:

a.     **Kitchen amenities.**  Regus assessed a $30 monthly charge to Plaintiff Metro Talent in excess of the monthly office payment amount indicated in the Office Agreement. Neither Regus' practice of assessing this charge nor the amount of the charge is disclosed in the Office Agreement or the Fine Print.  The charge was assessed regardless of whether any kitchen amenities were used.

b.     **Taxes.**  Regus assessed charges to Metro Talent as taxes on the monthly office fee and kitchen amenities fees.  Neither the amount nor the percentage of these charges is disclosed in the Office Agreement or the Fine Print.  Regus has charged Metro Talent $2.63 in "tax" on the kitchen amenities fee charge of $30 per month.  Regus has also charged Metro Talent for a "tax" in the amount of $3.85 corresponding with the long term office monthly fee of $515.  The basis and calculation for the taxes are not adequately disclosed in monthly invoices.

c.    **Penalties.**  Regus assessed a charge to Metro Talent as a "Penalty" equal to $25 plus 5% of the amount due on overdue balances under $1,000 or $50 plus 5% of the amount due on overdue balances of $1,000 or greater.  Neither Regus' practice of assessing this charge nor the amount of the charge is disclosed in the Office Agreement.  The amount of this charge is not disclosed in the Fine Print and does not represent the result of a reasonable effort by Regus to estimate fair compensation for any loss that Regus may sustain.

57.    After Metro Talent executed the Office Agreement and was charged a Kitchen Amenities Fee," on June 22, 2012, Metro Talent complained via e-mail, through its representative, to Regus that it was being assessed charges for which it did not agree:

> I'm not paying this until someone explains to m[e] why my rent went from $518 to $580+?? We have a signed lease that[] states my rental amount.

58.    On June 28, 2012, via e-mail, a representative of "The Regus Group" responded as follows:

> In regards to invoice 392-7262 you were billed your Long Term Office Monthly fee $515 plus tax, two Kitchen Amenities for June and July $30.00 each plus tax, and Daily Parking Validations of $2.06 Totaling $586.16. If you have any more questions or concerns to the invoice, please contact your Center Manager….Thanks!

59.    On June 28, 2012, the Regus General Manager responded by e-mail to Metro Talent as follows:

> The reason for the additional $60 you were charged this month is because you were billed for the Kitchen Amenity Fee for June and July.  This is the one automatic fee that Regus charges and your account has never been billed this fee.  I didn't back bill it all the way back to the original move in date of November.

> Please let me know if you have any questions.

60.    On June 28, 2012, Metro Talent responded via e-mail as follows:

> Please email me another copy of my lease. I'm out of town right now. I'd like to look it over & have my lawyer take a look at it & see if it states anywhere in there that I agreed to pay a "kitchen fee". I don't believe it does. This is ridiculous. All of a sudden months later some new charge that I've never heard of pops up on my bill.

61.     On June 28, 2012, the Regus General Manager again responded by e-mail to Metro Talent as follows:

> I am more than happy to send you the agreement but I will tell you that the Kitchen Amenity Fee is not mentioned in the service agreement. The service agreement only speaks to the monthly rent that you have agreed to pay for the office. The person who sold you the office is the one who should have communicated to you the fee regarding the Kitchen Amenity.

62.     On July 11, 2012, Regus sent Metro Talent correspondence stating: "If we do not receive payment within four (4) days of the date of this communication we will, with regret, have no option but to begin proceedings to remove all access rights to your office space and our business centres."

63.     In an effort to coerce Metro Talent to pay its unreasonable fees, on July 24, 2012, Regus again sent Metro Talent correspondence indicating, in pertinent part, the following:

> Despite our efforts to ensure that payment for the above referenced account is resolved, the balance remains unpaid.
>
> By our prior communication (a copy of which was sent to you via e-mail or postal notification), we provided you with written notification describing default under the Agreement.
>
> As of the date of this e-mail, you have failed to cure this default. **Accordingly, the Agreement is terminated immediately and your license to use premises and the center is hereby revoked.** We hereby demand that you vacate the Premises within five (5) days after delivery of this notice. If you fail to do so we may institute a forcible-detainer or other similar action against you to obtain possession of the Premises. This matter will immediately be turned over for collection. In addition we reserve the right to pursue all other available legal and equitable remedies, including litigation against you and others responsible for payment amounts owed under the Agreement.

(Emphasis in original).

64.     Regus' charges have caused Plaintiff Metro Talent to suffer harm in the amount of the unfair and unreasonable fees paid by Metro Talent to Regus.

**C.**       **Plaintiff CTNY Insurance Group**

65.      Plaintiff CTNY Insurance Group executed an Office Agreement for one office at 77 Water Street, New York, New York 10005.  The Office Agreement commences on June 1, 2011, and concludes on May 31, 2013.

66.      The Office Agreement indicates that the total initial payment (including the security deposit) is $1,390.35.  The Office Agreement indicates that the total monthly payment after the first month is $649.04.

67.      On July 12, 2012, CTNY Insurance Group received an invoice for a total amount due of $1,453.74.

68.      During the term of CTNY Insurance Group's tenancy, Regus charged CTNY Insurance Group for the following:

     a.      **Kitchen amenities.**  Regus assessed a $30 monthly charge to Plaintiff CTNY Insurance Group in excess of the monthly office payment amount indicated in the Office Agreement.  Neither Regus' practice of assessing this charge nor the amount of the charge is disclosed in the Office Agreement or the Fine Print.

     b.      **Taxes.**  Regus assessed charges to CTNY Insurance Group as taxes on the monthly office fee and kitchen amenities fees.  Neither the amount nor the percentage of these charges is disclosed in the Office Agreement or the Fine Print.  Regus charged CTNY Insurance Group $2.66 in "tax" on the kitchen amenities fee charge of $30 per month.  Regus also charged CTNY Insurance Group for a "tax" in the amount of $3.91 corresponding to a monthly fee of $1,106.  Regus further charged CTNY Insurance Group for a "tax" in the amount $14.18 on a $99 internet activation fee.  The basis and calculation for the taxes are not adequately disclosed in monthly invoices.

     c.      **Internet Activation.**  Regus assessed a $99 charge to Plaintiff CTNY Insurance Group in excess of the monthly office payment amount indicated in the Office Agreement.  Neither Regus' practice of assessing this charge nor the amount of the charge is disclosed in the Office Agreement or the Fine Print.

1    69.    When CTNY Insurance Group declined to pay Regus' July 12, 2012 invoice, on or

2   about August 17, 2012, via e-mail, Regus Center Manager advised CTNY Insurance Group as

3   follows:

4           If we would have to send your case to the third party collector next week,
            you would still be responsible for the monthly office fees until June 2013.
5           Additional service charges would apply.

6    70.    Regus' charges have caused Plaintiff CTNY Insurance Group to suffer harm in the

7   amount of the unfair and unreasonable fees paid by CTNY Insurance Group to Regus.

8                    **VI.    CLASS ACTION ALLEGATIONS**

9    71.    Plaintiffs Circle Click and Metro Talent bring Counts I-VI on behalf of all persons

10  who paid for Regus office space in California and were assessed charges by Regus over the

11  monthly payment indicated in the Office Agreement or any similar agreement between May 7,

12  2008, and the present (the "California Class").  Plaintiff CTNY Insurance Group brings Counts

13  VII-IX on behalf of all persons who paid for Regus office space in New York and were assessed

14  charges by Regus over the monthly payment indicated in the Office Agreement or any similar

15  agreement between September 24, 2009, and the present (the "New York Class").  Collectively,

16  the California Class and the New York Class are referred to herein as the "Classes."  Excluded

17  from the Classes are Defendants, Defendants' affiliates, parents, subsidiaries, employees, officers,

18  directors, and co-conspirators.  Also excluded from the Classes is any judge, justice, or court

19  officer involved with this matter and the members of their immediate families and judicial staff.

20   72.    This action is properly maintainable as a class action pursuant to Fed. R. Civ. P.

21  23.  The Classes are so numerous that joinder of all members is impracticable.  Plaintiffs Circle

22  Click and Metro Talent are unaware of the precise number and identities of the members of the

23  California Class, but due to the nature of the trade and commerce involved and the nature and

24  scope of Regus' operations, Plaintiffs Circle Click and Metro Talent are informed and believe that

25  the total number of members of the California Class exceeds 100 and the members of the

26  California Class are so numerous and geographically dispersed across the State of California that

27  joinder of all Class members would be impracticable.  Plaintiff CTNY Insurance Group is unaware

28

of the precise number and identities of the members of the New York Class, but due to the nature of the trade and commerce involved and the nature and scope of Regus' operations, Plaintiff CTNY Insurance Group is informed and believes that the total number of members of the New York Class exceeds 100 and the members of the New York Class are so numerous and geographically dispersed across the State of New York that joinder of all Class members would be impracticable.  Plaintiffs are informed and believe that the members of the Classes are ascertainable through the records of Regus.

73.     Questions of law and fact common to the Classes predominate over any questions unique to individual members of the Classes.  The questions of law and fact common to the California Class include, but are not limited to, the following:

a.     Whether the charges assessed by Regus to its California tenants in excess of the monthly payment amount indicated in the Office Agreement (or similar agreements) are disclosed in the Office Agreement (or similar agreements);

b.     Whether the charges assessed by Regus to its California tenants are adequately disclosed in the Office Agreement (or similar agreements);

c.     Whether Defendants' policy or practice of assessing charges to Regus' California tenants in excess of the monthly payment indicated in the Office Agreement (or similar agreements) constitutes an unlawful, unfair, or fraudulent business act or practice within the meaning of the Unfair Competition Law, Business & Professions Code § 17200, *et seq.*;

d.     Whether Defendants' advertising regarding the terms and conditions applicable to the office space product offered by Regus to prospective California tenants constitutes false or misleading advertising within the meaning of Business & Professions Code § 17500, *et seq.*, or violates the Unfair Competition Law, Business & Professions Code § 17200, *et seq.*;

e.     Whether Defendants' advertising regarding the price of the office space product offered by Regus to prospective California tenants constitutes false or misleading advertising within the meaning of Business & Professions Code § 17500, *et seq.*, or violates the

Unfair Competition Law, Business & Professions Code § 17200, *et seq.*;

f.     Whether Defendants concealed and/or suppressed charges that Regus would assess in excess of the monthly payment indicated in the Office Agreement (or similar agreements) to California tenants;

g.     Whether Defendants negligently misrepresented the total monthly payment in connection with the Office Agreement (or similar agreements);

h.     Whether Defendants intentionally misrepresented the total monthly payment that Regus would assess to California tenants pursuant to the Office Agreement (or similar agreements);

i.     Whether Defendants have been unjustly enriched by the wrongs complained of herein and, if so, whether it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits that were received from Plaintiffs Circle Click, Metro Talent, and the California Class;

j.     Whether Plaintiffs Circle Click and Metro Talent and the California Class have suffered harm by the wrongs complained of herein and, if so, the class-wide measure of harm and the nature and extent of other relief that should be afforded, including, but not limited to, whether the California Class should recover the entire amount of Regus' charges assessed in excess of the monthly payment amount indicated in the Office Agreement (or similar agreements);

k.     Whether Defendants should be enjoined from continuing to assess charges to Regus' California tenants in excess of the monthly payment indicated in the Office Agreement (or similar agreements);

l.     Whether Defendants should be enjoined from continuing to engage in their advertising regarding the terms and conditions applicable to the office space product offered by Regus to California tenants; and

m.     Whether Defendants should be enjoined from continuing to engage in their advertising regarding the price of the office space product offered by Regus to California tenants.

74.     The questions of law and fact common to the New York Class include, but are not

limited to, the following:

a. Whether the charges assessed by Regus to its New York tenants in excess of the monthly payment amount indicated in the Office Agreement (or similar agreements) are disclosed in the Office Agreement (or similar agreements);

b. Whether the charges assessed by Regus to its New York tenants are adequately disclosed in the Office Agreement (or similar agreements);

c. Whether Defendants' policy or practice of assessing charges to Regus' New York tenants in excess of the monthly payment indicated in the Office Agreement (or similar agreements) constitutes deceptive practices within the meaning of New York State General Business Law § 349;

d. Whether Defendants' advertising regarding the terms and conditions applicable to the office space product offered by Regus to prospective New York tenants constitutes unlawful false advertising within the meaning of New York State General Business Law § 350;

e. Whether Defendants' advertising regarding the price of the office space product offered by Regus to prospective New York tenants constitutes unlawful false advertising within the meaning of New York State General Business Law § 350;

f. Whether Defendants have been unjustly enriched by the wrongs complained of herein and, if so, whether it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits that were received from Plaintiff CTNY Insurance Group and the New York Class;

g. Whether Plaintiff CTNY Insurance Group and the New York Class have suffered harm by the wrongs complained of herein and, if so, the class-wide measure of harm and the nature and extent of other relief that should be afforded, including, but not limited to, whether the New York Class should recover the entire amount of Regus' charges assessed in excess of the monthly payment amount indicated in the Office Agreement (or similar agreements);

h. Whether Defendants should be enjoined from continuing to assess charges

to Regus' New York tenants in excess of the monthly payment indicated in the Office Agreement (or similar agreements);

        i.    Whether Defendants should be enjoined from continuing to engage in their advertising regarding the terms and conditions applicable to the office space product offered by Regus to New York tenants; and

        j.    Whether Defendants should be enjoined from continuing to engage in their advertising regarding the price of the office space product offered by Regus to New York tenants.

75.    The claims of Plaintiff Circle Click and Metro Talent are typical of the claims of the other members of the California Class in that Plaintiffs Circle Click and Metro Talent are members of the California Class and have been harmed by the actions of Defendants, including, *inter alia*, Regus' false or misleading advertising scheme and by the assessment of charges to California tenants by Regus over the monthly payment indicated in the Office Agreement or similar agreements.  The claims of Plaintiff CTNY Insurance Group are typical of the claims of the other members of the New York Class in that Plaintiff CTNY Insurance Group is a member of the New York Class and has been harmed by the actions of Defendants, including, *inter alia*, Regus' deceptive advertising scheme and by the assessment of charges to New York tenants by Regus over the monthly payment indicated in the Office Agreement or similar agreements.

76.    Plaintiffs Circle Click and Metro Talent will fairly and adequately represent and protect the interests of the California Class members and have no interests antagonistic to or in conflict with those of the California Class.   Plaintiff CTNY Insurance Group will fairly and adequately represent and protect the interests of the New York Class members and has no interests antagonistic to or in conflict with those of the New York Class.

77.    Plaintiffs Circle Click, Metro Talent, and CTNY Insurance Group have retained competent counsel with experience in class action and other complex litigation who will vigorously represent the interests of the Classes.

78.    Certification of the Classes is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual members of the Classes would create the

risk of inconsistent and varying adjudications with respect to individual members of the Classes which would establish incompatible standards of conduct for Defendants, or adjudications with respect to individual members of the Classes which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

79.   Certification of the Classes is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because the Defendants have acted or refused to act on grounds generally applicable to the Classes making final declaratory and injunctive relief appropriate with respect to the Classes as a whole. The Classes are entitled to injunctive relief to remedy Defendants' violations of the law of the Defendants.

80.   Certification of the Classes is appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Classes, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The harm suffered by the individual members of the Classes is small compared to the expense and burden of individual prosecution of this litigation.  Class certification is superior because it obviates the need for unduly duplicative litigation which may result in inconsistent judgments about the practices of the Defendants.  Plaintiffs Circle Click, Metro Talent, and CTNY Insurance Group know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

### VII.   CLAIMS FOR RELIEF

### COUNT I

### VIOLATIONS OF CALIFORNIA BUSINESS & PROFESSIONS

### CODE § 17200, ET SEQ.

#### (California Class against All Defendants)

81.   Plaintiffs re-allege and incorporate each and every paragraph as if fully set forth

herein.

82.     This cause of action is brought on behalf of Plaintiffs Circle Click, Metro Talent, and the California Class, in accordance with the provisions of California Business & Professions Code § 17200, *et seq.*  Plaintiffs and the California Class have lost money or property as a result of the actions of the Defendants as set forth herein.

83.     Defendants actions as alleged in this Complaint constitute unfair and deceptive business practices within the meaning of California Business & Professions Code § 17200 in that Defendants' actions were unlawful, unfair, and/or fraudulent and because Defendants have made unfair, deceptive, untrue and/or misleading statements within the meaning of California Business & Professions Code § 17200, *et seq.*

84.     Defendants' business practices are to assess charges above the monthly payment indicated in the Office Agreement that are not adequately disclosed to Plaintiffs and the California Class.  Defendants' business acts and practices are unfair because they offend established public policy and/or are immoral, unethical, oppressive, unscrupulous, misleading and/or substantially injurious to clients.  Defendants' business practices hurt competition and are a restraint on trade.

85.     Defendants' business practices are to require the payment of monies as a condition of continuing the lease without providing for the amounts of said monies in the Office Agreement or Fine Print, thereby constituting a violation of California Civil Code § 1950.8. Defendants' business acts and practices are unlawful because the assessment of such charges is prohibited under California Civil Code § 1950.8.

86.     Defendants' business practices include charging penalties based on a percentage of the entire alleged unpaid principal balance, plus a fixed fee, which constitutes an unreasonable penalty, within the meaning of California Civil Code § 1671(b).  Defendants' business acts and practices are unlawful because the assessment of such charges is prohibited under California Civil Code § 1671(b).  The calculation of the assessment of penalties charged by Regus does not bear a reasonable nexus to the amount of damages suffered by Regus.

87.     Defendants represent by the Office Agreement that a total monthly payment will

be due in the amount indicated in the Office Agreement.  However, additional charges not adequately disclosed are routinely assessed beyond the total monthly payment indicated in the Office Agreement, constituting a business practice in violation California Civil Code §§ 1572, 1709, and/or 1710.   Defendants' conduct is unlawful because such representations are prohibited under California Civil Code §§ 1572, 1709, and/or 1710.

88.   Defendants' advertising and promotional materials and efforts, including, but not limited to, advertising on the Regus Website, www.craigslist.com, and the Office Agreement document itself, contain false and/or misleading advertising within the meaning of Business & Professions Code § 17500, *et seq.*, because Defendants either knew or reasonably should have known that such advertising is or was untrue and/or misleading.  Defendants' conduct is unlawful because Business & Professions Code § 17500, *et seq.*, prohibits such untrue and/or misleading advertising and makes the same a misdemeanor.

89.   Defendants' advertising and failure to clearly and conspicuously disclose Defendants' scheme, practice, and intent to assess additional undisclosed fees deceives consumers, customers, and/or the public, and, therefore, constitute a fraud.  Defendants' business acts and practices are fraudulent because clients and the public are likely to be deceived by Defendants' advertising and/or representations contained in the Office Agreement and Plaintiffs and the California Class were actually misled and deceived by Defendants' representations.

90.   Plaintiffs and the California Class have lost money or property as a result of the actions of the Defendants as set forth herein.

## COUNT II

### VIOLATIONS OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17500, ET SEQ.

**(California Class against All Defendants)**

91.   Plaintiffs re-allege and incorporate each and every paragraph as if fully set forth herein.

92.     Defendants advertising, including, but not limited to, advertising displayed on the Regus Website, www.craigslist.com, representations of "furnished" offices, representations of "simple one page" lease agreements, which fail to mention the amounts of additional charges that will be assessed by Regus, constitutes false or misleading advertising within the meaning of Business & Professions Code § 17500, *et seq.*, because Defendants either knew or reasonably should have known, that such advertising was untrue and/or misleading and Plaintiffs and the California Class relied on Defendants' representations.  Defendants' violation of § 17500, *et seq.*, also constitutes a violation of Business & Professions Code § 17200, *et seq.*

93.     Plaintiffs and the California Class have lost money or property as a result of the actions of the Defendants as set forth herein.

## **COUNT III**

### **CONCEALMENT/SUPPRESSION**

### **(California Class against All Defendants)**

94.     Plaintiffs re-allege and incorporate each and every paragraph as if fully set forth herein.

95.     Defendants concealed, suppressed, and/or failed to adequately disclose the amounts of assessments that would be charged by Regus to Plaintiffs and the California Class, in connection with the office space, in a clear and conspicuous manner.

96.     Defendants had a duty to disclose the amounts of fees and assessments that would be charged to Plaintiffs and the California Class in connection with the Office Agreement.

97.     Defendants had a duty to disclose the amounts of hidden fees to Plaintiffs and the California Class prior to execution of the Office Agreement because of Defendants' exclusive knowledge of material facts not contained in the Office Agreement – namely, that additional charges and assessments would be assessed by Regus according to Regus' business practices and policies.

98.     Defendants had a duty to disclose the amounts of additional fees to be assessed to

tenants in addition to the monthly payment for office space because Defendants actively concealed the amounts of the additional fees by not stating the amounts in the Office Agreement or Fine Print, by using extremely small font, and by failing to provide adequate disclosures that are clear and conspicuous.

99.    Defendants had a duty to disclose the amounts of fees to be assessed to tenants in addition to the monthly payment for office space because Defendants' indication of the monthly payment for office space stated in the Office Agreement constitutes a partial representation, but suppresses the fact that additional charges would be assessed post-closing.

100.    Defendants jointly and singly engaged in a continuous and systematic policy of not adequately disclosing charges and hidden fees that would be assessed to Regus tenants after signing the one-page Office Agreement document.

101.    Defendants jointly and singly engaged in a business practice of withholding adequate disclosures including but not limited to written disclosures of amounts of fees that Regus knew that it would subsequently assess to tenants, customers, and consumers, after taking the lease.

102.    Plaintiff and the members of the Class were unaware of the amounts that Regus would assess in addition to the monthly payment for the office space, and Plaintiffs and the California Class would not have freely and willingly agreed to pay for any additional assessments that were not clearly and conspicuously disclosed.

103.    As a result of Defendants' suppression, concealment, and failure to disclose the charges that Regus would subsequently assess post-closing in connection with the office space the Office Agreement, Plaintiffs and the California Class suffered damage in the amount of the unfair and/or deceptive assessments charged by Regus.

104.    Defendants acts constitute oppression, fraud, and/or malice under California Civil Code § 3294, entitling Plaintiff and the California Class to punitive damages in an amount appropriate to punish and deter Defendants and others from similar practices.

## COUNT IV

### NEGLIGENT MISREPRESENTATION

#### (California Class against All Defendants)

105.    Plaintiffs re-allege and incorporate each and every paragraph as if fully set forth herein.

106.    Defendants made representations that the total monthly payment to be charged in connection with the office space would be in the amount stated in the Office Agreement.

107.    The representations were false – Defendants knew that Regus would assess additional charges to Plaintiffs and the California Class for amounts not adequately disclosed in the Office Agreement.

108.    Regardless of their actual belief, Defendants made the representations without any reasonable ground for believing them to be true, inducing Plaintiffs and the California Class to sign an Office Agreement.

109.    The representations were made with the intent to induce Plaintiffs and the Class to rely upon them.

110.    Plaintiffs and the Class acted in reliance upon the truth of the representations and were justified in relying upon the representations.

111.    As a result of the reliance upon the truth of the representations, Plaintiffs and the Class sustained damage from the misrepresentations and Defendants' misrepresentations were a substantial factor in causing such damage.

## COUNT V

### INTENTIONAL MISREPRESENTATION

#### (California Class against All Defendants)

112.    Plaintiffs re-allege all paragraphs of this complaint, as though fully set forth herein.

113.    Regus' representations to Plaintiffs and the California Class concerning the total

monthly payment to be made in connection with the Office Agreement were false and misleading and Regus knew, or should have known, of its own practices and policies of assessing charges to tenants in addition to the amount of the monthly payment stated in the Office Agreement.

114.    Regus failed to adequately disclose the amounts of assessments that would be charged to Plaintiffs and the California Class as a condition of continuing the lease.

115.    Plaintiffs and the California Class were coerced to pay additional assessments to Defendants as a result of Regus' superior bargaining power, assessments of additional unconscionable penalties, and threats of collections and/or legal proceedings against tenants.

116.    Plaintiffs and the California Class reasonably relied on the promotional efforts and advertising of Regus, including, but not limited to, representations concerning the "simple one-page" Office Agreement and advertising on the Regus Website.

117.    Plaintiffs and the California Class acted in reliance upon the truth of the representations and were justified in relying upon the representations.

118.    As a result of the reliance upon the truth of the representations, Plaintiffs and the California Class sustained damage from the misrepresentations and Defendants' misrepresentations were a substantial factor in causing such damage.

119.    Regus' business practices, including, but not limited to, assessing unconscionable penalties against Plaintiffs and the California Class, constitute oppression, fraud, and/or malice under California Civil Code § 3294.

120.    Defendants acts constitute oppression, fraud, and/or malice under California Civil Code § 3294, entitling Plaintiffs and the California Class to punitive damages in an amount appropriate to punish or set an example of Defendants.

/ / /

/ / /

/ / /

/ / /

/ / /

## COUNT VI

### UNJUST ENRICHMENT

**(California Class against All Defendants)**

121.    Plaintiffs re-allege all paragraphs of this complaint, as though fully set forth herein.

122.    As a result of Defendants' unfair, deceptive, fraudulent and misleading marketing, advertising, packaging, labeling, distributing, selling, and offering for sale office space, Defendants were enriched, at the expense of Plaintiffs and the California Class.

123.    Under the circumstances, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits that were received from Plaintiffs and the California Class.  It would be unjust and/or inequitable for Defendants to retain the benefit without restitution to Plaintiffs and the California Class.

124.    Accordingly, Plaintiffs and the California Class seek an order establishing Defendants as constructive trustees of the profits that served to unjustly enrich them, together with interest during the period in which Defendants have retained such funds, and requiring Defendants to disgorge those funds to Plaintiffs and members of the California Class in a manner to be determined by the Court.

125.    Therefore, Plaintiffs Circle Click and Metro Talent on behalf of the California Class pray for relief as set forth below.

## COUNT VII

### UNLAWFUL DECEPTIVE ACTS AND PRACTICES IN VIOLATION OF

### NEW YORK STATE GENERAL BUSINESS LAW § 349

**(New York Class against All Defendants)**

126.    Plaintiff CTNY Insurance Group re-alleges all paragraphs of this complaint, as though fully set forth herein.

127.    This Count is based upon the unlawful deceptive acts and practices statute under

New York State General Business Law § 349 and the cases interpreting said statute.

128.     Defendants have engaged in the following conduct: i) false and misleading express and/or implied representations, advertising, and omissions of material fact relating to the "Monthly Payment" amount for the office space; ii) a failure to provide adequate written disclosures of post-closing additional amount(s) assessed to Plaintiff CTNY Insurance Group and the New York Class in connection with the Office Agreement; iii) suppression and concealment of clear and conspicuous written disclosures stating the additional amounts that Regus would assess to Plaintiff CTNY Insurance Group and the New York Class; and iv) the exertion of undue bargaining power over Plaintiff CTNY Insurance Group and the New York Class.  Such conduct by Defendants constitutes deception, fraud, unconscionable commercial practices, false pretenses, false promises, misrepresentations, or the knowing concealment, suppression, or omission of material facts with the intent that others rely upon such concealment, suppression, or omission, in connection with the advertisement, sale, and/or offer to sell office space in the State of New York in violation of § 349 of New York's General Business Law, making deceptive acts and practices illegal.

129.     Had Plaintiff CTNY Insurance Group and the New York Class known the truth, they would not have signed the Office Agreement or, alternatively, would have negotiated a much lower purchase price commensurate with the value of the items charged for by Defendants.

130.     The unfair and deceptive trade acts and practices of Defendants have directly, foreseeably, and proximately caused damages and injury to Plaintiff CTNY Insurance Group and the New York Class.

## COUNT VIII

### UNLAWFUL FALSE ADVERTISING IN VIOLATION OF

### NEW YORK STATE GENERAL BUSINESS LAW § 350

**(New York Class against All Defendants)**

131.     Plaintiff CTNY Insurance Group re-alleges all paragraphs of this complaint, as though fully set forth herein.

132.    This Count is based upon the unlawful false advertising statute under New York State General Business Law § 350 and the cases interpreting said statute.

133.    Defendants engaged in false advertising concerning the Office Agreement.

134.    New York General Business Law § 350-a defines "false advertising" as "advertising . . . if such advertising is misleading in a material respect.  In determining whether any advertising is misleading, there shall be taken into account . . . the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity . . ."

135.    By marketing, advertising, packaging, labeling, distributing, and selling the Office Agreement to CTNY Insurance Group and New York Class, Defendants engaged in and continue to engage in, false advertising.

136.    Plaintiff CTNY Insurance Group and the New York Class seek to enjoin such unlawful and deceptive acts and practices described above.  Class members will be irreparably harmed unless the unlawful actions of Defendants are enjoined in that Defendants will continue to falsely advertise the monthly payment for the Office Agreement without adequate disclosure of the additional assessments and charges that Regus will charge post-closing.  Accordingly, Plaintiff CTNY Insurance Group seeks an order granting injunctive relief ordering clear and conspicuous written disclosures and disclaimers on the marketing, advertising, packaging, labeling, distributing, promotion, and selling of the Office Agreement product.

137.    Absent injunctive relief, Defendant will continue to falsely advertise the Office Agreement and the total monthly payment in connection with the office space.

138.    In this regard, Defendants have violated, and continue to violate New York State General Business Law § 350, which makes false advertising unlawful.  As a direct and proximate result of Defendants' violation of New York State General Business Law § 350 as described above, Plaintiff CTNY Insurance Group and the New York Class have suffered damages in an amount to be determined at trial.

139.    The unfair and deceptive trade acts and practices of Regus have directly,

foreseeably, and proximately caused damages and injury to Plaintiff CTNY Insurance Group and the other members of the New York Class.

## COUNT IX

### UNJUST ENRICHMENT

### (New York Class against All Defendants)

140.    Plaintiff CTNY Insurance Group re-alleges all paragraphs of this complaint, as though fully set forth herein.

141.    As a result of Defendants' unfair, deceptive, fraudulent and misleading marketing, advertising, packaging, labeling, distributing, selling, and offering for sale office space, Defendants were enriched at the expense of Plaintiff CTNY Insurance Group and the New York Class.

142.    Under the circumstances, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits that were received from Plaintiff CTNY Insurance Group and the New York Class.  It would be unjust and/or inequitable for Defendants to retain the benefit without restitution to Plaintiff CTNY Insurance Group and the New York Class.

143.    Accordingly, Plaintiff and the New York Class seek an order establishing Defendants as constructive trustees of the profits that served to unjustly enrich them, together with interest during the period in which Defendants have retained such funds, and requiring Defendants to disgorge those funds to Plaintiff and members of the New York Class in a manner to be determined by the Court.

144.    Therefore, Plaintiff CTNY Insurance Group on behalf of the New York Class prays for relief as set forth below.

/ / /

/ / /

/ / /

/ / /

## VIII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and all members of the Classes pray that the Court enter an order and judgment against the Defendants as follows:

1.      For an order certifying the California Class as a class action pursuant to Fed. R. Civ. P. 23 and appointing Plaintiffs Circle Click and Metro Talent and their counsel to represent the California Class;

2.      For an order certifying the New York Class as a class action pursuant to Fed. R. Civ. P. 23 and appointing Plaintiff CTNY Insurance Group and its counsel to represent the New York Class;

3.      Adjudging and decreeing that Defendants, and each of them, have engaged in the conduct alleged herein with respect to both of the Classes;

4.      Awarding Plaintiffs Circle Click and Metro Talent and the California Class injunctive relief for Defendants' violations set forth herein;

5.      Awarding Plaintiff CTNY Insurance Group and the New York Class injunctive relief for Defendants' violations set forth herein;

6.       Awarding Plaintiffs Circle Click and Metro Talent and the California Class restitution, including, but not limited to disgorgement of Defendants' wrongfully obtained revenues, earnings, profits compensation, and benefits pursuant to California Business & Professions Code §§ 17203 and 17204, for Defendants' violations of Business & Professions Code §§ 17200, *et seq.*, and 17500 *et seq.*;

7.      Awarding Plaintiff CTNY Insurance Group and the New York Class restitution, including, but not limited to disgorgement of Defendants' wrongfully obtained revenues, earnings, profits compensation, and benefits pursuant to New York State General Business Law §§ 349 and 350;

8.      Awarding Plaintiffs Circle Click and Metro Talent and the California Class damages for Defendants' violations of California Civil Code § 1950.8;

9.      Awarding Plaintiff CTNY Insurance Group and the New York Class damages for

Defendants' violations of New York State General Business Law §§ 349 and 350;

10. Awarding Plaintiffs Circle Click, Metro Talent, and CTNY Insurance Group and the Classes general damages;

11. Awarding Plaintiffs Circle Click, Metro Talent, and CTNY Insurance Group and the Classes special damages;

12. Awarding Plaintiffs Circle Click, Metro Talent, and CTNY Insurance Group and the Classes punitive damages;

13. Awarding Plaintiffs Circle Click, Metro Talent, and CTNY Insurance Group and the Classes pre- and post-judgment interest as allowed by law;

14. Awarding costs and expenses (including, but not limited to, expert-witness fees) and attorney's fees to Plaintiffs Circle Click and Metro Talent and the California Class pursuant to Code of Civil Procedure § 1021.5, a common fund theory, and/or any other theory or statutory basis;

15. Awarding costs and expenses (including, but not limited to, expert-witness fees) and attorney's fees to Plaintiff CTNY Insurance Group and the New York Class pursuant to New York State General Business Law §§ 349 and 350, a common fund theory, and/or any other theory or statutory basis; and

16. Granting such other and further relief that this Court may deem just and proper.

## IX. JURY TRIAL DEMAND

Plaintiffs, on their own behalf and on behalf of all others similarly situated, hereby demand a trial by jury.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 3:12-CV-04000 SC

1    Dated: September 24, 2012                    Respectfully submitted,

2                                                 **GAROFOLO LAW GROUP, P.C.**
                                                  **ARI LAW, P.C.**
3

4                                                 By: ___/s/ Joseph A. Garofolo_____
                                                        Joseph A. Garofolo
5

6                                                 Attorneys for Plaintiffs
                                                  CIRCLE CLICK MEDIA LLC,
                                                  METRO TALENT, LLC and
7                                                 CTNY INSURANCE GROUP LLC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28