United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CIRCLE CLICK MEDIA LLC, METRO TALENT, LLC, CTNY INSURANCE GROUP LLC, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>REGUS MANAGEMENT GROUP LLC, REGUS BUSINESS CENTRE LLC, REGUS PLC, HQ GLOBAL WORKPLACES LLC, and DOES 1 through 50,<br><br>        Defendants. | ) Case No. 12-04000 SC<br>)<br>) ORDER RE: (1) REGUS PLC'S<br>) MOTION TO DISMISS FOR LACK<br>) OF PERSONAL JURISDICTION<br>) AND (2) DEFENDANTS' MOTION<br>) TO DISMISS FOR FAILURE TO<br>) STATE A CLAIM<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

I.   **INTRODUCTION**

     Plaintiffs Circle Click Media LLC ("Circle Click"), Metro
Talent, LLC ("Metro Talent"), and CTNY Insurance Group LLC ("CTNY")
(collectively, "Plaintiffs") bring this putative class action
against Regus Management Group LLC ("RMG"), Regus Business Centre
LLC ("RBC"), Regus plc, and HQ Global Workplaces LLC ("HQ Global")
(collectively "Defendants").  ECF No. 24 (First Amended Complaint
("FAC")).  Now before the Court is: (1) Regus plc's motion to
dismiss for lack of personal jurisdiction pursuant to Federal Rule
of Civil Procedure 12(b)(1); and (2) Defendants' motion to dismiss
for failure to state a claim pursuant to Federal Rule of Civil
Procedure 12(b)(6).  ECF Nos. 29 ("12(b)(1) MTD"); 31 ("12(b)(6)

1  MTD"). The motions are fully briefed[1] and appropriate for

2  resolution without oral argument. For the reasons set forth below,

3  Regus plc's 12(b)(1) motion is DENIED WITHOUT PREJUDICE pending

4  jurisdictional discovery by Plaintiffs. Further, Defendants'

5  12(b)(6) motion is GRANTED in part and DENIED in part.

6

7  **II.  BACKGROUND**

8       The following facts are taken from Plaintiffs' FAC.

9  Defendants are in the business of leasing commercial office space

10 throughout California and New York. FAC ¶ 1. Defendant Regus plc

11 is a foreign public limited company incorporated and registered in

12 Jersey, Channel Islands, and is the parent company of Defendants

13 RMG, RBC, and HQ Global. Id. ¶¶ 1, 14. Plaintiffs allege that all

14 four defendants are alter egos of each other and generally do not

15 distinguish between them in the FAC. See id. ¶¶ 1, 21

16      In 2011, Plaintiffs entered into identical office agreements

17 with Defendants (collectively, the "Office Agreement(s)") for

18 commercial office space in California and New York. Id. ¶¶ 43, 52,

19 65. Plaintiffs allege they were assessed charges by Defendants

20 over the monthly payments indicated by their agreements. Id. ¶ 71.

21 For example, Plaintiffs allege that Defendants routinely assessed

22 Circle Click for charges relating to kitchen amenities, various

23 telecommunication services, "business continuity service," taxes,

24 and penalties -- fees which were not disclosed in the Office

25 Agreement or the fine print and which bore no reasonable

26 _____

27 [1] ECF Nos. 39 ("Opp'n to 12(b)(6) MTD"); 40 ("Opp'n to 12(b)(1)
   MTD"), 44 ("Reply ISO 12(b)(1) MTD"), 45 ("Reply ISO 12(b)(6)

28 MTD"). The Court reminds Plaintiffs that Civil Local Rule 7-4
   requires parties to include a table of contents and a table of
   authorities in all briefs exceeding ten pages.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1  relationship to the services purportedly rendered by Defendants.

2  Id. ¶ 48.

3      Plaintiffs allege that, in light of Defendants' billing

4  practices, its advertising is false and misleading.  See id. ¶ 73.

5  Plaintiffs specifically point to advertisements posted to

6  Defendants' website from 2003 through 2012.  These advertisements

7  represented that customers "could save up to 78 % [sic] compared to

8  traditional office costs," that Defendants' one-page contract

9  "takes just 10 minutes to complete," and that Defendants' services

10 were "[s]imple, easy[,] and flexible."  Id. ¶¶ 23-31.  Plaintiffs

11 also point to a broadcast commercial by Defendants, wherein an

12 actress states:

13         I don't have a lease so I don't have to budget for stuff
           like phones, IT guys, and artwork for the lobby.
14         Instead, I pay one low monthly rate that gives me a
           beautiful lobby that impresses my clients, a friendly
15         receptionist, a fully furnished office, a place to meet,
           and a place to brainstorm with my fellow new way workers.
16         We wonder why more people don't realize that the new way
           to work is the best way to work.
17

18 Id. ¶ 31.

19      Plaintiffs filed the instant action in state court in May 2012

20 and Defendants subsequently removed.  ECF No. 1.  In their FAC,

21 which was filed after removal, Plaintiffs seek to represent a class

22 of all persons who paid for Defendants' office space in California

23 and New York and were assessed charges by Defendants over the

24 monthly payments indicated in the Office Agreement or any similar

25 agreement.  FAC ¶ 71.  Plaintiffs assert six counts on behalf of

26 the California class, which is represented by Circle Click and

27 Metro Talent: (1) violation of California Business and Professions

28 Code section 17200 (the California Unfair Competition Law ("UCL"));

3

(2) violation of California Business and Professions Code section 17500 (the California False Advertising Law ("FAL"); (3) "concealment/suppression"; (4) & (5) negligent and intentional misrepresentation; and (6) unjust enrichment.  Plaintiffs also assert the following claims on behalf of the New York class, which is represented by CTNY: (7) & (8) violation of New York State General Business Law ("NYSGBL") sections 349 and 350; and (9) unjust enrichment.  Plaintiffs seek restitution of wrongfully obtained revenues, injunctive relief, and special and general damages, among other things.

**III.  DISCUSSION**

   **A.   Regus plc's 12(b)(1) Motion**

   Regus plc argues that it should be dismissed from this suit because it is a foreign entity that operates outside of California. 12(b)(1) MTD at 4.  Plaintiffs respond that the exercise of specific jurisdiction is proper due to Regus plc's false advertising in California and that the other Defendants' contacts with California can be imputed to Regus plc under an agency and alter ego analysis.  Opp'n to 12(b)(1) MTD at 9-15.  Plaintiffs also argue that, if the Court finds that Plaintiffs have failed to make a sufficient showing on these claims, it should grant Plaintiffs an opportunity to take jurisdictional discovery.  Id. at 16.

        i.   Legal Standard

   Plaintiffs bear the burden of showing that the Court has personal jurisdiction over Regus plc.  See Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006).  "[T]his demonstration

1   requires that the plaintiff make only a prima facie showing of

2   jurisdictional facts to withstand the motion to dismiss." Id.

3   (quotations omitted).  "[T]he court resolves all disputed facts in

4   favor of the plaintiff . . . ." Id. (quotations omitted).  "The

5   plaintiff cannot simply rest on the bare allegations of its

6   complaint, but uncontroverted allegations in the complaint must be

7   taken as true." Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d

8   1218, 1223 (9th Cir. 2011) (quotations omitted).  Since

9   California's long-arm statute is coextensive with federal due

10  process requirements, Cal. Civ. Proc. Code § 410.10, the personal

11  jurisdiction analysis under state and federal law are the same.

12              ii.  Specific Jurisdiction

13       The Ninth Circuit has established a three-prong analysis for

14  assessing claims of specific jurisdiction:

15       (1)  The  non-resident  defendant  must  purposefully
         direct his activities or consummate some transaction
16       with the forum or resident thereof; or perform some
         act by which he purposefully avails himself of the
17       privilege  of  conducting  activities  in  the  forum,
         thereby invoking the benefits and protections of its
18       laws;

19       (2)  the  claim  must  be  one  which  arises  out  of  or
         relates  to  the  defendant's  forum-related  activities;
20       and

21       (3)  the  exercise  of  jurisdiction  must  comport  with
         fair  play  and  substantial  justice,  i.e.  it  must  be
22       reasonable.

23  Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th

24  Cir. 2004).  The plaintiff bears the burden of satisfying the first

25  two prongs and, if it does, the burden then shifts to the defendant

26  to show why the exercise of personal jurisdiction would be

27  unreasonable.  Id.

28       As to the first prong, the parties agree that the Court should

                                    5

**United States District Court**
For the Northern District of California

1   apply the purposeful direction analysis enunciated by the Supreme

2   Court in Calder v. Jones, 465 U.S. 783 (1984). 12(b)(1) MTD at 7,

3   Opp'n to 12(b)(1) MTD at 10. "To satisfy this test the defendant

4   must have (1) committed an intentional act, which was (2) expressly

5   aimed at the forum state, and (3) caused harm, the brunt of which

6   is suffered and which the defendant knows is likely to be suffered

7   in the forum state." Pebble Beach, 453 F.3d at 1156 (citing

8   Calder, 465 U.S. at 783).

9        Plaintiffs argue that the "expressly aimed" condition is met

10  here because of Defendants' website, regus.com. Opp'n to 12(b)(1)

11  MTD at 10. The Ninth Circuit has held that there is no personal

12  jurisdiction where "a website advertiser [does] nothing other than

13  register a domain name and post an essentially passive website."

14  Pebble Beach, 453 F.3d at 1157 (quotations omitted). On the other

15  hand, personal jurisdiction may be appropriate where the defendant

16  operates an interactive website, depending on the "level of

17  interactivity and commercial nature of the exchange of information

18  that occurs on the Web site." Cybersell, Inc. v. Cybersell, Inc.,

19  130 F.3d 414, 418 (9th Cir. 1997).

20       Plaintiffs contend that regus.com is highly interactive and

21  designed to target California consumers. Opp'n to 12(b)(1) MTD at

22  10. They point out that the website includes sub-domain

23  directories for thirty-six California cities and counties. Id. at

24  10-11. Defendants counter that the interactive features on the

25  website interface with RMG, not Regus plc. 12(b)(1) MTD at 8.

26  Defendants rely on the declaration of Tim Regan, the company

27  secretary for Regus plc., who declares: "Communications and

28  business that are completed on the www.regus.com website by

California customers occur with [RMG].  The interactive features on this website and the contact information on this website direct the California customer to [RMG]."  ECF No. 30 ("Regan Decl.") ¶ 18. Since the Regan Declaration controverts the FAC, the Court must look past its bare allegations of purposeful direction.[2]  Thus, the regus.com website cannot support a finding of purposeful direction or the exercise of personal jurisdiction.

Neither can the "unsolicited email" produced by Plaintiffs. ECF No. 41 ("Ward Decl.") Ex. B.  The email is a general advertisement from "Regus@regus-woldwide.com" which was sent to "award@circleclick.com" on May 25, 2012.  Id.  The signature line of the email refers to Regus plc and its registered office in the Channel Islands.  Id.  This general advertisement, which makes no reference to California, does not demonstrate that Regus plc expressly aimed its activities at California.  Further, Plaintiffs'

---

[2] Plaintiffs object to the Regan Declaration on a number of grounds.  First, they argue that Mr. Regan lacks the requisite personal knowledge and that his declaration is based on hearsay. Opp'n to 12(b)(1) MTD at 5.  Plaintiffs point to the first paragraph of the declaration, in which Mr. Regan states: "The following facts are based upon my personal knowledge or are based upon information received from persons upon whom I rely in the normal course of business and/or the business records of Regus plc."  Id. (quoting Regan Decl. ¶ 1).  Contrary to Plaintiffs' contention, Mr. Regan does not lack the requisite personal knowledge merely because he may have reached an understanding about some of Regus plc's operations based on his review of business records or information gathered from staff.  See Great Am. Assur. Co. v. Liberty Surplus Ins. Corp., 669 F. Supp. 2d 1084, 1089 (N.D. Cal. 2009) ("Personal knowledge includes opinions and inferences grounded in observations and experience.").  Further, Mr. Regan's declaration is not hearsay because it is based on Mr. Regan's own understanding and observations and contains no out-of-court statements.  Plaintiffs also object to Mr. Regan's statements concerning regus.com on the ground that they are vague and ambiguous and constitute inadmissible legal conclusions because they interpret the legal significance of online interaction through the Regus website.  Opp'n to 12(b)(1) MTD at 8.  This argument is unavailing.  The paragraphs targeted by Plaintiffs contain straightforward statements of fact, not legal conclusions.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    injuries could not be related to this email since it was sent after

2    Plaintiffs filed the instant action.

3        Accordingly, the Court finds that Plaintiffs have failed to

4    meet their burden of showing that the exercise of specific

5    jurisdiction would be appropriate.

6                    iii. <u>Agency and Alter Ego Analysis</u>

7        Generally, the existence of a parent-subsidiary relationship

8    "is not sufficient to establish personal jurisdiction over the

9    parent on the basis of the subsidiaries' minimum contacts with the

10   forum." <u>Doe v. Unocal Corp.</u>, 248 F.3d 915, 925 (9th Cir. 2001).

11   However, "if the parent and subsidiary are not really separate

12   entities [i.e., alter egos], or one acts as an agent of the other,

13   the local subsidiary's contacts with the forum may be imputed to

14   the foreign parent corporation." <u>Id.</u> at 926 (quotations omitted).

15       To satisfy the alter ego exception to the general rule, "the

16   plaintiff must make out a prima facie case (1) that there is such

17   unity of interest and ownership that the separate personalities [of

18   the two entities] no longer exist and (2) that failure to disregard

19   [their separate identities] would result in fraud or injustice."

20   <u>Id.</u> (quotations omitted).  The agency exception applies where "the

21   subsidiary functions as the parent corporation's representative in

22   that it performs services that are sufficiently important to the

23   foreign corporation that if it did not have a representative to

24   perform them, the corporation's own officials would undertake to

25   perform substantially similar services." <u>Id.</u> at 928 (quotations

26   omitted).

27       The Court finds that Plaintiffs have proffered insufficient

28   facts to support the application of either exception here.

**United States District Court**
For the Northern District of California

1  Plaintiffs argue that the exceptions apply because Regus plc, RMG,
2  and RBC share a website, trademark, and logo.  See Opp'n to
3  12(b)(1) MTD at 14-15.  However, they cite no authority which would
4  suggest that those facts are sufficient to attribute RMG and RBC
5  contacts to Regus plc.  Plaintiffs also baldly assert that Regus
6  plc uses the other Defendants as marketing conduits; however, it
7  offers no other facts concerning the connection between these
8  different entities.  It is unclear how much control Regus plc
9  exerts over the other Defendants or whether they share revenues,
10  customers, or staff.  In short, Plaintiffs have yet to come forward
11  with any evidence concerning the functional relationship between
12  Defendants.

13       Accordingly, the Court declines to impute RMG and RBC's
14  contacts with California to Regus plc at this time.

15            iv.   Jurisdictional Discovery

16       The district court has discretion to allow a plaintiff to
17  conduct jurisdictional discovery.  Wells Fargo & Co. v. Wells Fargo
18  Exp. Co., 556 F.2d 406, 430 n.24 (9th Cir. 1977).  Requests for
19  such discovery should ordinarily be granted "where pertinent facts
20  bearing on the question of jurisdiction are controverted . . . or
21  where a more satisfactory showing of the facts is necessary."  Id.
22  (quotations omitted).  However, a district court need not permit
23  discovery "[w]here a plaintiff's claim of personal jurisdiction
24  appears to be both attenuated and based on bare allegations in the
25  face of specific denials made by the defendants . . . ."  Pebble
26  Beach, 453 F.3d at 1160 (quotations omitted).  The Court finds that
27  jurisdictional discovery is appropriate here.  Defendants argue
28  that Plaintiffs have failed to substantiate their agency and alter

ego theories, but they have not denied Plaintiffs' allegations.
<u>See</u> Reply ISO 12(b)(1) MTD.  Accordingly, discovery may uncover
additional evidence pertinent to the assessment of personal
jurisdiction.

For the foregoing reasons, the Court DENIES Regus Plc's motion
to dismiss for lack of personal jurisdiction WITHOUT PREJUDICE and
GRANTS Plaintiffs leave to conduct jurisdictional discovery to
collect evidence relevant to their alter ego and agency theories of
personal jurisdiction.  After discovery has been completed, Regus
plc may again move to dismiss for lack of personal jurisdiction
pursuant to Federal Rule of Civil Procedure 12(b)(1).

**B.**   **<u>Defendants' Rule 12(b)(6) Motion</u>**

i.   <u>Legal Standard</u>

A motion to dismiss under Federal Rule of Civil Procedure
12(b)(6) "tests the legal sufficiency of a claim." <u>Navarro v.
Block</u>, 250 F.3d 729, 732 (9th Cir. 2001).  "Dismissal can be based
on the lack of a cognizable legal theory or the absence of
sufficient facts alleged under a cognizable legal theory."
<u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir.
1988).  "When there are well-pleaded factual allegations, a court
should assume their veracity and then determine whether they
plausibly give rise to an entitlement to relief." <u>Ashcroft v.
Iqbal</u>, 556 U.S. 662, 664 (2009).  However, "the tenet that a court
must accept as true all of the allegations contained in a complaint
is inapplicable to legal conclusions.  Threadbare recitals of the
elements of a cause of action, supported by mere conclusory
statements, do not suffice." <u>Id.</u> at 663. (citing <u>Bell Atl. Corp.
v. Twombly</u>, 550 U.S. 544, 555 (2007)).  The allegations made in a

**United States District Court**
For the Northern District of California

1   complaint must be both "sufficiently detailed to give fair notice

2   to the opposing party of the nature of the claim so that the party

3   may effectively defend against it" and "sufficiently plausible"

4   such that "it is not unfair to require the opposing party to be

5   subjected to the expense of discovery."  <u>Starr v. Baca</u>, 633 F.3d

6   1191, 1204 (9th Cir. 2011).

7          ii.  <u>Group Pleading</u>

8          Defendants first argue that RBC, Regus plc, and HQ Global

9   should be dismissed from the case since Plaintiffs fail to allege

10  any facts indicating that they had any involvement in the matters

11  that form the basis of Plaintiffs' claims.  12(b)(6) MTD at 7.

12  Relying on <u>Swartz v. KPMG LLP</u>, 476 F.3d 756 (9th Cir. 2007),

13  Defendants contend that Plaintiffs have engaged in impermissible

14  group pleading.  <u>Id.</u>  In <u>Swartz</u>, the Ninth Circuit held that "[i]n

15  the context of a fraud suit involving multiple defendants, a

16  plaintiff must, at a minimum, 'identif[y] the role of [each]

17  defendant[] in the alleged fraudulent scheme.'"  476 F.3d at 765

18  (quotations omitted) (alterations in the original).  Defendants

19  argue that, although the FAC names four distinct defendants, it

20  makes no effort to articulate each defendant's role in the supposed

21  fraud, misrepresentations, or concealment.  12(b)(6) MTD at 7.

22         The Court is not persuaded.  As an initial matter, the

23  prohibition against group pleading only applies in cases of fraud,

24  <u>see Swartz</u> 476 F.3d at 765, and, in this case, only a fraction of

25  Plaintiffs' claims sound in fraud.  Defendants argue that Federal

26  Rule of Civil Procedure 8 also bars Plaintiffs' claims, since it

27  requires Plaintiffs to set forth which claims are alleged against

28  which defendants.  Reply ISO 12(b)(6) MTD at 3.  However, Rule 8

**United States District Court**
For the Northern District of California

pleading standards do not prevent a plaintiff from "pleading facts
alleged upon information and belief where the facts are peculiarly
within the possession and control of the defendant . . . ." Arista
Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010) (quotations
omitted).  Such is the case here.  Plaintiffs have pled, upon
information and belief, that Defendants are alter egos of each
other.  FAC ¶ 21.  As information concerning Defendants' corporate
relationships is in the sole possession of Defendants, Plaintiffs
are entitled to discovery on the matter.  This same reasoning
applies to Plaintiffs' fraud claims.  See Moore v. Kayport Package
Exp., Inc., 885 F.2d 531, 540 (9th Cir. 1989) ("Instances of
corporate fraud may also make it difficult to attribute particular
fraudulent conduct to each defendant as an individual.").

Defendants argue that Plaintiffs have failed to plead
sufficient facts to support their alter ego allegations.  Reply at
4.  The Court disagrees.  Plaintiffs allege that "[Defendants]
make[] no distinction between entities when using the Regus logo in
connection with marketing," that "[Defendants] describe[] [their]
own operations to actual tenants as if such operations are
conducted by a single entity," and that "[Defendants] represent[]
to [their] investors [that they are] a unified entity," among other
things.  FAC ¶ 21.  Defendants appear to ignore these allegations
altogether.  In sum, the Court finds plausible Plaintiffs'
allegation that Regus Management Group LLC, Regus Business Centre
LLC, Regus plc, and HQ Global are alter egos of one another.

### iii.  Count I: UCL Claims for Unlawful, Unfair, and
### Fraudulent Business Practices

Plaintiffs' first claim for relief is brought under the

California UCL, which prohibits business practices that are (1) unlawful, (2) unfair, or (3) fraudulent.  Cal. Bus. Prof. Code § 17200.  Plaintiffs allege violations of all three prongs of the UCL.  With respect to the unlawful prong, Plaintiffs allege predicate violations of sections 1950.8, 1671(b), 1572, 1709, and 1710 of the California Civil Code.  FAC ¶¶ 85-87.  As to the unfairness prong of the UCL, Plaintiffs target Defendants' alleged practice of "assessing charges above the monthly payment indicated in the Office Agreement."  Id. ¶ 84.  Finally, with respect to fraud, Plaintiffs allege that "Defendants' . . . failure to clearly and conspicuously disclose [their] scheme, practice, and intent to assess additional undisclosed fees deceives consumers, customers, and/or the public."[3]  Id. ¶ 89.  Defendants move to dismiss Plaintiffs' claims under all three prongs of the UCL.

Unlawful Practices.  Defendants argue that Plaintiffs cannot state a claim for unlawful practices under the UCL because they have not alleged facts establishing predicate violations of the borrowed statutes, California Civil Code sections 1950.8, 1671(b), 1572, 1709, and 1710.  12(b)(6) MTD at 17-19.

Civil Code section 1950.8 "applies only to commercial leases and nonresidential tenancies of real property" and makes it unlawful to require payment "as a condition of initiating, continuing, or renewing a lease or rental agreement, unless the amount of payment is stated in the written lease or rental agreement."  Cal. Civ. Code § 1950.8(a)-(b).  Plaintiffs allege

---

[3] Plaintiffs also allege that Defendants are liable for fraud under the UCL because they engaged in false advertising.  FAC ¶ 88.  This UCL claim is identical to Plaintiffs' FAL claim.  Compare id. ¶ 88 with id. ¶ 92.  Accordingly, it is addressed in Section III.B.iv infra.

**United States District Court**
For the Northern District of California

1  that Defendants violated section 1950.8 by "requir[ing] the payment

2  of monies as a condition of continuing the lease without providing

3  for the amounts of said monies in the Office Agreement or Fine

4  Print[.]"  FAC ¶ 85.  Defendants argue that section 1950.8 is

5  inapplicable here because the Office Agreement executed by

6  Plaintiffs is not a lease.  12(b)(6) MTD at 17-18.  The Office

7  Agreement provides:

> This agreement is the commercial equivalent of an
> agreement for accommodation(s) in a hotel. The whole of
> the Center remains in Regus' possession and control. THE
> CLIENT ACCEPTS THAT THIS AGREEMENT CREATES NO TENANCY
> INTEREST, LEASEHOLD ESTATE, OR OTHER REAL PROPERTY
> INTEREST IN THE CLENT'S FAVOUR WITH RESPECT TO THE
> ACCOMODATIONS.

12  ECF No. 34 Ex. B ("Office Agreement") § 1.1.  Plaintiffs respond

13  that the Office Agreement shares all the characteristics of a lease

14  since it "grants Plaintiffs the right to enter and possess the

15  designated premises for a fixed consideration (one monthly fee) and

16  period of time (duration of months)."  Opp'n to 12(b)(6) MTD at 21.

17  The Court may not accept Plaintiffs' argument without ignoring the

18  express terms of the Office Agreement.  Contrary to Plaintiffs'

19  contention, the Office Agreement did not grant them the right to

20  possess the premises.  In fact, it expressly states the property

21  "remains in Regus' possession and control[.]"  Office Agreement §

22  1.1.  Moreover, the Office Agreement expressly provides that it

23  "CREATES NO TENANCY INTERST."  Id.  Accordingly, Plaintiffs' UCL

24  claim is DISMISSED WITH PREJUDICE as it pertains to California

25  Civil Code section 1950.8.

26      Section 1671(b) states: "[A] provision in a contract

27  liquidating the damages for the breach of the contract is valid

28  unless the party seeking to invalidate the provision establishes

14

**United States District Court**
For the Northern District of California

1   that the provision was unreasonable under the circumstances

2   existing at the time the contract was made." Cal. Civ. Code §

3   1671(b). Plaintiffs allege that Defendants violated

4   section 1671(b) by "charging penalties based on a percentage of the

5   entire alleged unpaid principal balance, plus a fixed fee" since

6   such penalties "do[] not bear a reasonable nexus to the amount of

7   damages suffered by Regus." FAC ¶ 86. Defendants argue that

8   Plaintiffs lack standing to bring this claim since they have not

9   alleged that they paid such a penalty or the amount of the penalty.

10  12(b)(6) MTD at 18. Defendants misconstrue the FAC. While the

11  pleading could be clearer, Plaintiffs appear to be referring to the

12  penalty allegedly assessed against Circle Click which amounted to

13  "$25 plus 5% of the amount due on the overdue balances under $1,000

14  or $50 plus 5% of the amount due on the overdue balances of $1000

15  or greater." FAC ¶ 48(l). Moreover, Plaintiffs allege that they

16  paid the penalty. <u>Id.</u> ¶ 51 ("Regus'[s] charges have caused

17  Plaintiff Circle Click to suffer harm in the amount of the unfair

18  and unreasonable fees paid by Circle Click to Regus.").

19  Accordingly, Plaintiffs' UCL unlawfulness claim remains undisturbed

20  as to the alleged predicate violation of section 1671(b).

21       Plaintiffs claim that Defendants violated Civil Code sections

22  1572, 1709, and 1710 by routinely assessing charges not adequately

23  disclosed or indicated in the Office Agreement. <u>Id.</u> ¶ 87.

24  Sections 1572 and 1710 define the terms "actual fraud" and

25  "deceit," respectively, and section 1709 provides: "One who

26  willfully deceives another with intent to induce him to alter his

27  position to his injury or risk, is liable for any damage which he

28  thereby suffers." These claims fail for the same reasons as

**United States District Court**
For the Northern District of California

1   Plaintiffs' claims for "concealment/suppression" and negligent and

2   intentional misrepresentation.  <u>See</u> Section III.B.v <u>infra</u>.

3   Accordingly, Plaintiffs UCL unlawfulness claim is DISMISSED with

4   leave to amend to the extent that it is predicated on violations of

5   Civil Code sections 1572, 1709, 1710.

6        <u>Unfair Practices.</u>  California courts have enunciated multiple

7   standards for evaluating a claim for unfair practices under the

8   UCL.  In this case, the parties point to the tests set forth in

9   <u>Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone</u>

10  <u>Co.</u>, 20 Cal. 4th 163 (1999) and <u>Camacho v. Automobile Club of</u>

11  <u>Southern California</u>, 142 Cal. App. 4th 1394, 1401 (2006).  Under

12  the <u>Cel-Tech</u> standard, an unfair business practice is "conduct that

13  threatens an incipient violation of an antitrust law, or violates

14  the policy or spirit of one of those laws because its effects are

15  comparable to or the same as a violation of the law, or otherwise

16  significantly threatens or harms competition."  20 Cal. 4th at 187.

17  Under the <u>Camacho</u> standard, a plaintiff may establish unfairness by

18  showing that the consumer injury (1) is substantial; (2) not

19  outweighed by any countervailing benefits to consumers or

20  competition; and (3) is one that consumers themselves could not

21  reasonably have avoided.  142 Cal. App. 4th at 1403.

22       Plaintiffs have failed to meet either standard.  With respect

23  to the <u>Cel-Tech</u> standard, Plaintiffs have not attempted to identify

24  any law or public policy which might be offended by Defendants'

25  alleged conduct.  As to the <u>Camacho</u> standard, Plaintiffs assert

26  that Defendants' "systematic practice of non-disclosure" does not

27  serve any legitimate business purpose of utility.  Opp'n to

28  12(b)(6) MTD at 23.  However, they have not explained why their

**United States District Court**
For the Northern District of California

1   alleged injury is substantial or why they could not have avoided

2   the injury themselves.  As set forth in Section III.B.v _infra_, it

3   appears that the fees about which Plaintiffs complain were in fact

4   disclosed in the Office Agreement and other documentation provided

5   by Defendants.

6       Accordingly, Plaintiffs' claim for unfair business practices

7   under the UCL is DISMISSED with leave to amend.

8       <u>Fraudulent Practices.</u>  Plaintiffs' claim for fraudulent

9   practices under the UCL fails for the same reasons as their claims

10  for "concealment/suppression" and intentional and negligent

11  misrepresentation: the Office Agreement disclosed the fees that

12  Defendants allegedly concealed.  <u>See</u> Section III.B.v, <u>infra</u>.  As

13  Plaintiffs point out, "[u]nlike a common law fraud claim, a UCL

14  fraud claim requires no proof that the plaintiff was actually

15  deceived.  Instead, the plaintiff must produce evidence showing a

16  likelihood of confounding an appreciable number of reasonably

17  prudent purchasers exercising ordinary care." <u>Clemens v.</u>

18  <u>DaimlerChrysler Corp.</u>, 534 F.3d 1017, 1025-26 (9th Cir. 2008)

19  (quotations and internal citations omitted).  However, Plaintiffs

20  have failed to explain how Defendants' practices were likely to

21  deceive reasonably prudent purchasers when Defendants disclosed

22  that they would charge the additional fees which are the focus of

23  Plaintiffs' action.  Accordingly, Plaintiffs' UCL claim for

24  fraudulent practices is DISMISSED with leave to amend.

25          iv.  <u>Counts I & II: UCL and FAL Claims for False</u>

26               <u>Advertising</u>

27      Plaintiffs allege that Defendants engaged in false advertising

28  in violation of the UCL and FAL through "advertising displayed on

the Regus Website, www.craigslist.com, representations of 'furnished' offices, and representations of 'simple one page' lease agreements, which fail to mention the amounts of additional charges that will be assessed by Regus." FAC ¶ 92; see also id. ¶ 88. The UCL prohibits "unfair, deceptive, untrue or misleading advertising," Cal. Bus. & Prof. Code § 17200, and the FAL makes it unlawful to induce the public to enter into any obligation through the dissemination of "untrue or misleading" statements. Cal. Bus. & Prof. Code § 17500.

Defendants move to dismiss Plaintiffs' false advertising claims on at least two grounds: (1) Plaintiffs have pled insufficient facts to establish that they have standing; and (2) Plaintiffs' claims lack the required particularity. 12(b)(1) MTD at 9, 12. Both arguments have merit.

With respect to standing, a private person may only bring an action under the UCL and FAL if he or she has "suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. The California Supreme Court has interpreted section 17204 to "impose[] an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL[] . . . ." In re Tobacco II Cases, 46 Cal. 4th 298, 326 (2009). Defendants contend that Plaintiffs lack standing because they do not allege that they saw or relied upon the allegedly false and misleading advertising. 12(b)(1) MTD at 9. Plaintiffs respond that, under Tobacco II, such allegations are unnecessary to establish actual reliance. Opp'n to 12(b)(6) MTD at 8.

**United States District Court**
For the Northern District of California

1    Tobacco II involved false advertising claims against tobacco

2    companies.  46 Cal. 4th at 306.   Addressing the tobacco company's

3    contention that the plaintiffs lacked standing under the UCL

4    because they had not relied on the tobacco companies'

5    advertisements, the California Supreme Court stated:

6         [W]hile a plaintiff must allege that the defendant's
          misrepresentations were an immediate cause of the
7         injury-causing conduct, the plaintiff is not required to
          allege that those misrepresentations were the sole or
8         even the decisive cause of the injury-producing conduct.
          Furthermore, where, as here, a plaintiff alleges
9         exposure to a long-term advertising campaign, the
          plaintiff is not required to plead with an unrealistic
10        degree of specificity that the plaintiff relied on
          particular advertisements or statements. Finally, an
11        allegation of reliance is not defeated merely because
          there was alternative information available to the
12        consumer-plaintiff.

13   Id. at 328.  Thus, Tobacco II did not eliminate the requirement

14   that a plaintiff must show reliance to establish standing under the

15   UCL.  It merely held that a Plaintiff need not demonstrate

16   individualized reliance on specific representations where

17   Defendants have engaged in a long-term advertising campaign.  In

18   this case, Plaintiffs have failed to allege any reliance

19   whatsoever.  It is unclear whether they saw any of the

20   advertisements described in the FAC or received similar information

21   from any other advertising.  In the absence of any allegations

22   concerning reliance, the Court cannot conclude that Plaintiffs'

23   decision to use Defendants' services was influenced or reinforced

24   by Defendants' advertising.  Accordingly, Plaintiffs have failed to

25   allege sufficient facts to establish standing.

26        Defendants also argue that the FAC fails to explain why the

27   targeted advertisements were misrepresentations.  12(b)(6) at MTD

28   at 14.  Again, Defendants are correct.  Among other things, the

targeted advertisements make the following claims: "[s]ave money"; "[f]lexibility for your business"; "get down to business instantly"; "match our office rental options to your business needs"; "our solutions are designed to fit within your budget"; "[s]imple, easy and flexible"; "fully-furnished"; "all-inclusive"; and "one monthly fee"; and "one low monthly rate." FAC ¶¶ 25-31. None of these advertising claims represent that Defendants will refrain from charging customers additional fees, so it is unclear how they relate to Plaintiffs' action. The FAC does nothing to clarify the matter. Further, many of Defendants' advertising claims amount to non-actionable puffery since they are vague and highly subjective. See Haskell v. Time, Inc., 857 F. Supp. 1392, 1399 (E.D. Cal. 1994).

Plaintiffs argue that, taken together, Defendants' advertisements deceived them into believing that "[Defendants'] 'fully furnished' and 'all-inclusive offices' have 'one monthly fee.'" Opp'n to 12(b)(6) MTD. However, the only advertisement identified in the FAC that mentions "one monthly fee" was posted in 2004, about seven years before Plaintiffs executed their Office Agreements. FAC ¶ 26. Defendants' business practices may have changed since that time. In fact, the more recent advertisements targeted in the FAC refer to a "single monthly invoice," which could include multiple fees. Id. ¶ 31. Further, it is not altogether clear from the 2004 advertisement that the additional services targeted in the FAC would be included in one monthly fee. The advertisement states: "With Regus executive suites you get a complete, professional executive office environment included in one monthly []fee. You'll also get professional receptionists, state-

United States District Court
For the Northern District of California

1  of-the-art telecom and IT services, kitchen areas and cyber cafés."

2  Id. ¶ 31.

3      Accordingly, Plaintiffs' false advertising claims under the

4  UCL and FAL are DISMISSED with leave to amend.  Plaintiffs' amended

5  complaint should do more than merely list advertisements that

6  Defendants have broadcast in the last decade.  It should explain

7  how Plaintiffs relied on the advertisements and why the

8  advertisements are false and misleading.

9          v.   Courts III-V: Concealment/Suppression and Negligent

10              and Intentional Misrepresentation

11     The gravamen of Plaintiffs' claims for

12  "concealment/suppression" (Count III), negligent misrepresentation

13  (Count IV), and intentional misrepresentation (Count V) is that

14  Defendants failed to disclose or failed to adequately disclose

15  various fees assessed against Plaintiffs.  With respect to

16  Plaintiffs' concealment/suppression claim, Plaintiffs allege that

17  Defendants actively concealed the amounts of additional fees "by

18  not stating the amounts in the Office Agreement or Fine Print, by

19  using extremely small font, and by failing to provide adequate

20  disclosures that are clear and conspicuous."  FAC ¶ 30.  Likewise,

21  in their misrepresentation claims, Plaintiffs allege that

22  Defendants falsely represented that Plaintiffs' total monthly

23  payments would be the amounts stated in the Office Agreement.  Id.

24  ¶¶ 106, 107, 113.

25     Defendants argue that they disclosed that additional fees

26  would be charged, pointing out that the Office Agreement, which is

27  referenced in but not attached to the FAC, represents that the

28  stated monthly office fees "exclud[e] tax and exclud[e] services."

**United States District Court**
For the Northern District of California

12(b)(1) MTD at 15.   Defendants also point to various disclosures
in the "Terms and Conditions," which are incorporated by reference
into the Office Agreement.   See id. at 4.   Plaintiffs do not
seriously respond to this argument, except to suggest that
Defendants' disclosures were not conspicuous enough because they
were made in five-point font or in the fine print.   See Opp'n to
12(b)(6) MTD at 17.   However, Plaintiffs cite no authority
suggesting what size font Defendants were required to use or that a
disclosure in an agreement must be conspicuous to be effective.

Under California law, "[t]he adequacy of a disclaimer in the
context of an action for fraud is judged by reference to the
plaintiff's knowledge and experience[.]"   Broberg v. Guardian Life
Ins. Co. of Am., 171 Cal. App. 4th 912, 921 (2009).   Recovery is
generally denied where the plaintiff's reliance on the defendant's
misrepresentation is "manifestly unreasonable" in light of the
plaintiff's intelligence and information.   Id.   Where the parties
negotiate a contract at arm's length, "it is not reasonable to fail
to read a contract before signing it."   Davis v. HSBC Bank Nevada,
N.A., 691 F.3d 1152, 1163 (9th Cir. 2012).   Based on the FAC, that
appears to be the case here.

Accordingly, the Court GRANTS Defendants' motion to dismiss
with respect to Counts III, IV, and V, and GRANTS Plaintiffs leave
to amend those claims.   Plaintiffs' amended complaint should
specifically allege what was not disclosed in the agreements they
signed with Defendants and/or what Defendants misrepresented to
them about their monthly fees and why it was reasonable for
Plaintiffs to rely on those misrepresentations despite the language
of the agreements.

**United States District Court**
For the Northern District of California

vi.   <u>Counts VII & VIII: NYSGBL Sections 349 and 350</u>

Defendants argue that CTNY lacks standing to bring causes of action under NYSGBL sections 349 and 350 because Plaintiffs have not alleged a consumer-oriented harm.  Sections 349 and 350 declare unlawful "deceptive acts or practices" and "false advertising" in the conduct of "any business, trade or commerce."  N.Y. Gen. Bus. Law §§ 349(a), 350.  Section 349 authorizes suits by the attorney general, but also provides that "any person" who has been injured by actions prohibited by the law may bring an action "in his own name to enjoin such unlawful act" or "to recover his actual damages or fifty dollars, whichever is greater."  <u>Id.</u> § 349(b), (h).

Section 349 "was intended to empower consumers; to even the playing field in their disputes with better funded and superiorly situated fraudulent businesses.  It was not intended to supplant an action to recover damages for breach of contract between parties to an arm's length contract."  <u>Teller v. Bill Hayes, Ltd.</u>, 630 N.Y.S.2d 769, 774 (N.Y. Sup. Ct. 1995).  Thus, as a threshold matter, a plaintiff bringing a claim under section 349 must charge the defendant with conduct that is consumer-oriented.  <u>Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.</u>, 85 N.Y.2d 20, 25 (N.Y. 1995).  Likewise, section 350 only pertains to advertising which is consumer-oriented.  <u>Verizon Directories Corp. v. Yellow Book USA, Inc.</u>, 309 F. Supp. 2d 401, 405 (E.D.N.Y. 2004).

To establish that the defendant's conduct is consumer-oriented, the plaintiff "must demonstrate that the acts or practices have a broader impact on consumers at large.  Private contract disputes, unique to the parties, for example, would not fall within the ambit of the statute."  <u>Oswego</u>, 85 N.Y.2d at 25.

23

United States District Court
For the Northern District of California

1    Further, to avoid "the potential for a tidal wave of litigation

2    against businesses that was not intended by the Legislature," New

3    York courts have adopted an objective definition of deceptive acts

4    and practices, which limits actionable conduct to that which is

5    "likely to mislead a reasonable consumer acting reasonably under

6    the circumstances."  Id. at 26.

7         A review of the case law in this area further illuminates the

8    standard for finding consumer-oriented conduct.  In Oswego, the

9    court found consumer-oriented conduct where a pension fund opened a

10   savings account with a bank that was acting as the fund's

11   investment advisor on the ground that the bank "dealt with

12   plaintiffs' representative as any customer entering the bank to

13   open a savings account, furnishing the Funds with standard

14   documents presented customers upon the opening of accounts."  85

15   N.Y.2d at 26-27.  Consumer-oriented conduct was also found in New

16   York v. Feldman, 210 F. Supp. 2d 294 (S.D.N.Y. 2002), where the

17   state of New York alleged that the defendant engaged in a scheme to

18   manipulate public stamp auctions.  The court reasoned that the

19   parties injured by the alleged scheme "included, among others,

20   unsophisticated individual sellers, such as the elderly and one-

21   time participants."  Feldman, 210 F. Supp. 2d at 301.  In contrast,

22   no consumer-oriented conduct was found in Cruz v. NYNEX Information

23   Resources, 263 A.D.2d 285 (N.Y. Sup. Ct.), where a group of

24   businesses filed suit in connection with advertisements they had

25   placed in the Yellow Pages.  The court reasoned that although the

26   transactions at issue were "modest in value," "repeated regularly

27   with numerous parties," and "involve[d] parties with a large

28   disparity in economic power and sophistication," plaintiffs had

failed to show how the alleged misconduct might either directly or potentially affect consumers since "advertisement space in the Yellow Pages is, by definition, a commodity available to businesses only . . . ."  <u>Cruz</u>, 263 A.D.2d at 291.

    The Court finds that this case is more like <u>Cruz</u> than <u>Oswego</u> or <u>Feldman</u>.  While CTNY was treated like a consumer in that it was presented with a standardized contract, Plaintiffs have made no showing that Defendants' alleged misconduct has the potential to affect consumers at large.  All three Plaintiffs are businesses and their claims relate to Defendants' practices in marketing and managing commercial office space, a commodity which is only available to businesses.  Plaintiffs argue that "Defendants' practices are sufficiently consumer-oriented because they affect all consumers of office space in New York, be they entrepreneurs or individuals seeking to lease a single office or start a company, or a small business leasing multiple office spaces."  Opp'n to 12(b)(6) MTD at 14.  However, all of the parties listed by Plaintiffs would only be interested in commercial office space for business purposes.  As such, Plaintiffs cannot credibly contend that their suit will benefit New York consumers.

    Accordingly, Plaintiffs' claims under NYSGBL Sections 349 and 350 are DISMISSED WITH PREJUDICE.

                    vii. <u>Counts VI & IX: Unjust Enrichment</u>

    Plaintiffs bring two claims for unjust enrichment, one under California law (Count VI) and the other under New York law (Count IX).  The two claims are practically identical.  In both, Plaintiffs allege that Defendants were unjustly enriched as a result of their wrongful conduct and that it would be against

**United States District Court**
For the Northern District of California

1  equity and good conscience to permit Defendants to retain the ill-

2  gotten benefits.  FAC ¶¶ 122-23, 141-42.  Defendants move to

3  dismiss both claims.

4      As to Count VI, Defendants argue that recent authority

5  suggests that unjust enrichment is not an independent cause of

6  action under California law.  MTD at 20-21 (citing <u>Williamson v.</u>

7  <u>Reinalt-Thomas Corp.</u>, 11-CV-03548-LHK, 2012 WL 1438812 (N.D. Cal.

8  Apr. 25, 2012).  However, not all courts agree on this issue.

9  Having reviewed numerous discussions, this Court is persuaded by,

10 and adopts the reasoning of, the cases which hold that claims for

11 restitution or unjust enrichment may survive the pleading stage

12 when pled as an alternative avenue of relief, though the claims, as

13 alternatives, may not afford relief if other claims do.  <u>E.g.</u>,

14 <u>Vicuna v. Alexia Foods, Inc.</u>, C 11-6119 PJH, 2012 WL 1497507, at *3

15 (N.D. Cal. Apr. 27, 2012); <u>Larsen v. Trader Joe's Co.</u>, C 11-05188

16 SI, 2012 WL 5458396, at *7 (N.D. Cal. June 14, 2012).  Accordingly,

17 Count VI is DISMISSED with leave to amend.  Plaintiffs may amend

18 their complaint to plead this claim in the alternative.

19     With respect to Count IX, Defendants argue that Plaintiffs

20 cannot recover on a theory of unjust enrichment under New York law

21 because the parties executed an agreement governing the subject

22 matter of the dispute.  MTD at 21.  Under New York law, as under

23 California law, "[t]he theory of unjust enrichment lies as a quasi-

24 contract claim."  <u>Goldman v. Metro. Life Ins. Co.</u>, 5 N.Y.3d 561,

25 572 (N.Y. 2005).  Some New York courts have reasoned that, because

26 unjust enrichment creates an obligation in the absence of an

27 agreement, a claim for unjust enrichment cannot be sustained if a

28 valid contract governs the relevant subject matter.  <u>Id.</u>  Other

**United States District Court**
For the Northern District of California

courts have held that New York law permits alternative pleading of breach of contract and unjust enrichment claims. See Vertex Constr. Corp. v. T.F.J. Fitness L.L.C., 0-CV-683 (CBA) (ALC), 2011 U.S. Dist. LEXIS 135453, 11, 2011 WL 5884209, at *11 (E.D.N.Y. Nov. 23, 2011). Defendants' argument fails under both lines of cases. Under Goldman, claims for unjust enrichment may only be dismissed where the subject matter of the dispute is clearly governed by contract. As discussed in Section III.B.v supra, the scope of the Office Agreements at issue here remains unclear and is subject to dispute. Likewise, under Vertex, motions to dismiss claims for unjust enrichment are disfavored "because it is difficult to determine the validity or scope of the contract at the pleading stage." 2011 WL 5884209, at *11 (quotations omitted). Accordingly, Defendants' motion to dismiss Count IX is DENIED.

**IV.   CONCLUSION**

        For the foregoing reasons, Defendant Regus plc's Rule 12(b)(1) motion to dismiss for lack of personal jurisdiction is DENIED WITHOUT PREJUDICE. The Court GRANTS Plaintiffs Circle Click Media LLC, Metro Talent, LLC, and CTNY Insurance Group LLC leave to conduct jurisdictional discovery. Once that discovery is complete, Regus plc may again move to dismiss pursuant to Rule 12(b)(1). The Court also GRANTS in part and DENIES in part Defendants Regus Management Group LLC, Regus Business Centre LLC, Regus plc, and HQ Global Workplaces LLC's 12(b)(6) motion to dismiss for failure to state a claim.

- Count I is DISMISSED WITH PREJUDICE to the extent that it is predicated on a violation of California Civil Code section 1950.8.

- Count I remains undisturbed to the extent that it is predicated on a violation of California Civil Code section 1671(b).

- Count I is DISMISSED with leave to amend to the extent that it is predicated on California Civil Code sections 1572, 1709, and 1710, and Defendants' allegedly unfair and fraudulent business practices.

- Counts I and II are DISMISSED with leave to amend to the extent that they are predicated on Defendants' allegedly false and misleading advertising.

- Counts III through VI are DISMISSED with leave to amend.

- Counts VII and VIII are DISMISSED WITH PREJUDICE.

- Count IX shall remain undisturbed.

Plaintiffs shall file an amended complaint within thirty (30) days of the signature date of this Order.  Failure to do so may result in the dismissal with prejudice of the claims which the Court has granted Plaintiffs leave to amend.


     IT IS SO ORDERED.


     Dated: January 3, 2013

                                    _____
                                    UNITED STATES DISTRICT JUDGE