**GAROFOLO LAW GROUP, P.C.**
JOSEPH A. GAROFOLO, State Bar No. 214614
E-mail: jgarofolo@garofololaw.com
22 Battery St., Suite #1000
San Francisco, CA 94111
Tel: 415-981-8500
Fax: 415-981-8870

**ARI LAW, P.C.**
ALI AALAEI, State Bar No. 254713
E-mail: ali@arilaw.com
BO ZENG, State Bar No. 281626
E-mail: bozeng@arilaw.com
22 Battery St., Suite #1000
San Francisco, CA 94111
Tel: 415-357-3600
Fax: 415-357-3602

Attorneys for Plaintiffs
CIRCLE CLICK MEDIA LLC,
METRO TALENT, LLC, and
CTNY INSURANCE GROUP LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CIRCLE CLICK MEDIA LLC, a California limited liability company; METRO TALENT, LLC, a California limited liability company; and CTNY INSURANCE GROUP LLC, a Connecticut limited liability company, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>REGUS MANAGEMENT GROUP, LLC, a Delaware limited liability company; REGUS BUSINESS CENTRE LLC, a Delaware limited liability company; REGUS PLC, a Jersey, Channel Islands, public limited company; HQ GLOBAL WORKPLACES LLC, a Delaware limited liability company; and DOES 1-50,<br><br>Defendants. | Case No. 3:12-CV-04000 SC<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Circle Click Media LLC, Metro Talent, LLC, and CTNY Insurance Group LLC, on behalf of themselves and all others similarly situated, and demanding a trial by jury, allege as follows:

## I.     INTRODUCTION

1.     This class action lawsuit arises out of the illegal business acts and scheme of one of the world's largest providers of office space.  Defendants Regus Management Group, LLC, Regus Business Centre LLC, Regus plc, and HQ Global Workplaces LLC (individually and/or collectively, "Regus" or "Defendants") impose unauthorized and unreasonable charges on clients and employ numerous unlawful policies and practices to collect unfair fees.  Regus' acts and practices are particularly unscrupulous in that Regus targets, *inter alia*, small businesses and individuals and then burdens them with improper and unexpected charges.  Regus has even structured its billing system, operated through multiple Regus entities and an unlawful enterprise, in a manner that makes it difficult for clients to understand and challenge the improper charges.

2.     Regus' business acts and practices and false advertising have harmed Plaintiffs and, upon information and belief, numerous other persons in California, New York, and throughout the United States.  This class action is brought on behalf of Plaintiffs, and on behalf of all others similarly situated, and seeks relief, including, but not limited to, injunctive relief, for Regus' conduct.

## II.     JURISDICTION AND VENUE

3.     **Jurisdiction.**  This case is subject to original jurisdiction in this Court pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 ("CAFA"), because at least one member of each class has a different citizenship from a defendant and the total amount in controversy exceeds $5,000,000.   Thus, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.  Additionally, this Court has original and subject matter jurisdiction over the Racketeer Influenced & Corrupt Organization Act ("RICO") claims pursuant to 18 U.S.C. § 1964.

4.     Venue is proper in the Northern District of California pursuant to 28 U.S.C. §

1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of property that is the subject of the action, is situated in this District.

5. **Intradistrict Assignment.** Pursuant to Civil Local Rule 3-2(c) and (d), assignment to the San Francisco Division is proper because a substantial part of the events or omissions which give rise to claims set forth herein occurred in San Francisco.

### III. PARTIES

**A. Plaintiffs**

6. Plaintiff Circle Click Media LLC ("Circle Click") is, and at all times relevant hereto was, a California limited liability company, organized, existing, and operating under the laws of California, with a principal place of business in San Francisco, California.

7. Plaintiff Metro Talent, LLC ("Metro Talent") is, and at all times relevant hereto was, a California limited liability company, organized, existing, and operating under the laws of California, with a principal place of business in California.

8. Plaintiff CTNY Insurance Group LLC ("CTNY") is, and at all times relevant hereto was, a Connecticut limited liability company organized and existing under the laws of Connecticut doing business in New York.

**B. Defendants**

 **i) Regus Management Group, LLC**

9. Defendant Regus Management Group, LLC ("Regus Management") is a limited liability company organized and existing under the laws of Delaware doing business in California. Regus Management is owned entirely by Regus plc and, upon information, is an affiliate of Regus Business Centre LLC and HQ Global Workplaces LLC.

10. Regus Management entered into agreements with Circle Click and Metro Talent in California. Defendant Regus Management has purposefully availed itself of the privilege of conducting activities within California and the claims of Plaintiffs Circle Click and Metro Talent arise out of Regus Management's California-related activities.

11. Regus Management conducts activities in California that are substantial and

continuous and systematic. Such activities have, upon information and belief, been conducted for at least several years, and include, *inter alia*, the following:

a. Regus Management is registered to do business with the California Secretary of State and has designated an agent for service of process in California;

b. Upon information and belief, Regus Management enters into agreements with clients in Bakersfield, Campbell, Carlsbad, Costa Mesa, El Segundo, Folsom, Glendale, Irvine, Laguna Hills, Long Beach, Los Angeles, Mountain View, Newport Beach, Ontario, Orange, Palo Alto, Pasadena, Petaluma, Pleasanton, Redwood City, Riverside, Rolling Hills, Roseville, Sacramento, San Bruno, San Diego, San Francisco (17 locations in San Francisco), San Jose, San Mateo, San Rafael, San Ramon, Santa Clara, Santa Monica, West Hollywood, Walnut Creek, and Woodland Hills (the "California Locations");

c. Upon information and belief, Regus Management has employees in the California Locations;

d. Upon information and belief, Regus Management leases office space in the California Locations;

e. Upon information and belief, Regus Management derives substantial revenues from operations within California;

f. Upon information and belief, Regus Management markets and advertises to clients in California via the internet; and

g. Upon information and belief, Regus Management shares revenues from its operations directly and/or indirectly with Regus plc, Regus Business Centre, LLC, and HQ Global Workplaces LLC.

**ii) Regus Business Centre LLC**

12. Defendant Regus Business Centre LLC ("Regus Business Centre") is a limited liability company organized and existing under the laws of Delaware doing business in California. Upon information and belief, Regus Business Centre is a subsidiary of Regus plc and an affiliate of Regus Management and HQ Global Workplaces LLC.

13.     Upon information and belief, Regus Business Centre conducts activities in California that are substantial and continuous and systematic.  Such activities have, upon information and belief, been conducted for at least several years, and include, *inter alia*, the following:

    a.     Regus Business Centre is registered to do business with the California Secretary of State and has designated an agent for service of process in California;

    b.     Upon information and belief, Regus Business Centre leases office space in the California Locations;

    c.     Upon information and belief, Regus Business Centre derives substantial revenues from operations within California; and

    d.     Upon information and belief, Regus Business Centre markets and advertises to clients in California via the internet.

### iii)     Regus plc

14.     Defendant Regus plc is a foreign public limited company incorporated and registered in Jersey, Channel Islands.  Regus plc conducts its activities in California and New York through its subsidiaries and affiliates.  Regus plc is, and at all times relevant hereto was, the parent company, directly or indirectly, of Regus Management, Regus Business Centre, and HQ Global Workplaces LLC, and, upon information and belief, directly exercised control over the conduct of each.  Upon information and belief, Regus plc is the mastermind of the illegal schemes described herein.

15.     Regus plc conducts activities in California that are substantial and continuous and systematic.  Such activities have, upon information and belief, been conducted for at least several years, and include, *inter alia*, the following:

    a.     Regus plc offers licensed California real estate brokers and agents referral fees for introductions and/or referrals of clients to Regus;

    b.     Regus plc Chief Executive Officer Mark Dixon has communicated to Plaintiff Circle Click and, upon information and belief, other California clients;

c.      Regus plc generates e-mails from California to one or more clients in California as part of its business operations;

d.      Upon information and belief, Regus plc has derived substantial revenues from operations in California;

e.      Regus plc owns and operates the internet website www.regus.com (the "Regus Website" or the "Website") which currently i) lists office space for lease in the California Locations, ii) hosts and provides interactive features including, but not limited to, "Book a Tour" of office space, request a "Quick Quote," and "Contact Us,"  and iii) upon information and belief, earns substantial revenues from transactions with California businesses at the California Locations;

f.      Upon information and belief, Regus plc owns an electronic billing and collection system operated within the United States, including, but not limited to, within California.

16.     Upon information and belief, Regus Management, Regus Business Centre, and HQ Global Workplaces LLC perform services of special importance to Regus plc.  Upon information and belief, but for Regus Management, Regus Business Centre, and HQ Global Workplaces LLC, Regus plc would have to perform California business operations itself; however, Regus plc has incorporated subsidiaries and uses instrumentalities to operate and administer Regus plc's California operations.  Upon information and belief, Regus plc uses Regus Management and HQ Global Workplaces LLC as marketing conduits and to operate its electronic billing and collection system.

17.     Upon information and belief, at all times relevant hereto, Defendants Regus Management, Regus Business Centre, and HQ Global Workplaces LLC were acting as the agents, ostensible agents, employees, servants, partners, aiders and abettors, co-conspirators, and/or joint venturers of Regus plc, and in performing the acts and course of conduct set forth herein, Defendants were acting within the course and scope of such agency or employment, and Defendant Regus plc approved, ratified, permitted, condoned and/or affirmed the acts and course

of conduct set forth herein.

### iv) HQ Global Workplaces LLC

18.    Defendant HQ Global Workplaces LLC ("HQ"), is a company organized under the laws of Delaware doing business in California.

19.    HQ submits Regus invoices to California clients and, upon information and belief, HQ had responsibility for refunding the security deposit relating to the offices with Circle Click and Metro Talent in California.  Defendant HQ has purposefully availed itself of the privilege of conducting activities within California and the claims of Plaintiffs Circle Click and Metro Talent arise out of HQ's California-related activities.

20.    HQ conducts activities in California that are substantial and continuous and systematic.  Such activities have, upon information and belief, been conducted for at least several years, and include, *inter alia*, the following:

   a.    HQ is registered to do business with the California Secretary of State and has designated an agent for service of process in California;

   b.    Upon information and belief, HQ submits Regus invoices to clients in the California Locations and HQ has responsibility for refunding security deposits to numerous clients in the California Locations;

   c.    Upon information and belief, HQ processes payments assessed to clients in California;

   d.    Upon information and belief, HQ derives substantial revenues from operations within California; and

   e.    Upon information and belief, HQ markets to clients in California via the internet.

### v) The Defendants Are the Alter Egos of Each Other

21.    There is such unity of interest and ownership that separate personalities of the Defendants no longer exist and failure to disregard their separate identities would result in fraud and/or injustice.  Regus makes no distinction between entities when using the Regus logo in

connection with marketing. Regus describes its own operations to its potential and actual clients as if such operations are conducted by a single entity. Without distinction between entities, Regus indicates that its "Locations in California" include all of the California Locations. Regus represents to its investors that Regus is a unified entity. Regus holds itself out, as a single, unified entity, and as the world's largest provider of flexible workplaces. Regus employees make no distinction regarding their employer and simply indicate that they are employed by "Regus" in communications with clients. Upon information and belief, officers and directors of Regus plc, including, but not limited to, Mark Dixon, exercise control over the internal affairs and/or daily operations of Regus Management, Regus Business Centre, and HQ.

22. Plaintiffs are ignorant of the true names and capacity of Defendants sued herein as Does 1-50, and allege that Does 1-50 are agents of the other Defendants, and therefore, sue these Defendants by such fictitious names. Plaintiffs will amend this Second Amended Complaint to allege the true names and capacities of Does 1-50 when ascertained.

## IV.     FACTS COMMON TO PLAINTIFFS AND THE CLASSES

**A.     Illegal Business Acts and Practices**

23. Defendants provide a one-page office agreement (the "Office Agreement") to clients that identifies the location of the office to which a Regus client is entitled, the duration of the client's entitlement to the office, the amount of the "Initial Payment," the amount of the security deposit, and the "Monthly Payment" thereafter.

24. Defendants provide the Office Agreement to clients as either a hard copy version or an online version. The two versions of the Office Agreement do not differ in any material way.

25. After clients begin their term, Regus routinely assesses total monthly amounts that exceed the total monthly payments indicated in the Office Agreement.

26. The Office Agreement fails to disclose any goods, services, penalties, and/or taxes for which Regus assesses charges and the amounts or methods of calculation of Regus' charges associated with such goods, services, penalties, and/or taxes.

27. Regus also makes available to clients a two-column document written in extremely

small type that is no greater than five-point Tahoma font (the "Fine Print"). If the Fine Print were written in 12-point Tahoma font, the document would extend onto eight pages.

28. The Fine Print fails to indicate the amounts of any fees charged by Regus.

29. Once clients enter into an agreement with Regus, clients cannot cancel the agreement prior to the expiration of its term.

30. Regus includes amounts for one or more of the following on clients' invoices transmitted by means of interstate wires: i) "Kitchen Amenities Fee;" ii) "Telephone Lines;" iii) "Telecom Handset;" iv) "Local Telephone;" v) Internet activation and access charges; vi) taxes; and vii) penalties (collectively, the "Unauthorized Charges").

31. In pertinent part, the Fine Print provides that "Regus will send all invoices electronically (where allowed by law) and the Client will make payments via an automated method such as Direct Debit or Credit Card, wherever local banking systems permit." Regus follows this policy.

32. Due to one or more of the Unauthorized Charges, monthly invoices of Regus' clients routinely exceed the monthly payment amount indicated in their Office Agreement.

33. If clients fail to pay the Unauthorized Charges invoiced by Regus, they are subject to penalties.

**B.    Advertising Scheme**

34. Regus advertises its office space for rent on the Regus Website, www.craigslist.com ("Craigslist"), television, and radio.

35. Since at least October 8, 2003, Regus has represented on its Website (available to California and New York viewers), and, upon information and belief, other advertising mediums, that it offers a simple one-page agreement, significant savings as compared to traditional offices, and flexible office space arrangements.

36. On October 8, 2003, in pertinent part, the Regus Website advertised the following:

- **Save money**
  Independent surveys show that you can **save up to 78 %** [sic] compared to traditional office costs. There's no need to tie up capital - with Regus, you have the offices you need when and where you need them.

- 9 -

- **Flexibility for your business**

Walk into a **Regus office** and **get down to business instantly** ,[sic] taking advantage of opportunities as they arise. With Regus, you only pay for what you need when you need it.

- **Keep it simple**

Our plain-English, one page contract takes **just 10 minutes to complete** . [sic]  It really is that simple.

(Emphasis in original).

37.     On November 26, 2004, in pertinent part, the Regus Website advertised the following:

- Fully equipped offices – "on demand" and ideal for up to 10 people.
- World-class offices in prime buildings across the globe, and right next door.
- Onsite IT support and business services.
- Videoconferencing, meeting rooms and training rooms available.
- No up front capital expenditure required.
- Flexible terms and one-page agreements.

***

1. What is an executive suite ? [sic] How is it different from a traditional office?

Regus executive offices, in our 700 prime business centres, are conveniently located near major transportation hubs. With Regus executive suites you get a complete, professional executive office environment included in one monthly fee. You'll also get professional receptionists, state-of-the-art telecom and IT services, kitchen areas and cyber cafés.

With traditional office space, you must navigate the costly and time-consuming world of setting up and configuring your workspace. Before you can be productive you must:

• pay for altering office space

• sign a fixed-length office lease

• provide office furniture

• contract with multiple service providers (phone, Internet, maintenance)

• hire an office staff

• buy or rent office equipment

• build or configure connectivity infrastructure

• spend time, resources and money

With Regus executive suites, your office space solutions are a single phone call or mouse click away. Simply plug in your PC and start working…leave the rest to us. The Regus Business Centre network provides a professional executive office environment with high quality facilities and resources - instantly.

2. What types of terms come with Regus executive suites?

With traditional office space you often need an attorney to negotiate a complicated office lease before you can rent or lease an office. But using a Regus executive suite for your office space solution couldn't be easier, especially when compared to renting traditional office space. We have a one-page executive office agreement instead of a 20-page office space lease. We give you control over the term of your executive office agreement – from 3 months to 5 years - so you have the ability to grow, as your business needs change. And with our professional executive office staff you have on-demand access to administrative support and office equipment without hiring a permanent staff or capital investment. With Regus executive suites, your office space solutions are a single phone call or mouse click away. The Regus Business Centre network provides a professional executive office environment with high quality facilities and resources - instantly.

38.     On November 18, 2005, and February 20, 2006, in pertinent part, the Regus Website advertised the following:

**Match our office rental options to your business needs**

With 750 prime locations worldwide, we are the global leader in providing all types of businesses with professional, fully equipped office space for rent. Our sensible pricing, flexible lease terms and simple, one-page agreements make us your only choice for staying agile in a dynamic business environment. Contact us today to learn about our office rental and executive suite options.

(Emphasis in original).

39.     On April 13, 2007, in pertinent part, the Regus Website advertised the following:

**Match our office rental options to your business needs**

With 950 prime locations worldwide, we are the global leader in providing all types of businesses with professional, fully equipped <u>office space for rent</u>. Our sensible pricing, flexible lease terms and simple, one-page agreements make us your only choice for staying agile in a dynamic business environment. Contact us today to learn about our <u>office rental</u> and <u>executive suite</u> options.

(Emphasis in original).

40.     On July 2, 2008, in pertinent part, the Regus Website advertised the following:

**Key Benefits**

- **Flexibility** – you can grow, relocate or downsize with minimal disruption.
- **Ease** – From your contract, to move in and your time with us. We make having an office simple.
- **Support** – there is a team of business professionals in your building as an extension of your team.
- **A global network** – our worldwide network of 950 locations in 70 countries means your business is wherever you are and you are in good hands.
- **Affordability** – our solutions are designed to fit within your budget at a fixed monthly price on terms to suit you.

(Emphasis in original).

41.     On June 25, October 3, November 25, and December 2, 2009, January 2, February 11, March 31, April 29, May 31, June 23, and September 19, 2010, January 5, and May 25, 2011, and April 30, 2012, and upon information and belief, at least from June 25, 2009, through the present, the Regus Website has displayed a picture of a furnished office with telephone equipment and has advertised the following in document entitled "A Smart Way of Working:"

Offices

Fully furnished and equipped

***

It all adds up

Save up to 60% on office costs
• 50-60% saving on offices…

One monthly invoice…        All inclusive simple monthly payments.

***

**Simple, easy and flexible**
- Simple one page agreement
- No additional complications
- Single monthly invoice
- Sign today, start tomorrow
- Flex your requirements
- Agreements can be transferred to any other Regus location

42.     Upon information and belief, since on or about September 30, 2011, Regus has transmitted an e-mail to potential clients in California and other locations in the United States with an advertisement stating in the subject line: "Your guide to serviced offices in North America." The representations available in the e-mail, in pertinent part, provide:

- "A fully equipped Office"
- "A fully stocked kitchen with tea and coffee facilities"
- "Our agreements are one page"
- "Phone lines with a local phone number"
- "Phone on your desk"
- "Get one simple monthly bill with everything included"
- "A WELL EQUIPPED OFFICE with all the furniture and connectivity you need"
- "ALL THIS for one low monthly price."

43.     Upon information and belief, on or about March 9, 2012, Regus broadcasted a commercial featuring actress LeeAnne Locken wherein Regus represents:

> I don't have a lease so I don't have to budget for stuff like phones, IT guys, and artwork for the lobby.  Instead, I pay one low monthly rate that gives me a beautiful lobby that impresses my clients, a friendly receptionist, a fully furnished office, a place to meet, and a place to brainstorm with my fellow new way workers.  We wonder why more people don't realize that the new way to work is the best way to work….Call 1-800-OFFICES or visit regus.com/tv.

44.     Regus posts listings of office space for lease on Craigslist directed to California and New York clients, which advertisements include the monthly payment amount along with

statements suggesting that the price listed is all inclusive. Regus' Craigslist postings routinely show pictures of fully furnished offices with desks and telephones.

## V. PLAINTIFFS' FACTS

### A. Plaintiff Circle Click

45. Plaintiff Circle Click executed an Office Agreement for two offices at 50 California Street, 15th Floor, San Francisco, California 94111, on or about April 29, 2011. The Office Agreement commences on May 1, 2011, and concludes on May 31, 2012.

46. Prior to entering into any agreement with Regus, on June 28, 2010, Circle Click, through a principal, viewed Regus' Website. Based on Regus' advertisements indicating that Regus offered office space for a low monthly price and Regus' failure to disclose that its policy or practice is to assess the Unauthorized Charges and that some of Regus' Unauthorized Charges are mandatory, Circle Click entered into the Office Agreement commencing on May 1, 2011. In the absence of viewing Regus' Website advertising, Circle Click would not have entered into the Office Agreement commencing on May 1, 2011. In addition, Circle Click and/or its principal (prior to and after Circle Click's formation) were exposed to Regus' extensive and long-term advertising campaign set forth in paragraphs 34-44 of this Second Amended Complaint, including Regus' representations that it provides fully-equipped space for a single low monthly price, which, upon information and belief, influenced or reinforced Circle Click's decision to enter into the Office Agreement commencing on May 1, 2011.

47. The Office Agreement indicates that the total initial payment (including the security deposit) is $4,921. The Office Agreement indicates that the total monthly payment after the first month is $2,461.

48. Circle Click paid a security deposit to Regus.

49. Circle Click received invoices transmitted through interstate wires during the following months for the following amounts:

| Month | Amount |
|-------|--------|
| April 2011 | $2,559.67 |
| May 2011 | $2,280.54 |
| June 2011 | $2,618.02 |
| July 2011 | $3,247.89 |
| August 2011 | $6,653.79 |
| September 2011 | $3,350.78 |
| October 2011 | $3,175.00 |
| November 2011 | $3,161.48 |
| December 2011 | $3,154.71 |
| January 2012 | $1,621.35 |
| February 2012 | $3,154.71 |
| March 2012 | $3,154.86 |
| April 2012 | $3,157.56 |
| May 2012 | $1,533.54 |

50.     In addition, Circle Click was charged $1,660.22 for June of 2012 despite the fact that the Office Agreement expired in May of 2012.

51.     Regus collected one or more of the Unauthorized Charges from Circle Click by transactions processed through a United States' financial institution on multiple instances, including, but not limited to, on or about August 16 and September 1, 2011.  Upon information and belief, Regus maintains business records reflecting all instances of transactions with Circle Click processed through United States' financial institutions.

52.     During the term of Circle Click's agreement, Regus charged Circle Click for, and Circle Click paid and/or suffered losses due to a penalty charge with respect to, all of the following:

a.     **Kitchen amenities.**  Regus assessed a $30 per person monthly charge to

Plaintiff Circle Click in excess of the monthly office payment amount indicated in the Office Agreement. Neither Regus' practice of assessing this charge nor the amount of the charge is disclosed in the Office Agreement or the Fine Print. The charge was assessed regardless of whether any kitchen amenities were used.

        b.     **Telephone line.** Regus assessed a $49.00 charge per month per person to Circle Click for telephone lines. Neither Regus' practice of assessing this charge nor the amount of the charge is disclosed in the Office Agreement or the Fine Print.

        c.     **Telecom handset.** Regus assessed a $99.00 charge per month per office to Circle Click for use of "Telecom Handset" that had already been installed in the offices rented by Circle Click. Neither Regus' practice of assessing this charge nor the amount of the charge is disclosed in the Office Agreement or the Fine Print. Upon information and belief, the retail value of the two handsets provided by Regus does not exceed $99.00, yet Regus charged Circle Click a total of $222.75 (including purported taxes) per month for use of the handsets during the term of the Office Agreement.

        d.     **"Free Talk."** Notwithstanding its name, Regus assessed a $49.00 charge per month to Circle Click for "Free Talk." Neither Regus' practice of assessing this charge nor the amount of the charge is disclosed in the Office Agreement or the Fine Print. The "Free Talk" charge purportedly includes unlimited local and long distance charges.

        e.     **Local telephone.** Regus assessed charges to Circle Click for local telephone usage. Neither Regus' practice of assessing this charge nor the amount of the charge is disclosed in the Office Agreement or the Fine Print. This charge for local telephone usage was assessed in addition to the "Free Talk" charge.

        f.     **Long distance telephone.** Regus assessed charges to Circle Click for long distance telephone usage. Neither Regus' practice of assessing this charge nor the amount of the charge is disclosed in the Office Agreement or the Fine Print. This charge for long distance telephone usage was assessed in addition to the "Free Talk" charge.

        g.     **International telephone.** Regus assessed charges to Circle Click for calls

to Canada.  Neither Regus' practice of assessing this charge nor the amount of the charge is disclosed in the Office Agreement or the Fine Print.  This charge for international telephone usage was assessed in addition to the "Free Talk" charge.

h.    **"Office Restoration" and/or "Wear and Tear."**  Regus assessed charges to Circle Click purportedly for "office restoration service" or "wear and tear."  Neither Regus' practice of assessing these charges nor the amount of the charges is disclosed in the Office Agreement.  The amount of these charges is not disclosed in the Fine Print and bears no reasonable relationship to the service purportedly performed.

i.    **"Business Continuity Service."**  Regus assessed charges to Circle Click purportedly for handling mail, faxes, telephone calls, and visitors upon expiration of the Office Agreement.  Neither Regus' practice of assessing these charges nor the amount of the charges is disclosed in the Office Agreement.  The amount of this charge is not disclosed in the Fine Print and bears no reasonable relationship to the services purportedly performed.

j.    **Taxes.**  Regus assessed charges to Circle Click as taxes on, *inter alia*, the telecom handset and kitchen amenities fees.  Neither the amount nor the percentage of these charges is disclosed in the Office Agreement or the Fine Print.  In addition, the basis and calculation for the taxes is not adequately disclosed in monthly invoices.

k.    **Penalties.**  Regus assessed charges to Circle Click as a "Penalty" equal to $25 plus 5% of the amount due on overdue balances under $1,000 or $50 plus 5% of the amount due on overdue balances of $1,000 or greater.  Neither Regus' practice of assessing these charges nor the amount of the charges is disclosed in the Office Agreement.  The amount of these charges is not disclosed in the Fine Print and does not represent the result of a reasonable effort by Regus to estimate fair compensation for any loss that Regus may sustain.

53.    With respect to phone and internet charges set forth in items of the preceding paragraph, Regus caused Circle Click to incur such charges because of Regus' practice of refusing to permit clients to use voice over IP ("VOIP") without paying additional fees or allowing clients to contract with outside vendors.  Such practice is not disclosed in the Office Agreement or the

Fine Print.

54.     Regus used the security deposit paid by Circle Click as leverage to compel payment of other charges allegedly due under the Office Agreement.

55.      Regus' charges have caused Plaintiff Circle Click to suffer harm in the amount of the unfair and unreasonable fees paid by Circle Click to Regus.

**B.     Plaintiff Metro Talent**

56.     Plaintiff Metro Talent executed an Office Agreement for one office at 6303 Owensmouth Avenue, 10th Floor, Woodland Hills, California 91367, on or about October 8, 2011. The Office Agreement commenced on November 1, 2011, and concludes on April 30, 2013.

57.     Prior to entering into the Office Agreement commencing on November 1, 2013, on September 30, 2011, Metro Talent, through a principal, viewed the Regus' e-mail advertisement "Your guide to serviced offices in North America." Based on Regus' advertisements indicating that Regus offered office space for a low monthly price and Regus' failure to disclose that its policy or practice is to assess the Unauthorized Charges and that some of Regus' charges are mandatory, Metro Talent entered into the Office Agreement commencing on November 1, 2011. In the absence of viewing the September 30, 2011 e-mail advertisement, Metro Talent would not have entered into the Office Agreement commencing on November 1, 2011.

58.     The Office Agreement indicates that the total initial payment (including the security deposit) is $1,545. The Office Agreement indicates that the total monthly payment after the first month is $515.

59.     Metro Talent paid a security deposit to Regus.

60.     Metro Talent received invoices through interstate wires during the following months for the following amounts:

| Month | Amount |
|-------|--------|
| October 2011 | $518.85 |
| November 2011 | $518.85 |
| December 2011 | $518.85 |

| | |
|---|---|
| January 2012 | $569.79 |
| February 2012 | $518.85 |
| March 2012 | $518.85 |
| April 2012 | $518.85 |
| May 2012 | $520.91 |
| June 2012 | $586.16 |
| July 2012 | $651.20 |
| August 2012 | $520.91 |
| September 2012 | $518.85 |

61.     Regus collected one or more of the Unauthorized Charges from Metro Talent by transactions processed through a United States' financial institution on multiple instances, including, but not limited to, on or about February 7, 2012.  Upon information and belief, Regus maintains business records reflecting all instances of transactions with Metro Talent processed through United States' financial institutions.

62.     During the term of Metro Talent's tenancy, Regus charged Metro Talent for, and Metro Talent paid, all of the following:

a.     **Kitchen amenities.**  Regus assessed a $30 monthly charge to Plaintiff Metro Talent in excess of the monthly office payment amount indicated in the Office Agreement.  Neither Regus' practice of assessing this charge nor the amount of the charge is disclosed in the Office Agreement or the Fine Print.  The charge was assessed regardless of whether any kitchen amenities were used.

b.     **Taxes.**  Regus assessed charges to Metro Talent as taxes on the monthly office fee and kitchen amenities fees.  Neither the amount nor the percentage of these charges is disclosed in the Office Agreement or the Fine Print.  Regus has charged Metro Talent $2.63 in "tax" on the kitchen amenities fee charge of $30 per month.  Regus has also charged Metro Talent for a "tax" in the amount of $3.85 corresponding with the long term office monthly fee of $515.  The basis and calculation for the taxes are not adequately disclosed in monthly invoices.

c. **Penalties.** Regus assessed a charge to Metro Talent as a "Penalty" equal to $25 plus 5% of the amount due on overdue balances under $1,000 or $50 plus 5% of the amount due on overdue balances of $1,000 or greater. Neither Regus' practice of assessing this charge nor the amount of the charge is disclosed in the Office Agreement. The amount of this charge is not disclosed in the Fine Print and does not represent the result of a reasonable effort by Regus to estimate fair compensation for any loss that Regus may sustain.

63. After Metro Talent executed the Office Agreement and was charged a "Kitchen Amenities Fee," on June 22, 2012, Metro Talent complained via e-mail, through its representative, to Regus that it was being assessed charges to which it did not agree:

> I'm not paying this until someone explains to m[e] why my rent went from $518 to $580+?? We have a signed lease that[] states my rental amount.

64. On June 28, 2012, via e-mail, a representative of "The Regus Group" responded as follows:

> In regards to invoice 392-7262 you were billed your Long Term Office Monthly fee $515 plus tax, two Kitchen Amenities for June and July $30.00 each plus tax, and Daily Parking Validations of $2.06 Totaling $586.16. If you have any more questions or concerns to the invoice, please contact your Center Manager….Thanks!

65. On June 28, 2012, the Regus General Manager responded by e-mail to Metro Talent as follows:

> The reason for the additional $60 you were charged this month is because you were billed for the Kitchen Amenity Fee for June and July. This is the one automatic fee that Regus charges and your account has never been billed this fee. I didn't back bill it all the way back to the original move in date of November.
>
> Please let me know if you have any questions.

66. On June 28, 2012, Metro Talent responded via e-mail as follows:

> Please email me another copy of my lease. I'm out of town right now. I'd like to look it over & have my lawyer take a look at it & see if it states anywhere in there that I agreed to pay a "kitchen fee." I don't believe it does. This is ridiculous. All of a sudden months later some new charge

that I've never heard of pops up on my bill.

67.     On June 28, 2012, the Regus General Manager again responded by e-mail to Metro Talent as follows:

> I am more than happy to send you the agreement but I will tell you that the Kitchen Amenity Fee is not mentioned in the service agreement. The service agreement only speaks to the monthly rent that you have agreed to pay for the office. The person who sold you the office is the one who should have communicated to you the fee regarding the Kitchen Amenity.

68.     On July 11, 2012, Regus sent Metro Talent correspondence stating: "If we do not receive payment within four (4) days of the date of this communication we will, with regret, have no option but to begin proceedings to remove all access rights to your office space and our business centres."

69.     In an effort to coerce Metro Talent to pay its unreasonable fees, on July 24, 2012, Regus again sent Metro Talent correspondence indicating, in pertinent part, the following:

> Despite our efforts to ensure that payment for the above referenced account is resolved, the balance remains unpaid.
>
> By our prior communication (a copy of which was sent to you via e-mail or postal notification), we provided you with written notification describing default under the Agreement.
>
> As of the date of this e-mail, you have failed to cure this default. **Accordingly, the Agreement is terminated immediately and your license to use premises and the center is hereby revoked.** We hereby demand that you vacate the Premises within five (5) days after delivery of this notice. If you fail to do so we may institute a forcible-detainer or other similar action against you to obtain possession of the Premises. This matter will immediately be turned over for collection. In addition we reserve the right to pursue all other available legal and equitable remedies, including litigation against you and others responsible for payment amounts owed under the Agreement.

(Emphasis in original).

70.     Regus' charges have caused Plaintiff Metro Talent to suffer harm in the amount of the unfair and unreasonable fees paid by Metro Talent to Regus.

## C.    Plaintiff CTNY

71.    Plaintiff CTNY executed an Office Agreement for one office at 77 Water Street, New York, New York 10005.  The Office Agreement commences on June 1, 2012, and concludes on May 31, 2013.

72.    Prior to entering into the Office Agreement commencing on June 1, 2012, on or about the end of April 2012, CTNY, through a principal, viewed the Regus' website and a Craigslist advertisement.  Based on Regus' advertisements indicating that Regus offered office space for a low monthly price and Regus' failure to disclose that its policy or practice is to assess the Unauthorized Charges, CTNY entered into the Office Agreement commencing on June 1, 2012.  In the absence of viewing the advertisements near the end of April 2012, CTNY would not have entered into the Office Agreement commencing on June 1, 2012.  In addition, CTNY and/or its principal (prior to and after CTNY's formation) were exposed to Regus' extensive and long-term advertising campaign set forth in paragraphs 34-44 of this Second Amended Complaint, including Regus' representations that it provides fully-equipped space for a single low monthly price, which, upon information and belief, influenced or reinforced CTNY's decision to enter into the Office Agreement commencing on June 1, 2012.

73.    The Office Agreement indicates that the total initial payment (including the security deposit) is $1,390.35.  The Office Agreement indicates that the total monthly payment after the first month is $649.04.

74.    On July 12, 2012, CTNY Insurance Group received an invoice through interstate wires for a total amount due of $1,453.74.

75.    Regus collected one or more of the Unauthorized Charges from CTNY by transactions processed through a United States' financial institution on multiple instances, including, but not limited to, on or about June 19 and June 27, 2012.  Upon information and belief, Regus maintains business records reflecting all instances of transactions with CTNY processed through United States' financial institutions.

76.    During the term of CTNY's agreement, Regus charged CTNY for the following

and CTNY paid, in whole or in part, due to bank debit transactions, all of the following:

a. **Kitchen amenities.** Regus assessed a $30 monthly charge to Plaintiff CTNY in excess of the monthly office payment amount indicated in the Office Agreement. Neither Regus' practice of assessing this charge nor the amount of the charge is disclosed in the Office Agreement or the Fine Print.

b. **Taxes.** Regus assessed charges to CTNY as taxes on the monthly office fee and kitchen amenities fees. Neither the amount nor the percentage of these charges is disclosed in the Office Agreement or the Fine Print. Regus charged CTNY $2.66 in "tax" on the kitchen amenities fee charge of $30 per month. Regus also charged CTNY for a "tax" in the amount of $3.91 corresponding to a monthly fee of $1,106. Regus further charged CTNY for a "tax" in the amount $14.18 on a $99 internet activation fee. The basis and calculation for the taxes are not adequately disclosed in monthly invoices.

c. **Internet Activation.** Regus assessed a $99 charge to CTNY in excess of the monthly office payment amount indicated in the Office Agreement. Neither Regus' practice of assessing this charge nor the amount of the charge is disclosed in the Office Agreement or the Fine Print.

d. **Internet Access.** Regus assessed a separate $99 charge to CTNY for "Internet Access" in excess of the monthly office payment amount indicated in the Office Agreement. Neither Regus' practice of assessing this charge nor the amount of the charge is disclosed in the Office Agreement or the Fine Print.

77. When CTNY declined to pay Regus' July 12, 2012 invoice, on or about August 17, 2012, via e-mail, Regus' Center Manager advised CTNY as follows:

> If we would have to send your case to the third party collector next week, you would still be responsible for the monthly office fees until June 2013. Additional service charges would apply.

78. Regus' charges have caused Plaintiff CTNY to suffer harm in the amount of the unfair and unreasonable fees paid by CTNY to Regus.

## VI. CLASS ACTION ALLEGATIONS

79.     Plaintiffs Circle Click and Metro Talent bring Counts I-IV on behalf of all persons who executed an Office Agreement or any similar agreement for a Regus' location in California and who paid one or more of the Unauthorized Charges between May 8, 2008, and the present (the "California Class").  Plaintiffs Circle Click and Metro Talent bring Count II on behalf of all persons who executed an Office Agreement or any similar agreement for a Regus' location in California and who paid the Kitchen Amenities, Office Restoration, and/or Business Continuity Service (the "Required Products") between May 8, 2008, and the present (the "17509 Class"). Plaintiff CTNY brings Count V on behalf of all persons who executed an Office Agreement or any similar agreement for a Regus' location in New York and who paid one or more of the Unauthorized Charges between September 24, 2006, and the present ("New York Class"). Plaintiffs Circle Click, Metro Talent, and CTNY bring Counts VI and VII on behalf of all persons who executed an Office Agreement or any similar agreement for any Regus' location within the United States and who paid one or more Unauthorized Charges between May 8, 2008, and the present submitted through Regus' billing and collection system (the "RICO Class").  Collectively, the California Class, the 17509 Class, the New York Class, and the RICO Class are referred to herein as the "Classes."  Excluded from the Classes are Defendants, Defendants' affiliates, parents, subsidiaries, employees, officers, directors, and co-conspirators.  Also excluded from the Classes is any judge, justice, or court officer involved with this matter and the members of their immediate families and judicial staff.

80.     This action is properly maintainable as a class action pursuant to Fed. R. Civ. P. 23. The Classes are so numerous that joinder of all members is impracticable.  Plaintiffs Circle Click and Metro Talent are unaware of the precise number and identities of the members of the California Class and the 17509 Class, but due to the nature of the trade and commerce involved and the nature and scope of Regus' operations, Plaintiffs Circle Click and Metro Talent are informed and believe that the total number of members of the California Class and the 17509 Class each exceed 100 and the members of the California Class and the 17509 Class are each so numerous and geographically dispersed across the State of California that joinder of all members

of the classes would be impracticable. Plaintiff CTNY is unaware of the precise number and identities of the members of the New York Class, but due to the nature of the trade and commerce involved and the nature and scope of Regus' operations, Plaintiff CTNY is informed and believes that the total number of members of the New York Class exceeds 100 and the members of the New York Class are so numerous and geographically dispersed across the State of New York that joinder of all class members would be impracticable. Plaintiffs Circle Click, Metro Talent, and CTNY are unaware of the precise number and identities of the RICO Class, but due to the nature of the trade and commerce involved and the nature and scope of Regus' operations, Plaintiffs are informed and believe that the total number of members of the RICO Class exceeds 100 and the member of the RICO Class are so numerous and geographically dispersed across the United States that joinder of all class members would be impracticable. Plaintiffs are informed and believe that the members of the Classes are ascertainable through the business records of Regus.

81. Questions of law and fact common to the Classes predominate over any questions unique to individual members of the Classes. The questions of law and fact common to the California Class include, but are not limited to, the following:

a. Whether the Unauthorized Charges assessed by Regus to its California clients in excess of the monthly payment amount indicated in the Office Agreement (or similar agreements) are disclosed in the Office Agreement or the Fine Print;

b. Whether the Unauthorized Charges assessed by Regus to its California clients are adequately disclosed in the Office Agreement (or similar agreements) or the Fine Print;

c. Whether Defendants' act or practice of assessing the Unauthorized Charges to Regus' California clients in excess of the monthly payment indicated in the Office Agreement (or similar agreements) constitutes an unlawful, unfair, or fraudulent business act or practice, unfair, deceptive, untrue or misleading advertising, or any act prohibited by Business & Professions Code § 17500 within the meaning of the Unfair Competition Law, Business & Professions Code § 17200, *et seq.*;

d. Whether Defendants' advertising regarding the terms and conditions

applicable to the office space product offered by Regus to California clients constitutes false or misleading advertising within the meaning of Business & Professions Code § 17500, *et seq.*, or violates the Unfair Competition Law, Business & Professions Code § 17200, *et seq.*;

e.     Whether Defendants' advertising regarding the price of the office space product offered by Regus to prospective California clients constitutes false or misleading advertising within the meaning of Business & Professions Code § 17500, *et seq.*, or violates the Unfair Competition Law, Business & Professions Code § 17200, *et seq.*;

f.     Whether Defendants have been unjustly enriched by the wrongs complained of and, if so, whether it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits that were received from Plaintiffs Circle Click, Metro Talent, and the California Class;

g.     Whether Plaintiffs Circle Click and Metro Talent and the California Class have suffered harm by the wrongs complained of and, if so, the class-wide measure of harm and the nature and extent of other relief that should be afforded, including, but not limited to, whether the California Class should recover the entire amount of Regus' Unauthorized Charges assessed in excess of the monthly payment amount indicated in the Office Agreement (or similar agreements);

h.     Whether Defendants should be enjoined from continuing to assess the Unauthorized Charges to Regus' California clients in excess of the monthly payment indicated in the Office Agreement (or similar agreements);

i.     Whether Defendants should be enjoined from continuing to engage in their advertising regarding the terms and conditions applicable to the office space product offered by Regus to California clients; and

j.     Whether Defendants should be enjoined from continuing to engage in their advertising regarding the price of the office space product offered by Regus to California clients.

82.     The questions of law and fact common to the 17509 Class include, but are not limited to, the following:

a.     Whether the Office Agreement and Fine Print are an advertisement within

the meaning of Business & Professions Code § 17509;

b. Whether Regus was required to provide a total price that included the amounts of the Required Products and/or whether Regus was required to separately state the amounts of the Required Products when advertising to California clients;

c. Whether Plaintiffs Circle Click and Metro Talent and the 17509 Class have suffered harm by the wrongs complained of in Count II relating to California Business & Professions Code § 17509 and, if so, the class-wide measure of harm and the nature and extent of relief that should be afforded, including, but not limited to, whether the California Class should recover the entire amount of Regus' Required Products; and

d. Whether Defendants should be enjoined from continuing to engage in their advertising without providing a total that includes the amounts of the Required Products and/or separately stating the amounts of the Required Products.

83. The questions of law and fact common to the New York Class include, but are not limited to, the following:

a. Whether the Unauthorized Charges assessed by Regus to its New York clients in excess of the monthly payment amount indicated in the Office Agreement (or similar agreements) are disclosed in the Office Agreement (or similar agreements) or the Fine Print;

b. Whether the Unauthorized Charges assessed by Regus to its New York clients are adequately disclosed in the Office Agreement (or similar agreements) or the Fine Print;

c. Whether Defendants have been unjustly enriched by the wrongs complained of and, if so, whether it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits that were received from Plaintiff CTNY and the New York Class;

d. Whether Plaintiff CTNY and the New York Class have suffered harm by the wrongs complained of and, if so, the class-wide measure of harm and the nature and extent of other relief that should be afforded, including, but not limited to, whether the New York Class should recover the entire amount of Regus' Unauthorized Charges assessed in excess of the

monthly payment amount indicated in the Office Agreement (or similar agreements); and

e.      Whether Defendants should be enjoined from continuing to assess the Unauthorized Charges to Regus' New York clients in excess of the monthly payment indicated in the Office Agreement (or similar agreements).

84.      The questions of law and fact common to the RICO Class include, but are not limited to, the following:

a.      Whether the conduct of Regus plc, Regus Management, HQ, and the Doe Defendants described in Count VI is a violation of 18 U.S.C. § 1962(c) which provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt;"

b.      Whether Defendants Regus plc, Regus Management, and HQ are corporate "person[s]" within the meaning of 18 U.S.C. § 1961(3);

c.      Whether, as alleged in Count VII, the conduct of Defendants Regus plc, Regus Management, HQ, and the DOE Defendants described in Count VI is in violation of 18 U.S.C. § 1962(d) which provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section;"

d.      Whether conduct alleged in Counts VI and VII constitutes wire fraud and/or a scheme or artifice to obtain moneys of funds under the custody or control of a financial institution by false or fraudulent pretenses, representations, or promises under 18 U.S.C. §§ 1343 and 1344, respectively;

e.      Whether an enterprise has existed that affects interstate or foreign commerce with respect to Counts VI and VII;

f.      Whether Defendants Regus plc, Regus Management, HQ, and the DOE Defendants have been associated with the enterprise alleged in Counts VI and VII;

g.   Whether Defendants Regus plc, Regus Management, HQ, and the DOE Defendants participated in the conduct of the enterprise's affairs with respect to Counts VI and VII;

h.   Whether Defendants Regus plc, Regus Management, HQ, and the DOE Defendants have engaged in an ongoing, open-ended scheme, artifice, and pattern of racketeering with respect to Counts VI and VII;

i.   Whether Plaintiffs Circle Click, Metro Talent, and CTNY and the New York Class are entitled to recover treble damages for injuries they have sustained, as well as costs of this suit and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) with respect to Counts VI and VII;  and

j.   Whether Plaintiffs Circle Click, Metro Talent, and CTNY and the New York Class are entitled to an order pursuant to 18 U.S.C. § 1964(a) enjoining and prohibiting Defendants Regus plc, Regus Management, HQ, and the DOE Defendants from engaging in any unlawful conduct relating to Counts VI and VII.

85.   The claims of Plaintiffs Circle Click and Metro Talent are typical of the claims of the other members of the California Class in that Plaintiffs Circle Click and Metro Talent are members of the California Class and have been harmed by the actions of Defendants, including, *inter alia*, the assessment of one or more of the Unauthorized Charges to California clients.  The claims of Plaintiffs Circle Click and Metro Talent are typical of the claims of the other members of the 17509 Class in that Plaintiffs Circle Click and Metro Talent are members of the 17509 Class and have been harmed by the actions of Defendants in assessing charges for one or more of the Required Products.  The claims of Plaintiff CTNY are typical of the claims of the other members of the New York Class in that Plaintiff CTNY is a member of the New York Class and has been harmed by the actions of Defendants, including, *inter alia*, Regus' assessment of Unauthorized Charges to New York clients.  The claim of Plaintiffs Circle Click, Metro Talent, and CTNY are typical of the claims of the other member of the RICO class in that Plaintiffs Circle Click, Metro Talent, and CTNY are members of the RICO class and have been harmed by the action of

Defendants Regus plc, Regus Management, HQ, and, upon information and belief, the DOE Defendants in that the assessment of the Unauthorized Charges submitted through Regus' billing and collection system to clients of Regus throughout the United States over the monthly payment indicated in the Office Agreement or similar agreements.

86.     Plaintiffs Circle Click and Metro Talent will fairly and adequately represent and protect the interests of the California Class members and have no interests antagonistic to or in conflict with those of the California Class.  Plaintiffs Circle Click and Metro Talent will fairly and adequately represent and protect the interests of the 17509 Class members and have no interests antagonistic to or in conflict with those of the 17509 Class.  Plaintiff CTNY will fairly and adequately represent and protect the interests of the New York Class members and has no interests antagonistic to or in conflict with those of the New York Class.  Plaintiffs Circle Click, Metro Talent, and CTNY will fairly and adequately represent and protect the interests of the RICO Class members and have no interests antagonistic to or in conflict with those of the RICO Class.

87.     Plaintiffs Circle Click, Metro Talent, and CTNY have retained competent counsel with experience in class action and other complex litigation who will vigorously represent the interests of the Classes.

88.     Certification of the Classes is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual members of the Classes would create the risk of inconsistent and varying adjudications with respect to individual members of the Classes which would establish incompatible standards of conduct for Defendants, or adjudications with respect to individual members of the Classes which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

89.     Certification of the Classes is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because the Defendants have acted or refused to act on grounds generally applicable to the Classes making final declaratory and injunctive relief appropriate with respect to the Classes as a whole. The Classes are entitled to injunctive relief to remedy Defendants' violations of the law of the

Defendants.

90. Certification of the Classes is appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Classes, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The harm suffered by the individual members of the Classes is small compared to the expense and burden of individual prosecution of this litigation. Class certification is superior because it obviates the need for unduly duplicative litigation which may result in inconsistent judgments about the practices of the Defendants. Plaintiffs Circle Click, Metro Talent, and CTNY know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

## VII. CLAIMS FOR RELIEF

### COUNT I

### VIOLATIONS OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200, ET SEQ.

### (California Class Against All Defendants)

91. Plaintiffs re-allege and incorporate each and every paragraph of this Second Amended Complaint as if fully set forth herein.

92. This cause of action is brought on behalf of Plaintiffs Circle Click, Metro Talent, and the California Class, in accordance with the provisions of California Business & Professions Code § 17200, *et seq.* Defendants actions as alleged in this Complaint constitute unfair competition within the meaning of California Business & Professions Code § 17200.

93. In pertinent part, California Business & Professions Code § 17200 provides that "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code."

94.     Defendants have engaged in unlawful, unfair, and fraudulent acts and practices, have made unfair, deceptive, untrue and/or misleading statements within the meaning of California Business & Professions Code § 17200, *et seq.*, and have engaged in acts prohibited by California Business and Professions Code 17500, *et seq.*

**Unlawful Acts and Practices**

95.     A business act or practice is "unlawful" within the meaning of California Business & Professions Code § 17200 if such business act or practice violates another law, including a state or federal law.

96.     Defendants charged penalties to Plaintiffs Circle Click and Metro Talent based on a percentage of the entire alleged unpaid principal balance, plus a fixed fee, which constitutes an unreasonable penalty, within the meaning of California Civil Code § 1671(b).  Defendants' business act and practice is unlawful because the assessment of such charges is prohibited under California Civil Code § 1671(b).  The calculation of the assessment of penalties charged by Regus does not bear a reasonable nexus to the amount of damages suffered by Regus.  Plaintiffs Circle Click and Metro Talent and the California Class paid the unlawful penalty assessed to each and, therefore, have suffered the loss of money or property as a result of Defendants' unlawful act and practice of charging a penalty in violation of California Civil Code § 1671(b).

97.     Regus' invoices with telecommunications charges constitute a telephone bill. Defendants' business act or practice of including one or more of the Unauthorized Charges on their invoices which constitute telephone bills is unlawful because including unauthorized charges on a telephone bill is a violation of California Public Utilities Code § 2890(a).  Defendants' business act or practice of including one or more of the Unauthorized Charges on their invoices which constitute telephone bills is also unlawful because Defendants fail to obtain a written order for the goods and services that are the subject of the Unauthorized Charges on a separate document from any solicitation material that is unambiguous and in a minimum 10-point type, thereby constituting a violation of California Public Utilities Code § 2890(b).  Plaintiffs Circle Click and Metro Talent and the California Class paid one or more of the Unauthorized Charges contained on

Regus invoices and, therefore, have suffered the loss of money or property as a result of Defendants' unlawful act and practice of including unauthorized charges on a telephone bill.

98.     As alleged in Counts VII and VIII Defendants Regus plc, Regus Management, HQ, and, upon information and belief, the Doe Defendants violated 18 U.S.C. §§ 1962(c) and (d). Defendants' violations of 18 U.S.C. §§ 1962(c) and (d) constitute unlawful business acts and practices.  Plaintiffs Circle Click and Metro Talent and the California Class paid one or more of the Unauthorized Charges that are the subject of Defendants violations of 18 U.S.C. §§1962(c) and (d) and, therefore, have suffered the loss of money or property as a result of Defendants' unlawful acts and practices.

99.     As alleged in Count II Defendants have violated California Business & Professions Code §§ 17500 and 17509 with their false advertising.  Defendants' violations of Business & Professions Code §§ 17500 and 17509 constitute unlawful business acts and practices.  Plaintiffs Circle Click and Metro Talent and the California Class paid one or more of the Unauthorized Charges that are the subject of Defendants' violations of Business and Professions Code §§17500 and 17509 and, therefore, have suffered the loss of money or property as a result of Defendants' unlawful acts and practices.

**Unfair Acts and Practices**

100.    An "unfair" business act or practice within the meaning of California Business & Professions Code § 17200 may include any act or practice that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.  This test is applicable to this action because Plaintiffs Circle Click and Metro Talent are not competitors of Regus and are consumers of Regus' product.

101.    Defendants' assessment of the Unauthorized Charges is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers because each fee was not disclosed and is unreasonable for the following reasons:

a.      **Kitchen Amenities Fee.**  A kitchen amenities fee is not disclosed in the Office Agreement or the Fine Print.  The kitchen amenities fee of $30 per office (plus a fee that is

represented to be a tax) is charged to clients every month regardless of usage of coffee or tea. A fee of $30 for coffee, tea, and any other beverages offered per person, per month is also unreasonable. Since the kitchen amenities fee is charged every month, Regus could, and should, have included this charge in the "Monthly Payment" row of the Office Agreement because the minimum monthly payment that Regus charges (*i.e.*, the monthly payment that includes the kitchen amenities fee) will always exceed the monthly payment amount indicated in the Office Agreement. The statement "exc. tax and exc. services" or "excluding tax and excluding services" in small print in the Office Agreement does not disclose that a kitchen amenities fee will be charged to clients for, *inter alia*, the following reasons: i) the kitchen amenities fee is not for services, it is for goods; ii) in contrast to some fees for services mentioned in the Fine Print (*e.g.*, a fee for "Business Continuity Service"), the kitchen amenities fee is not mentioned; and iii) Regus does not assess charges for a number of goods and services, including, sorting and delivery of clients' mail, office furniture, lobby area maintenance, reception and greeting by Regus' staff of client visitors, and electricity, water, heating, or air conditioning, and, therefore, Regus' assessment of a fee for kitchen amenities is arbitrary.

b. **Telephone Lines.** A telephone lines fee is not disclosed in the Office Agreement or the Fine Print. The telephone lines fee of $49 per person, per month (plus a fee that is represented to be a tax) is charged for any connection of office phones. Although not disclosed in the Office Agreement or the Fine Print, Regus' clients are not permitted to connect or install telephone lines directly through a telecommunications carrier or to use voice over internet protocol or other telecommunications solutions that do not involve an assessment by Regus of a fee that was not disclosed in the Office Agreement or Fine Print. Since local telephone usage is necessary for businesses and Regus targets its product to businesses and business professionals, any monthly charge for connection of phones that is not included in the amount indicated as the "Monthly Payment" on the Office Agreement and that exceeds the cost charged by the local telecommunications carrier to connect phone lines should be disclosed, at a minimum, in the Fine Print. A $49 telephone lines fee per person, per month is unreasonable and substantially exceeds

the one-time charge that would be charged by telecommunications carriers for installation of a telephone line. Any charge for telephone lines that is recurring is unreasonable. The statement "exc. tax and exc. services" or "excluding tax and excluding services" in small print in the Office Agreement does not disclose that a telephone lines fee will be charged to clients for, *inter alia*, the following reasons: i) in contrast to some fees for services mentioned in the Fine Print (*e.g.*, a fee for "Business Continuity Service"), the telephone lines fee is not mentioned; and ii) Regus does not assess charges for a number of goods and services, including, sorting and delivery of clients' mail, office furniture, lobby area maintenance, reception and greeting by Regus' staff of client visitors, and electricity, water, heating, or air conditioning, and, therefore, Regus' assessment of a fee for telephone lines is arbitrary.

        c.     **Telecom Handset.** A telecom handset fee is not disclosed in the Office Agreement or the Fine Print. The telecom handset fee of $99 per month per office (plus a fee that is represented to be a tax) is charged for telecom handsets located in clients' offices. Although not disclosed in the Office Agreement or the Fine Print, Regus' clients are not permitted to purchase or connect a telecom handset that is not purchased from Regus in their office space. Since telephone usage is necessary for businesses and Regus targets its product to businesses and business professionals, any charge for a telecom handset that is not included in the amount indicated as the "Monthly Payment" on the Office Agreement and that exceeds the retail cost charged for such handset should be disclosed, at a minimum, in the Fine Print. A $99 fee per office, per month for a telecom handset is unreasonable and substantially exceeds the one-time retail price of the telecom handset provided by Regus. Upon information and belief, the retail value of a handset provided by Regus does not exceed $45. The statement "exc. tax and exc. services" or "excluding tax and excluding services" in small print in the Office Agreement does not disclose that a telephone handset fee will be charged to clients for, *inter alia*, the following reasons: i) the telecom handset fee is not for a service, it is for a good; ii) in contrast to some fees for services mentioned in the Fine Print (*e.g.*, a fee for "Business Continuity Service"), the telecom handset fee is not mentioned; and iii) Regus does not assess charges for a number of goods and

services, including, sorting and delivery of clients' mail, office furniture, lobby area maintenance, reception and greeting by Regus' staff of client visitors, and electricity, water, heating, or air conditioning, and, therefore, Regus' assessment of a fee for telecom handsets is arbitrary.

d. **Local Telephone.** A local telephone usage fee is not disclosed in the Office Agreement or the Fine Print. The local telephone fee varies, is charged on a monthly basis, and upon information and belief is only charged for some local calls. Although not disclosed in the Office Agreement or the Fine Print, Regus' clients are not permitted to connect or install telephone lines directly through a telecommunications carrier or to use voice over internet protocol or other telecommunications solutions that do not involve an assessment by Regus of a fee that was not disclosed in the Office Agreement or Fine Print. Since local telephone usage is necessary for businesses and Regus targets its product to businesses and business professionals, any monthly charge in connection with local phone usage that is not included in the amount indicated as the "Monthly Payment" on the Office Agreement and that exceeds the cost charged by the local telecommunications carrier to connect phones should be disclosed, at a minimum, in the Fine Print. The statement "exc. tax and exc. services" or "excluding tax and excluding services" in small print in the Office Agreement does not disclose that a local telephone fee will be charged to clients for, *inter alia*, the following reasons: i) in contrast to some fees for services mentioned in the Fine Print (*e.g.*, a fee for "Business Continuity Service"), the local telephone fee is not mentioned; and ii) Regus does not assess charges for a number of goods and services, including, sorting and delivery of clients' mail, office furniture, lobby area maintenance, reception and greeting by Regus' staff of client visitors, and electricity, water, heating, or air conditioning, and, therefore, Regus' assessment of a local telephone fee arbitrary.

e. **Internet Access and Activation.** Neither an internet access nor an internet activation fee is disclosed in the Office Agreement or the Fine Print. A $99 per person, per month fee for internet access is charged. Upon information and belief, a one-time $99 internet activation fee is charged. Although not disclosed in the Office Agreement or the Fine Print, Regus' clients are not permitted to install their own internet connection or access the internet without an

assessment by Regus of a fee that was not disclosed in the Office Agreement or Fine Print. Since internet access is necessary for businesses and Regus targets its product to businesses and business professionals, any monthly charge by Regus for internet activation or access that is not included in the amount indicated as the "Monthly Payment" on the Office Agreement and that exceeds the cost charged by local telecommunication carriers/internet service providers to provide internet should be disclosed, at a minimum, in the Fine Print. Fees of $99 per month, per person for internet access and a one-time $99 fee for internet activation are unreasonable and substantially exceed charges that would be charged by telecommunications carriers/internet service providers for internet usage and/or access. The statement "exc. tax and exc. services" or "excluding tax and excluding services" in small print in the Office Agreement does not disclose that internet access and activation fees will be charged to clients for, *inter alia*, the following reasons: i) in contrast to some fees for services mentioned in the Fine Print (*e.g.*, a fee for "Business Continuity Service"), internet access and internet activation fees are not mentioned; and ii) Regus does not assess charges for a number of goods and services, including, sorting and delivery of clients' mail, office furniture, lobby area maintenance, reception and greeting by Regus' staff of client visitors, and electricity, water, heating, or air conditioning, and, therefore, Regus' assessment of fees for internet bandwidth and access is arbitrary.

    f.  **Taxes.** The percentage of taxes and manner in which Regus calculates the taxes it charges are not disclosed in the Office Agreement, the Fine Print, or Regus' monthly invoices. Regus includes a charge for taxes on various items, including, but not limited to, kitchen amenities, the monthly office fee, "Free Talk" phone charges, telecom handsets, telephone lines, additional office keys, and international telephone usage. The Fine Print indicates that clients will only have to pay for taxes in the amount assessed by a "governmental authority." Upon information and belief, Regus charges taxes in an amount greater than that assessed by the relevant governmental authority. The statement "exc. tax and exc. services" or "excluding tax and excluding services" in small print in the Office Agreement does not disclose that Regus charges taxes in an amount greater than that assessed by the relevant governmental authority.

g. **Penalties.** A penalty charge by Regus is not disclosed in the Office Agreement and the amount or calculation of the penalty charge is not disclosed in the Fine Print. The penalty amount does not represent the result of a reasonable effort by Regus to estimate fair compensation for any loss that Regus may sustain. Thus the penalty is unreasonable. The statement "exc. tax and exc. services" or "excluding tax and excluding services" in small print in the Office Agreement does not disclose that Regus charges a penalty at all.

102. Defendants' assessment of the Unauthorized Charges is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to Regus' clients because charging undisclosed and unreasonable fees to businesses and individuals leads to payment of inflated prices, surprise, difficulty in budgeting, inefficient allocation of resources, the selection of Regus over other office space providers that disclose fees, distrust of large businesses, and generally interferes with efficient markets which require appropriate disclosure of information. The assessment of undisclosed and unreasonable fees substantially harms Regus' clients without any legitimate justification by Regus, especially because fees could easily be disclosed so that Regus' clients could evaluate such fees and the product offered by Regus prior to entering into an agreement where they are locked into for a period of time and with respect to which Regus assesses, or may assess, penalties. For the same reasons, the harm to Regus' clients far outweighs the utility, if any, to Regus.

103. An "unfair" business act or practice within the meaning of California Business & Professions Code § 17200 may include any act or practice that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.

104. In pertinent part, California Business & Professions Code § 17000 provides that "the purpose of this chapter is to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition, by prohibiting unfair, dishonest, deceptive, destructive, fraudulent and discriminatory practices by which fair and honest competition is

destroyed or prevented." California Business & Professions Code § 17000, *et seq.* (the "Unfair Practices Act") is a California antitrust law. California Business and Professions Code § 16700, *et seq.* (the "Cartwright Act") has the same or a similar purpose, as does the Sherman Antitrust Act (the "Sherman Act"), 15 U.S.C. § 1, *et seq.*

105. Defendants' scheme to assess Unauthorized Charges violates the policy and spirit of the Unfair Practices Act, the Cartwright Act, and the Sherman Act, and other laws because its effects are comparable or the same as a violation of the law, and otherwise significantly threatens and harms competition. Regus' assessment of Unauthorized Charges is similar to an illegal tying arrangement, whereby Regus' clients are subsequently required to purchase goods and services from Regus. The uniqueness of Regus' office space in prime real estate locations including financial and commercial districts across the United States confers market power upon Regus, and such market power is further evidenced by the above-market fees that Regus is able to extract from its clients. Regus' ability to charge above-market prices for goods and services that are the subject of the Unauthorized Charges provides increased profits for Regus without a corresponding benefit to clients who have no true substitute in light of the unfair restrictions employed by Regus. Regus' conduct has an effect on a not-insubstantial volume of commerce in the market for the goods and services of the Unauthorized Charges, including, but not limited to, the telecommunications goods and services.

106. Defendants' assessment of the Unauthorized Charges violates the policy and spirit of the Unfair Practices Act, the Cartwright Act, and the Sherman Act and other antitrust laws because its effects are comparable or the same as a violation of the law, and otherwise significantly threatens and harms competition, because Regus' assessment of the undisclosed and unreasonable Unauthorized Charges places it at a competitive advantage to those providers of office space that properly disclose their fees and, as a large provider of office space, Regus has at least some market power. Regus' pricing of its product without disclosing the Unauthorized Charges makes the price for its product appear lower than it truly is relative to its competitors thus harming fair and honest competition.

107. An "unfair" business act or practice within the meaning of California Business & Professions code § 17200 may include any act or practice that i) causes substantial injury to the consumer, ii) where the injury is not outweighed by any countervailing benefits to consumers or competition, and iii) the injury to consumers could not reasonably have been avoided by the consumers themselves.

108. Regus causes substantial injury to clients because they suffer real monetary harm due to the assessment of one or more the undisclosed and unreasonable Unauthorized Charges and such Unauthorized Charges are not trivial or speculative. Upon information and belief, Regus also obtains substantial profits from the Unauthorized Charges harming many clients. The injury to Regus' clients is not outweighed by any countervailing benefits to consumers or competition because fees could easily be disclosed so that Regus' clients could evaluate such fees and the product offered by Regus prior to entering into an agreement where they are locked into for a period of time and with respect to which Regus assesses, or may assess, penalties. Regus' clients could not have reasonably avoided the injury because they could not have reasonably anticipated the injury for the reasons set forth in paragraph 101 of this Second Amended Complaint and their decision to enter into an agreement with Regus was unjustifiably hampered by Regus by lack of disclosure and the fact that the Fine Print is written in extremely small type. Regus' clients could not reasonably mitigate the harm because of Regus' penalties and the term of the Office Agreements.

109. Plaintiffs Circle Click and Metro Talent and the California Class paid one or more of the Unauthorized Charges and, therefore, have suffered the loss of money or property as a result of Defendants' unfair business acts and practices.

**Fraudulent Acts and Practices and Unfair, Deceptive, Untrue and/or Misleading Advertising**

110. A business act or practice is "fraudulent" within the meaning of California Business & Professions Code § 17200 if such business act or practice has a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care. The same standard is applicable to "unfair, deceptive, untrue, or misleading" advertising within

the meaning of Business & Professions Code § 17200.

111. Defendants' Office Agreement and Fine Print are fraudulent because they do not disclose the Unauthorized Charges. For the reasons set forth above in paragraph 101 of this Second Amended Complaint, Plaintiffs Circle Click and Metro Talent were confounded by Regus' failure to disclose the Unauthorized Charges and an appreciable number of reasonably prudent purchasers exercising ordinary care would have been confounded by Regus' failure to disclose the Unauthorized Charges.

112. The failure of Regus to disclose the Unauthorized Charges was material because a reasonable person would attach importance to the existence of the Unauthorized Charges and would have altered his or her choice of entering into the Office Agreement with Regus.

113. In the absence of Regus' failure to disclose the Unauthorized Charges, Plaintiffs Circle Click and Metro talent and the California Class would not have entered into the Office Agreement with Regus.

114. In addition to constituting an unlawful act and practice, Defendants' Office Agreement and Fine Print constitute advertising that is unfair, deceptive, untrue, or misleading within the meaning of Business and Professions Code § 17200.

115. Regus' advertising and promotional materials described in paragraphs 34-44 of this Second Amended Complaint are fraudulent because they have a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care. The following statements in Regus' Website promotional materials, upon information and belief, dated June 28, 2010, and Regus' e-mail dated September 30, 2011, are fraudulent:

a. **"Fully furnished and equipped,"** and a **"fully equipped Office."** These statements are false and misleading and/or have a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care because the offices are not fully equipped without having to pay Unauthorized Charges including the Telecom Handset fee.

b. **"Simple one page agreement"** and **"Our agreements are one page."** This statement is false and misleading and/or has a likelihood of confounding an appreciable

number of reasonably prudent purchasers exercising ordinary care because Regus asserts that the agreement with its clients consists of at least the Office Agreement and Fine Print which are not one page when taken together and because the Fine Print is written in extremely small font that, if written 12-point font, would extend onto eight pages.

c.    **"One monthly invoice…All inclusive simple monthly payments," "ALL THIS for one low monthly price,"** and **"Get one simple monthly bill with everything included."**  These statements are false and misleading and/or have a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care because Regus' monthly payment indicated in the Office Agreement is not all inclusive and Regus does not provide all of the products, including, but not limited to, the telecom handset, it indicates in its September 30, 2011 e-mail and through the Regus Website as of June 28, 2010, for one monthly fee because of the Unauthorized Charges.

116.    Plantiff Circle Click viewed Regus' website on June 28, 2010, and Plaintiff Metro Talent viewed Regus' e-mail dated September 30, 2011, on that same date.  In addition, Plaintiffs Circle Click and/or its principal were exposed to the extensive and long-term advertising campaign described in paragraphs 34-44 of this Second Amended Complaint which included phrases that do not materially differ from those set forth above in paragraphs 115.a.-c. above.  Upon information and belief, this extensive and long-term advertising campaign influenced and reinforced the false and misleading advertisements.

117.    The false and misleading statements made by Regus were material because a reasonable person would attach importance to the total price of Regus' product and would have altered his or her choice of entering into the Office Agreement with Regus had he or she known the truth.

118.    In the absence of Regus' false and misleading statements, Plaintiffs Circle Click and Metro Talent and the California Class would not have entered into the Office Agreement with Regus.

119.    Plaintiffs and the California Class have lost money or property as a result of the

fraudulent acts and practices and advertising and promotional materials of Defendants as set forth herein.

**Acts Prohibited by California Business & Professions Code §17500, et seq.**

120.    The acts set forth in Count II of this Second Amended Complaint also constitute violations of Business & Professions Code § 17200 which prohibits any act that violates Business & Professions Code §17500.

121.    Plaintiffs and the California Class have lost money or property as a result of the fraudulent acts and practices and advertising and promotional materials of Defendants as set forth herein.

## <u>COUNT II</u>

### VIOLATIONS OF CALIFORNIA BUSINESS & PROFESSIONS
### CODE § 17500, ET SEQ.

**(California and 17509 Classes Against All Defendants)**

122.    Plaintiffs re-allege and incorporate each and every paragraph of this Second Amended Complaint as if fully set forth herein.

123.    California Business & Professions Code §17500 prohibits any statement in connection with advertising that is "untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading" and also prohibits any statement in connection with advertising that as "part of a plan or scheme with the intent not to sell…at the prices stated…or as so advertised."

124.    Defendants Office Agreement and Fine Print violate Business & Professions Code § 17500, *et seq.*, because they constitute advertising by Regus, they do not disclose the Unauthorized Charges, but state a monthly payment amount in the Office Agreement, and Defendants knew, or by the exercise of reasonable care should have known, that the failure to disclose the Unauthorized Charges in conjunction with the monthly payment stated in the Office Agreement was false and misleading. For the reasons set forth above in paragraph 101 of this

Second Amended Complaint, Plaintiffs Circle Click and Metro Talent were mislead by Regus' failure to disclose the Unauthorized Charges in conjunction with the monthly payment amount stated in the Office Agreement.

125. The failure of Regus to disclose the Unauthorized Charges in conjunction with stating a monthly payment amount in the Office Agreement was material because a reasonable person would attach importance to the existence of the Unauthorized Charges and would have altered his or her choice of entering into the Office Agreement with Regus.

126. In the absence of Regus' failure to disclose the Unauthorized Charges, Plaintiffs Circle Click and Metro talent and the California Class would not have entered into the Office Agreement with Regus.

127. Regus' advertising and promotional materials described in paragraphs 34-44 of this Second Amended Complaint are untrue and misleading. The following specific statements in Regus' Website promotional materials, upon information and belief, dated June 28, 2010, and Regus' e-mail dated September 30, 2011, are false and/or misleading:

a. **"Fully furnished and equipped,"** and a **"fully equipped Office."** These statements are false and/or misleading because the offices are not fully equipped without having to pay Unauthorized Charges including, but not limited to, the Telecom Handset fee.

b. **"Simple one page agreement"** and **"Our agreements are one page."** This statement is false and/or misleading because Regus asserts that the agreement with its clients consists of at least the Office Agreement and Fine Print which are not one page when taken together and because the Fine Print is written in extremely small font that, if written 12-point font, would extend onto eight pages.

c. **"One monthly invoice…All inclusive simple monthly payments,"** **"ALL THIS for one low monthly price,"** and **"Get one simple monthly bill with everything included."** These statements are false and/or misleading because Regus' monthly payment indicated in the Office Agreement is not all inclusive and Regus does not provide all of the products, including, but not limited to, the telecom handset, it indicates in its September 30, 2011

e-mail and through the Regus Website as of June 28, 2010, for one monthly fee because of Unauthorized Charges.

128.     Plantiff Circle Click viewed Regus' website on June 28, 2010, and Plaintiff Metro Talent viewed Regus' e-mail dated September 30, 2011, on that same date.  In addition, Plaintiff Circle Click and/or its principal were exposed to the extensive and long-term advertising campaign described in paragraphs 34-44 of this Second Amended Complaint which included phrases that do not materially differ from those set forth above in paragraphs 127.a.-c. above. Upon information and belief, this extensive and long-term advertising campaign influenced and reinforced the false and/or misleading advertisements.

129.     The false and/or misleading statements made by Regus were material because a reasonable person would attach importance to the total price of Regus' product and would have altered his or her choice of entering into the Office Agreement with Regus had he or she known the truth.

130.     In the absence of Regus' false and/or misleading statements, Plaintiffs Circle Click and Metro talent and the California Class would not have entered into the Office Agreement with Regus.

131.     California Business & Professions Code §17509 requires "[a]ny advertisement, including any advertisement over the Internet, soliciting the purchase or lease of a product or service, or any combination thereof, that requires, as a condition of sale, the purchase or lease of a different product or service, or any combination thereof, shall conspicuously disclose in the advertisement the price of all those products or services."

132.     Regus' Office Agreement and Fine Print are an advertisement that fails to disclose the price of any of the following goods and/or services that are mandated as a condition of sale, purchase, or lease of Regus' office space: i) Kitchen Amenities; ii) Office Restoration; and iii) Business Continuity Service.

133.     The failure of Regus to disclose the Required Products in conjunction with stating a monthly payment amount in the Office Agreement was material because a reasonable person

would attach importance to the existence of the Required Products and would have altered his or her choice of entering into the Office Agreement with Regus.

134. Had Regus disclosed the charge for the Required Products, Plaintiffs Circle Click and Metro Talent and the California Class would not have entered into the Office Agreement with Regus.

135. Regus' Website as of June 28, 2010, and Regus e-mail dated September 30, 2011, fail to disclose the price of any of the Required Products that are mandated as a condition of sale, purchase, or lease of Regus' office space.

136. Regus' failure to disclose the price of any of the Required Products that are mandated as a condition of sale, purchase, or lease of Regus' office space was material because a reasonable person would attach importance to the total price of Regus' product and would have altered his or her choice of entering into the Office Agreement with Regus had he or she known the truth.

137. Had Regus disclosed the Required Products as required by California Business & Professions Code § 17509, Plaintiffs Circle Click and Metro Talent and the 17509 Class would not have entered into the Office Agreement with Regus.

138. None of the advertisements during Regus' extensive and long-term advertising campaign set forth in paragraphs 34-44 of this Second Complaint disclose the price of any of the Required Products that are mandated as a condition of sale, purchase, or lease of Regus' office space.

139. Regus' failure to disclose the price of any of the Required Products in the advertisements alleged in paragraphs 34-44 of this Second Amended Complaint was material because a reasonable person would attach importance to the total price of Regus' product and would have altered his or her choice of entering into the Office Agreement with Regus had he or she known the truth.

140. Plaintiffs Circle Click and/or its principal were exposed to the extensive and long-term advertising campaign described in paragraphs 34-44 of this Second Amended

Complaint. Upon information and belief, this extensive and long-term advertising campaign in violation of Business & Professions Code § 17509, including the omission of the prices of the Required Products, influenced and reinforced Plaintiff Circle Click's decision to enter into the Office Agreement.

**COUNT III**

**INTENTIONAL MISREPRESENTATION**

**(California Class Against All Defendants)**

141.    Plaintiffs re-allege and incorporate each and every paragraph of this Second Amended Complaint as if fully set forth herein.

142.    In the course of conducting their business scheme, Defendants intentionally misrepresented the monthly payment in connection with the office space provided to Plaintiffs Circle Click and Metro Talent and the California Class. Defendants intentionally failed to disclose the Unauthorized Charges. The Unauthorized Charges are not adequately disclosed in the Office Agreement or Fine Print for the reasons set forth in paragraph 101 of this Second Amended Complaint.

143.    Defendants misrepresentations were material because a reasonable person would attach importance to them in making purchase decisions regarding Regus' office space.

144.    Defendants knew that the misrepresentations alleged herein were false at the time they made them and/or acted recklessly in making such misrepresentations.

145.    In making the misrepresentations alleged herein, Defendants intended that Plaintiffs Circle Click and Metro Talent and the California Class would rely on such misrepresentations and enter into and Office Agreement with Regus.

146.    Plaintiffs Circle Click and Metro Talent and the California Class reasonably and justifiably relied to their detriment on Defendants' intentional misrepresentations.

147.    Defendants intentional misrepresentations were a substantial factor in causing Plaintiffs Circle Click and Metro Talent and the California Class to enter into the Office

Agreement.

148.    As a proximate result of Defendants' intentional misrepresentations, Plaintiffs Circle Click and Metro Talent and the California Class suffered damage in an amount to be proven at trial.

149.    Defendants directly benefitted from and were unjustly enriched by their intentional misrepresentations.

150.    Defendants acted with "malice" as that term is defined in California Civil Code § 3294(c)(1), by engaging in the conduct alleged herein which was specifically intended by Defendants to cause substantial injury to Plaintiffs Circle Click and Metro Talent and the California Class.

151.    Defendants conduct alleged herein constitutes "fraud" as that term is defined in California Civil Code § 3294(c)(3) because such conduct involved intentional misrepresentations, deceit, and/or concealment of material facts known to Defendants and was done with the intent to cause injury to Plaintiffs Circle Click and Metro Talent and the California Class.

152.    Plaintiffs Circle Click and Metro Talent and the California Class are entitled to actual and punitive damages under California Civil Code § 3294(a).

153.    As a proximate result of Defendants' intentional misrepresentations, Plaintiffs Circle Click and Metro Talent and the California Class suffered an ascertainable loss and are entitled to equitable relief and compensatory and punitive damages in amounts to be proven at trial.

## COUNT IV

### UNJUST ENRICHMENT

**(California and 17509 Classes Against All Defendants)**

**(Alternative Claim)**

154.    Plaintiffs re-allege and incorporate each and every paragraph of this Second Amended Complaint as if fully set forth herein.

155.     Defendants have engaged in unlawful, unfair, and fraudulent acts and practices, have made unfair, deceptive, untrue and/or misleading statements within the meaning of California Business & Professions Code § 17200, *et seq.*, and have engaged in acts prohibited by California Business and Professions Code 17500, *et seq.*  As a result, Defendants have been enriched in the amount of the Unauthorized Charges and Required Products, at the expense of Plaintiffs Circle Click and Metro Talent and the California and 17509 Classes.

156.     Under the circumstances, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits that were received from Plaintiffs Circle Click and Metro Talent and the California and 17509 Classes with respect to the Unauthorized Charges for the reasons set forth in paragraph 101 and with respect to the Required Products for the reason set forth in paragraph 132 of this Second Amended Complaint.  It would be unjust and/or inequitable for Defendants to retain such benefits without restitution to Plaintiffs Circle Click and Metro Talent and the California and 17509 Classes.

157.     Accordingly, Plaintiffs Circle Click and Metro Talent and the California and 17509 Classes seek an order establishing Defendants as constructive trustees of the profits received by collecting the Unauthorized Charges and charges for the Required Products that served to unjustly enrich them, together with interest during the period in which Defendants have retained such funds, and requiring Defendants to disgorge those funds to Plaintiffs Circle Click and Metro Talent and the members of the California and 17509 Classes in a manner to be determined by the Court.

158.     Therefore, Plaintiffs Circle Click and Metro Talent on behalf of the California and 17509 Classes pray for relief as set forth below.  This claim is alleged in the alternative.

## COUNT V

## UNJUST ENRICHMENT

### (New York Class Against All Defendants)

159.     Plaintiff re-alleges and incorporates each and every paragraph of this Second

Amended Complaint as if fully set forth herein.

160. Defendants were enriched at Plaintiff CTNY's expense when Defendants billed and collected Unauthorized Charges from CTNY and the New York Class.

161. Under the circumstances, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits that were received from Plaintiff CTNY and the New York Class with respect to the Unauthorized Charges for the reasons set forth in paragraph 101 of this Second Amended Complaint. It would be unjust and/or inequitable for Defendants to retain such benefits without restitution to Plaintiff CTNY and the New York Class.

162. Accordingly, Plaintiff and the New York Class seek an order establishing Defendants as constructive trustees of the profits received by collecting the Unauthorized Charges that served to unjustly enrich them, together with interest during the period in which Defendants have retained such funds, and requiring Defendants to disgorge those funds to Plaintiff and members of the New York Class in a manner to be determined by the Court.

163. Therefore, Plaintiff CTNY on behalf of the New York Class prays for relief as set forth below.

## COUNT VI
### VIOLATIONS OF RACKETEER INFLUENCED &
### CORRUPT ORGANIZATIONS ACT, 18 US.C. §§ 1961-1968
### (RICO Class Against All Defendants Except Regus Business Centre)

164. Plaintiffs re-allege and incorporate each and every paragraph of this Second Amended Complaint as if fully set forth herein.

165. In pertinent part, 18 U.S.C. § 1961(1) defines "racketeering activity" as "any act which is indictable under any of the following provisions of title 18, United States Code: [including] … section 1343 [18 U.S.C. § 1343] (relating to wire fraud)…[and] section 1344 [18 U.S.C. § 1344] (relating to financial institution fraud)."

166. 18 U.S.C. § 1961(3) defines "person" to "include[] any individual or entity capable

of holding a legal or beneficial interest in property."

167.   18 U.S.C. § 1961(4) defines "enterprise" to "include[] any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

168.   18 U.S.C. § 1961(5) provides that a "pattern of racketeering activity requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity."

169.   18 U.S.C. § 1343, the federal wire fraud statute identified by 18 U.S.C. § 1961(1) as an indictable predicate act for purposes of racketeering, provides that "[w]however, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both."

170.   In pertinent part, 18 U.S.C. § 1344, the federal bank fraud statute specifically identified by 18 U.S.C. § 1961(1) as an indictable predicate act for purposes of racketeering, provides:

Whoever knowingly executes, or attempts to execute, a scheme or artifice –

*** 

to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises shall be fined not more than $1,000,000 or imprisoned for not more than 30 years, or both.

171.   18 U.S.C. § 1962(c) provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such

enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

172.    At all times relevant hereto, Defendants Regus plc, Regus Management, and HQ, were "person[s]" within the meaning of 18 U.S.C. § 1961(3), with a corporate structure and a hierarchy of corporate direction and control, as were, upon information and belief, the Doe Defendants.

173.    At all times relevant hereto, the Plaintiffs in this Second Amended Complaint, and each putative member of the Class, was and is a "person" within the meaning of 18 U.S.C. § 1961(3).

**RICO Enterprise**

174.    The enterprise consists of Defendants Regus plc, Regus Management, HQ, and, upon information and belief, the Doe Defendants (the "Enterprise"). Each and every member of the Enterprise participated in the process of obtaining, transmitting, billing, and collecting Unauthorized Charges on Regus' wireline bills to Plaintiffs and members of the RICO Class. Upon information and belief, the contractual relationships between and among Regus plc, Regus Management, HQ, and, upon information and belief, the Doe defendants constitute an enterprise in fact.

175.    Upon information and belief, each member of the Enterprise played a role as alleged herein in obtaining, transmitting, billing, and collecting Unauthorized Charges included on Regus' bills under, upon information and belief, the direction of Regus plc and pursuant to its scheme to bill and collect large sums for Unauthorized Charges from Regus' clients.

**Ongoing Pattern of Racketeering**

176.    Upon information and belief, starting on a date currently unknown, Regus plc adopted and implemented a centrally managed, uniform, nationwide scheme to defraud Regus' clients by billing and collecting Unauthorized Charges from Regus' clients. To implement this fraudulent scheme, Regus plc conspired with Regus Management, HQ, and, upon information and belief, the Doe Defendants to submit Unauthorized Charges to clients. As part of the scheme, upon information and belief, the Enterprise shares with Regus plc, Regus Management, and HQ a

portion of the proceeds of the fraudulent, Unauthorized Charges that Regus Management and/or HQ billed and collected from Regus clients through the fraudulent scheme (the "Fraudulent Scheme").

177.     Pursuant to the Fraudulent Scheme, Regus plc directly or indirectly through its opaque and complex corporate structure, and intermediate subsidiary corporations, has designed and implemented a single common, uniform, scheme to defraud Regus' clients across the United States. Regus' standardized Office Agreement and Fine Print and the billing and collection system used for purposes of carrying out the nationwide Fraudulent Scheme constitutes a single common, uniform, system of procedures, upon information and belief, used in each and every state in the United States in which Regus sells office space. Thus, while, upon information and belief, there are many Regus' offices across forty-four states from New York to California, all of the billing and collection contracts are the same and designed and implemented to further the one uniform, nationwide Fraudulent Scheme.

178.     Upon information and belief, within the past four years the Enterprise has billed and collected millions of dollars in Unauthorized Charges pursuant to the Fraudulent Scheme to bill and collect Unauthorized Charges from clients.

179.     Within the past four years, Defendants Regus plc, Regus Management, HQ, and, upon information and belief, the Doe Defendants have knowingly, intentionally, and/or recklessly engaged in an ongoing, open-ended scheme, artifice, and pattern of racketeering under 18 U.S.C. § 1962(c) by committing the predicate acts of wire fraud within the meaning of 18 U.S.C. § 1343 and bank fraud within the meaning of 18 U.S.C. § 1344(2) by knowingly and intentionally implementing the scheme to bill and collect large sums of money from Unauthorized Charges to Regus clients.

180.     Defendants Regus plc, Regus Management, HQ, and, upon information and belief, the Doe Defendants having devised or intended to devise a scheme or artifice to defraud Regus' clients and/or for obtaining money from Regus clients by means of false or fraudulent pretenses and representations as Unauthorized Charges on Regus' office space invoices and bills,

transmitted or caused to be transmitted by means of wire communication in interstate or foreign

commerce, writings, signs, and signals, and pictures, for the purpose of executing such scheme or

artifice, including by: i) offering for sale office space within the United States via the Internet; ii)

transmission of Unauthorized Charges for purposes of ultimately being billed and collected by

pursuant to the Fraudulent scheme; iii) by transmitting e-mail communications relating to the

process of obtaining, transmitting, billing, and collecting the Unauthorized Charges on Regus'

bills from the Plaintiffs and members of the RICO Class; and/or iv) by collecting funds from

clients via electronic fund transfers or electronic communication with the customer's bank or

credit card institutions and, upon information and belief, transmitting payments to Defendants

Regus plc, Regus Management, HQ, and, upon information and belief the DOE Defendants.

181.     In addition to the foregoing, upon information and belief, Regus plc used the wires

in conjunction with reaching the agreement between itself and the other members of the Enterprise

with respect to the process of obtaining, transmitting, billing and collecting Unauthorized Charges

on Regus' bills to Plaintiffs and the members of the RICO Class.

**Effect of the Racketeering Scheme on Interstate Commerce**

182.     As part of the racketeering scheme described herein, Regus plc has used the

racketeering Enterprise to increase its profits to the detriment of Regus' clients in forty four states

in the nation in which the Enterprise operates its unlawful scheme.

183.     The interstate commerce requirement of this RICO claim is satisfied because the

racketeering claims alleged in this Second Amended Complaint arise out of, and are based upon,

Defendants' use of the Internet and telephone wires and agreements between members of the

Enterprise  in conjunction with the process of obtaining, transmitting, billing and collecting

Unauthorized Charges on Regus' bills to the Plaintiffs and the Class, in furtherance of the

racketeering scheme as alleged herein.

**Injury to Plaintiffs and the RICO Class in their Business or Property by Reason of the Pattern of Racketeering Activity**

184.     Plaintiffs and the members of the RICO class are the direct victims of the

Enterprise's wrongful and unlawful conduct in that Plaintiffs and RICO Class members directly

paid to the Enterprise money to pay for one or more Unauthorized Charge, including money which was in the custody or control of a financial institution, such as when the charge was paid for by check or credit card withdrawals from bank accounts.

185.     Plaintiffs and the members of the RICO Class were injured by reason of the fact that they were billed for and paid for one or more goods or services that they did not authorize, and because they were the primary and intended victims of the Fraudulent Scheme.  It was a foreseeable and natural consequence of the Fraudulent Scheme that clients would pay the Unauthorized Charges.  There are no independent factors that account for Plaintiffs' and the putative class members' economic injuries.

186.     No more immediate victims are better situated to sue for the RICO violations at issue since Plaintiffs and the member of the RICO Class were billed for and paid one or more of the Unauthorized Charges.

187.     Plaintiffs were victims of the scheme to defraud Regus' clients by billing and collecting for Unauthorized Charges.  Upon information and belief, numerous Regus' clients were exposed to the same Fraudulent Scheme.

188.     As a direct and proximate result of Defendants' Fraudulent Scheme, Plaintiffs and the putative Class members have lost money comprised of the amounts paid for the Unauthorized Charges, in an amount according to proof.  Damages will be calculated with greater accuracy according to information contained in Defendants' records.

189.     The pattern of racketeering activity, as described herein, is continuous, ongoing, and will continue unless Defendants are enjoined from continuing these racketeering practices.

190.     As a direct and proximate result of the racketeering activities described herein, Plaintiffs and the absent Class Members are entitled to recover treble damages for the injuries they have sustained, according to proof, restitution, as well as costs of suit and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c).

191.     As a direct and proximate result of the racketeering activities as described herein, Plaintiffs, on behalf of themselves and the absent member of the RICO Class, are entitled to an

order, pursuant to 18 U.S.C. § 1964(a), enjoining and prohibiting Defendants Regus plc, Regus Management, HQ, and, upon information and belief, the DOE Defendants from further engaging in the unlawful conduct in which the Enterprise has engaged.

**COUNT VII**

**CONSPIRACY TO VIOLATE THE RACKETEER INFLUENCED CORRUPT ORGANIZATIONS ACT, 18 U.S.C. §§ 1961-1968**

**(RICO Class Against All Defendants Except Regus Business Centre)**

192.     Plaintiffs re-allege and incorporate each and every paragraph of this Second Amended Complaint as if fully set forth herein.

193.     Regus plc, Regus Management, HQ, and, upon information and belief, the Doe Defendants have conspired with each other and with each other to carry out the Enterprise as set forth above and to violate 18 U.S.C. § 1962(c) as alleged above in violation of 18 U.S.C. § 1962(d).  Each has aided, assisted, and abetted the others in carrying out and attempting to carry out the Enterprise.

194.     As alleged above, Regus plc, Regus Management, HQ, and, upon information and belief, the Doe Defendants by words or action have manifested an agreement to commit two or more predicate acts in furtherance of the common purpose of the RICO Enterprise.

195.     As alleged above, Regus plc, Regus Management, HQ, and, upon information and belief, the Doe Defendants knew of the conspiracy's goals and agreed to facilitate and/or to aid, assist and abet the others in carrying out the conspiracy by, among other things, two predicate acts of wire fraud and bank fraud.

**VIII.    PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and all members of the Classes pray that the Court enter an order and judgment against the Defendants as follows:

1.     For an order certifying the California Class as a class action pursuant to Fed. R. Civ. P. 23 and appointing Plaintiffs Circle Click and Metro Talent and their counsel to represent the California Class;

2.     For an order certifying the 17509 Class as a class action pursuant to Fed. R. Civ. P. 23 and appointing Plaintiffs Circle Click and Metro Talent and their counsel to represent the 17509 Class;

3.     For an order certifying the New York Class as a class action pursuant to Fed. R. Civ. P. 23 and appointing Plaintiff CTNY and its counsel to represent the New York Class;

4.     For an order certifying the RICO Class as a class action pursuant to Fed. R. Civ. P. 23 and appointing Plaintiffs Circle Click, Metro Talent, and CTNY and their counsel to represent the RICO Class;

5.     Adjudging and decreeing that Defendants, and each of them, have engaged in the conduct alleged herein with respect to the California, 17509, New York, and RICO Classes;

6.     Adjudging and decreeing that Defendants Regus plc, Regus Management, HQ, and the DOE Defendants have engaged in the conduct alleged herein with respect to the RICO Class;

7.     Awarding Plaintiffs Circle Click and Metro Talent and the California and 17509 Classes injunctive relief for Defendants' violations set forth herein;

8.     Awarding Plaintiff CTNY and the New York Class injunctive relief for Defendants' violations set forth herein;

9.     Awarding Plaintiffs Circle Click and Metro Talent and the California and 17509 Classes restitution, including, but not limited to disgorgement of Defendants' wrongfully obtained revenues, earnings, profits compensation, and benefits pursuant to California Business & Professions Code §§ 17203 and 17204, for Defendants' violations of Business & Professions Code §§ 17200, *et seq.*, and 17500 *et seq.*;

10.     Awarding Plaintiff CTNY and the New York Class restitution, including, but not limited to disgorgement of Defendants' wrongfully obtained revenues, earnings, profits compensation, and benefits;

11.     Awarding Plaintiffs Circle Click, Metro Talent, and CTNY and the Classes general damages;

12.     Awarding Plaintiffs Circle Click, Metro Talent, and CTNY and the Classes

damages;

13. Awarding Plaintiffs Circle Click, Metro Talent, and the California Class punitive damages;

14. Awarding the RICO Class treble damages as well as costs of suit and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c);

15. Awarding the RICO Class injunctive relief enjoining and  are entitled to an order, pursuant to 18 U.S.C. § 1964(a), enjoining and prohibiting Defendants Regus plc, Regus Management, HQ, and the DOE Defendants from further engaging in the unlawful conduct in which the their RICO enterprise has engaged.

16. Awarding Plaintiffs Circle Click, Metro Talent, and CTNY and the Classes pre- and post-judgment interest as allowed by law;

17. Awarding costs and expenses (including, but not limited to, expert-witness fees) and attorney's fees to Plaintiffs Circle Click and Metro Talent and the California and 17509 Classes pursuant to Code of Civil Procedure § 1021.5, a common fund theory, and/or any other theory or statutory basis;

18. Awarding attorney's fees and costs to Plaintiffs Circle Click, Metro Talent, and the Classes pursuant to the common fund doctrine and/or any other theory or statutory basis;

19. Awarding to Plaintiffs Circle Click, Metro Talent, and CTNY taxable costs pursuant to Fed. R. Civ. P. 54(d).

20. Granting such other and further relief that this Court may deem just and proper.

## IX.   JURY TRIAL DEMAND

Plaintiffs, on their own behalf and on behalf of all others similarly situated, hereby demand a trial by jury.

///

///

Dated: February 11, 2013                    Respectfully submitted,

**GAROFOLO LAW GROUP, P.C.**
**ARI LAW, P.C.**

By:    /s/ Joseph A. Garofolo
           Joseph A. Garofolo

Attorneys for Plaintiffs
CIRCLE CLICK MEDIA LLC,
METRO TALENT, LLC and
CTNY INSURANCE GROUP LLC