United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CIRCLE CLICK MEDIA LLC, METRO TALENT, LLC, CTNY INSURANCE GROUP LLC, on behalf of themselves and all others similarly situated, | Case No. 12-04000 SC |
| | ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS |
| Plaintiffs, | |
| v. | |
| REGUS MANAGEMENT GROUP LLC, REGUS BUSINESS CENTRE LLC, REGUS PLC, HQ GLOBAL WORKPLACES LLC, and DOES 1 through 50, | |
| Defendants. | |

I.    **INTRODUCTION**

Plaintiffs Circle Click Media LLC ("Circle Click"), Metro Talent, LLC ("Metro Talent"), and CTNY Insurance Group LLC ("CTNY") (collectively, "Plaintiffs") bring this putative class action against Regus Management Group LLC, Regus Business Centre LLC, Regus plc, and HQ Global Workplaces LLC (collectively "Defendants").  Defendants previously moved to dismiss for failure to state a claim.  That motion was granted in part and denied in part, and a number of Plaintiffs' claims were dismissed with leave to amend.  ECF No. 59 ("Jan. 3 Order").  In accordance with the

Court's January 3 Order, Plaintiffs recently filed a Second Amended Complaint.  ECF No. 65 ("SAC").  Defendants now move to dismiss the SAC for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF No. 69 ("MTD").  The motion is fully briefed, EFC Nos. 71 ("Opp'n"), 73 ("Reply"), and appropriate for determination without oral argument pursuant to Civil Local Rule 7-1(b).  For the reasons set forth below, the motion is GRANTED in part and DENIED in part.

## II.   **BACKGROUND**

Defendants are in the business of leasing commercial office space throughout California and New York.  Jan. 3 Order at 2.  In 2011, Plaintiffs entered into identical office agreements with Defendants (collectively, the "Office Agreement(s)") for commercial office space in California and New York.  Id.  Plaintiffs allege that Defendants impose unauthorized and unreasonable charges on Plaintiffs and other customers, and that they employ numerous unlawful policies and practices to collect unfair fees.  SAC ¶ 1. For example, Plaintiffs allege that Defendants routinely assessed Circle Click for charges relating to kitchen amenities, various telecommunication services, "business continuity service," taxes, and penalties, which bore no reasonable relationship to the services purportedly rendered by Defendants.  Id. ¶ 52.

Plaintiffs allege that the Office Agreement does not disclose a number of the charges assessed by Defendants.  Id. ¶ 26.  The Office Agreement, which was drafted by Defendants, is only one page and merely identifies the location of the office space, the monthly office fee, the term of the agreement, and the parties to it.  See

ECF No. 34 ("Bishop Decl.") Ex. A ("Office Agreement").  The Office Agreement also states: "This Agreement incorporates our terms of business set out on attached Terms and Conditions which you confirm you have read and understood."  Id.  The Terms and Conditions, which are attached hereto, are also only one page, but are printed in small type that is no larger than five-point Tahoma.  SAC ¶ 27; Bishop Decl. Ex. B ("Terms & Conditions").  Due to its small font size and overall blurriness, the copy of the Terms and Conditions filed with the Court is almost illegible.  The Terms and Conditions provide: "This agreement is composed of the front page describing the accommodation(s), the present terms and conditions, and the House Rules."  Id. § 1.1.  The House Rules are not referenced in the pleadings and, in their opposition papers, Plaintiffs claim that they never received a copy of them.  See Opp'n at 10.  The House Rules disclose a number of fees, including a mandatory "Kitchen Amenities / Beverage Fee"; a "[s]tandard services" fee, including a fee "billed upon service activation for applicable telecom and internet services"; an "Office Set Up Fee"; and a "Business Continuity Fee."  Bishop Decl. Ex. C ("House Rules") §§ 13, 34, 36, 38.  The House Rules also reference a Service Price Guide, id. § 35, which lists the prices for a variety of services, including kitchen amenities and phone and IT services, Bishop Decl. Ex. D ("Service Price Guide").

Plaintiffs allege that, in light of Defendants' billing practices, Defendants' advertising is false and misleading.  See SAC ¶ 73.  Plaintiffs specifically point to advertisements posted to Defendants' website from 2003 through 2012.  These advertisements represent that customers "could save up to 78 %

[sic] compared to traditional office costs," that Defendants' one-page contract "takes just 10 minutes to complete," and that Defendants' services were "[s]imple, easy[,] and flexible."  Id. ¶¶ 37-41.  Plaintiffs also point to an email sent to potential clients on September 30, 2011, which represents that Defendants provide a one-page contract, "[a] fully equipped [o]ffice," "[a] fully stocked kitchen," "[p]hone lines with a local phone number," and "A WELL EQUIPPED OFFICE," "ALL . . . for one low monthly price."  Id. ¶ 42.  Additionally, Plaintiffs point to a broadcast commercial by Defendants, wherein an actress states:

> I don't have a lease so I don't have to budget for stuff like phones, IT guys, and artwork for the lobby. Instead, I pay one low monthly rate that gives me a beautiful lobby that impresses my clients, a friendly receptionist, a fully furnished office, a place to meet, and a place to brainstorm with my fellow new way workers. We wonder why more people don't realize that the new way to work is the best way to work.

Id. ¶ 43.  Plaintiffs also point to Defendants' Craigslist advertisements, though they do not describe their content or when they were posted.  Id. ¶ 44.

Plaintiffs filed the instant action in state court in May 2012 and Defendants subsequently removed.  ECF No. 1.  In their First Amended Complaint ("FAC"), which was filed after removal, Plaintiffs sought to represent a class of all persons who paid for Defendants' office space in California and New York and were assessed charges by Defendants over the monthly payments indicated in the Office Agreement or any similar agreement.  ECF No. 24 ("FAC") ¶ 71.  Plaintiffs asserted six counts on behalf of the California class, which is represented by Circle Click and Metro Talent: (1) violation of California Business and Professions Code

1   section 17200 (the California Unfair Competition Law ("UCL")); (2)

2   violation of California Business and Professions Code section 17500

3   (the California False Advertising Law ("FAL")); (3) "concealment/

4   suppression"; (4) & (5) negligent and intentional

5   misrepresentation; and (6) unjust enrichment.  Plaintiffs also

6   asserted the following claims on behalf of the New York class,

7   which is represented by CTNY: (7) & (8) violation of New York State

8   General Business Law ("NYSGBL") sections 349 and 350; and (9)

9   unjust enrichment.

10       Defendants subsequently filed a motion to dismiss, which the

11   Court granted in part and denied in part on January 13, 2013.

12   Plaintiffs filed their SAC on February 11, 2013.  Like the FAC, the

13   SAC asserts causes of action for unfair, unlawful, and fraudulent

14   practices under the UCL; false advertising under the UCL and FAL;

15   intentional misrepresentation; and unjust enrichment.

16   Additionally, the SAC asserts new claims for violation of the

17   Racketeer Influenced and Corrupt Organizations Act ("RICO") and

18   RICO conspiracy.  As part of their FAL and UCL claims, Plaintiffs

19   also assert new, independent violations of California Business and

20   Professions Code section 17509 and California Public Utilities Code

21   ("CPUC") section 2890, respectively.

22       Defendants now move to dismiss the SAC pursuant to Federal

23   Rule of Civil Procedure 12(b)(6) for failure to state a claim.

24

25   **III. <u>LEGAL STANDARD</u>**

26       A Rule 12(b)(6) motion to dismiss "tests the legal sufficiency

27   of a claim." <u>Navarro v. Block</u>, 250 F.3d 729, 732 (9th Cir. 2001).

28   "Dismissal can be based on the lack of a cognizable legal theory or

the absence of sufficient facts alleged under a cognizable legal theory."  <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1988).  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 664 (2009).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Id.</u> at 663 (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).  The allegations made in a complaint must be both "sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that the party may effectively defend against it" and "sufficiently plausible" such that "it is not unfair to require the opposing party to be subjected to the expense of discovery."  <u>Starr v. Baca</u>, 633 F.3d 1191, 1204 (9th Cir. 2011).

**IV.  <u>DISCUSSION</u>**

    **A.  <u>Plaintiffs' New Claims</u>**

In its January 13 Order, the Court granted Plaintiffs leave to amend to correct specifically identified deficiencies in their pleading.  In their SAC, Plaintiffs have taken steps to address the Court's concerns.  However, they have also asserted wholly new claims which were not included in their FAC.  Specifically, they have asserted new claims for RICO and RICO conspiracy, and as part of their FAL claim, an independent violation of California Business and Professions Code section 17509.  Further, as part of their UCL

**United States District Court**
For the Northern District of California

1    claim for unlawful practices, Plaintiffs allege new predicate

2    violations of CPUC section 2890.

3        Defendants argue that because the Court did not specifically

4    grant Plaintiffs leave to add these new claims, Plaintiffs'

5    amendments constitute a violation of Federal Rule of Civil

6    Procedure 15.   MTD at 6-7.   Rule 15(a)(1) provides that a party may

7    amend its pleading as a matter of course within twenty-one days

8    after serving it or twenty-one days after the filing of a

9    responsive pleading or a Rule 12(b), (e), or (f) motion.

10   Thereafter, "a party may amend its pleading only with the opposing

11   party's written consent or the court's leave."   Fed. R. Civ. P.

12   15(a)(2).   Rule 15(a)(2) provides that courts should "freely give

13   leave [to amend] when justice so requires," and the Ninth Circuit

14   has stressed Rule 15's policy of favoring amendments.   Ascon

15   Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989).

16       Here, Plaintiffs have already amended once, and the Court did

17   not specifically grant them leave to add new claims in its January

18   13 Order.   Plaintiffs' new allegations regarding violations of CPUC

19   section 2890 and Business and Professions Code section 17509 claim

20   are components of claims that were previously dismissed with leave

21   to amend.   However, the scope of that leave was limited, and it did

22   not include leave to allege wholly new legal theories or violations

23   of different statutes.   See Jan. 13 Order at 15-16, 21.   Further,

24   RICO was never mentioned in Plaintiffs' FAC or the Court's January

25   13 Order.   Accordingly, Plaintiffs' assertion of these new claims

26   and theories in the SAC constitutes a violation of Rule 15.

27       Nevertheless, judicial economy counsels against dismissing

28   these new claims on procedural grounds.   There is no indication

that Defendants would be prejudiced by the assertion of these new

claims, especially since no discovery has yet taken place.  Thus,

if the claims were now dismissed on procedural grounds, Plaintiffs

could raise them again through a Rule 15 motion and the Court would

need to address the substantive issues raised in Defendants' motion

to dismiss at a later date.  This would be unfair to the parties,

including Defendants, who would need to brief the substantive

issues on Plaintiffs' new claims for a second time.

Accordingly, the Court declines to dismiss Plaintiffs' new

claims on procedural grounds.  However, the Court warns Plaintiffs

that they should seek leave to amend in accordance with Rule 15

prior to asserting new claims in the future.  Dismissal of one

claim with leave to amend should not be considered an open

invitation to assert a brand new claim.

**B.    <u>Intentional Misrepresentation</u>**

Plaintiffs' third cause of action is for intentional

misrepresentation, also known as common law fraud.  Plaintiffs

allege that Defendants intentionally misrepresented the monthly

payments to be assessed in connection with Plaintiffs' office space

by failing to disclose a number of unauthorized charges.  SAC ¶

142.  In its January 3 Order, the Court dismissed Plaintiffs' prior

claim for intentional misrepresentation on the ground that the

Office Agreement expressly provides that the stated monthly office

fees exclude taxes and services.  Jan. 3 Order at 21-22.  The Court

granted Plaintiffs leave to amend to allege "what was not disclosed

in the agreements they signed with Defendants and/or what

Defendants misrepresented to them about their monthly fees and why

it was reasonable for Plaintiffs to rely on those

**United States District Court**
For the Northern District of California

1   misrepresentations despite the language of the agreements." Id. at

2   22.

3        Plaintiffs now allege that Defendants failed to disclose

4   charges for kitchen amenities, telephone lines, telecom handsets,

5   local telephone services, internet access and activation, taxes,

6   and penalties.  SAC ¶¶ 101.  They further allege that these fees

7   are not disclosed in the Terms and Conditions, although others

8   charges are, and that these fees are arbitrary because Defendants

9   do not assess charges for a number of other goods and services.

10  Id.  Defendants argue that these fees were disclosed in the House

11  Rules, which are referenced in the Terms and Conditions, and the

12  Service Price Guide, which is referenced in the House Rules.  MTD

13  at 8-10.

14       There are at least four circumstances in which nondisclosure

15  may constitute actionable fraud: "(1) when the defendant is in a

16  fiduciary relationship with the plaintiff; (2) when the defendant

17  had exclusive knowledge of material facts not known to the

18  plaintiff; (3) when the defendant actively conceals a material fact

19  from the plaintiff; and (4) when the defendant makes partial

20  representations but also suppresses some material facts." OCM

21  Principal Opportunities Fund v. CIBC World Markets Corp., 157 Cal.

22  App. 4th 835, 859 (Cal. Ct. App. 2007).  None apply here.

23       Though Plaintiffs do not directly address this issue in their

24  briefing, their position appears to be that Defendants had

25  exclusive knowledge of the fees that would be assessed in

26  connection with the Office Agreement.  However, the judicially

27  noticeable documents submitted by Defendants show that Plaintiffs

28  had at least constructive knowledge of these fees.  The House Rules

1  expressly disclose that Defendants would assess a mandatory
2  "kitchen amenities / beverage fee."  House Rules ¶ 13.  The "Fees"
3  section of the House Rules also indicates that the
4  telecommunications services provided by Defendants were not free.
5  Id. ¶¶ 34-41.  Further, the Service Price Guide, which is expressly
6  referenced in paragraph 35 of the House Rules, discloses the
7  amounts that Defendants would assess for a variety of the services
8  targeted by Plaintiffs, including kitchen amenities and internet
9  and phone services.

10       Plaintiffs argue that the Court should not take judicial
11  notice of the House Rules or the Service Price Guide because those
12  documents are not referenced in the complaint.  Opp'n at 9-10.  The
13  Court may take judicial notice of facts that are not subject to
14  reasonable dispute.  Fed. R. Ev. 201(b).  The Court may also take
15  judicial notice of a written instrument that is incorporated by
16  reference into the pleading because the document forms the basis of
17  the plaintiff's claim.  United States v. Ritchie, 342 F.3d 903, 908
18  (9th Cir. 2003).  Here, Plaintiffs' intentional misrepresentation
19  claim is predicated on what is disclosed or not disclosed in the
20  Office Agreement and the Terms and Conditions.  The Terms and
21  Conditions expressly provide that Plaintiffs' agreement with
22  Defendant is composed of the Office Agreement, the Terms and
23  Conditions, and the House Rules.  Further, the House Rules
24  expressly reference the Service Price Guide.  Accordingly, the
25  Court may properly take judicial notice of all four documents.

26       Plaintiffs also argue that they never received the House Rules
27  or Service Price Guide.  Opp'n at 9.  They further suggest that,
28  although the House Rules are referenced in the Terms and

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1  Conditions, they could not read the Terms and Conditions because of
2  its small font size.  Id. at 1.  These arguments are unavailing.
3  Plaintiffs have yet to allege that they did not receive the House
4  Rules or the Service Price Guide, although this issue was raised in
5  Defendants' last motion to dismiss.  Further, for the purposes of
6  their fraud claim, Plaintiffs cannot complain that they could not
7  understand the Terms and Conditions.  By signing the Office
8  Agreement, Plaintiffs confirmed that they had "read and understood"
9  the Terms and Conditions.  Plaintiffs cannot now claim that
10 Defendants had exclusive knowledge of various fees when those fees
11 were disclosed in documents referenced in the parties' agreements.

12     For these reasons, the Court GRANTS Defendants' motion to
13 dismiss with respect to Plaintiffs' claim for intentional
14 misrepresentation.  Since Plaintiffs have already had an
15 opportunity to amend this claim once before, and judicially
16 noticeable documents belie Plaintiffs' allegations, this cause of
17 action is DISMISSED WITH PREJUDICE.

18     **C.   UCL - Fraudulent Practices**

19     Plaintiffs also assert a claim for fraud under the UCL based
20 on facts identical to those recited in the Court's discussion of
21 Plaintiffs' claim for intentional misrepresentation.  See Section
22 IV.B supra.  Defendants argue that Plaintiffs' UCL fraud claim
23 should be dismissed for the same reasons as their claim for
24 intentional misrepresentation.  MTD at 8, 10.  However, the
25 fraudulent business practice prong of the UCL is distinct from
26 common law fraud claims like intentional misrepresentation.  In re
27 Tobacco II Cases, 46 Cal. 4th 298, 312 (Cal. 2009).  To state a
28 claim for UCL fraud, a plaintiff need not show that a defendant's

11

1  representations were actually false or were reasonably relied upon

2  by the plaintiff.  Id.  Rather, "it is necessary only to show that

3  members of the public are likely to be deceived."  Id. (quotations

4  omitted).

5       For example, in People v. Dollar Rent-A-Car Systems, Inc., the

6  defendant car rental agencies represented that collision damage

7  waivers were insurance and failed to advise customers that they

8  were liable for damages cause by their own negligence.  211 Cal.

9  App. 3d 119, 123 (Cal. Ct. App. 1989).  Customers brought suit

10 under the UCL.  Id.  The trial court entered judgment against the

11 defendants and the Court of Appeal affirmed.  Id. at 132.  The

12 court reasoned that "[t]he [collision damage waiver's] complex

13 language, the miniscule print size and format, combined with

14 defendants' knowledge that its own trained agents give erroneous

15 explanations, provide ample evidence to support the trial court's

16 finding" that the defendants engaged in deceptive practices.  Id.

17 at 131.

18       Likewise, in the instant action, Plaintiffs allege that

19 Defendants failed to adequately disclose a variety of fees that

20 were later assessed against Plaintiffs.  SAC ¶¶ 110-113.

21 Plaintiffs further allege that they were deceived because they were

22 unable to read the miniscule font used in Defendants' Terms and

23 Conditions, id. ¶ 27 -- a font that the Court can barely decipher,

24 even with the aid of a magnifying glass.  As a result of these

25 allegedly deceptive practices, Plaintiffs entered into an agreement

26 that they could not cancel prior to its expiration and were charged

27 a variety of fees of which they allegedly had no prior knowledge.

28 See id. ¶¶ 29-31.  The Court finds that these allegations are

**United States District Court**
For the Northern District of California

1   sufficient to state a claim for fraudulent practices under the UCL.

2       Accordingly, Defendants' motion to dismiss Plaintiffs' claim

3   for fraudulent practices under the UCL is DENIED.

4       **D.   <u>UCL - Unfair Practices</u>**

5       The UCL has two other prongs, one for unfair practices and the

6   other for unlawful practices.  Cal. Bus. & Prof. Code § 17200.

7   Plaintiffs assert claims under both.  The Court turns to the

8   unfairness prong here.  California courts have enunciated multiple

9   standards for evaluating a claim for unfair practices under the

10  UCL.  Plaintiffs attempt to invoke the standards enunciated in

11  <u>South Bay Chevrolet v. General Motors Acceptance Corp.</u>, 72 Cal.

12  App. 4th 861 (Cal. Ct. App. 1999) and <u>Cel-Tech Communications, Inc.</u>

13  <u>v. Los Angeles Cellular Telephone Co.</u>, 20 Cal. 4th 163 (Cal. 1999)

14  by alleging that Defendants' practices are "immoral, unethical,

15  oppressive, unscrupulous, or substantially injurious to customers,"

16  SAC ¶ 100, as well as a violation "of the policy and spirit of the

17  Unfair Practices Act, the Cartwright Act, and the Sherman Act and

18  other antitrust laws," <u>id.</u> ¶ 106.

19      Defendants argue that Plaintiffs have failed to satisfy the

20  unfairness prong of the UCL because Plaintiffs are consumers, not

21  competitors, and because Defendants have not engaged in anti-

22  competitive behavior.  MTD at 19-20.  But the UCL unfairness prong

23  is broad and does more than proscribe monopolistic behavior.  <u>See</u>

24  <u>South Bay</u>, 72 Cal. App. 4th at 886.  Under <u>South Bay</u>, "[t]he test

25  of whether a business practice is unfair involves an examination of

26  [that practice's] impact on its alleged victim, balanced against

27  the reasons, justifications and motives of the alleged wrongdoer."

28  <u>Id.</u> (quotations omitted).  As discussed in Section IV.C. <u>supra</u>,

Plaintiffs have alleged sufficient facts to establish that Defendants' failure to adequately disclose certain fees may confuse consumers.  The impact on customers can be severe, as they may commit themselves to one-year agreements without knowledge of the costs involved.  At this stage, it is unclear whether Defendants have any justification for failing to conspicuously disclose the mandatory fees associated with their Office Agreements.

Accordingly, the Court finds that Plaintiffs have alleged sufficient facts to support a claim under the unfairness prong of the UCL.

**E.   <u>UCL - Unlawful Practices</u>**

The last prong of the UCL prohibits "unlawful" practices. Cal. Bus. & Prof. Code § 17200.  Under this prong, violations of other laws, when committed pursuant to business activity, are independently actionable under the UCL.  <u>Farmers Ins. Exch. v. Super. Ct.</u>, 2 Cal. 4th 377, 383 (Cal. 1992).  In connection with their UCL claim for unlawful practices, Plaintiffs assert predicate violations of California Civil Code section 1671(b), CPUC section 2890(a), RICO, and California Business and Professions Code sections 17500 and 17509.  SAC ¶¶ 95-99.  Defendants now move to dismiss Plaintiffs' claim as it relates to RICO and CPUC section 2890(a).  MTD at 17-18.

For the reasons set forth in Section IV.F <u>infra</u>, the Court finds that Plaintiffs cannot state a UCL claim based on a predicate violation of the RICO statute.  Accordingly, this aspect of Plaintiffs' UCL claim is DISMISSED WITH PREJUDICE.

As to CPUC section 2890, Plaintiffs allege that Defendants violated the statute by invoicing them for unauthorized charges and

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1  by failing to obtain a written order "on a separate document from

2  any solicitation material that is unambiguous and in a minimum 10-

3  point font."  SAC ¶ 97 (citing CPUC § 2890(a)-(b)).  Defendants

4  argue that Plaintiffs cannot state a UCL claim under CPUC section

5  2890 because section 2890 only applies to telephone corporations.

6  MTD at 17-18.

7      CPUC section 2890 sets forth a number of requirements for the

8  contents of telephone bills.  The provision falls under Chapter 10

9  of part 2 of the CPUC, which pertains to "Telephone Corporations."

10 CPUC section 234(b) provides that a "telephone corporation" does

11 not include "[a]ny hospital, hotel, motel, or similar place of

12 temporary accommodation . . . ."  <u>Id.</u>  Defendants argue that the

13 office space rented by Plaintiffs constitutes a temporary

14 accommodation for the purposes of the statute, pointing to section

15 1.1 of the Terms and Conditions, which provides:

16

17     This agreement is the commercial equivalent of an
       agreement for accommodation(s) in a hotel.  The whole of
18     the Center remains in Regus' possession and control.  THE
       CLIENT ACCEPTS THAT THIS AGREEMENT CREATES NO TENANCY
19     INTEREST, LEASEHOLD ESTATE, OR OTHER REAL PROPERTY
       INTEREST IN THE CLENT'S FAVOUR WITH RESPECT TO THE
20     ACCOMODATIONS.

21

22 The Court is not convinced.  The fact that the Office Agreements do

23 not create a tenancy interest does not necessarily mean that

24 Defendants only provide temporary accommodations.  In fact, the

25 Office Agreements at issue in this case are alleged to have terms

26 of at least one year.  This makes Defendants' services different

27 from those of a hospital, hotel or motel.  As does the fact that

28 Defendants provided business accommodations, as opposed to the

**United States District Court**
For the Northern District of California

1   types of short-term housing and accommodations generally associated
2   with hospitals, hotels, and motels.

3       Accordingly, Defendants motion to dismiss Plaintiffs' claims
4   for unlawful practices under the UCL is GRANTED with respect to
5   Defendants' alleged RICO violations and DENIED with respect to
6   Defendants' alleged CPUC violations.

7       **F.   RICO**

8       Plaintiffs assert that Defendants practice of collecting
9   unauthorized charges from its customers constitutes a pattern of
10  racketeering subject to RICO.  SAC ¶¶ 164-195.  The RICO statute is
11  be read "broadly" and "should be liberally construed to effectuate
12  its remedial purposes."  Odom v. Microsoft Corp., 486 F.3d 541, 547
13  (9th Cir. 2007).  To state a claim under the RICO statute, a
14  plaintiff must allege: "(1) conduct (2) of an enterprise (3)
15  through a pattern (4) of racketeering activity."  Id.

16      Defendants argue that Plaintiffs cannot state a claim under
17  RICO because they have failed to allege the required predicate acts
18  and a distinct RICO enterprise.  MTD at 21-24.  The Court agrees
19  with the first point and, therefore, does not reach the second.
20  The definition of racketeering activity is expansive and includes a
21  long list of federal and state crimes which could serve as
22  predicate acts.  See 18 U.S.C. § 1961(1).  Here, Plaintiffs allege
23  predicate acts of wire fraud and financial institution fraud.  SAC
24  ¶ 165.  Specifically, Plaintiffs allege that Defendants
25  "participated in the process of obtaining, transmitting, billing,
26  and collecting Unauthorized Charges on [Defendants'] wireline bills
27  to Plaintiffs."  Id. ¶ 174.

28      As discussed in Section IV.B supra, Plaintiffs cannot state a

**United States District Court**
For the Northern District of California

1 claim for fraud because the unauthorized charges that they complain

2 of were disclosed in their agreements with Defendants. As such,

3 Plaintiffs also cannot state a claim for wire fraud or financial

4 institution fraud. While Plaintiffs may be able to show that

5 Defendants' practices are likely to deceive consumers for the

6 purposes of the UCL, see Section IV.C supra, the Court is aware of

7 no authority which holds that violation of such a consumer

8 protection statute can serve as a predicate act under RICO.[1]

9     For these reasons, the Court DISMISSES Plaintiffs' RICO claims

10 WITH PREJUDICE.

11     **G.**    **False Advertising Claims**

12     Plaintiffs assert claims for false advertising under the UCL

13 and FAL. The UCL prohibits "unfair, deceptive, untrue or

14 misleading advertising," Cal. Bus. & Prof. Code § 17200, and the

15 FAL makes it unlawful to induce the public to enter into any

16 obligation through the dissemination of "untrue or misleading"

17 statements, id. § 17500. These statutes have been "interpreted

18 broadly to embrace not only advertising which is false, but also

19 advertising which although true, is either actually misleading or

20 which has a capacity, likelihood or tendency to deceive or confuse

21 the public." Leoni v. State Bar, 39 Cal. 3d 609, 626 (Cal. 1985).

22     Plaintiffs' UCL and FAL claims are predicated on

23 representations made in Defendants' advertisements and promotional

24 materials between 2003 and 2012. See SAC ¶ 115. The Court

25 dismissed Plaintiffs' prior false advertising claims on the grounds

26 that Plaintiffs failed to plead reliance on Defendants'

27
28 [1] Further, finding that a UCL violation can serve as a predicate
act for the purposes of RICO would lead to a circular result here,
since Plaintiffs have alleged that Defendants' RICO violations are
predicate acts for the purposes of their UCL claims.

**United States District Court**
For the Northern District of California

1  advertisements or why those advertisements are false and

2  misleading.  Jan. 3 Order at 20-21.  In their SAC, Plaintiffs

3  generally allege which advertisements they saw and when they saw

4  them, and that they were exposed to Defendants' long-term

5  advertising campaign.  SAC ¶¶ 46, 57, 72, 116.  Plaintiffs also

6  allege that the following representations are false and misleading:

7  (1) Defendants' offices are "fully furnished and equipped"; (2)

8  Defendants have a "simple one page agreement"; (3) Defendants offer

9  "[o]ne monthly invoice," "[a]ll inclusive simple monthly payments,"

10  "ALL THIS for one low monthly price," and customers can "[g]et one

11  simple monthly bill with everything included."[2]  Id. ¶¶ 115, 127.

12  Plaintiffs explain that these statements are deceptive because

13  "[Defendants'] offices are not fully equipped without having to pay

14  the [u]nauthorized [c]harges," and the Office Agreement and Terms

15  and Conditions exceed one page.  Id.

16      Defendants move to dismiss Plaintiffs' false advertising

17  claims in their entirety, again arguing that Plaintiffs have failed

18  to plead reliance with the required specificity.  MTD at 10-11.  As

19  Defendants point out, it is not always clear what advertisements

20  Plaintiffs viewed.  For example, Plaintiffs allege that Plaintiff

21  Circle Click viewed Defendants' website on June 28, 2010, but do

22  not specifically allege what the website represented at that time.

23  See SAC ¶ 46.  Plaintiffs further allege that Circle Click or its

24  [2] Plaintiffs claim that Defendants' Office Agreement and Terms and
25  Conditions also constitute false advertising under the statue.  Id.
   ¶ 114.  Defendants move to dismiss this claim on the ground that a
26  contract is not an advertisement.  MTD at 15-16.  This argument has
   merit.  Plaintiffs have not pled a single fact suggesting that
27  these agreements were used as part of Defendants' promotional
   activities or that the contracts were made available to anyone
28  other than the contracting parties.  Accordingly, the Court finds
   that these documents cannot independently support Plaintiffs'
   claims for false advertising under the UCL or FAL.

**United States District Court**
For the Northern District of California

1   principal was exposed to Defendants' extensive and long-term

2   advertising campaign, but do not allege when this exposure began.

3   See id.

4        Plaintiffs invoke Tobacco II for the proposition that they

5   need not plead reliance with specificity.  Opp'n at 18, 21.  In

6   Tobacco II, the California Supreme Court held that where a

7   plaintiff alleges exposure to a long-term advertising campaign,

8   "the plaintiff is not required to plead with an unrealistic degree

9   of specificity that the plaintiff relied on particular

10  advertisements or statements."  46 Cal. 4th at 328.  Defendants

11  argue that most of the misrepresentations alleged by Plaintiffs

12  appeared on Defendants' website and, "[i]f maintaining a website

13  was sufficient, then nearly every company would fall into the

14  Tobacco II exception."  Reply at 3.  But Plaintiffs' reliance

15  allegations are just that Defendants maintained a website.

16  Plaintiffs also allege that Defendants have been making

17  substantially similar representations on that website for the last

18  decade.  Accordingly, the Court finds that the Tobacco II exception

19  applies here, at least for the purpose of the instant motion.

20       Even if the Tobacco II exception did not apply, Plaintiffs

21  have specifically alleged reliance as to Plaintiff Metro Talent.

22  Plaintiffs allege that Metro Talent received an email from

23  Defendants on September 30, 2011, one month prior to Metro Talent's

24  Office Agreement with Defendants.  SAC ¶¶ 56-57.  Plaintiffs also

25  allege that the September 30, 2011 email represented that

26  Defendants provided "[a] fully equipped Office . . . for one low

27  monthly price" and that Defendants' Office Agreements "are one

28  page."  Id. ¶ 42.

1    Defendants also move to dismiss Plaintiffs' false advertising

2    claims to the extent that they are premised on the Craigslist

3    advertisements described in paragraph 44 of the SAC.  MTD at 12-13.

4    As Defendants point out, the date and content of these

5    advertisements are unclear.  Plaintiffs do not describe when these

6    advertisements were posted or what they said, other than to allege

7    that the advertisements "suggest[] that the price listed [by

8    Defendants] is all inclusive."  SAC ¶ 44.  To the extent that

9    Plaintiffs' claims are predicated on these Craigslist

10   advertisements, they fail to meet the minimum pleading requirements

11   set forth by <u>Iqbal</u> and <u>Twombly</u>, let alone the particularity

12   requirements of Federal Rule of Civil Procedure 9(b).

13       Defendants also argue that the representations targeted by

14   Plaintiffs are puffery.  The Court agrees that a number of

15   statements listed in the SAC, including Defendants' representations

16   that their prices are "low," that their services provide

17   "flexibility for your business," and that their agreements are

18   "simple," amount to puffing statements.  These statements are not

19   actionable because they are vague, highly subjective, and generally

20   incapable of being controverted.  <u>See</u> <u>Haskell v. Time, Inc.</u>, 857 F.

21   Supp. 1392, 1399 (E.D. Cal. 1994).

22       However, the Court reaches a different conclusion with respect

23   to Defendants' representations that their Office Agreements are one

24   page, their offices are fully equipped, and their bills are all-

25   inclusive.  As Plaintiffs point out, Defendants' agreements are not

26   actually one page.  The one-page Office Agreement incorporates by

27   reference the Terms and Conditions, which are also one page, but

28   would be several pages if they were not printed in a miniscule

**United States District Court**
For the Northern District of California

1   font.  The Terms and Conditions also incorporate by reference the

2   House Rules, which are at least five pages.  Further, when read in

3   conjunction with the "fully-equipped" and "all inclusive billing"

4   representations, Defendants' statement that their Office Agreements

5   are only one page could possibly lead customers to ignore the Terms

6   and Conditions and the House Rules altogether.  They could also

7   potentially deceive consumers into believing that the monthly rent

8   listed in the Office Agreement is all=inclusive.[3]

9       Accordingly, the Court GRANTS in part and DENIES in part

10  Defendants' motion to dismiss Plaintiffs' false advertising claims

11  under the UCL and FAL.  Plaintiffs' false advertising claims are

12  dismissed to the extent that they are based on Defendants'

13  representations that their prices are "low," their services are

14  "flexible," and their agreements are "simple."  They are also

15  dismissed to the extent that they are predicated on advertisements

16  that are not specifically identified in the SAC.  If Plaintiffs

17  wish to amend their complaint to identify additional

18  advertisements, then they should file a motion for leave pursuant

19  to Rule 15.  Plaintiffs' false advertising claims remain

20  undisturbed in all other respects.

21      **H.    California Business and Professions Code Section 17509**

22      As part of their FAL claim, Plaintiffs also plead an

23  independent violation of California Business and Professions Code

24  section 17509.  <u>See</u> SAC ¶¶ 131-40.  Section 17509(a) provides in

25  _____

26  [3] Defendants argue that, as of June 28, 2010, their website
    included a disclaimer that all prices are exclusive of "IT,
27  telecoms, services, and applicable taxes."  MTD at 12.  The Court
    finds that the content of Defendants' website on that particular
28  day is a factual matter not appropriate for a motion to dismiss.
    Further, it is unclear whether all of Defendants advertisements
    were accompanied by such disclaimers.

pertinent part:

> Any advertisement, including any advertisement over
> the Internet, soliciting the purchase or lease of a
> product or service, or any combination thereof, that
> requires, as a condition of sale, the purchase or
> lease of a different product or service, or any
> combination thereof, shall conspicuously disclose in
> the advertisement the price of all those products or
> services.

Plaintiffs allege that Defendants violated this provision by advertising office space while failing to disclose that renters would also be required to purchase kitchen amenities, office restoration, and business continuity service in connection with that office space.  See SAC ¶ 132.

Defendants argue that Plaintiffs cannot state a claim under section 17509 because they have not pled reliance on a particular advertisement as to price.  MTD at 15-16.  However, nothing in the plain language of the statute suggests that an advertisement must list the price of a product or service in order to trigger section 17509.  The statute relates to "[a]ny advertisement . . . that requires, as a condition of sale, the purchase or lease of a different product or service."  Cal. Bus. & Prof. Code § 17509(a).

Defendants argue that the legislative history of section 17509 shows that the statute was intended to have a more limited scope. Reply at 10.  The enrolled bill report cited by Defendants shows that the author of the bill wanted to target advertisements that "do not disclose the price of the product or service the customer must purchase if he or she wishes to purchase the advertised product or service at the sale price." Consum. Affairs Comm. Enrolled Bill Rep., Assem. Bill No. 4032, Stats. 1984, ch. 643. However, the report also indicates that the bill encompasses other types of advertisements.  Specifically, it states that the bill

**United States District Court**
For the Northern District of California

1   "would require <u>any advertisement</u> for a tie-in sale to specify the

2   price of the tie-in product or service." <u>Id.</u>  In any event, the

3   Court need not consult the legislative history since the plain

4   language of the statute is unambiguous.

5        Accordingly, Defendants' motion to dismiss is DENIED as to

6   Plaintiffs' claim under California Business and Professions Code

7   section 17509.

8        **I.    <u>Unjust Enrichment</u>**

9        Plaintiffs assert claims for unjust enrichment on the grounds

10  that Defendants engaged in unlawful, unfair, and fraudulent acts

11  and practices in violation of the UCL and FAL and billed for

12  unauthorized charges.  SAC ¶¶ 154-163.  Defendants move to dismiss

13  these claims on the ground that there is nothing unjust about

14  charging fees for services both disclosed and performed.  MTD at

15  16.  This argument fails for the reasons set forth in Sections

16  IV.C-E, G <u>supra</u>.  Accordingly, Defendants' motion to dismiss is

17  DENIED as to Plaintiffs' unjust enrichment claims.

18

19  **V.   <u>CONCLUSION</u>**

20       For the reasons set forth above, Regus Management Group LLC,

21  Regus Business Centre LLC, Regus plc, HQ Global Workplaces LLC's

22  motion to dismiss Circle Click Media LLC, Metro Talent, LLC, CTNY

23  Insurance Group LLC's Second Amended Complaint is GRANTED in part

24  and DENIED in part.

25

26   •  Plaintiffs' claim for intentional misrepresentation is

27      DISMISSED WITH PREJUDICE.

28   •  Plaintiffs' claims for unfair and fraudulent practices under

1    the UCL remain undisturbed.

2  •  Plaintiffs' claim for unlawful practices under the UCL is

3      DISMISSED WITH PREJUDICE to the extent that it is predicated

4      on Defendants' alleged RICO violation, but remains undisturbed

5      in all other respects.

6  •  Plaintiffs' RICO claims are DISMISSED WITH PREJUDICE.

7  •  Plaintiffs' false advertising claims under the UCL and FAL are

8      dismissed to the extent they are predicated on the puffing

9      statements identified above and the Craigslist advertisements

10     that are not specifically identified in the SAC.  Plaintiffs'

11     false advertising claims are otherwise undisturbed.

12 •  Plaintiffs' unjust enrichment claims remain undisturbed.

13

14    IT IS SO ORDERED.

15

16    Dated: April 22, 2013

17                                    UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28