**United States District Court**
For the Northern District of California

1

2

3

4

5          IN THE UNITED STATES DISTRICT COURT

6         FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8  CIRCLE CLICK MEDIA LLC, METRO      ) Case No. 12-04000 SC
   TALENT, LLC, CTNY INSURANCE GROUP  )
9  LLC, on behalf of themselves and   ) ORDER RE: RULE 12(b)(1),
   all others similarly situated,     ) 12(b)(6), AND 12(f) MOTIONS
10                                     ) TO DISMISS COUNTERCLAIMS
               Plaintiffs,            )
11                                     )
     v.                                )
12                                     )
                                       )
13 REGUS MANAGEMENT GROUP LLC, REGUS   )
   BUSINESS CENTRE LLC, REGUS PLC, HQ  )
14 GLOBAL WORKPLACES LLC, and DOES 1   )
   through 50,                         )
15                                     )
                                       )
16             Defendants.             )
                                       )
17 ────────────────────────────────────

18 I.   **INTRODUCTION**

19      Plaintiffs Circle Click Media LLC ("Circle Click"), Metro

20 Talent, LLC ("Metro Talent"), and CTNY Insurance Group LLC ("CTNY")

21 (collectively, "Plaintiffs") bring this putative class action

22 against Regus Management Group LLC ("RMG"), Regus Business Centre

23 LLC, Regus plc, and HQ Global Workplaces LLC (collectively

24 "Defendants").  Defendants filed an answer, and, as part of that

25 answer, RMG asserts counterclaims against each of the named

26 Plaintiffs, as well as against members of the absent class.  ECF

27 No. 78 ("Answer") at 17-26 ("Countercl.").  Plaintiffs have filed

28 two motions to dismiss the counterclaims.  The first motion, which

is brought under Federal Rule of Civil Procedure 12(b)(1), asserts that the Court lacks subject matter jurisdiction.  ECF No. 81 ("12(b)(1) MTD").[1]  The second motion, which is brought under Rules 12(b)(6) and 12(f), asserts that the counterclaims should be dismissed for failure to state a claim and struck because they are redundant.  ECF No. 82 ("12(b)(6)/12(f) Mot.").  All motions are fully briefed.  ECF Nos. 84 ("12(b)(1) Opp'n"), 85 ("12(b)(6)/12(f) Opp'n"), 87 ("12(b)(1) Reply"), 88 ("12(b)(6)/12(f) Reply").  Per Civil Local Rule 7-1(b), the matters are appropriate for determination without oral argument.  For the reasons set forth below, the motion to dismiss for lack of subject matter jurisdiction is GRANTED in part and DENIED in part, the motion to dismiss for failure to state a claim is GRANTED, and the motion to strike is DENIED.

**II.   <u>BACKGROUND</u>**

RMG is in the business of leasing commercial office space throughout California and New York.  Countercl. ¶ 1.  Through its advertisements, RMG represents that it provides customers with fully equipped offices for one low monthly price.  ECF No. 77 ("Apr. 22 Order") at 3-4.  RMG has also represented that its services are "simple, easy, and flexible," and that its one-page contract -- the Office Service Agreement -- "takes just 10 minutes to complete."  <u>Id.</u> at 4.

Each of the named Plaintiffs in this action executed an Office

---

[1] Plaintiffs state that they are moving under Rule 12(b)(2), which pertains to personal jurisdiction, but they argue that the court lacks subject matter jurisdiction, a matter governed by Rule 12(b)(1).  The Court disregards the label, and treats Plaintiffs' motion as a Rule 12(b)(1) motion for lack of subject matter jurisdiction.

1   Service Agreement with RMG.  Countercl. ¶ 1.  The Office Service

2   Agreement is in fact one page, and it merely identifies the

3   location of the office space, the monthly office fee, the term of

4   the agreement, and the parties to it.  Apr. 22 Order at 2.  The

5   Office Service Agreement incorporates by reference another document

6   called the "Terms and Conditions."  Apr. 22 Order at 3.  The Terms

7   and Conditions is also only one page, but it is printed in five-

8   point font, which is almost illegible.  Id.  The Terms and

9   Conditions reference another document, the "House Rules," which

10  discloses a number of fees, including a mandatory, "Kitchen

11  Amenities / Beverage Fee"; a "[s]tandard services" fee, including a

12  fee "billed upon service activation for applicable telecom and

13  internet services"; an "Office Set Up Fee"; and a "Business

14  Continuity Fee."  Id.  The House Rules reference yet another

15  document, the Service Price Guide, which lists the prices for a

16  variety of services.  Id.

17      In July 2012, Plaintiffs filed this action against Defendants

18  in California state court.  ECF No. 1.  The action was subsequently

19  removed, and several rounds of pleading followed.  The gravamen of

20  Plaintiffs' Second Amended Complaint ("2AC"), Plaintiffs' operative

21  pleading, is that RMG and the other Defendants routinely assessed

22  Plaintiffs for charges that were not disclosed in the Office

23  Service Agreement.  ECF No. 65 ("2AC").  For example, the monthly

24  fee listed in Circle Click's Office Service Agreement is $2,461,

25  but Circle Click allegedly received monthly invoices ranging from

26  $2,559.67 to $6,653.79.  Id. ¶ 49.  Plaintiffs allege that Circle

27  Click was assessed charges for kitchen amenities (regardless of

28  whether these amenities were used), telephone lines, telecom

handsets, office restoration, and business continuity services,
among other things.  Id. ¶ 52.

In their 2AC, Plaintiffs seek to represent a class of all
persons who paid for Defendants' office space in California and New
York and were assessed charges by Defendants over the monthly
payments indicated in the Office Service Agreement or any similar
agreement.  Plaintiffs assert the following causes of action:
violation of California's Unfair Competition Law ("UCL"), Cal. Bus.
& Prof. Code § 17200, et seq.; violation of California's False
Advertising Law ("FAL"), id. § 17509; intentional
misrepresentation; unjust enrichment; and violations of the
Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18
U.S.C. § 1961, et seq.

Defendants previously moved to dismiss the 2AC, and that
motion was granted in part and denied in part on April 22, 2013.
The Court dismissed Plaintiffs' claim for intentional
misrepresentation with prejudice, reasoning that Plaintiffs could
not plausibly claim that Defendants had exclusive knowledge of
various fees when those fees were disclosed in the documents
referenced in the parties' agreements.  Apr. 22 Order at 11.
Plaintiffs' RICO claim was dismissed because Plaintiffs could not
state a claim for intentional misrepresentation.  Id. at 16-17.
Plaintiffs' other causes of action remained largely undisturbed.
Id. at 23-24.

Defendants subsequently filed an Answer, in which RMG asserted
several counterclaims.  The "Counterclaim-Defendants" identified in
the Answer are Circle Click, Metro Talent, CTNY, and "Unnamed
Counterclaim-Defendants."  Countercl. ¶¶ 11-14.  The Unnamed

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1  Counterclaim-Defendants are essentially the absent members of the

2  classes proposed by Plaintiffs.  See id. ¶ 14.

3      RMG asserts counterclaims for breach of contract against

4  Circle Click and CTNY.  RMG also asserts three "alternative"

5  counterclaims against "all Counterclaim-Defendants": (1) breach of

6  contract, (2) quantum meruit, and (3) unjust enrichment.[2]

7  Countercl. ¶¶ 21-49.  The facts alleged in Counterclaim are bare

8  bones.  RMG alleges that Circle Click and CTNY failed to make

9  required payments under the Office Service Agreement.  Id. ¶¶ 21-

10  32.  Specifically, RMG alleges that Circle Click failed to pay

11  $1,047 in business continuity fees and that CTNY failed to pay

12  $13,640.38 in monthly payments and "applicable taxes and fees."

13  Id. ¶¶ 26, 32.  The counterclaim contains no factual allegations

14  regarding wrongdoing on the part of Metro Talent or the absent

15  class members.

16

17  **III. DISCUSSION**

18      **A.   Plaintiffs' Rule 12(b)(1) Motion to Dismiss**

19      The thrust of Plaintiffs' Rule 12(b)(1) motion is that RMG

20  cannot state a claim against the absent class members since they

21  are not opposing parties for the purposes of Rule 13.  Plaintiffs

22  further argue that the court lacks subject matter jurisdiction over

23  the counterclaims without the absent class members, since with

24  respect to the individual Plaintiffs, Defendant has alleged an

25  amount in controversy of only $14,687.38, well below the $75,000

26  jurisdictional minimum.

27  ────────────────────

28  [2] RMG misnumbered its alternative counterclaims.  For the sake of
clarity, the Court refers to RMG's alternative counterclaims for
breach of contract, quantum meruit, and unjust enrichment as the
first, second, and third alternative counterclaims, respectively.

**United States District Court**
For the Northern District of California

1        **1.    RMG's Counterclaims against the Absent Class Members**

2        Rule 13 allows a defendant to assert a compulsory or

3   permissive counterclaim against an "opposing party."  Fed. R. Civ.

4   P. 13(a)-(b).  Plaintiffs argue that the absent class members are

5   not opposing parties within the meaning of Rule 13 since they are

6   not named parties.  Mot. at 3.  RMG disagrees, arguing that class

7   members who join this action should be prepared to accept the legal

8   consequences and risks of litigation, and that RMG should be able

9   to strike back against any party that sues it.  Opp'n at 2.

10       RMG primarily relies on a 1977 decision out of the Southern

11  District of New York, National Super Spuds, Inc. v. New York

12  Mercantile Exchange, 75 F.R.D. 40 (S.D.N.Y. 1977).  Id. at 2-4.

13  The plaintiffs in that case sought to represent a class of persons

14  who held net long positions on potato futures contracts.  Nat'l

15  Super Spuds, 75 F.R.D. at 41.  They alleged that short sellers, in

16  concert with a number of brokers, manipulated the trading price of

17  the futures contracts.  Id. at 42.  One of the broker defendants

18  asserted a counterclaim, alleging that various members of the class

19  engaged in a counter-conspiracy to squeeze the futures market.  Id.

20  Some of the counter-defendants were identified by name, while

21  others were not.  Id.

22       The court held that certain absent class members were opposing

23  parties within the meaning of Rule 13 "within the context of th[e]

24  case."  Id.  The court reasoned that Rule 42 authorized the

25  consolidation of any or all common issues related to the case, as

26  well as orders to avoid unnecessary cost or delay.  Id. at 44.  The

27  court found that "this is a particularly apt case for exercising

28  . . . discretion under Rule 42 to consolidate . . . the various

issues," since, if the counterclaims were dismissed and asserted again in a related action, the related claims would be reassigned to the court under the local rules. Id. The court also noted that some of the issues raised by the counterclaims could be raised as affirmative defenses. Id.

The decision in National Super Spuds is not binding on this court. In any event, the case is distinguishable. The counterclaim in National Super Spuds targeted particular individuals who were allegedly engaged in a common conspiracy to manipulate prices. The breach of contract, quantum meruit, and unjust enrichment counterclaims in the instant action target the entire class, and there is no indication that these counterclaims raise common issues of fact or law. Further, unlike in National Super Spuds, taking up RMG's counterclaims against the class makes little sense from a case management perspective. Defendants would essentially have the Court assume jurisdiction over any number of distinct breach of contract claims that would otherwise be resolved in state court.

The other cases cited by RMG -- which were also decided decades ago by out-of-circuit courts -- are equally unpersuasive. In Wolfson v. Artisans Savings Bank, plaintiffs asserted antitrust claims against banks that required escrow accounts for the payment of taxes and insurance in connection with mortgages, but then failed to pay interest on the escrowed funds. 83 F.R.D. 552, 554 (D. Del. 1979). The court allowed the defendants to assert a counterclaim against the absent class members for expenses incurred in maintaining the escrow accounts, reasoning that the counterclaim bore a "logical relationship" to the plaintiffs' claim. Id. But

**United States District Court**
For the Northern District of California

1  the Court dismissed the defendants' counterclaim for unjust

2  enrichment, reasoning that "it concern[ed] individual and distinct

3  loan transactions as to which no agreement or parallel conduct is

4  claimed and would require examination of payments collected and

5  disbursed in the individual escrow accounts of individual class

6  members against whom this claim is asserted." Id. at 555.  RMG's

7  counterclaims for breach of contract, quauntum meruit, and unjust

8  enrichment resemble the unjust enrichment counterclaim that was

9  dismissed in Wolfson, not the counterclaim for expenses incurred.

10     Herrmann v. Atlantic Richfield Co., 72 F.R.D. 182 (W.D. Pa.

11  1976) also does not help RMG.  In that antitrust action, the

12  defendant sought leave to assert two types of counterclaims: (1)

13  debt collection claims that sought affirmative judgment against

14  certain individual class members, and (2) set-offs against various

15  class members for "outstanding balances of previously-filed

16  unsatisfied judgments against individual members of the plaintiff

17  class." Id. at 185-86.  The court dismissed the former but allowed

18  the latter to proceed.  Id.  None of RMG's counterclaims resemble

19  the set-off claims at issue in Hermann.  RMG has made no reference

20  to previously filed unsatisfied judgments.  Rather, RMG appears to

21  expect the Court to render independent judgments with respect to

22  each individual class member.  Further, RMG represents that its

23  counterclaims are distinct from its affirmative defense of set-off

24  because the counterclaims seek damages and other affirmative

25  relief.  See 12(b)(6)/12(f) Opp'n at 11.

26     In sum, the case law cited by RMG does not support the

27  contention that RMG may assert counterclaims against the absent

28  class members in this context.  Even if it does, Plaintiffs have

1   cited contrary authority that is more persuasive and more recent,

2   including Allapattah Services., Inc. v. Exxon Corp., 333 F.3d 1248

3   (11th Cir. 2003).   In that case, the Court found that a class

4   action defendant had a right to assert set-off claims against class

5   members, even though it had not asserted those set-off claims in

6   its answer.  Id. at 1259.  The Court explained that, although Rule

7   13 normally requires a party to assert a counterclaim in its

8   pleadings, "Rule 13 . . . is inapplicable in class action suits,

9   because absent class members are not opposing or litigating

10  adversaries for purposes of Rule 13." Id. at 1259 n.14 (quotations

11  omitted).  The court further stated: "[I]f absent class members are

12  not opposing parties within the meaning of the rule, it follows

13  that any counterclaims that may be permitted in a class action are

14  not governed by Rule 13 and are purely discretionary with the

15  court." Id. (quoting 2 Alba Conte & Herbert B. Newberg, Newberg on

16  Class Actions § 4:34, at 299–300 (4th ed.2002)).

17      This Court reached a similar conclusion in Roberts v. Heim, C

18  84-8069 TEH, 1994 WL 675261 (N.D. Cal. Sept. 16, 1994).  Roberts

19  involved a class action for securities fraud.  Id. at *1.  The

20  defendant sought to assert breach of contract counterclaims against

21  the limited partners of various partnerships involved in the case.

22  Id.  The court held that such absent class members could not

23  qualify as parties to the litigation within the meaning of Rule 13.

24  Id.  The court also found that policy and due process concerns

25  supported this conclusion, since the absent class members had not

26  been provided with notice that failure to opt out of the class

27  would render them vulnerable to counterclaims, waiving any personal

28  jurisdiction objections they might have.  Id.  RMG argues that

there is still time to provide notice to the absent class members
here.  However, the language of the Roberts opinion suggests that
the court's decision was not based solely on concerns about notice
and opt-out opportunities.  See id.

The Court's conclusion is further supported by the Supreme
Court's decision in Phillips Petroleum Co. v. Shutts, 472 U.S. 797
(1985), which post-dates all of RMG's authority.  In that case, the
plaintiffs, who owned the rights to natural gas leases, brought a
class action against a natural gas producer seeking to recover
interest on delayed royalty payments.  Id. at 799.  The plaintiffs
and the class prevailed in Kansas state court.  On appeal, the
defendant contended that the state court erred in exerting
jurisdiction over the class claims without first obtaining the
class members' express consent, and that class members' failure to
execute and return a request for exclusion could not constitute
consent.  Id. at 806.  The defendant essentially argued that due
process concerns prevented Kansas from exerting jurisdiction over
the claims of the out-of-state class members unless those class
members had sufficient minimum contacts with Kansas.  Id. at 808.

The Supreme Court disagreed, finding that the burdens placed
on an out-of-state defendant are "not of the same order or
magnitude" as those placed on an absent, out-of-state class member:

> An out-of-state defendant summoned by a plaintiff is
> faced with the full powers of the forum State to
> render judgment against it.  The defendant must
> generally hire counsel and travel to the forum to
> defend itself from the plaintiff's claim, or suffer a
> default judgment. The defendant may be forced to
> participate in extended and often costly discovery,
> and will be forced to respond in damages or to comply
> with some other form of remedy imposed by the court
> should it lose the suit.

**United States District Court**
For the Northern District of California

1    <u>Id.</u>  On the other hand:

2       Absent plaintiff class members are not subject to
        other burdens imposed upon defendants.  They need not
3       hire counsel or appear. They are almost never subject
        to counterclaims or cross-claims, or liability for
4       fees or costs.  Absent plaintiff class members are not
        subject to coercive or punitive remedies. Nor will an
5       adverse judgment typically bind an absent plaintiff
        for any damages, although a valid adverse judgment may
6       extinguish any of the plaintiff's claims which were
        litigated.
7

8    <u>Id.</u> at 810.  Thus, <u>Shutts</u> suggests that courts should have

9    reservations about allowing defendants to assert counterclaims

10   against absent class members, especially counterclaims which may

11   bind absents plaintiffs for damages.

12       Accordingly, RMG's counterclaims for breach of contract,

13   quantum meruit, and unjust enrichment are DISMISSED with respect to

14   the absent class members.

15            **2.    <u>RMG's Counterclaims against the Named Plaintiffs</u>**

16       Plaintiffs argue that, without the counterclaims against the

17   absent class members, the Court lacks subject matter jurisdiction

18   over RMG's counterclaims against the named plaintiffs.  Mot. at 4.

19   RMG alleges two bases for subject matter jurisdiction: diversity

20   jurisdiction under 28 U.S.C. § 1332(a), and the Class Action

21   Fairness Act ("CAFA"), 28 U.S.C. § 1453.  Countercl. ¶ 8.  As

22   Plaintiffs point out, under § 1332(a), the Court can only exercise

23   diversity jurisdiction where the amount in controversy is more than

24   $75,000, and RMG has only alleged $14,687.38 in damages with

25   respect to the individual Plaintiffs.  <u>Id.</u> ¶¶ 26, 32.  Plaintiffs

26   also argue that class action counterclaims are not the types of

27   claims over which CAFA may confer subject matter jurisdiction.

28   Mot. at 4 (citing <u>Progressive W. Ins. Co. v. Preciado</u>, 479 F.3d

1    1014, 1018 (9th Cir. 2007)).

2        In its opposition brief, RMG does not dispute that the Court

3    may not exercise diversity or CAFA jurisdiction without the

4    counterclaims against the absent class members.  Instead it argues,

5    for the first time, that the court should exercise supplemental

6    jurisdiction pursuant to 28 U.S.C. § 1367(a).  Opp'n at 6.

7    Plaintiff responds that the Court should not consider exercising

8    supplemental jurisdiction because RMG failed to plead it.  Reply at

9    6.  Plaintiffs also argue that the exercise of supplemental

10   jurisdiction is inappropriate since RMG's counterclaims are not

11   compulsory, and discretionary supplemental jurisdiction should not

12   be exercised over RMG's permissive counterclaims.

13       Plaintiffs' argument that the Court must refuse to consider a

14   basis for subject matter jurisdiction that is not expressly alleged

15   in the complaint is unavailing.  It is true that Federal Rule of

16   Civil Procedure 8(a)(1) requires that a pleading contain "a short

17   and plain statement of the grounds for the court's jurisdiction,"

18   and that the party invoking federal jurisdiction bears the burden

19   of establishing jurisdiction.  Lujan v. Defenders of Wildlife, 504

20   U.S. 555, 561 (1992).  However, when considering a motion to

21   dismiss for lack of jurisdiction, the court is not limited to the

22   allegations of the complaint.  Scolaro v. Dist. of Columbia Bd. of

23   Elections & Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000).

24   Accordingly, if the facts of the case, as pled, clearly bring this

25   case within the court's jurisdiction, a failure to expressly allege

26   a basis for jurisdiction is not necessarily fatal.[3]

27   _____
     [3] Moreover, dismissing the counterclaim for failure to expressly
28   allege a basis for subject matter jurisdiction would merely delay
     determination of an issue that is presently suitable for
     determination.  The Court would need to dismiss with leave to

**United States District Court**
For the Northern District of California

1    Turning to the merits of the parties' jurisdictional

2   arguments, 28 U.S.C. § 1367(a) provides for supplemental

3   jurisdiction over state law claims "that are so related to claims

4   in the action within [the district court's] original jurisdiction

5   that they form part of the same case or controversy under Article

6   III of the United States Constitution."  Section 1367 applies to

7   claims brought by a plaintiff, as well as counterclaims brought by

8   a defendant.  As noted above, Federal Rule of Civil Procedure 13

9   defines two types of counterclaims, compulsory and permissive.

10    Compulsory counterclaims are those that "arise[] out of the

11   transaction or occurrence that is the subject matter of the

12   opposing party's claim."  Fed. R. Civ. P. 13(a)(1)(A).  Federal

13   courts apply a liberal "logical relationship" test to determine

14   whether two claims arise out of the same transaction or occurrence.

15   Pochiro v. Prudential Ins. Co. of Am., 827 F.2d 1246, 1249 (9th

16   Cir. 1987).  "This flexible approach to Rule 13 problems attempts

17   to analyze whether the essential facts of the various claims are so

18   logically connected that considerations of judicial economy and

19   fairness dictate that all the issues be resolved in one lawsuit."

20   Id. (quotations omitted).  "The traditional rule is that federal

21   courts have supplemental jurisdiction over compulsory

22   counterclaims, since a plaintiff would otherwise lose his

23   opportunity to be heard on that claim."  Sparrow v. Mazda Am.

24   Credit, 385 F. Supp. 2d 1063, 1066 (E.D. Cal. 2005).

25    Permissive counterclaims are those that are not compulsory,

26   i.e., those that do not arise out of the transaction or occurrence

27   _____

28   amend.  Thus, RMG could amend its counterclaim to expressly allege
supplemental jurisdiction, and Plaintiffs could file yet another
motion to dismiss for lack of subject matter jurisdiction.

that is the subject matter of the opposing party's claim. Fed. R. Civ. P. 13(b). Courts may exercise supplemental jurisdiction over permissive counterclaims so long as they "arise out of facts that bear some relationship to the facts from which the federal claim arises so that the state claim and the federal claim are considered part of the same constitutional 'case.'" Sparrow, 385 F. Supp. 2d at 1067. However, even if supplemental jurisdiction exists over a counterclaim, a district court may decline to exercise jurisdiction where:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

Where plaintiffs have brought claims under the Fair Debt Collection Practices Act ("FDCPA"), other courts in this circuit have found that counterclaims for underlying consumer debts are permissive. See Robles v. Ally Bank, 12CV01013 AJB MDD, 2013 WL 28773, at *4 (S.D. Cal. Jan. 2, 2013); Sparrow, 385 F. Supp. 2d at 1069. Some of these courts have found that the potential for supplemental jurisdiction exists under § 1367(a), but have exercised their discretion to decline jurisdiction pursuant to § 1367(c). See Robles, 2013 WL 28773, at *4-5. For example, in Robles, the court reasoned that "exercising supplemental

jurisdiction over counterclaims brought by debt collector
defendants, based on the underlying debt, might have a chilling
effect on plaintiffs who otherwise might and should bring suits
under the FDCPA."  Id. at *5.  The court also found that
Defendants' counterclaims involved questions of "no federal
significance," adjudicating those counterclaims would "increase
both the complexity and length of time necessary to resolve
Plaintiffs' FDCPA claim, and declining jurisdiction did not raise
the risk of inconsistent judgments.  Id. at *5.

    The Court finds that RMG's counterclaims bear at least some
relationship to the facts from which Plaintiffs' claims arise.
Both Plaintiffs' claims and RMG's counterclaims implicate the
Office Service Agreement.  Plaintiffs allege that RMG unlawfully
assessed fees that were not disclosed in the Office Service
Agreement, and RMG alleges that the named Plaintiffs breached the
agreement by failing to pay some of the fees that Plaintiffs claim
were not disclosed.  The Court also finds that declining to
exercise jurisdiction pursuant to § 1367(c) would be inappropriate.
RMG's counterclaims do not raise novel or complex issues of state
law.  Nor do the counterclaims substantially predominate over
Plaintiffs' claims.  Moreover, the exceptional circumstances cited
in Robles are not present here, primarily because both Plaintiffs'
claims and RMG's counterclaims implicate whether RMG can lawfully
assess certain incidental fees.  In contrast, the FDCPA claims at
issue in Robles did not implicate the underlying debt.

    For these reasons, the Court declines to dismiss RMG's
counterclaims against the named Plaintiffs for lack of subject
matter jurisdiction.

**United States District Court**
For the Northern District of California

**B.**   **Plaintiffs' Rule 12(b)(6) Motion to Dismiss and Rule 12(f) Motion to Strike**

As the Court chooses to exercise jurisdiction over RMG's counterclaims against the named Plaintiffs, it now turns to Plaintiffs' Rule 12(b)(6) motion to dismiss and Rule 12(f) motion to strike.   The Court does not address Plaintiffs' arguments with respect to the absent class members, since it has already dismissed RMG's counterclaims against the class because they are not opposing parties for the purposes of Rule 13.   See Section III.A.1 supra.

**1.**   **Legal Standard**

A Rule 12(b)(6) motion to dismiss "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).   "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009).   However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.   Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 663 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).   The allegations made in a complaint must be both "sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that the party may effectively defend against it" and "sufficiently plausible" such that "it is not unfair to require the opposing party to be

1    subjected to the expense of discovery."  <u>Starr v. Baca</u>, 633 F.3d

2    1191, 1204 (9th Cir. 2011).

3        Federal Rule of Civil Procedure 12(f) provides that a court

4    may, on its own or on a motion, "strike from a pleading an

5    insufficient defense or any redundant, immaterial, impertinent, or

6    scandalous matter."  Motions to strike "are generally disfavored

7    because they are often used as delaying tactics and because of the

8    limited importance of pleadings in federal practice."  <u>Rosales v.</u>

9    <u>Citibank</u>, 133 F. Supp.2d 1177, 1180 (N.D. Cal. 2001).  In most

10   cases, a motion to strike should not be granted unless "the matter

11   to be stricken clearly could have no possible bearing on the

12   subject of the litigation."  <u>Platte Anchor Bolt, Inc. v. IHI, Inc.</u>,

13   352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004).

14       **2.    Breach of Contract Counterclaims against Circle**

15            **Click and CTNY**

16       RMG asserts breach of contract counterclaims against Circle

17   Click and CTNY.  RMG alleges that Circle Click failed to pay a

18   $1,047.00 business continuity services fee pursuant to Paragraph

19   1.7 of the Terms and Conditions and Paragraph 38 of the House

20   Rules.  Countercl. ¶ 23-24.  As to CTNY, RMG alleges the company

21   breached the terms of its agreement by "by failing to make its

22   monthly payments plus applicable taxes and fees for services, such

23   as for kitchen amenities, internet activation and access, and

24   business continuity," and alleges damages in "an amount no less

25   than $13,640.38."  <u>Id.</u> ¶¶ 30, 32.

26       Plaintiffs argue that these counterclaims fail as a matter of

27   law since neither the House Rules nor the Service Price Guide --

28   which set forth the business continuity and kitchen amenities fees,

United States District Court
For the Northern District of California

among other things -- are part of the parties' agreements.
12(b)(6)/12(f) Mot. at 10.  Under California law, "[f]or the terms
of another document to be incorporated into the document executed
by the parties the reference must be clear and unequivocal, the
reference must be called to the attention of the other party and he
must consent thereto, and the terms of the incorporated document
must be known or easily available to the contracting parties."
Chan v. Drexel Burnham Lambert, Inc., 178 Cal. App. 3d 632, 641
(Cal. Ct. App. 1986) (quotations omitted).  Likewise, New York law
requires that: (1) the agreement "specifically reference and
sufficiently describe the document to be incorporated, such that
the latter may be identified beyond all reasonable doubt"; and (2)
"it must be clear that the parties to the agreement had knowledge
of and assented to the incorporated terms."  Ryan, Beck & Co., LLC.
v. Fakih, 268 F. Supp. 2d 210, 223 (E.D.N.Y. 2003) (internal
quotations omitted).  Plaintiffs argue that these factors are not
satisfied here because Defendant has not alleged that the House
Rules and Service Price Guide were provided to Circle Click or
CTNY.  12(b)(6)/12(f) Mot. at 11.  Plaintiffs further argue that
because the Terms and Conditions are practically illegible, the
reference to the House Rules contained in the Terms and Conditions
is neither clear nor unequivocal.  Id.

RMG responds that the Court's April 22 Order already found
that the House Rules and Services Price Guide are expressly
incorporated into the Office Service Agreement.  12(b)(6)/12(f)
Opp'n at  7.  The April 22 Order held that Plaintiffs could not
state a plausible claim for intentional misrepresentation based on
a theory of non-disclosure, because RMG's fees were disclosed in

United States District Court
For the Northern District of California

the Terms and Conditions, House Rules, and Service Price Guide. Apr. 22 Order at 10-11. The Court reasoned that Plaintiffs confirmed that they had "read and understood" the Terms and Conditions when they signed the Office Service Agreement, the Terms Conditions expressly referred to the House Rules, and the House Rules expressly referred to the Service Price Guide. Id. The Court agrees with the Plaintiffs, that its April 22 holding was limited to Plaintiffs' fraud claim. See 12(b)(6)/12(f) Reply at 9-10. However, the reasoning of the April 22 Order applies with equal force here. Plaintiffs cannot claim ignorance of the Terms and Conditions or the documents referenced therein if they expressly confirmed that they had read and understood the Terms and Conditions. Further, it remains unclear whether the copy of the Terms and Conditions provided to Plaintiffs at the time of contract formation was as illegible as the copy before the Court.[4]

Plaintiffs also argue that the allegations in RMG's counterclaim against Circle Click are contradicted by an RMG invoice. 12(b)(6)/12(f) Mot. at 9. Plaintiffs argue that the Court may take judicial notice of the invoice because it is referenced in the Terms and Conditions. Id. (citing Terms and Conditions § 8.5). The Court disagrees. In relevant part, Section 8.5 of the Terms and Conditions provides: "If the Client disputes any part of an Invoice, the Client must pay the amount not in dispute by the due date or be subject to late fees." The Terms and Conditions do not specifically refer to the particular invoice

---

[4] The Court has yet to make a determination about whether the Office Service Agreement and the referenced documents constitute valid and enforceable agreements. Nothing in this Order precludes Plaintiffs from asserting that the agreements are unconscionable and therefore unenforceable.

**United States District Court**
For the Northern District of California

1  proffered by Plaintiffs.  As such, that invoice constitutes

2  extrinsic evidence -- not a written instrument incorporated by

3  reference into the pleadings -- and is not appropriate for

4  consideration on a Rule 12(b)(6) motion to dismiss.[5]

5      Nevertheless, RMG's breach of contract counterclaims against

6  Circle Click and CTNY suffer from a number of significant pleading

7  defects.  First, RMG has not alleged that the House Rules and the

8  Service Price Agreement were in fact made available to Plaintiffs.

9  Second, RMG has not alleged what provisions of the relevant

10  agreements were breached.  As to CTNY, RMG's pleading does not

11  refer to a particular provision of the Office Service Agreement,

12  the Terms and Conditions, or the House Rules.  Further, RMG does

13  not allege what portion of the allegedly unpaid $13,640.38 in fees

14  constitutes monthly payments and what portion is for taxes and

15  services.  RMG's allegations with respect to Circle Click offer

16  more detail.  RMG alleges that Circle Click breached Paragraph 1.7

17  of the Terms and Conditions and Paragraph 38 of the House Rules.

18  However, the Counterclaim does not set forth the language of these

19  provisions, and, due to miniscule font size and poor image quality,

20  the Court cannot clearly make out certain terms in the copy of the

21  Terms and Conditions previously filed, even with magnification.

22      Accordingly, RMG's breach of contract counterclaims against

23  Circle Click and CTNY are DISMISSED with leave to amend.  If RMG

---

24  [5] The invoice proffered by Plaintiffs suggests that RMG waived the
    $1,047.00 business continuity fee that Circle Click allegedly
25  failed to pay.  ECF No. 83 Ex. A.  RMG disputed the authenticity of
    the invoice in its opposition brief, 12(b)(6)/12(f) Opp'n at 2, but
26  subsequently withdrew this contention, ECF No. 86.  While the Court
    may not take judicial notice of the invoice, it reminds RMG of its
27  Rule 11 obligations.  If the factual allegations underlying the
    breach of contract counterclaim against Circle Click have no
28  evidentiary support, then that counterclaim should be withdrawn.
    See Fed. R. Civ. P. 11(b)(3).

1  elects to amend these counterclaims, its pleading should set forth

2  the relevant provisions of the agreements verbatim, specify how

3  Plaintiffs breached those provisions, and allege whether the House

4  Rules and Service Price Guide were made available to Plaintiffs.

5          **3.    "Alternative" Counterclaim for Breach of Contract**

6          RMG also asserts "alternative" counterclaims against "all

7  Counterclaim-Defendants," which presumably includes the named

8  Plaintiffs, Circle Click, CTNY, and Metro Talent.  These

9  alternative counterclaims are entitled: (1) breach of contract, (2)

10  quantum meruit, and (3) unjust enrichment.  As to the first

11  alternative counterclaim for breach of contract, RMG alleges: "In

12  the event the Court determines that the late payment penalty

13  provisions set forth in [the Office Service Agreement] is invalid,

14  or is otherwise unenforceable, and that the [Office Service

15  Agreement] did not allow Counterclaim-Defendants to make past-due

16  payments, then Counterclaim-Defendants damaged RMG by failing to

17  timely pay all amounts due to RMG."  Countercl. ¶ 35.  In its

18  opposition brief, RMG clarifies that it is merely alleging that

19  Plaintiffs breached their contractual obligations with RMG by

20  failing to make timely payments.  12(b)(6)/12(f) Opp'n at 9.

21          As to Circle Click and CTNY, the alternative breach of

22  contract counterclaim fails for the same reasons as RMG's other

23  counterclaims for breach of contract.  See Section III.B.2 supra.

24  It is entirely unclear from the pleading what payments Circle Click

25  or CTNY failed to make or what provisions of the agreements they

26  breached.  RMG's counterclaim against Metro Talent is even less

27  plausible.  The only factual allegation specific to Metro Talent in

28  the Counterclaim states that Metro Talent is a limited liability

**United States District Court**
For the Northern District of California

1   company organized and existing under the laws of California.

2   Countercl. ¶ 12. RMG essentially urges the Court to ignore the

3   pleading defects in the counterclaim and focus on Plaintiffs' 2AC.

4   12(b)(6)/12(f) Opp'n at 4. However, contrary to RMG's argument,

5   the 2AC does not establish that Metro Talent failed to timely pay

6   its bills. The 2AC paragraphs cited by RMG merely allege that

7   Metro Talent was assessed fees that were not disclosed in the

8   Office Service Agreement, that Metro Talent questioned these fees,

9   and that RMG threatened to evict Metro Talent if it failed to pay

10   the fees within in a certain time period. See 2AC ¶¶ 62(c)-69.

11   The 2AC does not suggest that Metro Talent failed to pay the

12   challenged fees or that its payments were late.

13       RMG's alternative counterclaim for breach of contract is

14   DISMISSED with leave to amend as to the named Plaintiffs. Should

15   RMG choose to amend this counterclaim, it should allege specific

16   facts as to each Plaintiff supporting each element of a claim for

17   breach of contract.

18          **4.**   **<u>RMG's Alternative Counterclaims for Quantum Meruit</u>**

19               **<u>and Unjust Enrichment</u>**

20       Plaintiffs also move to strike RMG's second and third

21   alternative counterclaims for quantum meruit and unjust enrichment.

22   Both claims essentially assert that if the Court finds that RMG

23   imposed unauthorized charges, then RMG is entitled to recover

24   damages because Plaintiffs received the benefit of their contracts

25   with RMG. See Countercl. ¶¶ 39, 46. Plaintiff moves to strike

26   these counterclaims pursuant to Rule 12(f) on the grounds that (1)

27   the counterclaims are mirror images of the claims asserted in the

28   2AC, and (2) the counterclaims are redundant of affirmative

**United States District Court**
For the Northern District of California

1   defenses already asserted by Defendants in their Answer.[6]

2   12(b)(6)/12(f) Mot. at 13.

3        Plaintiffs appear to abandon the first argument in their reply

4   brief.  In any event, the argument is unpersuasive.  Plaintiffs

5   rely on Daily v. Fed. Ins. Co., C 04-3791 PJH, 2005 WL 14734, at *6

6   (N.D. Cal. Jan. 3, 2005), in which this court struck the

7   defendant's counterclaim for declaratory relief because it was

8   redundant of the plaintiff's claim for declaratory relief.  Both

9   the claim and the counterclaim asked the court to determine whether

10  the plaintiff was entitled to insurance coverage from defendant.

11  Id.  In contrast, none of the parties have sought declaratory

12  relief in this action, and RMG's counterclaims raise new issues

13  that are not contemplated in Plaintiffs' 2AC.

14       Plaintiffs' second argument is also unavailing.  RMG's

15  counterclaims for unjust enrichment and quantum meruit are not

16  merely repackaged affirmative defenses, because they are different

17  in scope and seek a different remedy.  As Plaintiffs point out, RMG

18  also asserts affirmative defenses for "benefits realized,"

19  "setoff," and "unjust enrichment."  However, these affirmative

20  defenses merely assert that Plaintiffs' claims are barred.  In

21  contrast, RMG's counterclaims seek to recover damages.

22       Accordingly, Plaintiffs' motion to strike is DENIED and RMG's

23  counterclaims for unjust enrichment and quantum meruit remain

24  undisturbed.

25  ///

26  ///

---

27  [6] Plaintiffs move to strike RMG's first alternative counterclaim
28  for breach of contract on these same grounds.  In light of the
    Court's findings in Sections III.A.1 and III.B.3 supra, it need not
    address this issue.

23

**United States District Court**
For the Northern District of California

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs' Rule 12(b)(1) motion to dismiss is GRANTED in part and DENIED in part.  RMG's counterclaims are DISMISSED with respect to the putative class.  Plaintiffs' Rule 12(b)(6) motion to dismiss is GRANTED.  RMG's first and second counterclaims for breach of contract against Circle Click and CTNY are DISMISSED with leave to amend, as is RMG's first alternative counterclaim for breach of contract against Circle Click, CTNY, and Metro Talent.  Plaintiffs' motion to strike the second and third alternative counterclaims for unjust enrichment and quantum meruit is DENIED.

RMG shall file an amended counterclaim within thirty (30) days of the signature date of this order.  Failure to do so will result in dismissal with prejudice of its first and second counterclaims for breach of contract, as well as its first alternative counterclaim for breach of contract.


IT IS SO ORDERED.


Dated: August 13, 2013                    _____

                                          UNITED STATES DISTRICT JUDGE