IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CIRCLE CLICK MEDIA LLC, and CTNY INSURANCE GROUP LLC, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>REGUS MANAGEMENT GROUP LLC, REGUS BUSINESS CENTRE LLC, REGUS PLC, HQ GLOBAL WORKPLACES LLC, and DOES 1 through 50,<br><br>    Defendants. | Case No. 12-04000 SC<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS SECOND AMENDED COUNTERCLAIM |

## I. INTRODUCTION

Plaintiffs Circle Click Media LLC ("Circle Click") and CTNY Insurance Group LLC ("CTNY") (collectively, "Plaintiffs") bring this putative class action against Regus Management Group LLC ("RMG"), Regus Business Centre LLC, Regus plc, and HQ Global Workplaces LLC (collectively "Defendants"). RMG has asserted a counterclaim for breach of contract against CTNY, as well as other counterclaims against both Plaintiffs. After the Court dismissed RMG's counterclaims with leave to amend on August 13, 2013, RMG filed a Second Amended Counterclaim. ECF Nos. 90 ("Aug. 13 Order"), 101 ("SACC"). Plaintiffs now move to dismiss the SACC

pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 107 ("Mot."). The Motion is fully briefed, ECF Nos. 110 ("Opp'n"), 114 ("Reply"), and appropriate for determination without oral argument per Civil Local Rule 7-1(b). For the reasons set forth below, the Motion is GRANTED in part and DENIED in part.

**II. BACKGROUND**

RMG is in the business of leasing commercial office space throughout California and New York. Through its advertisements, RMG represents that it provides customers with fully equipped offices for one low monthly price. RMG has also represented that its services are "simple, easy, and flexible," and that its one-page contract -- the Office Service Agreement -- "takes just 10 minutes to complete."

Circle Click and CTNY executed an Office Service Agreement with RMG. The Office Service Agreement is in fact one page, and it merely identifies the location of the office space, the monthly office fee, the term of the agreement, and the parties to it. The Office Service Agreement incorporates by reference another document called the "Terms and Conditions." The Terms and Conditions is also only one page, but it is printed in five-point font, which is almost illegible. The Terms and Conditions reference another document, the "House Rules," which discloses a number of other fees. The House Rules reference yet another document, the Service Price Guide, which lists the prices for a variety of services.

In July 2012, Plaintiffs filed this action against Defendants in California state court. ECF No. 1. The action was subsequently removed, and several rounds of pleading followed. The gravamen of

Plaintiffs' Second Amended Complaint ("2AC"), Plaintiffs' operative pleading, is that RMG and the other Defendants routinely assessed Plaintiffs for charges that were not disclosed in the Office Service Agreement. ECF No. 65 ("2AC"). For example, according to Plaintiffs' complaint, the monthly fee listed in Circle Click's Office Service Agreement is $2,461, but Circle Click received monthly invoices ranging from $2,559.67 to $6,653.79. Id. ¶ 49. Plaintiffs allege that Circle Click was assessed charges for kitchen amenities (regardless of whether these amenities were used), telephone lines, telecom handsets, office restoration, and business continuity services, among other things. Id. ¶ 52.

In their 2AC, Plaintiffs seek to represent a class of all persons who paid for Defendants' office space in California and New York and were assessed charges by Defendants over the monthly payments indicated in the Office Service Agreement or any similar agreement. Plaintiffs assert the following causes of action: violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq.; violation of California's False Advertising Law ("FAL"), id. § 17509; and unjust enrichment.

Defendants subsequently filed an Answer, in which RMG asserted breach of contract counterclaims against Circle Click and CTNY, as well as a number of other counterclaims against both the Plaintiffs and the absent class members. Plaintiffs filed a motion to dismiss the counterclaims, which was granted in part and denied in part on August 13, 2013. Among other things, the Court dismissed RMG's breach of contract counterclaim against Circle Click and CTNY with leave to amend. The Court directed RMG to "set forth the relevant provisions of the agreements verbatim, specify how Plaintiffs

breached those provisions, and allege whether the House Rule and Service Price Guide were made available to Plaintiffs." Aug. 13 Order at 19-20.

RMG filed the SACC on October 3, 2013. RMG has abandoned its breach of contract counterclaim against Circle Click, but continues to press a breach of contract counterclaim against CTNY. RMG alleges that CTNY breached the Office Service Agreement by: (1) failing to make its full monthly office payments, plus applicable taxes, in an amount of $12,209.01; (2) failing to pay the kitchen amenities fee, plus applicable taxes, in an amount of $391.92; (3) failing to pay the office set-up fee, plus applicable taxes, in an amount of $81.66; (4) failing to pay the business continuity service fee in an amount of $987; (5) failing to pay the office restoration fee, plus applicable taxes, in an amount of $239.45; and (6) failing to pay late payment fees. SACC ¶¶ 33-38. With the exception of the basic monthly office fee, none of these fees are described in the Office Service Agreement.[1] In its prayer for relief, RMG seeks, among other things, damages and attorney's fees.

Plaintiffs move to dismiss RMG's breach of contract counterclaim against CTNY, as well as its prayer for attorney fees.

## III. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).

---

[1] The kitchen amenities fee is allegedly set out in the Service Price Guide, the office set-up fee in House Rule 36, the business continuity service fee in paragraph 1.7 of the Terms and Conditions and House Rule 38, the office restoration fee in paragraph 1.7 of the Terms and Conditions and House Rule 37, and the late payment fees in paragraph 8.5 of the Terms and Conditions and House Rule 39.

"Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 663 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). The allegations made in a complaint must be both "sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that the party may effectively defend against it" and "sufficiently plausible" such that "it is not unfair to require the opposing party to be subjected to the expense of discovery." Starr v. Baca, 633 F.3d 1191, 1204 (9th Cir. 2011).

**IV.  DISCUSSION**

   **A.  Attorney's Fees**

Plaintiffs argue that RMG's prayer for attorney's fees must be dismissed because RMG cannot point to any statute or contractual provision allowing for the recovery of such fees. Mot. at 5. RMG concedes that attorney's fees are not recoverable. Opp'n at 1 n.1. Accordingly, RMG's demand for attorney's fees is DISMISSED.

   **B.  Breach of Contract**

Next Plaintiffs argue that RMG has failed to plead sufficient

5

facts to state a claim for breach of contract against CTNY. Specifically, Plaintiffs attack RMG's claim as it relates to (1) the kitchen amenities fee, (2) the business continuity service fee, and (3) the late payment fee. Plaintiffs also generally argue that RMG has failed to put CTNY on notice of its damages, and that RMG's counterclaim is implausible due to numerous inconsistencies.

### i. The Kitchen Amenities Fee

The kitchen amenities fee is set out in House Rule 13, which provides: "Kitchen Amenities/Beverage Fee allows clients and visitors access to self-service coffee and tea. This fee is mandatory and will be charged per office occupant." SACC ¶ 20. The Service Price Guide also refers to the fee: "Kitchen Amenities (required) $30 per person per month." Id. Neither the Terms and Conditions nor the Office Service Agreement contain any reference to a kitchen amenities fee. However, paragraph 8.9 of the Terms and Conditions indicates that other fees may be assessed: "The monthly office fee and any recurring services requested by the Client are payable monthly in advance." Id. ¶ 21.

Based on paragraph 8.9 of the Terms and Conditions, Plaintiffs argue that RMG has failed to plead that CTNY requested kitchen amenities, and absent such a request, the kitchen amenities fee should not have been assessed. Mot. at 6. Defendants respond that a request was unnecessary because both the House Rules and Service Price Guide, which were allegedly incorporated into the Terms and Conditions and the Office Service Agreement, indicate that the kitchen amenities fee was mandatory. Opp'n at 4.

There is some tension between the Terms and Conditions, which suggests that additional fees will be assessed only for services

requested by the client, and the House Rules and Service Price Guide, which indicate that the kitchen amenities fee is mandatory, regardless of whether kitchen amenities are used or requested by the client. As it must, the Court attempts to give effect to every part of the contract, and interprets each part with reference to the entire agreement. See Westmoreland Coal Co. v. Entech, Inc., 100 N.Y.2d 352, 358 (NY Ct. App. 2003). Since Plaintiff's reading of the agreement would force the Court to ignore provisions that expressly provide that the kitchen amenities fee is mandatory, the Court declines to adopt it. Accordingly, RMG's allegations regarding the kitchen amenities fee remain undisturbed.[2]

### ii. Business Continuity Fee

The business continuity services fee is set out in paragraph 1.7 of the Terms and Conditions:

> When a client vacates its accommodation(s)[,] invariably Regus continues to receive the Client's mail, faxes, telephone calls and visitors. In order to professionally manage the redirection of the Client's calls, mail, faxes[,] and visitors[,] Regus charges a one-time Business Continuity Service. This service lasts for three months after the end of the date of this agreement. If in the event [sic] that there are no calls, mail, faxes or visitors[,] this service will not be applied. This fee is located in the house rules.

SACC ¶ 23. RMG alleges that the fee was $329 per month and that CTNY was obligated to pay a total business continuity fee of $987. Id.

Plaintiffs argue that the SACC does not establish that RMG was

---

[2] Nothing in this Order precludes Plaintiffs from asserting that Defendants' practice of assessing a kitchen amenities fee violates the UCL. Indeed, the dispute over Defendants' counterclaims further demonstrates how a reasonable consumer might be deceived by the fees set out in RMG's agreements.

7

entitled to the business continuity fee, because it does not allege that CTNY received any calls, mail, faxes, or visitors at the offices it leased from RMG after the lease expired. MOT. at 6. RMG does not meaningfully respond to this argument except to assert that it has alleged sufficient facts by setting out the breached contractual provisions verbatim. Opp'n at 4. This argument is plainly wrong. RMG must also allege facts showing that it was entitled to assess a business continuity fee. Legal conclusions regarding breach, without more, are not enough.

Accordingly, RMG's breach of contract claim is DISMISSED to the extent it is predicated on the business continuity fee. Since the Court's August 13 Order placed RMG on notice that it was required to plead how CTNY breached the agreements, dismissal is WITH PREJUDICE.

### iii. Late Payment Fees

The Terms and Conditions provide that a late payment fee will be charged on all overdue balance, and the House Rules explain how that fee is calculated. SACC ¶ 25. Specifically, the House Rules provide:

> Late Payment Fee: If you do not pay fees when due, a service fee of $25 plus 5% penalty will be charged on all overdue balances under $1,000. For balances equal to or greater than $1,000[,] a fee of $50 plus 5% will apply. . . . We also reserve the right to withhold services . . . while there are any outstanding fees and interest or you are in breach of your agreement.

Id. RMG alleges that it is entitled to late fees because CTNY has only paid a fraction of the fees it owes. Id. ¶ 26.

Plaintiffs argue that the late payment fee constitutes

unenforceable liquidated damages under New York law. Mot. at 8. "Liquidated damages clauses will generally be upheld where, at the time of contracting, it appears that actual damages will be difficult to estimate and the liquidated damages amount is not plainly disproportionate to the possible loss." CIT Grp./Commercial Servs., Inc. v. Holladay-Tyler Printing Corp., 94 CIV. 6642 (HB), 1995 WL 702343, at *1 (S.D.N.Y. Nov. 29, 1995). Further, a "liquidated damages clause[] must specify an amount either in absolute dollars or in some manner that obviates foreseeable court involvement." Id. For example, the New York Supreme Court rejected a liquidated damage clause that allowed a plaintiff to recover liquidated damages in the amount of 25 percent of the total contract price, but also gave the plaintiff the right to sue for "such actual damages as it may establish." Jarro Bldg. Indus. Corp. v. Schwartz, 281 N.Y.S.2d 420, 421 (N.Y. App. Term 1967). The court reasoned that the clause afforded the plaintiff "the option to disregard the liquidated damages specified if the actual damages exceed the amount stipulated." Id. at 426.

Plaintiffs reason that the late fee provision here is unenforceable because it entitles RMG to a minimum late payment amount plus a percentage penalty, and RMG is also asserting actual damages in the SACC. Opp'n at 8 (citing SACC ¶¶ 25, 40). However, Plaintiffs do not point to any provision in the relevant agreements that would entitle RMG to actual damages for late payments. The fact that RMG is also seeking damages in the amount of other allegedly unpaid fees does not render the late penalty fee unenforceable.

Plaintiffs also argue that RMG's claim for late payment fees

is "hopelessly vague and fails to provide fair notice to CTNY." Id. at 6. Plaintiffs contend that RMG does not allege when payments became late or the amount of any late payment penalty balance that CTNY purportedly owes. Id. This argument is also unconvincing. RMG has pled that CTNY owes $13,909.04, has paid only $1,773.32, and that CTNY's lease expired on or around July 2013. SACC ¶¶ 17, 26. This is sufficient to put CTNY on notice and to establish a plausible claim for a late penalty fee.

Accordingly, RMG's breach of contract claim remains undisturbed as it relates to the late penalty fee.

### iv. Other Plausibility Issues

Plaintiffs also raise a number of other plausibility issues. First, Plaintiffs take issue with paragraph 40 of the SACC, which states: "Damages incurred by RMG include, but are not limited to, the remaining monthly payments plus all applicable taxes and fees for services due under the [Office Service Agreement], in an amount no less than $12,135.72., plus all applicable late payment fees." Specifically, Plaintiffs take issue with the phrase "include, but not limited to," since it implies that RMG will seek fees not described in the SACC. Opp'n at 6-7. The Court agrees that RMG may not pursue claims that are not set out in the SACC without further amendment. However, at this point, there is no indication that RMG intends to do so.[3]

Plaintiffs also claim that the SACC asserts inconsistent damage figures. Id. at 7-8. Having carefully reviewed the pleadings, the Court is not convinced that the SACC contains any

---

[3] It is not clear from the motion or reply papers, but Plaintiff also appears to be arguing that RMG is required to plead its exact damages. This is an unreasonably high pleading standard.

10

internal inconsistencies. RMG has merely alleged different sums in connection with the CTNY's total obligation under the Office Service Agreement, and the total amount that is currently due and owing. Compare SACC ¶ 33 with id. ¶ 40. In any event, to the extent that there are inconsistencies, they amount to only a few hundred dollars and, thus, are not fatal for the purposes of a Rule 12(b)(6) motion to dismiss.

## V. CONCLUSION

For the reasons set forth above, Plaintiffs' motion to dismiss RMG's counterclaim is GRANTED in part and DENIED in part. The Court DISMISSES WITH PREJUDICE RMG's request for attorney's fees, as well as RMG's breach of contract counterclaim to the extent that it is predicated on CTNY's failure to pay a business continuity fee. The rest of RMG's counterclaims remain undisturbed.

IT IS SO ORDERED.

December 10, 2013

_____
UNITED STATES DISTRICT JUDGE