1

2

3

4

5

6            IN THE UNITED STATES DISTRICT COURT

7          FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9  CIRCLE CLICK MEDIA LLC, et al.,    ) Case No. 12-04000 SC
                                      )
10            Plaintiffs,             ) ORDER DENYING MOTION FOR
                                      ) LEAVE TO FILE AN AMENDED
11     v.                             ) COMPLAINT AND FOR
                                      ) RECONSIDERATION
12 REGUS MANAGEMENT GROUP LLC, et     )
   al.,                               )
13                                    )
                                      )
14            Defendants.             )
                                      )
15 _____  )

16

17 **I.   INTRODUCTION**

18      Now pending before the Court is Plaintiffs Circle Click Media

19 LLC ("Circle Click") and CTNY Insurance Group LLC's ("CTNY")

20 (collectively, "Plaintiffs") motion for leave to file a third

21 amended complaint ("3AC") and for reconsideration of a prior order.

22 ECF No. 130 ("Mot.").  The Motion is fully briefed.  ECF Nos. 139

23 ("Opp'n"), 152 ("Reply"),[1] and appropriate for resolution without

24 oral argument per Civil Local Rule 7-1(b).  For the reasons set

25 forth below, the Motion is DENIED.

26 ///

27 _____

28 [1] Also pending before the Court is Defendants' administrative
motion to file a surreply brief.  ECF No. 155.  The motion is
DENIED as moot.

**II.   BACKGROUND**

**A.   Factual Background**

As the Court has previously ruled on four motions to dismiss in this matter, all parties are familiar with the facts. <u>See</u> ECF Nos. 59 ("Jan. 2013 Order"), 77 ("Apr. 2013 Order"), 90 ("Aug. 2013 Order"), 117 ("Dec. 2013 Order"). To review, Defendants are in the business of renting short-term commercial office space throughout California and New York. Apr. 2013 Order at 2. In 2011, Plaintiffs entered identical Office Service Agreements with Defendant Regus Management Group LLP ("RMG"). Aug. 2013 Order at 2-3.

The Office Service Agreement is one page and merely sets forth the location of the office space, the monthly office fee, the term of the agreement, and the parties to it. <u>Id.</u> at 3. In signing the Office Service Agreement, Plaintiffs acknowledged that they had "read and understood" another document called the "Terms and Conditions." Apr. 22 Order at 3. The Terms and Conditions is also only one page, but it is printed in five-point font, making it exceedingly difficult to read.[2] <u>Id.</u> The Terms and Conditions reference another document, the "House Rules," which discloses a number of fees, including a mandatory, "Kitchen Amenities / Beverage Fee"; a "[s]tandard services" fee, including a fee "billed upon service activation for applicable telecom and internet

<u>United States District Court</u>
For the Northern District of California

---

[2] The Court granted Defendants' administrative motion to lodge with the Court originals of certain documents, including the Terms and Conditions. ECF No. 46. The purported original of the Terms and Conditions is more legible than versions previously filed with the Court. Plaintiffs dispute that the documents Defendants lodged with the Court are actually originals. ECF No. 147. This dispute has no bearing on the disposition of the instant motion for leave to file an amended complaint. Accordingly, the Court declines to rule on what is and is not an original document at this time.

services"; an "Office Set Up Fee"; and a "Business Continuity Fee."
Id.  The House Rules reference yet another document, the Service
Price Guide, which lists the prices for a variety of services.  Id.

The gravamen of Plaintiffs' case is that they were assessed
for charges that were not disclosed in the one-page Office
Agreement.  For example, the monthly fee listed in Circle Click's
Office Service Agreement is $2,461, but Circle Click allegedly
received monthly invoices ranging from $2,559.67 to $6,653.79.
Aug. 2013 Order at 3.  Plaintiffs allege that Circle Click was
assessed additional charges for kitchen amenities (regardless of
whether these amenities were used), telephone lines, telecom,
handsets, office restoration, and business continuity services,
among other things.  Id. at 3-4.  Defendants contend that the Terms
and Conditions disclosed that additional charges would be assessed,
and that the House Rules and the Service Price Guide disclosed what
those charges would be.  Defendants also contend that the Terms and
Conditions, House Rules, and Service Price Guide are incorporated
by reference into the Office Agreement.

**B.**   **Procedural History**

Circle Click filed this putative class action in California
state court on May 8, 2012.  ECF No. 1.  RMG removed the action to
federal court in July 2012 and subsequently filed a motion to
dismiss.  ECF Nos. 1, 7.  Plaintiffs then filed a first amended
complaint, mooting the motion.  ECF No. 24 ("1AC").

The 1AC added two new named plaintiffs: Metro Talent, LLC
("Metro Talent") and CTNY.  It asserted claims for violation of the
Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et
seq.; the False Advertising Law ("FAL"), id. § 17500;

**United States District Court**
For the Northern District of California

3

concealment/suppression and intentional misrepresentation (i.e., fraud); negligent misrepresentation; unjust enrichment; and violation of New York State General Business Law ("GBL") sections 349 and 359.  Defendants filed a motion to dismiss the 1AC, which the Court granted in part and denied in part.  Jan. 2013 Order at 28.  The Court dismissed Plaintiffs' fraud and negligent misrepresentation claims on the ground that the additional charges targeted by Plaintiffs were disclosed in the relevant agreements.  The Court granted Plaintiffs leave to amend to "specifically allege what was not disclosed in the agreements they signed with Defendants and/or what Defendants misrepresented to them about their monthly fees and why it was reasonable for Plaintiffs to rely on those misrepresentations despite the language of the agreements."  Id. at 22.  The Court also dismissed Plaintiffs' UCL and FAL claims with leave to amend.  Id. at 28.

Plaintiffs subsequently filed a second amended complaint.  ECF No. 65 ("2AC").  Like the 1AC, the 2AC asserted claims for violations of the UCL and FAL, fraud, negligent misrepresentation, and unjust enrichment, though it asserted new predicate violations of the UCL.  It also asserted new claims for violations of the Racketeer Influenced & Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq.  Defendants filed another motion to dismiss, ECF No. 69, which the Court granted in part and denied in part, Apr. 2013 Order.  The Court dismissed Plaintiffs' fraud claim with prejudice.  The Court reasoned that the claim was predicated on the theory that Defendants had exclusive knowledge of the fees that would be assessed, but judicially noticeable documents showed that Plaintiffs had constructive notice of these fees.  Id. at 9.  The

1    Court also dismissed Plaintiffs' RICO claims with prejudice, but

2    left Plaintiffs' UCL and FAL claims largely undisturbed.

3         Following the April 2013 Order, Defendants filed an answer

4    asserting a number of counterclaims.  ECF No. 78.  In December

5    2013, after the Court resolved two rounds of motions to dismiss the

6    counterclaims, the parties finally moved beyond the pleading stage.

7    <u>See</u> Aug. 2013 Order, ECF No. 101 ("Amended Countercl."), Dec. 2013

8    Order.

9         On November 1, 2013, Metro Talent and Defendants stipulated to

10   dismiss with prejudice the claims and counterclaims they had

11   asserted against each other.  ECF No. 111.

12        **C.    Proposed Third Amended Complaint**

13        Plaintiffs now seek to reopen the pleadings by filing an

14   amended complaint, the 3AC.  The 3AC would add a new named

15   plaintiff, Sacramento Transitions Group ("STG"), to replace Metro

16   Talent.  Mot. Ex. 1 ("3AC").  Like Metro Talent and Circle Click,

17   STG rented office space from Defendants in California.

18        The 3AC would also reassert the fraud claim the Court

19   previously dismissed with prejudice.  Plaintiffs contend that new

20   evidence produced through discovery warrants reconsideration of the

21   dismissal of the fraud claim.  Specifically, Plaintiffs point to a

22   portion of an internal RMG training document from April 2004, which

23   states:

24

25        Avoiding objections: By eliminating all of the
         recurring costs from the [Office] Service Agreement,
         we will be able to avoid any potential objections
26       about the overall monthly cost by those people that
         have to sign-off on the deal but are removed from the
27       original sales process.

28

United States District Court
For the Northern District of California

1  3AC ¶ 31; ECF No. 131 ("Apr. 2004 Memo").  Plaintiffs assert that

2  this language shows that Defendants actively concealed the

3  additional fees at the time of contract formation.

4       To support their fraud claim, Plaintiffs also include a new

5  section in 3AC entitled "Predatory Sales Practices."  3AC ¶¶ 39-44.

6  In this section, Plaintiffs allege that Defendants have promulgated

7  uniform sales policies and procedures, instructing their employees

8  to communicate the following to prospective clients: "[w]e work

9  with a one page service agreement"; Defendants offer free domestic

10 phone calls and internet access; everything is included in one

11 monthly bill; and common areas include a fully-equipped kitchen,

12 business lounge, restrooms, and a welcoming reception.  Id. ¶ 41.

13 Plaintiffs also allege, for the first time, that Circle Click did

14 not receive the House Rules or the Services Price Guide before it

15 executed the Office Services Agreement with RMG.  Id. ¶ 68.

16      Though Plaintiffs do not mention it in their Motion, the 3AC

17 also asserts a new predicate UCL violation.  Specifically, the 3AC

18 asserts that Defendants violated California Business and

19 Professions Code section 10130 by acting as unlicensed real estate

20 agents or brokers that lease real property in exchange for fees.

21 Id. ¶ 109.

22

23 III.  **LEGAL STANDARD**

24      A.  **Motion for Leave to Amend**

25      Federal Rule of Civil Procedure 15(a)(1) allows a plaintiff to

26 amend as a matter of course in a number of circumstances, none of

27 which are relevant here.  Pursuant to Rule 15(a)(2), in all other

28 cases, a party may amend its pleading only with the opposing

United States District Court
For the Northern District of California

party's written consent or with leave of the court.  "The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).

In determining whether to grant leave to amend, "a court must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities."  United States v. Webb, 655 F.2d 977, 979 (9th Cir. 1981).  "Accordingly, Rule 15's policy favoring amendments to pleadings should be applied with extreme liberality."  Id. (internal quotations omitted).  Five factors are taken into account to assess the propriety of a motion for leave to amend: "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint."  Johnson v. Buckley, 356 F.3d 1067, 1077 (9th Cir. 2004).

**B.   Motion for Reconsideration**

Since Plaintiffs seek to reassert the fraud claim that was previously dismissed with prejudice, they are also moving for reconsideration.  Motions for reconsideration are governed by Civil Local Rule 7-9, which requires the moving party to show: (1) a material difference in fact or law that was not previously known and could not have been discovered in the exercise of reasonable diligence; (2) the emergence of new material facts or a change of law; or (3) a manifest failure by the Court to consider material facts or dispositive legal arguments.  Civ. L. R. 7-9(b). "[A]bsent highly unusual circumstances," a motion for reconsideration should be denied.  389 Orange St. Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999).

**United States District Court**
For the Northern District of California

1    **IV.   <u>DISCUSSION</u>**

2         For the purposes of the instant motion, the Court must

3    determine whether to allow Plaintiffs to (1) reassert their fraud

4    claim, (2) add STG as an additional named plaintiff, and (3) assert

5    new predicate violations of the UCL.

6         **A.   <u>Fraud</u>**

7         The Court previously dismissed Plaintiffs' fraud claim with

8    prejudice.  Thus, Plaintiffs cannot reassert the claim absent (1)

9    newly discovered evidence, (2) an intervening change in the

10   controlling law, or (3) a showing that the Court's committed clear

11   error in rendering its prior decision.  Plaintiffs move under the

12   first ground.

13        As the Court previously held, there are at least four

14   circumstances in which nondisclosure may constitute actionable

15   fraud: "(1) when the defendant is in a fiduciary relationship with

16   the plaintiff; (2) when the defendant had exclusive knowledge of

17   material facts not known to the plaintiff; (3) when the defendant

18   actively conceals a material fact from the plaintiff; and (4) when

19   the defendant makes partial representations but also suppresses

20   some material facts."  Apr. 2013 Order at 9 (quoting <u>OCM Principal</u>

21   <u>Opportunities Fund v. CIBC World Markets Corp.</u>, 157 Cal. App. 4th

22   835, 859 (Cal. Ct. App. 2007)).

23        In the April 2013 Order, the Court dismissed the fraud claim

24   pleaded in the 2AC because Plaintiffs had failed to allege that

25   Defendants had exclusive knowledge of the relevant facts.  <u>Id.</u>  The

26   Court reasoned that "Plaintiffs had at least constructive knowledge

27   of [Defendants' allegedly illicit] fees."  <u>Id.</u>  The fees were

28   disclosed in the House Rules and the Service Price Guide.  <u>Id.</u> at

**United States District Court**
For the Northern District of California

9-11.  While Plaintiffs argued that they had received neither document, they had failed to make such an allegation in their 2AC. Id. at 11.  Moreover, by signing the Office Service Agreement, Plaintiffs acknowledged that they had "read and understood" the Terms and Conditions, which disclosed that the parties' agreements included the House Rules.  Id. at 10-11.  The Court also reasoned that the House Rules expressly referenced the Service Price Guide. Id. at 9-11.

The new evidence offered by Plaintiffs does not change this analysis.  The April 2004 Memo states that RMG removed references to additional fees from the Office Service Agreement "to avoid any potential objections about the overall monthly costs."  3AC ¶ 31. Plaintiffs argue that this shows that Defendants suppressed or actively concealed a material fact.  The Court disagrees.  While the Office Service Agreement no longer expressly discloses the additional fees, it does reference the Terms and Conditions.  As the Court has repeatedly held, this is sufficient to defeat a fraud claim, since the Terms and Conditions, as well as the documents it references, put Plaintiffs on notice that additional fees might be assessed.  Plaintiffs cannot state a claim for fraud merely because they turned a blind eye to information available to them. Moreover, the April 2004 Memo does in fact instruct sales representatives to discuss additional fees in certain situations: "If the prospect asks for additional information for additional services, present the Service[] [Price] Guide[,] including our Monthly Package pricing.  If the prospect requests an 'all-in' monthly number (which typically includes office fees, phone[,] and

connectivity), provide them with that information."  Apr. 2014 Mem. at 1.

Nor do Plaintiffs' new allegations of predatory sales practices warrant reconsideration of the Court's prior orders. These allegations are not specific enough to support a claim for fraud.  Plaintiffs essentially allege that Defendants have a uniform practice of making certain statements to prospective renters and that these statements give the false impression that renters will not be assessed additional monthly fees for services such as internet, telephone, and kitchen amenities.  But fraud must be pleaded with particularity.  See Fed. R. Civ. P. 9(b). Plaintiffs cannot merely point to a general policy and ask the Court to assume that the policy was implemented in a deceptive manner.  A plaintiff alleging fraud must plead "the who, what, when, where, and how of the misconduct charged."  United States ex rel Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011).  Absent more specificity, the Court cannot determine whether the challenged statements were in fact made to Plaintiffs, whether the statements were actually false, or whether Plaintiffs reasonably relied on them.[3]  In any event, as discussed above (and at length in the Court's prior Orders), Plaintiffs' fraud claims are barred because the documents referenced by the Office Service Agreement disclose the additional fees.

---

[3] In their reply brief, Plaintiffs argue that they specifically allege "that each of the Plaintiffs saw one or more of the advertisements that this Court has held may proceed."  Reply at 9. The Court previously found that these advertisements could support Plaintiffs' false advertising claims under the UCL and FAL, Apr. 2013 Order at 17-21, but never opined on whether they could support a claim for fraud.  Moreover, as the Court has discussed in prior orders, the pleading standards for fraud are higher than those for UCL and FAL violations, especially with respect to reliance.  See id. at 11-12, 19.  Plaintiffs conflate the two standards here.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    The Court also declines to reverse its prior orders because

2   Plaintiffs now plead -- for the first time -- that they did not

3   receive the House Rules or the Service Price Guide.  It is unclear

4   why Plaintiffs did not plead this in their 2AC.  More importantly,

5   Plaintiffs do not allege that Defendants actively concealed the

6   House Rules or the Service Price Guide.  The House Rules are

7   expressly referenced in the Terms and Conditions, and Plaintiffs

8   acknowledged that they read and understood the Terms and Conditions

9   when they signed the Office Service Agreement.  Plaintiffs argue

10  that the Terms and Conditions were not incorporated by reference

11  into the Office Service Agreement merely because the Office Service

12  Agreement contains a disclaimer that they read and understood the

13  Terms and Conditions.  Reply at 9.  But the pertinent question here

14  is not whether the Terms and Conditions are enforceable, but

15  whether Plaintiffs can state a claim for fraud.  The Court

16  concludes that they cannot.

17       Accordingly, the Court declines to allow Plaintiffs to

18  reassert their fraud claim.  Whether or not the conduct discussed

19  above constitutes unfair competition actionable under the UCL is a

20  separate question that the Court has addressed in prior orders.

21       **B.    <u>STG</u>**

22       Defendants argue that Plaintiffs' request to add STG as a new

23  putative class representative can only serve to delay this action.

24  Opp'n at 15.  STG would bring claims on behalf of all persons who

25  executed an Office Agreement for a RMG location in California and

26  who paid one or more of the allegedly unauthorized changes.  3AC ¶

27  91.  Defendants contend that adding STG is unnecessary since the

28  putative class is already represented by Circle Click.  Opp'n at

**United States District Court**
For the Northern District of California

15.  Plaintiffs respond that they should be permitted to replace Metro Talent, which recently settled with Defendants.

The Court agrees with Defendants.  Adding STG as a new plaintiff might have been warranted had both Metro Talent and Circle Click chosen to withdraw from this litigation.  But Circle Click remains in the case, and there is no indication that it is unable to adequately represent the interests of the putative class, including STG.  Thus, at this point, adding STG would not alter Plaintiffs' claims or the relief to which the class is entitled.  However, it would further delay this litigation, which has been pending for almost two years now.  Such a delay would not advance the interests of the putative class.

Accordingly, the Court declines to allow Plaintiffs to add a new class representative at this time.  The Court may revisit this issue if Circle Click settles, its claim is mooted, or if the Court finds that it has engaged in conduct inconsistent with the interests of the class.

**C.   UCL**

Finally, the 3AC would add a new UCL claim.  The UCL prohibits, among other things, "unlawful practices."  Cal. Bus. & Prof. Code § 17200.  Under this prong of the UCL, violations of other laws, when committed pursuant to business activity, are independently actionable under the UCL.  Farmers Ins. Exch. v. Super. Ct., 2 Cal. 4th 377, 383 (Cal. 1992).  Plaintiffs are already asserting a predicate violation of California Public Utilities Code section 2890.  In the 3AC, they assert a new predicate violation of California Business and Professions Code section 10130.  3AC ¶ 109.

Section 10130 provides that "[i]t is unlawful for any person to engage in the business of, act in the capacity of, advertise as, or assume to act as a real estate broker or a real estate salesperson within this state without first obtaining a real estate license . . . ." Cal. Bus & Prof. Code § 10130.  The Business and Professions Code defines the term "real estate broker" to mean one who "[l]eases or rents or offers to lease or rent, or places for rent, or solicits listings of places for rent, or solicits for prospective tenants . . . ." Id. § 10131(b).  Section 10131.01 exempts from these restrictions: (1) the manager of a hotel [or] motel, or (2) any person or entity . . . who . . . solicits or arranges, or accepts reservations or money, or both, for transient occupancies described in [California Civil Code § 1940(b)(1)-(2)]." Id. § 10131.01.  Section 1940(b) describes such occupancies as transient occupancies in a hotel, motel, residence club, or other facility that is subject to certain taxes, as well as occupancies at a hotel or motel where the innkeeper retains a right of access. Cal. Civ. Code § 1940(b).

Defendants argue that Plaintiffs fail to explain why this alleged violation was not raised in any of the prior three iterations of the complaint.  Next, Defendants argue that they are exempt from section 10130 because the Terms and Conditions expressly provides that the agreement "is the commercial equivalent of an agreement for accommodation(s) in a hotel" and that "the client accepts that this agreement creates no tenancy interest, leasehold estate or other real property interest in the client's favour with respect to the accommodations."  Opp'n at 19-20 (citing ECF No. 32 Ex. B).  Defendants further argue that Plaintiffs lack

**United States District Court**
For the Northern District of California

1  standing to bring a UCL claim predicated on a violation of section

2  10130 because Plaintiffs have failed to allege how the use of a

3  licensed real estate broker would have prevented the harm they

4  suffered as a result of the allegedly unauthorized charges.  Id. at

5  20.

6      Plaintiffs respond that they only recently learned of the

7  violation through documents produced by Defendants, Reply at 14-15,

8  though it appears that Plaintiffs should have been able to

9  determine whether Defendants were acting as realtors long before

10  these documents were produced.  Plaintiffs further argue that

11  Defendants are not exempt from section 10130, reasoning that the

12  section 10131.01 exemption is limited to hotels and transient

13  occupancies of dwelling units and that the Court previously held

14  that Defendants' services were different than those provided by

15  hotels and motels.  Id. at 15 (citing April 2013 Order at 15).

16  Finally, Plaintiffs argue that there is a sufficient nexus between

17  the alleged violation of section 10130 and the alleged harm because

18  "[t]he purpose of the licensing requirement is to protect the

19  public from the perils incident to dealing with incompetent or

20  untrustworthy real estate practitioners."  Id. (quoting GreenLake

21  Capital, LLC v. Bingo Investments, LLC, 185 Cal. App. 4th 731, 736

22  (Cal. Ct. App. 2010)).

23      The Court agrees with Defendants, at least with respect to

24  their argument concerning standing.  The UCL only provides a

25  private right of action for persons who have "suffered injury in

26  fact and ha[ve] lost money or property as a result of the unfair

27  competition."  Cal. Bus. & Prof. Code § 17204.  Thus, where a UCL

28  action is based on an unlawful business practice, "there must be a

14

**United States District Court**
For the Northern District of California

causal connection between the harm suffered and the unlawful business activity."  Daro v. Super. Ct., 151 Cal. App. 4th 1079, 1099 (Cal. Ct. App. 2007).  "That causal connection is broken when a complaining party would suffer the same harm whether or not a defendant complied with the law."  Id.  In this case, Plaintiffs have failed to establish a direct causal connection between the alleged harm -- the assessment of additional, undisclosed fees -- and the alleged statutory violation -- failure to obtain a realtor's license.  While section 10130 may have been enacted to protect the public against unscrupulous real estate practitioners, it does not directly address the deceptive conduct alleged here. Whether or not Defendants were required to obtain a license has no bearing on whether their practice of assessing additional fees was unfair or unlawful.

Accordingly, the Court finds that the proposed amendment regarding section 10130 is futile and, therefore, denies Plaintiffs leave to make such an amendment.

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs motion for leave to file a third amended complaint and for reconsideration of a prior order is DENIED.


IT IS SO ORDERED.


March 19, 2014                        _____

                                      UNITED STATES DISTRICT JUDGE