IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CIRCLE CLICK MEDIA LLC, and CTNY INSURANCE GROUP LLC, on behalf of themselves and all others similarly situated, | Case No. 12-cv-04000-SC |
| | ORDER DENYING MOTION TO DISMISS |
| Plaintiffs, | |
| v. | |
| REGUS MANAGEMENT GROUP LLC, REGUS BUSINESS CENTRE LLC, REGUS PLC, HQ GLOBAL WORKPLACES LLC, and DOES 1 through 50, | |
| Defendants. | |

## I. **INTRODUCTION**

Now before the Court is Defendant Regus plc's motion to dismiss for lack of personal jurisdiction.  The motion is fully briefed[1] and suitable for determination without oral argument per Civil Local Rule 7-1(b).  For the reasons set forth below, Regus plc's motion to dismiss is DENIED.

///

///

---

[1] ECF Nos. 180 ("Mot."), 187-3 ("Redacted Opp'n"), 187-4 ("Opp'n") (filed under seal), 202 ("Reply").

**United States District Court**
For the Northern District of California

## II. **BACKGROUND**

A detailed discussion of this case's background appears in the Court's January 3, 2013 order, so a short summary appears here. ECF No. 59 ("Jan. 2013 Order"). These facts are taken from Plaintiffs' second amended complaint ("SAC"), ECF No. 62. Defendants are in the business of leasing commercial office space throughout the world. Id. ¶ 1. Defendant Regus plc is a public limited company incorporated and registered in Jersey, Channel Islands, and is the parent company of Defendants Regus Management Group ("RMG"), Regus Business Centre LLC ("RBC"), and HQ Global Workplaces LLC ("HQ"). Id. ¶¶ 9-15. All four defendants are referred to collectively as "Regus," both in this Order and in the SAC.[2] Plaintiffs allege that all four defendants are alter egos of one another and generally do not distinguish between them in the SAC. Id. ¶¶ 1, 21.

In 2011 and 2012, Plaintiffs entered into office agreements with Defendants to lease commercial office space in California and New York. Id. ¶¶ 45, 56, 71. Plaintiffs allege that Defendants assessed charges beyond what was indicated by their agreements, including charges related to kitchen amenities, telecommunication services, "business continuity service," taxes, and penalties. Plaintiffs allege that these fees were not disclosed in the office agreements and bore no reasonable relationship to the services

---

[2] Ordinarily, the Court would be skeptical of such imprecise language. However, the evidence demonstrates that the Regus companies consistently fail to distinguish between themselves. Accordingly the Court, too, is comfortable referring to all defendant companies collectively as "Regus." When the Court intends to identify Defendant Regus plc individually, the Court shall refer to "Regus plc."

1   Defendants' offered.  Id. ¶¶ 52, 62, 76.  Plaintiffs allege that

2   Defendants violated California business and false advertising laws,

3   and they bring unjust enrichment claims under California and New

4   York law as well.  Id. ¶¶ 91-163.  Plaintiffs also allege

5   violations of the Racketeer Influenced and Corrupt Organizations

6   Act ("RICO").  Id. ¶¶ 164-95.

7       In January 2013, the Court denied without prejudice Regus

8   plc's motion to dismiss for lack of personal jurisdiction and

9   permitted Plaintiffs to conduct jurisdictional discovery.  Jan.

10  2013 Order at 10.  The Court held that Defendants' website,

11  regus.com, was insufficient to support personal jurisdiction over

12  Regus plc because, at that time, the evidence indicated that all of

13  the interactive features of the website were handled by RMG.  Id.

14  at 6-7.  Regus plc now moves again to dismiss for lack of personal

15  jurisdiction.

16

17  **III.** **LEGAL STANDARD**

18      Plaintiffs bear the burden of showing that the Court has

19  personal jurisdiction over Regus plc.  See Pebble Beach Co. v.

20  Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006).  "[T]his demonstration

21  requires that the plaintiff make only a prima facie showing of

22  jurisdictional facts to withstand the motion to dismiss."  Id.

23  (quotations omitted).  "[T]he court resolves all disputed facts in

24  favor of the plaintiff . . . ."  Id.  (quotations omitted).  "The

25  plaintiff cannot simply rest on the bare allegations of its

26  complaint, but uncontroverted allegations in the complaint must be

27  taken as true."  Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d

28  ///

3

1218, 1223 (9th Cir. 2011) (quotations omitted).[3]  Since California's long-arm statute is coextensive with federal due process requirements, California Civil Procedure Code section 410.10, the personal jurisdiction analysis under state and federal law are the same.

### A. **Specific Jurisdiction**

The Ninth Circuit has established a three-prong analysis for assessing claims of specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004).  The plaintiff bears the burden of satisfying the first two prongs and, if it does, the burden then shifts to the defendant to show why the exercise of personal jurisdiction would be unreasonable.  Id.

### B. **Agency and Alter Ego**

Generally, the existence of a parent-subsidiary relationship

---

[3] This prima facie showing is all that is required, even after jurisdictional discovery: "If the court determines that it will receive only affidavits or affidavits plus discovery materials, these very limitations dictate that a plaintiff must make only a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss."  Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977); see also Orchid Biosciences, Inc. v. St. Louis Univ., 198 F.R.D. 670, 673 (S.D. Cal. 2001) (explaining that prima facie burden is required after jurisdictional discovery is taken).

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

"is not sufficient to establish personal jurisdiction over the parent on the basis of the subsidiaries' minimum contacts with the forum." Doe v. Unocal Corp., 248 F.3d 915, 925 (9th Cir. 2001). However, "if the parent and subsidiary are not really separate entities [i.e., alter egos], or one acts as an agent of the other, the local subsidiary's contacts with the forum may be imputed to the foreign parent corporation." Id. at 926 (quotations omitted).

## IV. DISCUSSION

### A.  Website and Emails as Regus plc's Contacts

In their brief opposing Regus plc's previous motion to dismiss, Plaintiffs made three primary arguments.  First, they asserted that this Court has personal jurisdiction over Regus plc directly, mostly as a result of the regus.com website.  Plaintiffs also argued that the other defendants' contacts with California should be imputed to Regus plc because the other defendants were either agents or alter egos of Regus plc.  Plaintiffs continue to pursue their direct and agency theories of personal jurisdiction, but they have apparently abandoned their alter ego theory, as it is not mentioned in their opposition brief.

The Court held in its previous order that Plaintiffs had failed to make a prima facie case for direct personal jurisdiction. Defendants now argue that the previous order constitutes the law of the case and bars Plaintiffs from reasserting those theories.  That was not the effect of the January 3 Order.  That order made two holdings regarding personal jurisdiction: (1) with respect to direct personal jurisdiction, "Plaintiffs have failed to meet their burden of showing that the exercise of specific jurisdiction would

be appropriate," Jan. 2013 Order at 8; and (2) with respect to personal jurisdiction via agency or alter ego theories, "Plaintiffs have yet to come forward with any evidence concerning the functional relationship between Defendants." Id. at 9.  Both of those holdings were determinations that Plaintiffs had failed to make a prima facie case for jurisdiction at that point.  Neither holding precludes Plaintiffs from reasserting those theories now.  Indeed, by denying Regus plc's motion without prejudice, the Court specifically envisioned additional argument on Plaintiffs' theories once the factual record was supplemented with jurisdictional discovery.  If jurisdictional discovery revealed that Regus plc operated the website directly, rather than through an agent or alter ego, the Court would be remiss to disregard that evidence.

### 1.   Regus plc's Direct Control of the Website

Plaintiffs have provided substantial evidence of Regus plc's involvement in the website.[4]  First, during the relevant time periods, the regus.com website footer specified that Regus plc held copyright for the website.  ECF No. 188 ("RJN") Exs. A-H.  Second, the terms and conditions posted on the website during the alleged class period state that "Regus plc ('Regus Group') (whether directly or indirectly) owns and operates the regus.co.uk website, the regus.com website, the hq.com website and the stratisnet.com

---

[4] Plaintiffs have filed a request for judicial notice in support of their opposition brief.  ECF No. 188.  The documents Plaintiffs request to be noticed are archived versions of the regus.com website and Regus plc's annual reports, which are publicly available online.  Regus plc has not objected to judicial notice to any of the documents.  The Court finds that the facts Plaintiffs request to be noticed can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.  Accordingly the Court GRANTS Plaintiffs' request and takes notice of the attached documents.

**United States District Court**
For the Northern District of California

website (collectively, 'Regus Group Websites' and individually, 'Site')."  ECF No. 189 ("Garofolo Decl.") Ex. 1.  Third, Plaintiffs point to several statements on the website, such as the claim that "With 1000 business centres in 75 countries, Regus plc is the world's largest provider of outsourced workplaces . . . ," which indicate that Regus plc not only operates the website but actually provides the office space rented through the site.  RJN Exs. E, G, I.  Fourth, Regus plc's annual reports referred to "the Company's website," and they define "Company" as Regus plc.  RJN Ex. J at PLF00641, PLF00649.  There is no mention of RMG in any of the website pages that Regus plc has submitted.

In response, Regus plc bleats again that RMG handled the interactive features of the website.  The only evidence of RMG's involvement, though, is the declaration of Tim Regan, Regus plc's corporate secretary.  Mr. Regan states that Regus plc does not own or operate the regus.com website, and that all interactive features interface with RMG, not Regus plc.  ECF No. 30 ("Regan Decl.") ¶¶ 17-18.  Those assertions directly contradict the text of the website that existed during the relevant time period.

The Court finds that a factual dispute exists as to whether Regus plc operated the regus.com website, including its interactive features, during the class period.  Plaintiffs have presented evidence sufficient to make a prima facie showing that Regus plc operated the website, and Regus plc has countered with a declaration asserting the opposite.  At the motion to dismiss stage, the Court must resolve all disputed facts in the Plaintiffs' favor.  See, e.g., In re W. States Wholesale Natural Gas Antitrust Litig., 715 F.3d 716, 741 (9th Cir. 2013), cert. granted sub nom.,

1  <u>Oneok, Inc. v. Learjet, Inc.</u>, 134 S. Ct. 2899 (U.S. 2014); <u>Wash.</u>

2  <u>Shoe Co. v. A-Z Sporting Goods Inc.</u>, 704 F.3d 668, 672 (9th Cir.

3  2012).  Therefore, the Court finds that Plaintiffs have made a

4  prima facie showing that Regus plc owned and operated the regus.com

5  website during the relevant time.

6               **2.   RMG as Regus plc's Agent**

7       Even were the Court to hold otherwise, the evidence is still

8  sufficient for a prima facie showing of an agency relationship

9  between Regus plc and RMG.  Under California law, "[a]n agency is

10  ostensible when the principal intentionally, or by want of ordinary

11  care, causes a third person to believe another to be his agent who

12  is not really employed by him."  Cal. Civ. Code § 2300.  A

13  "purported agent's use of names and logos and the existence of a

14  business relationship between the two entities" can establish an

15  ostensible agency.  <u>Holt v. Kormann</u>, SACV 11-1047 DOC MLG, 2012 WL

16  2150070, at *5-6 (C.D. Cal. June 12, 2012).  California courts have

17  also held that a franchisee who uses the parent company's name and

18  logo may be an ostensible agent.  <u>See</u> <u>Kaplan v. Coldwell Banker</u>

19  <u>Residential Affiliates, Inc.</u>, 59 Cal. App. 4th 741, 747-48 (Cal.

20  Ct. App. 1997).

21       Plaintiffs provide significant evidence that RMG acted as

22  Regus plc's agent in operating the website.  As discussed above,

23  the copyright, terms and conditions, and text of the website state

24  in no uncertain terms that Regus plc owned and operated the

25  website.  The terms and text also give the impression that Regus

26  plc not only controlled the website but was the entity that

27  actually provided rental office space.  Nonetheless, it is possible

28  that the text of the website was inaccurate, and that Mr. Regan was

correct in stating that RMG operated the website.

Even if RMG actually owned and operated the website, RMG used Regus plc's name and logo. The intermingling of the corporate identities was so complete that RMG was not even mentioned in the website's text or terms of use. In <u>Kaplan</u>, use of the parent's name and logo were sufficient to render the franchisee an ostensible agent, even though the fine print on the franchisee's advertising materials clearly explained that the franchise was owned and operated independently from the parent. <u>See id.</u> at 744, 747. Here, there is no evidence of such a disclaimer. Because the website indicated that Regus plc owned and operated the website but made no mention of any sort of agent or intermediary, a user or customer must have had the impression that whoever operated the website -- if not Regus plc itself -- had Regus plc's authority to do so. Plaintiffs have made a prima facie showing that Regus plc intentionally or carelessly caused them to believe that the operator of the regus.com website was either Regus plc or its agent. The regus.com website may therefore be imputed to Regus plc for the purpose of personal jurisdiction.

Similarly, the emails that Plaintiffs submit were sent by Regus plc's apparent agents. <u>See</u> ECF Nos. 213-6, 213-7, 213-8. Defendants assert that the authors of all three emails were RMG employees. Once again, those claims are based solely on the testimony of one of Defendants' employees, this time RMG's Vice President of Human Resources. <u>See</u> ECF No. 202-3 ("Edmondson Decl.") ¶¶ 2, 3, 5. However, some of the emails are copyrighted by Regus plc. They all contain a footer listing Regus plc and an address in Luxembourg. There is no mention whatsoever of RMG. The

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

employees' titles are listed, but the emails state that they are employees of "Regus" with no further specification.  ECF Nos. 213-6, 213-7, 213-8.  The Court therefore finds that Plaintiffs have made a prima facie showing that Regus plc intentionally or carelessly created the impression that the authors of those emails were Regus plc employees.  Whether or not they were actually Regus plc employees, Plaintiffs have made a prima facie showing that the authors of the emails acted as Regus plc's ostensible agents.  The emails, too, may be imputed to Regus plc for the personal jurisdiction analysis.

Having concluded that Plaintiffs have made a prima facie showing that the website and emails may be imputed to Regus plc, the Court now turns to the personal jurisdiction analysis specified by the Supreme Court and Ninth Circuit.

**B.   Specific Jurisdiction**

The exercise of specific jurisdiction requires three elements: (1) the non-resident must purposefully direct an activity or transaction at the forum state; (2) the claim must arise out of or relate to the defendant's forum-related activities; and (3) personal jurisdiction must comport with traditional notions of fair play and substantial justice.  The Court examines each in turn.

**1.   Purposeful Direction**

The Ninth Circuit has further divided the purposeful direction prong into a three-part test in tort cases: the defendant must have (1) committed an intentional act (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.  Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006).

Regarding the first part of that test, simply creating and registering a website, even a passive one, qualifies as an intentional act.  <u>See, e.g.</u>, <u>Brayton Purcell LLP v. Recordon & Recordon</u>, 606 F.3d 1124, 1128-29 (9th Cir. 2010); <u>Rio Props., Inc. v. Rio Int'l Interlink</u>, 284 F.3d 1007, 1020 (9th Cir. 2002).  The Court finds that Regus plc's operation of the regus.com website was an intentional act.[5]

The next issue is whether that intentional act was expressly aimed at California.  In the Ninth Circuit, operation of a passive website without "something more" is insufficient to confer jurisdiction.  <u>See</u> <u>Rio Props.</u>, 606 F.3d at 1020.  Among the factors considered in determining whether a defendant has done "something more" are the interactivity of the website, the geographic scope of the defendant's commercial ambitions, and whether the defendant individually targeted a plaintiff known to be a forum resident.  Additionally, the forum state has jurisdiction over a defendant who "continuously and deliberately exploited" the market in the forum state through a website.  <u>Mavrix Photo, Inc. v. Brand Techs., Inc.</u>, 647 F.3d 1218, 1230 (9th Cir. 2011).  In <u>Mavrix</u>, the Ninth Circuit

---

[5] Regus plc asserts that it cannot be held responsible for the website's advertising and marketing content because that content is developed by Regus Group Services, Ltd. and RMG.  <u>See</u> Reply at 9; ECF No. 202-4 ("Sherman Decl.") ¶¶ 2-3.  Plaintiffs object to the Sherman declaration because it is phrased in the present tense and refers to a marketing agreement dated August 7, 2012 through which Regus Group Services, Ltd. develops the website content.  Plaintiffs argue that Ms. Sherman's statements are irrelevant because they deal only with website content developed <u>after</u> Plaintiffs entered into their office rental agreements.  ECF No. 204.  The Court agrees.  Plaintiffs' objection is SUSTAINED and the declaration is STRICKEN.  However, even were the Court to consider Ms. Sherman's declaration, it would be insufficient to overcome Plaintiffs' prima facie case that Regus plc operated the website directly or through an ostensible agent.

determined that the defendant "operated a very popular website with a specific focus" on certain California industries. Id. The court held that "the website's subject matter, as well as the size and commercial value of the California market" supported a conclusion that the defendant "anticipated, desired, and achieved a substantial California viewer base." Id. The Ninth Circuit also considered two additional factors. First, the defendant sought and attracted a nationwide audience, so it could count on reaching consumers in all fifty states. Second, the defendant cultivated a nationwide audience for commercial gain, and therefore could not "characterize the consumption of its products in any state as 'random,' 'fortuitous,' or 'attenuated.'" Id.

Applying these principles to this case, it is clear that operation of the regus.com website constituted an intentional act expressly aimed at California. During the relevant period, the regus.com website advertised offices for rent in 37 states, California among them, and in several California cities (including San Francisco, San Diego, San Jose, Los Angeles, Santa Clara, San Mateo, San Bruno, and many others). RJN Ex. Q. The website also advertised offices for rent in more than fifteen buildings in San Francisco alone. RJN Ex. R. As for cultivating business for commercial gain, the Regus companies' revenues derived from California were around £60 million[6] each year from 2010 to 2012,

---

[6] These numbers are derived by multiplying the revenue numbers for the Americas published in Regus' publicly available annual reports by the percentages of the Regus Group's revenues that come from California. See RJN Ex. J at PLF00667; RJN Ex. K at PLF00760; RJN Ex. L at PLF00863; ECF No. 187-5 ("Redacted Regus Revenue Stip.") (redacted portions filed under seal). It is somewhat confusing to read the stipulation because, while the stipulation reports the percentages of both RMG and Regus Group revenues derived from

United States District Court
For the Northern District of California

accounting for over fifteen percent of United States revenues. There can be no doubt that Regus plc intended to, and did, significant business in California through its website.

The interactive features of the website are also important. The website's interactive features included options to contact Regus, book a tour of an office, and get a "quick quote" for rental rates. During jurisdictional discovery, Regus plc turned over examples of requests for information submitted to Regus through the website. One example was a request for information from a potential customer seeking "executive suite space in San Francisco." ECF No. 187-1 ("Garofolo Decl.") Ex. 9 (filed under seal). Regus plc also turned over an example of the sort of response it give to inquiries through the website's "contact us" feature. That response provides additional information about the products that Regus offers. Its footer lists Regus plc's corporate name, address, and other information. There is no reference to RMG or any other Regus entity. ECF No. 189-4. Once again, Regus plc asserts that RMG, not Regus plc, handled these interactive features of the website. However, Plaintiffs' evidence suggests otherwise, and at this stage factual disputes are resolved in their favor. Even if the Court were to agree that RMG actually operated the interactive features, the absence of any reference to RMG on the website or the response to the "contact us" inquiry would render RMG Regus plc's ostensible agent in operation of those features. Therefore, Plaintiffs have made a prima facie showing that Regus plc operated -- either directly or through an agent -- a website

---

business in California, the stipulation only reports total revenue figures for RMG.

**United States District Court**
For the Northern District of California

1  with interactive features targeted at Californians and through

2  which Californians interacted with Regus.  For all of these

3  reasons, the Court finds that operation of the regus.com website

4  was an intentional act aimed at California.

5      Finally, the intentional act must cause harm the defendant

6  knows is likely to be suffered in the forum state.  In <u>Marvix</u>, the

7  Ninth Circuit found that harm to Californians was foreseeable

8  because a significant number of Californians would have bought the

9  plaintiff's publications.  Because the plaintiff alleged copyright

10  infringement of photographs in those publications, the court

11  concluded that it was foreseeable that "a jurisdictionally

12  significant amount of" the plaintiff's harm would be suffered in

13  California.  <u>Marvix</u>, 647 F.3d at 1232-33.  Here, the foreseeability

14  of harm suffered in California is even clearer.  The regus.com

15  website advertised office space in California to Californian

16  residents and businesses.  If, as alleged, Defendants'

17  advertisements were misleading and thereby harmed Regus customers,

18  it was eminently predictable that those customers and that harm

19  would be in California.  The Court finds that Regus plc

20  purposefully directed the operations of the regus.com website at

21  California.

22          **2.   Claim arises out of the forum-related activities**

23      The second requirement for specific jurisdiction is that

24  Plaintiffs' claims arise out of Regus plc's forum related

25  activities.  "This requirement is satisfied if [Plaintiffs] would

26  not have been injured 'but for' [Regus plc]'s conduct in

27  [California]." <u>Rio Props.</u>, 284 F.3d 1007, 1021.

28      Here, Plaintiffs rented property advertised on the regus.com

1  website.  They did so after viewing advertisements on the website

2  claiming that Regus provided office space for a low monthly price.

3  According to Plaintiffs, they would not have rented office space

4  from Regus in the absence of the advertising on the website.  SAC

5  ¶¶ 46, 57, 72.  As the Court found previously, the advertising of

6  office space in California through the website constituted an

7  activity purposefully directed at California.  Assuming the truth

8  of Plaintiffs' well-pleaded factual allegations, they would not

9  have rented office space from Regus absent Regus plc's forum-

10  related activities.  But for Regus plc's activities directed at

11  California, Plaintiffs' alleged injuries would not have occurred.

12  Therefore, the Court finds that Plaintiffs' claims arise out of

13  Regus plc's forum-related activities.

14      **C.**    **Fair Play and Substantial Justice**

15      The Ninth Circuit has developed a multi-factor test for

16  assessing this aspect of specific personal jurisdiction:

17

18      The exercise of jurisdiction is reasonable if it comports
with traditional notions of fair play and substantial
justice. In determining reasonableness, seven factors are

19  considered: (1) the extent of a defendant's purposeful
interjection; (2) the burden on the defendant in

20  defending in the forum; (3) the extent of conflict with
the sovereignty of the defendant's state; (4) the forum

21  state's interest in adjudicating the dispute; (5) the
most efficient judicial resolution of the controversy;

22  (6) the importance of the forum to the plaintiff's
interest in convenient and effective relief; and (7) the

23  existence of an alternative forum." Rio Props., 284 F.3d
at 1021.

24

25  Because the Court has found that Plaintiffs have made a prima facie

26  showing under the first two prongs of the specific jurisdiction

27  test, the burden now shifts to Regus plc to show that the exercise

28  of personal jurisdiction would be unfair.

**United States District Court**
For the Northern District of California

Regus plc asserts that it has not purposefully injected itself into California because it has no presence, operations, or assets here.  Reply at 12.  That hardly matters given the Court's prior findings.  In Rio Properties, the Ninth Circuit held that a Costa Rican internet business was amenable to suit in Nevada because it had purposefully injected itself into Nevada by running print and radio advertisements for its website in Nevada.  Id. at 1012, 1020-21.  Here, Regus plc owned and operated a website with advertising directed at California, offering services which would be provided in California, and through which Californians interacted with Regus.  The Court finds that the extent of Regus plc's purposeful injection into California favors the exercise of personal jurisdiction.

Regus plc also asserts that it would be burdened by defending in California.  That is likely true.  However, it applies equally to any international defendant, and, as in Rio Properties, Regus plc "would be so burdened defending in any judicial district in the United States."  Id. at 1021.  With respect to the third factor, Regus plc cites no source of conflict with the sovereignty of its home state.  By contrast, California has a strong interest in adjudicating these claims.  Given the size of Regus plc's business in California and the fact it specifically advertises office space here, California has a strong interest in ensuring that its citizens are not harmed by Regus plc's actions.

The fifth factor focuses on the location of the witnesses and evidence.  See Menken v. Emm, 503 F.3d 1050, 1060-61 (9th Cir. 2007).  Plaintiffs assert that most (or all) of their witnesses and evidence are here.  Opp'n at 18.  Regus plc counters only by

**United States District Court**
For the Northern District of California

rehashing its argument under the second factor -- that it would be hard for Regus plc to litigate here.  Reply at 12.  Thus the Court finds that this factor, too, favors Plaintiffs.

The sixth factor assesses the importance of the forum to Plaintiffs' effective and convenient relief.  Though "not of paramount importance," <u>Menken</u>, 503 F.3d at 1061, this factor favors Plaintiffs.  Plaintiff Circle Click is a small business based in San Francisco that would have a difficult time litigating elsewhere.  Opp'n at 18.

The seventh factor considers the existence of a reasonable alternative forum.  Regus plc asserts that Plaintiffs bear the burden of proving the unavailability of such a forum.  The only conceivable alternative fora are the Channel Islands or Luxembourg, where Regus plc is located.  However, Plaintiffs point out that their claims are grounded in California law and specific to California.  They might therefore be unavailable elsewhere.

On balance, the factors weigh considerably in favor of the reasonable exercise of personal jurisdiction over Regus plc.  The first and fourth factors militate particularly strongly in favor of personal jurisdiction.  The fifth and sixth favor personal jurisdiction as well, though perhaps not quite so powerfully.  The third and seventh are neutral.  Only the second favors Regus plc, but not in any way unusual for an international defendant.  Indeed, the Ninth Circuit has found that "the factors weigh overwhelmingly in favor of the reasonable exercise of personal jurisdiction" under similar circumstances.  <u>See</u> <u>Rio Properties</u>, 284 F.3d at 1021.  The Court finds that the exercise of personal jurisdiction over Regus plc comports with the traditional notions of fair play and

1   substantial justice.

2

3   **V. <u>CONCLUSION</u>**

4     For the foregoing reasons, Defendant Regus plc's motion to

5   dismiss for lack of personal jurisdiction is DENIED.

6

7     IT IS SO ORDERED.

8

9     Dated: October 14, 2014 

10         UNITED STATES DISTRICT JUDGE

*United States District Court*
For the Northern District of California

18