United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CIRCLE CLICK MEDIA LLC, a California limited liability company, and CTNY INSURANCE GROUP LLC, a Connecticut limited liability company, on behalf of themselves and all others similarly situated,<br><br>              Plaintiffs,<br><br>  v.<br><br>REGUS MANAGEMENT GROUP LLC, a Delaware limited liability company; REGUS BUSINESS CENTRE LLC, a Delaware limited liability company; REGUS plc, a Jersey, Channel Islands public limited company; HQ GLOBAL WORKPLACES LLC, a Delaware limited liability company, and DOES 1 through 50,<br><br>              Defendants. | Case No. 3:12-CV-04000-SC<br><br>ORDER DENYING (1) MOTION TO DISMISS, (2) MOTION FOR SUMMARY JUDGMENT, (3) MOTION FOR SANCTIONS, (4) MOTION TO EXCLUDE EXPERT REPORT, and (5) MOTION FOR SECURITY FOR COSTS; AND DENYING WITHOUT PREJUDICE (6) MOTION FOR CLASS CERTIFICATION |

Now before the Court are (1) Motion to Dismiss for lack of subject matter jurisdiction, ECF No. 271 ("MTD"), filed by Defendants Regus Management Group LLC, Regus Business Centre LLC, Regus plc, and HQ Global Workplaces LLC (collectively "Regus") (2) Regus's Motion for Summary Judgment on its counterclaim for breach of contract, ECF No. 272 ("MSJ"), (3) Regus's Motion for Sanctions

under Rule 37, ECF No. 283 ("Mot. for Sanc."), (4) Motion to Exclude Expert Reports of Mark Vogel and James Pampinella, ECF No. 311 ("Mot. to Excl."), filed by Plaintiffs Circle Click Media LLC ("Circle Click") and CTNY Insurance Group Inc. ("CTNY") (collectively "Plaintiffs"), (5) Plaintiffs' Motion for Class Certification, ECF No. 238 ("Mot. for Cert."), and (6) Regus's Motion for Security for Costs, ECF No. 273 ("Mot. for Sec."). The Motions are fully briefed and suitable for disposition without oral argument per Local Rule 7-1(b). For the reasons set forth below, the Court finds as follows:

- Regus's Motion to Dismiss is DENIED.

- Regus's Motion for Summary Judgment on its counterclaims is DENIED.

- Regus's Motion for Sanctions is DENIED AS MOOT.

- Plaintiffs' Motion to Exclude Testimony is DENIED.

- Plaintiffs' Motion for Class Certification is DENIED WITHOUT PREJUDICE. Plaintiffs may, if they choose, file a revised motion for class certification within thirty (30) days of the filing date of this order.

- Regus's Motion for Security for Costs is DENIED.

I. **BACKGROUND**

   A. **Facts**

   Regus is in the business of leasing commercial office space throughout California and New York. Through its website, Regus has represented that it provides customers with fully equipped offices for one all-inclusive monthly price. Regus has also represented that its services are "simple, easy, and flexible," that its one-page contract -- the Office Service Agreement ("OSA") -- "takes

///

**United States District Court**
For the Northern District of California

1  just 10 minutes to complete," and that it provides a "single
2  monthly invoice."  ECF No. 65 ("2AC") ¶¶ 34-41.

3      The OSA is in fact one page, and it merely identifies the
4  location of the office space, the monthly office fee, the term of
5  the agreement, and the parties to it.  Regus's monthly invoices,
6  however, routinely exceed the monthly payment amount indicated on
7  the OSA due to various mandatory fees disclosed in other documents.

8      One of these documents is the Terms and Conditions, which the
9  OSA incorporates by reference.  The Terms and Conditions is also
10  only one page, but it is printed in five-point font, which is
11  almost illegible.  In hardcopy, the Terms and Conditions are
12  printed on the reverse side of the OSA.  In the online version,
13  customers have to download them.  The font is equally small in the
14  online version, though a customer can, of course, change the
15  settings on their computer to increase the size.  When a customer
16  signs the OSA, they affirm that they have read and understood the
17  Terms and Conditions.

18      The Terms and Conditions reference another document, the
19  "House Rules."  The House Rules also reference a "Service Price
20  Guide," which lists the prices for a variety of services, including
21  kitchen amenities and phone and IT services.

22      There are four allegedly unfair, illegal, or deceptive fees at
23  issue in this case.  None of them are disclosed on the OSA.  There
24  is a comments box on the OSA, however, where Regus employees can
25  add additional information to the standard OSA form.  In a minority
26  of executed OSA's, Regus employees have made a note in the comments
27  box of one or more of the mandatory fees.
28  ///

United States District Court
For the Northern District of California

1  The first fee at issue is the Kitchen Amenities Fee ("KAF").

2  The KAF is a monthly fee charged by Regus for the provision of

3  unlimited beverages.  The service -- and therefore the fee -- is

4  mandatory; thus, all Regus tenants pay the KAF.  The KAF is neither

5  disclosed in the OSA nor the Terms and Conditions.  The first

6  mention of the KAF is in the House Rules, which states that it is

7  mandatory but does not list the amount.  The amount of the KAF is

8  listed in the Services Price Guide.

9  The second mandatory fee at issue is the Office Restoration

10  Services fee ("ORS").  The ORS is a mandatory fee charged upon a

11  tenant's departure for "normal cleaning and testing and to return

12  the accommodations to its original state."  ECF No. 279-1 ("Cert.

13  Opp'n") at 12.  The ORS is disclosed -- though the amount of the

14  fee is not provided -- in the Terms and Conditions and House Rules.

15  The third mandatory fee at issue is the Business Continuity

16  Services fee ("BCS").  The BCS is a mandatory fee charged upon the

17  client's departure for services such as answering phone calls and

18  forwarding mail.  The BCS is disclosed in the Terms and Conditions

19  and House Rules; those disclosures, however, merely indicate that

20  the BCS is "three months of the Virtual Office fee," without

21  providing the amount of the Virtual Office fee.  Mot. for Cert. at

22  9.

23  The final fee in dispute is the amount that Regus charges

24  clients for taxes on certain services.[1]  Although the OSA and Terms

25  and Conditions disclose that quoted fees are "excluding tax,"

26  _____

27  [1] Whether Plaintiffs plan on pursuing restitution for taxes is not
entirely clear.  Although they are mentioned in their Motion on
Class Certification, they are not included as part of the proposed

28  class definitions.  Upon a renewed Motion for Class Certification,
Plaintiffs should provide additional clarification.

1   Plaintiffs claim that "Circle Click was charged furniture and phone
2   handset taxes that were excessive."  Id.

3       The content and form of Regus's invoices for telephone
4   services are also at issue in this case.  Specifically, Plaintiffs
5   allege that the invoices that Regus provides for telephone services
6   do not comply with California Public Utilities Code ("CPUC")
7   section 2890, which sets forth a number of requirements for the
8   contents of telephone bills.

9       **B.   The Named Plaintiffs**

10      Circle Click is a California company with its principal place
11  of business in San Francisco, California.  Circle Click executed an
12  OSA with Regus for two offices in San Francisco for a period
13  starting in May 2011 and ending in May 2012.  Prior to entering
14  into the OSA, Circle Click's principal viewed Regus's website and
15  allegedly relied on Regus's advertisements indicating Regus offered
16  fully-equipped office space for a single low monthly price.  Before
17  signing the OSA online, Circle Click's principal opened and read
18  the Terms and Conditions linked to the OSA on her computer.
19  Although the OSA indicated that Circle Click's total monthly
20  payment was to be $2,461, Regus invoiced Circle Click for
21  significantly more than that due to additional fees that were not
22  listed on the OSA.

23      CTNY is a Connecticut company doing business in New York.
24  CTNY entered into a Regus OSA for New York office space in May
25  2012.  Prior to entering into the OSA, CTNY's principal viewed
26  Regus's website and allegedly relied on Regus's advertisements
27  indicating Regus offered fully-equipped office space for a single
28  low monthly price.  CTNY also allegedly relied on oral

United States District Court
For the Northern District of California

representations made by Regus's sales representatives that the monthly payment per the list price included all the required charges and constituted the total monthly payment.  While reviewing the OSA online, CTNY's principal was unable to open a link to Regus's Terms and Conditions.  Nevertheless, CTNY's principal confirmed that he had read and understood the Terms and Conditions. Soon after executing the agreement, CTNY complained about the KAF and other services it allegedly thought were included in the OSA price.  CTNY moved out of the Regus space within a few weeks of moving in.

**C.   Procedural History**

In July 2012, Plaintiffs filed this action against Defendants in California state court.  ECF No. 1.  The action was subsequently removed, and several rounds of pleading followed.  The gravamen of Plaintiffs' Second Amended Complaint ("2AC"), Plaintiffs' operative pleading, is that Regus and the other Defendants routinely assessed Plaintiffs for charges that were not disclosed in the OSA.  ECF No. 65 ("2AC").  For example, according to Plaintiffs' complaint, the monthly fee listed in Circle Click's OSA was $2,461, but Circle Click received monthly invoices ranging from $2,559.67 to $6,653.79.  Id. ¶ 49.

The Court's April 22, 2013 Order, ECF No. 77 ("4/22/13 MTD Order"), dismissed several of Plaintiffs' claims with prejudice. The following causes of action were left undisturbed: violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq.; violation of California's False Advertising Law ("FAL"), id. § 17509; and unjust enrichment.  As part of the UCL claim, Plaintiffs allege violations of the unfair, fraudulent, and

unlawful prongs of the UCL.  As part of their FAL and UCL claims,
Plaintiffs assert violations of California Business and Professions
Code section 17509 and CPUC section 2890.

Regus asserted a variety of counterclaims in their Answer.
After the Court dismissed those counterclaims with leave to amend,
Regus filed a Second Amended Counterclaim.  ECF No. 101 ("SACC").
Regus's SACC alleges that CTNY breached the OSA by: (1) failing to
make its full monthly office payments, plus applicable taxes, in an
amount of $12,209.01; (2) failing to pay the KAF, plus applicable
taxes, in an amount of $391.92; (3) failing to pay the office set-
up fee, plus applicable taxes, in an amount of $81.66; (4) failing
to pay the BCS fee in an amount of $987; (5) failing to pay the ORS
fee, plus applicable taxes, in an amount of $239.45; and (6)
failing to pay late payment fees.  SACC ¶¶ 33-38.  With the
exception of the basic monthly office fee, none of these fees are
described in the OSA.  In its prayer for relief, Regus sought,
among other things, damages and attorney's fees.  In its December
10, 2014 Order, however, the Court dismissed with prejudice Regus's
request for attorney's fees, as well as Regus's breach of contract
counterclaim to the extent that it was predicated on CTNY's failure
to pay a BCS fee.


## II. **MOTION TO DISMISS**

Pursuant to Federal Rule of Civil Procedure 12(b)(1), Regus
moves the Court to dismiss Plaintiffs' case for lack of subject
matter jurisdiction on the grounds that Plaintiffs lack standing.
First, Regus argues that Plaintiffs lack standing to assert their
claims under Cal. Bus. & Prof. §§ 17200, 17500, and 17509 because

**United States District Court**
For the Northern District of California

1   Circle Click is neither a consumer nor Regus's competitor.   Second,

2   Regus argues that Plaintiffs' unjust enrichment claim should be

3   dismissed because it is duplicative of its UCL and FAL claims.[2]

4   Third, Regus argues that Plaintiffs lack standing to bring claims

5   based on alleged "unauthorized fees" that Regus claims were not

6   charged, not paid, or otherwise reimbursed.   Finally, Regus argues

7   that Plaintiffs lack standing to seek injunctive relief because

8   Plaintiffs do not allege a threat of future harm.

9        **A.   <u>Legal Standard</u>**

10       Standing is an element of subject matter jurisdiction.

11  Therefore, Regus moves to dismiss for lack of subject matter

12  jurisdiction under Fed. R. Civ. P. 12(b)(1).

13       Generally, on a 12(b)(1) motion, a court need not defer to a

14  plaintiff's factual allegations regarding jurisdiction.   But the

15  Supreme Court has held that where a 12(b) motion to dismiss is

16  based on lack of standing, the Court must defer to the plaintiff's

17  factual allegations and must "presume that general allegations

18  embrace those specific facts that are necessary to support the

19  claim."   <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992).

20  "[G]eneral factual allegations of injury resulting from the

21  defendants' conduct may suffice."   <u>Id.</u> at 560.   In short, a

22  12(b)(1) motion to dismiss for lack of standing can only succeed if

23  the plaintiff has failed to make "general factual allegations of

24  injury resulting from the defendant's conduct."   <u>Id.</u> at 561.

25

26

27  ───────────────
    [2] Although Regus brings this as part of their motion to dismiss for
    lack of standing, it is properly understood as a motion to dismiss

28  for failure to state a claim under Federal Rule of Civil Procedure
    12(b)(6).

**United States District Court**
For the Northern District of California

B.   **Discussion**

1.   **Standing to Assert UCL and FAL Claims**

Regus first asks the Court to dismiss Plaintiffs' UCL and FAL claims.  Regus argues that because the UCL and FAL were enacted to protect consumers and competitors, Circle Click, which is neither a consumer nor Regus's competitor, lacks standing.

Not so.  California's UCL and FAL apply to any "person who has suffered injury in fact and has lost money or property as a result" of the alleged wrongful conduct.  <u>See</u> Cal. Bus. & Prof. Code §§ 17204, 17535.  The term "person" includes "corporations."  Cal. Bus. & Prof. Code §§ 17201, 17506.  Accordingly, Circle Click falls within the scope of protection afforded by the UCL and FAL.

Regus relies on the following language from <u>Linear Tech. Corp. v. Applied Materials, Inc.</u>: "where a UCL action is based on contracts not involving either the public in general or individual consumers who are parties to the contracts, a corporate plaintiff may not rely on the UCL for the relief it seeks."  152 Cal. App. 4th 115, 135 (2007) (citing <u>Rosenbluth Int'l, Inc. v. Super. Ct.</u>, 101 Cal. App. 4th 1073 (2002)).  Read in context, however, the court's holding in <u>Linear Tech.</u> does not prevent any corporate plaintiff from proceeding under the UCL in a case arising from a contract that does not involve either the public or individual consumers.  The holdings of both <u>Linear Tech.</u> and <u>Rosenbluth</u> (the case on which <u>Linear Tech.</u> relied) turn less on the fact that the alleged victims in those cases were businesses, and more on the fact that these entities were sophisticated and individually capable of seeking relief.  The alleged victims in <u>Linear Tech.</u> were large corporations who had "the resources to seek damages or

9

1   other relief should [they] choose to do so." Id.   The potential

2   UCL plaintiffs in Rosenbluth were "sophisticated corporations, most

3   in the Fortune 1000 . . . ." Rosenbluth, 101 Cal. App. 4th at 1078.

4   The court in Rosenbluth noted in particular that the plaintiff's

5   effort to act as the self-appointed representative of these alleged

6   corporate victims raised due process concerns because, given UCL

7   plaintiffs are limited to injunctive and restitutionary relief, "it

8   may well leave the victims worse off than they would be if they

9   filed individual [contract or tort] actions." Id.; see also Linear

10  Tech., 152 Cal. App. 4th at 135 ("Thus, to the extent that Linear

11  purports to represent other customers, permitting its UCL claim

12  would raise serious fundamental due process considerations.").

13      Here, by contrast, the proposed class of plaintiffs is not so

14  uniformly sophisticated and capable of seeking relief against

15  Regus.  Plaintiff Circle Click, for example, is comprised of only

16  two individuals.  In addition, this action deals with form

17  contracts, not individually negotiated contracts between

18  sophisticated entities.  The due process concerns raised in

19  Rosenbluth and Linear Tech., moreover, are not relevant here given

20  that upon class certification class members would be given notice

21  and have the opportunity to opt out.

22      The UCL claim in this case also differs from the cases cited

23  by Regus insofar as the allegedly unfair, deceptive, and unlawful

24  acts committed by Regus are not limited to the parties' contractual

25  relationship.  Cf. Linear Tech. Corp., 152 Cal. App. 4th at 135

26  (harm was a result of "contracts specifically with the plaintiff");

27  Dollar Tree Stores, Inc. v. Toyama Partners LLC, 875 F. Supp. 2d

28  1058 (N.D. Cal. 2012) (harm based on breach of contract); In re

1   _ConocoPhillips Co. Service Station Rent Contract Lit._, No. 09-CV-

2   02040 RMW, 2011 U.S. Dist. LEXIS 40471 (N.D. Cal., Apr. 13, 2011))

3   (harm as a result of inadequate disclosures in a franchise

4   agreement).  Although allegedly inadequate disclosures in the OSA

5   are a central aspect of this case, Plaintiffs' claims are broader:

6   Plaintiffs allege that they and other similarly situated businesses

7   were harmed as a result of a scheme by Regus to collect

8   unreasonable penalties and unauthorized charges from tenants.  This

9   alleged scheme encompasses actions beyond the parties' contractual

10  relationship, including publishing deceptive advertisements,

11  printing documents in illegible fonts, hiding fees in ancillary

12  documents, and other unfair, deceptive, or unlawful business

13  practices.

14       As to Plaintiffs' FAL claim, Regus's only argument as to why

15  Plaintiffs do not have standing is that the Court in a prior Order

16  dismissed a similar claim alleged pursuant to the laws of New York

17  State -- specifically, N.Y. Gen. Bus. Law §§ 349-350.  See ECF No.

18  59 at 23-25.  The dismissed claim, however, was based on a New York

19  law which applied only to "those who purchase goods and services

20  for personal, family or household use."  _Sheth v. New York Life_

21  _Ins. Co._, 709 N.Y.S. 2d 72, 73 (N.Y. App. Div. 2000).  California's

22  FAL, however, does not have the same limitation.

23       Accordingly, Regus's motion to dismiss Plaintiffs' claims

24  under the UCL and FAL for lack of standing is DENIED.

25            **2.   Unjust Enrichment Claim**

26       Regus argues that Circle Click's unjust enrichment claim fails

27  because it is duplicative of its UCL and FAL claims and, even if it

28  is not duplicative, it cannot survive as a standalone claim.  As

the Court already found in its January 3, 2013 Order: "[C]laims for restitution or unjust enrichment may survive the pleading stage when pled as an <u>alternative</u> avenue of relief."  ECF No. 59 at 25-26.  Pursuant to the Court's ruling, Circle Click asserted in its 2AC a claim for unjust enrichment in the alternative to its UCL and FAL claims.  Accordingly, Regus's motion to dismiss Plaintiffs' unjust enrichment claim is DENIED.

### 3.   Standing to Sue for Unauthorized Fees

Regus claims that Circle Click did not suffer any harm as a result of being charged allegedly unauthorized fees.  As a result, Regus asserts that (1) Plaintiffs lack standing under Article III to bring any claims based on those fees, and (2) Plaintiffs lack standing to bring claims under the UCL and FAL pursuant to California Proposition 64 which requires named plaintiffs to show individualized harm.

To establish Article III standing, a plaintiff must show (1) a legally recognizable injury (<u>i.e.</u> "injury-in-fact"), (2) caused by the named defendant, (3) that is capable of legal or equitable redress." <u>Schmier v. U.S. Court of Appeals for the Ninth Circuit</u>, 279 F.3d 817, 820-21 (9th Cir. 2002).  "Under the 'injury-in-fact' prong, the injury alleged must be actual or imminent, not conjectural or hypothetical." <u>Loritz v. U.S. Court of Appeals for Ninth Circuit</u>, 382 F.3d 990, 992 (9th Cir. 2004) (citations omitted).

Since the passage of Proposition 64 in November 2004, "only plaintiffs who have suffered actual damage may pursue a private UCL action.  A private plaintiff must make a twofold showing: he or she must demonstrate injury in fact and a loss of money or property

12

caused by unfair competition."  Cal. Bus. & Prof. Code § 17204;
Peterson v. Cellco Partnership, 164 Cal. App. 4th 1583, 1590
(2008).

Plaintiffs have pleaded and provided evidence showing that
they have suffered injury-in-fact as a result of the alleged UCL
and FAL violations.  For example, they note that Regus deducted
certain amounts from Plaintiffs' retainers for unpaid fees, that
Plaintiffs in fact paid the fees in question, and that Plaintiffs
would not have entered into the OSA's with Regus if not for Regus's
allegedly deceptive acts.  ECF Nos. 295 ("MTD Opp'n") at 4; 296 ¶¶
69, 87; 251 ¶ 41.  Accordingly, the Court finds that Plaintiffs
have demonstrated injury-in-fact sufficient to establish Article
III standing.

For the same reasons, Plaintiffs have also demonstrated a loss
of money or property caused by unfair competition.  Contrary to
Defendants' argument, therefore, Plaintiffs do not lack standing
pursuant to California Proposition 64.

Thus, Defendants' motion to dismiss claims based on allegedly
"unauthorized" fees is DENIED.

### 4.   <u>Standing to Sue for Injunctive Relief</u>

Finally, Regus argues that Plaintiffs lack standing to seek
injunctive relief because they have not alleged a threat of future
harm.  Specifically, Defendants point to the fact that Plaintiffs
have not alleged that they intend to rent office space from Regus
in the future.

In Henderson v. Gruma Corp., the court rejected a similar
argument, reasoning that

> [i]f the Court were to construe Article III standing for
> FAL and UCL claims as narrowly as the Defendant

**United States District Court**
For the Northern District of California

1
2
3

> advocates, federal courts would be precluded from
> enjoining false advertising under California consumer
> protection laws because a plaintiff who had been injured
> would always be deemed to avoid the cause of the injury
> thereafter ("once bitten, twice shy") and would never
> have article III standing.

4  2011 U.S. Dist. LEXIS 41077, 2011 WL 1362188, at *19-20 (C.D. Cal.

5  Apr. 11, 2011).  For the same reasons, the Court finds Plaintiffs

6  have met the requirements for standing and may seek injunctive

7  relief in this action.  Defendants' motion as to Plaintiffs' prayer

8  for injunctive relief is therefore DENIED.

9      **C.    Conclusion on Motion to Dismiss**

10     For the foregoing reasons, Defendants' Motion to Dismiss is

11 DENIED.

12

13 **III.  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS'**

14     **COUNTERCLAIMS**

15     The Court now turns to Regus's Motion for Summary Judgment on

16 its counterclaim for breach of contract against CTNY.

17     **A.    Legal Standard**

18     Entry of summary judgment is proper "if the movant shows that

19 there is no genuine dispute as to any material fact and the movant

20 is entitled to judgment as a matter of law."  Fed. R. Civ. P.

21 56(a).  "In order to carry its burden of production, the moving

22 party must either produce evidence negating an essential element of

23 the nonmoving party's claim or defense or show that the nonmoving

24 party does not have enough evidence of an essential element to

25 carry its ultimate burden of persuasion at trial."  Nissan Fire &

26 Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th

27 Cir. 2000).  "The evidence of the nonmovant is to be believed, and

28 all justifiable inferences are to be drawn in his favor."  Anderson

**United States District Court**
For the Northern District of California

1   v. <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).   Summary judgment

2   should be entered against a party that fails to make a showing

3   sufficient to establish the existence of an element essential to

4   its case.   <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

5       **B.   <u>Discussion</u>**

6       Regus argues that the Court should enter summary judgment in

7   its favor on its breach of contract counterclaim against CTNY

8   because (1) a valid contract exists between Regus and CTNY, (2)

9   Regus fully performed its obligations under the contract, and (3)

10  CTNY breached its obligations under the contract by failing to pay

11  all amounts due.   Regus brings its counterclaim under New York law.

12      Plaintiffs make various arguments as to why Regus's motion

13  ought to be denied.   The Court focuses on one in particular.   As an

14  affirmative defense, CTNY asserts that it was fraudulently induced

15  into signing the OSA.   To establish fraud in the inducement, a

16  plaintiff must demonstrate each of the following elements: (1) the

17  defendant made a representation; (2) as to a material fact; (3)

18  which was false; (4) and known to be false by the defendant; (5)

19  for the purpose of inducing the other party to rely on it; (6) the

20  other party rightfully relied on it; (7) in ignorance of its

21  falsity; and (8) to his or her injury.   <u>Clarke v. Max Advisors</u>, 235

22  F. Supp. 2d 130, 142 (N.D.N.Y. 2002).

23      CTNY has presented evidence that Regus employees made oral

24  representations during CTNY's walkthrough of the property that the

25  monthly payment per the list price included all the required

26  charges and constituted the total monthly payment.   ECF No. 251

27  ("Fullerton Decl.") ¶ 15.   Accordingly, there are genuine issues of

28  material fact as to whether CTNY was fraudulently induced into

1  signing the OSA -- specifically, (1) whether those representations

2  were false, (2) whether they were known to be false by Regus, (3)

3  whether the representations were made by Regus for the purpose of

4  inducing CTNY to enter into the OSA, and (4) whether CTNY

5  rightfully relied on the foregoing representations.

6      Although there may be other issues of material fact, the Court

7  need not address them.  For the forgoing reasons, the Court DENIES

8  Defendants' Motion for Summary Judgment.

9

10  **IV.  MOTION FOR CLASS CERTIFICATION**

11      Plaintiffs ask the Court to certify two proposed classes

12  "consisting of a California class pursuing claims on all . . .

13  causes of action and a New York class pursuing the unjust

14  enrichment cause of action."  Mot. for Cert. at 1.  The California

15  class is defined as:

16          All persons (except those persons who entered into the
            Regus enterprise form of agreement or whose office
17          accommodation agreement contained a class action waiver)
            who, on or after May 8, 2008, on account of an office
18          located in California, either (1) entered into an Office
            Service Agreement or Online Service Agreement with Regus
19          using one of the Regus standard physical office space
            forms of agreement or (2) were charged by Regus a Kitchen
20          Amenities Fee, Office Restoration Service fee or Exit fee
            or equivalent, or a Business Continuity Service fee or
21          equivalent.

22  Mot. for Cert. at 11.  The New York class is defined as:

23          All persons (except those persons who entered into the
            Regus enterprise form of agreement or whose office
24          accommodation agreement contained a class action waiver)
            who, on or after September 24, 2006, on account of an
25          office located in New York, either (1) entered into an
            Office Service Agreement or Online Service Agreement with
26          Regus using one of the Regus standard physical office
            space forms of agreement or (2) were charged by Regus a
27          Kitchen Amenities Fee, Office Restoration Service fee or
            Exit fee or equivalent, or a Business Continuity Service
28          fee or equivalent.

16

United States District Court
For the Northern District of California

1  These classes, according to Plaintiffs, satisfy the prerequisites

2  of Rule 23(a) and fulfill the requirements for class certification

3  under Rule 23(b)(3).

4      **A.   Legal Standard**

5      All class actions must meet the four criteria set forth in

6  Federal Rule of Civil Procedure 23(a).  In addition, the class must

7  meet one of the three categories of Rule 23(b).

8      Rule 23(a) provides four threshold criteria which must be met

9  in order for a class to be certified: (1) the class is so numerous

10 that joinder of all members is impracticable; (2) there are

11 questions of law or fact common to the class; (3) the claims or

12 defenses of the representative parties are typical of the claims or

13 defenses of the class; and (4) the representative parties will

14 fairly and adequately protect the interests of the class.  Fed. R.

15 Civ. P. 23(a).  These requirements are generally referred to as

16 numerosity, commonality, typicality, and adequacy of

17 representation.  See Gen. Tel. Co. v. EEOC, 446 U.S. 318, 330

18 (1980).

19     Rule 23(b)(3) provides that a class action may be maintained

20 if Rule 23(a) is satisfied and if: "(3) the court finds that

21 questions of law or fact common to class members predominate over

22 any questions affecting only individual members, and that a class

23 action is superior to other available methods for fairly and

24 efficiently adjudicating the controversy."  Fed. R. Civ. P.

25 23(b)(3).

26     Plaintiffs have the burden of proving that the Rule 23

27 requirements have been met.  Amchem Products Inc. v. Windsor, 521

28 U.S. 591 (1997).  Plaintiffs need not, however, show that they are

17

1  likely to prevail on the merits of their claims at the stage of

2  class certification.  Eisen v. Carlisle & Jacquelin, 417 U.S. 156,

3  178 (1974).  "Although some inquiry into the substance of a case

4  may be necessary to ascertain satisfaction of the commonality and

5  typicality requirements of Rule 23(a), it is improper to advance a

6  decision on the merits to the class certification stage." Moore v.

7  Hughes Helicopters, Inc., 708 F.2d 475, 480 (9th Cir. 1983); see

8  also Staton v. Boeing Co., 327 F.3d 938, 954 (9th Cir. 2003).

9      **B.    Evidentiary Objections**

10     As a preliminary matter, the Court addresses the parties'

11 evidentiary objections styled as a Motion for Sanctions and a

12 Motion to Exclude Expert Reports filed by Regus and Plaintiffs,

13 respectively.

14     On a motion for class certification, the court makes no

15 findings of fact and announces no ultimate conclusions on

16 Plaintiffs' claims.  As a result, "the Federal Rules of Evidence

17 take on a substantially reduced significance, as compared to a

18 typical evidentiary hearing or trial." Fisher v. Ciba Specialty

19 Chem. Corp., 238 F.R.D. 273, 279 n.7 (S.D. Ala. 2006); see also id.

20 at 279 ("the Federal Rules of Evidence are not stringently applied

21 at the class certification stage because of the preliminary nature

22 of such proceedings"); Selzer v. Bd. of Ed. of City of New York,

23 112 F.R.D. 176, 178 (S.D.N.Y. 1986) (motion for class certification

24 is not a mini-trial on the merits).

25     Further, on a motion for class certification, the court may

26 consider evidence that may not be admissible at trial. See, e.g.,

27 Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974) (describing

28 a court's determination of class certification as based on

United States District Court
For the Northern District of California

1   "tentative findings, made in the absence of established safeguards"

2   and describing a class certification procedure as "of necessity

3   . . . not accompanied by the traditional rules and procedures

4   applicable to civil trials").  The court need not address the

5   ultimate admissibility of the parties' proffered exhibits,

6   documents, and testimony at this stage, and may consider them where

7   necessary for resolution of the motion for class certification.  In

8   re Hartford Sales Practices Litig., 192 F.R.D. 592, 597 (D. Minn.

9   1999).

10              **1.    Regus's Motion for Sanctions Under Rule 37**

11       Regus filed a Motion for Sanctions under Rule 37 to exclude

12  from evidence eight declarations filed in support of Plaintiffs'

13  Motion for Class Certification.  See ECF Nos. 252, 253, 254, 256,

14  257, 258, 259, 260.  Regus argues that Plaintiffs were obligated to

15  identify each of these declarants in their initial disclosures and

16  in response to Regus's interrogatories requesting identification of

17  any putative class members of which they were aware.

18       Declarants' testimony adds very little value to Plaintiffs'

19  Motion for Class Certification.  Cited testimony from these former

20  Regus tenants includes that it was the declarants' understanding

21  that they would be provided "with a fully furnished office," that

22  they expected their contract to be "a simple one page document,"

23  and that they "were shocked by [Regus's] unfair charges and unfair

24  business practices."  Mot. for Sanc. at 4.  None of these

25  statements have any relevance to the key legal and factual issues

26  being considered by the Court on Plaintiffs' Motion for Class

27  Certification.  Because the Court has not relied on any of the

28  disputed testimony in making its decision, Regus's Motion for

**United States District Court**
For the Northern District of California

1 Sanctions is DENIED AS MOOT.  The parties will pay their own costs
2 associated with this Motion.

3          **2.    <u>Plaintiffs' Motion to Exclude the Expert Reports of
4              Mark Vogel and James Pampinella</u>**

5      Plaintiffs filed a Motion to Exclude the Expert Reports of
6 Mark Vogel and James Pampinella.  Plaintiffs claim that Mr. Vogel's
7 declaration should be excluded because it is "(1) irrelevant to the
8 issues presented at the class certification stage; and (2) based on
9 unsound methodologies and applied to unverified survey results and
10 opinions . . . .  Accordingly, Defendants cannot establish that the
11 opinions of Mark Vogel are relevant and reliable as required by
12 Rule 702."  Mot. to Excl. at 1.  Plaintiffs claim that Mr.
13 Pampinella's declaration should be excluded because his opinions
14 regarding whether the proposed class members are similarly situated
15 "consist of legal conclusions relating to Plaintiffs' Motion for
16 Class Certification (namely, commonality) and are based on an
17 unreliable data sample."  <u>Id.</u>

18      Having reviewed the reports of Regus's experts, the Court
19 finds that they meet the criteria for admissibility at this stage
20 in the proceedings.  To the extent Plaintiffs point to material
21 that could be inadmissible at a trial, their objections are
22 OVERRULED.  Where an expert's opinion is being presented to a judge
23 rather than a jury, the judge's gatekeeper role is "significantly
24 diminished . . . because . . . there is no risk of tainting the
25 trial by exposing a jury to unreliable evidence."  <u>U.S. v. H&R
26 Block, Inc.</u>, 831 F. Supp. 2d 27, 36 (D.C. Cir. 2011); <u>see also</u> <u>U.S.
27 v. Oracle Corp.</u>, 331 F. Supp. 2d 1098, 1158 (N.D. Cal. 2004)

28

**United States District Court**
For the Northern District of California

1   (holding that the judge can give the evidence the weight that it
2   deserves without being "tainted" by it).

3       Accordingly, Plaintiffs' Motion to Exclude is DENIED.

4   **C.   Discussion**

5       **1.   Rule 23(a) Requirements**

6   Rule 23(a) requires numerosity, commonality, typicality, and
7   adequacy of representation.  See Mazza, Inc., 666 F.3d at 588.

8           **a.   Numerosity**

9   Federal Rule of Civil Procedure 23(a)(1) requires that the
10  proposed classes be "so numerous that joinder of all members is
11  impracticable."  Generally, "classes of forty or more are
12  considered sufficiently numerous."  Delarosa v. Boiron, Inc., 275
13  F.R.D. 582, 587 (C.D. Cal. 2011).  Regus does not dispute that
14  Plaintiffs' motion satisfies the numerosity requirement.  Indeed,
15  the California class potentially includes 20,992 persons, and the
16  New York class potentially includes 11,333 persons.

17          **b.   Commonality**

18  Commonality requires that "there are questions of law or fact
19  common to the class."  Fed. R. Civ. P. 23(a)(2).  The Supreme Court
20  noted that this requirement is easy to misread, "since '[a]ny
21  competently crafted class complaint literally raises common
22  questions.'"  Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551
23  (2011).  The claims must depend upon a "common contention" that is
24  "of such a nature that it is capable of classwide resolution --
25  which means that determination of its truth or falsity will resolve
26  an issue that is central to the validity of each one of the claims
27  in one stroke."  Id.  What matters "is not the raising of common
28  questions -- even in droves -- but rather the capacity of a

**United States District Court**
For the Northern District of California

1    classwide proceeding to generate common answers apt to drive the

2    resolution of the litigation."   Id.

3        The Court need not address this issue.  Rule 23(b)(3) includes

4    a related, but additional, requirement that these common questions

5    predominate over questions affecting only individual class members.

6    "The commonality preconditions of Rule 23(a)(2) are less rigorous

7    than the companion requirements of Rule 23(b)(3)."  Hanlon v.

8    Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).  Consequently,

9    for the purposes of this motion, the Court assumes arguendo that

10   there are questions of law or fact common to the class.  But, as

11   discussed in Part IV.C.3.a, below, the Court finds that the

12   questions Plaintiffs cite as common to the classes do not

13   predominate over individual concerns.

14                        **c.   Typicality**

15       Typicality requires that "the claims or defenses of the

16   representative parties are typical of the claims or defenses of the

17   class."  Fed. R. Civ. P. 23(a)(3).  The Ninth Circuit has

18   interpreted the typicality requirement permissively.  For example,

19   although class representatives' claims must be "reasonably co-

20   extensive with those of absent class members[,] they need not be

21   substantially identical."  Hanlon, 150 F.3d at 1020.  "In

22   determining whether typicality is met, the focus should be on the

23   defendants' conduct and plaintiff's legal theory, not the injury

24   caused to the plaintiff.  Typicality does not require that all

25   class members suffer the same injury as the named class

26   representative."  Simpson v. Fireman's Fund Ins. Co., 231 F.R.D.

27   391, 396 (N.D. Cal. 2005).  Typicality is not satisfied, however,

28   when "[a] named plaintiff who proved his own claim would not

**United States District Court**
For the Northern District of California

necessarily have proved anybody else's claim." <u>Sprague v. Gen.</u>
<u>Motors Corp.</u>, 133 F.3d 388, 399 (6th Cir. 1998).  Moreover,
"[c]ourts of appeal have held that unique defenses bear on . . .
typicality." <u>In Re Hurethane Antitrust Litig.</u>, 251 F.R.D. 629, 642
(D. Kan. 2008) (citing <u>Beck v. Maximus, Inc.</u>, 457 F.3d 291, 296
(3rd Cir. 2006)).

Plaintiffs argue that the claims of the named plaintiffs are
typical of the class because, like the absent class members, named
Plaintiffs entered into an OSA, were subject to mandatory fees
without adequate notice, were misled by the representations on
Regus's website, and suffered injury from Regus's allegedly unfair
tax practices.  The Court agrees with Plaintiffs as to most of its
claims.  As explained below, however, neither Circle Click nor CTNY
are typical as to Plaintiffs' claim that the font size of the Terms
and Conditions constitutes a fraudulent business practice.

As Regus points out, Plaintiffs are alleging that Regus was
unjustly enriched, in part, because Plaintiffs "were deceived
because they were unable to read the miniscule font used in
Defendants' Terms and Conditions."  Mot. for Cert. at 17, 22.
However, Circle Click's principal admits to reading the Terms and
Conditions after enlarging the font on her computer.  <u>See</u> ECF No.
280, Ex. A ("Ward Depo.") at 290:15-17.  Furthermore, CTNY's
failure to read the Terms and Conditions was not a result of
"miniscule font."  CTNY failed to read the Terms and Conditions
because CTNY's principal was unable to download them from Regus's
website.  <u>See</u> ECF No. 280, Ex. B ("Fullerton Depo") at 93:15-94:8.
Plaintiffs, for their part, do not even attempt to respond to this
challenge in their Reply.

1    Per California's Proposition 64, named plaintiffs in a UCL

2  action must demonstrate individualized reliance, deception, and

3  injury.  See In re Tobacco II Cases, 46 Cal. 4th 298, 314 (2009).

4  However, since Circle Click read the Terms and Conditions and CTNY

5  never even downloaded the Terms and Conditions, neither named

6  plaintiff can show that it was deceived or injured by the small

7  font in the manner they allege on behalf of the class.  As a

8  result, Plaintiffs do not satisfy the typicality requirement as to

9  this claim.

10         **d.   Adequacy of Representation**

11    This requirement ensures that plaintiff "will fairly and

12  adequately protect the interests of the class."  Fed. R. Civ. P.

13  23(a)(4).  The Ninth Circuit applies a two-part test to determine

14  the adequacy of class representation.  First, the representative

15  plaintiffs and their counsel must not have conflicts of interest

16  with other class members.  Second, the representative plaintiffs

17  and their counsel must prosecute the action vigorously on behalf of

18  the class.  Staton v. Boeing Co., 327 F.3d 938, 957 (9th Cir.

19  2003).

20    Regus argues that CTNY is not an adequate representative

21  because it is facing over $10,000 in potential liability from

22  Regus's counterclaims.  It is well established, however, that

23  "counterclaims do not defeat class certification."  Hester v.

24  Vision Airlines, Inc., No. 209-CV-00117-RLH-RJJ, 2009 WL 4893185,

25  at *5 (D. Nev. Dec. 16, 2009) (quoting Davis v. Cash for Payday,

26  Inc., 193 F.R.D. 518, 522 (N.D. Ill. 2000).  This is because

27  "litigation respecting individual counterclaims, if successful,

28  would only reduce damage awards; it would not affect a finding of

**United States District Court**
For the Northern District of California

1    liability."  Id. (quoting Haynes v. Logan Furniture Mart, 503 F.2d

2    1161, 1165 n.4 (7th Cir. 1974)).

3        There is no indication that named plaintiffs or their counsel

4    have any conflicts of interest or that they will not prosecute this

5    action vigorously on behalf of the class as they have for about

6    three years now.  Further, one of the principal attorneys involved

7    has extensive class action litigation and unfair business practices

8    experience.  Accordingly, the Court finds that named plaintiffs and

9    their counsel will provide adequate representation.

10            **2.    Rule 23(b)(3) Requirements**

11       Rule 23(b)(3) requires the Court to find that "questions of

12   law or fact common to class members predominate over any questions

13   affecting only individual members, and that a class action is

14   superior to other available methods . . . ."  Fed. R. Civ. P.

15   23(b)(3).

16            **a.    Predominance**

17       "The predominance test of Rule 23(b)(3) is 'far more

18   demanding' than the commonality test under Rule 23(a)(2)."

19   Villalpando, 303 F.R.D. at 607 (quoting Amchem Prods., Inc., 521

20   U.S. at 624).  Only where "common questions present a significant

21   aspect of the case and they can be resolved for all members of the

22   class in a single adjudication [is] there clear justification for

23   handling the dispute on a representative rather than individual

24   basis."  Hanlon, 150 F.3d at 1022 (citations omitted).  The burden

25   of demonstrating that common questions predominate lies with the

26   party seeking class certification.  Zinser v. Accufix Research

27   Inst., Inc., 253 F.3d 1180, 1188 (9th Cir. 2001).

28

**United States District Court**
For the Northern District of California

In their motion, Plaintiffs organize the common issues important in this case according to the categories of claims that survived the Court's April 22, 2013 Order on Regus's Motion to Dismiss for failure to state a claim.   See ECF No. 77 ("4/22/13 MTD Order").   The Court agrees with Plaintiffs' approach, and it analyzes whether common questions predominate as to each claim in turn.

        i.     **Fraudulent Business Practices in Violation of the UCL: Terms and Conditions Printed in Small Font**

In its April 22, 2013 Order, the Court found that Plaintiffs' allegations that Plaintiffs "were deceived because they were unable to read the miniscule font used in Defendants' Terms and Conditions . . . are sufficient to state a claim for fraudulent practices under the UCL."  4/22/13 MTD Order at 12-13.

To state a claim under the fraudulent prong of the UCL, Plaintiffs need to demonstrate that members of the public were likely to be deceived by the business practice at issue.  Prata v. Super. Court, 91 Cal. App. 4th 1128, 1146 (2001).  As to absent class members, however, Plaintiffs do not need to show that they relied on, were deceived by, or were injured by the practice.  In re Tobacco II Cases, 46 Cal. 4th at 319-20.

Plaintiffs argue that common questions of law and fact predominate with respect to this claim because "[a]ll class members received the tiny type Terms and Conditions in which the complained of fees are either mentioned for the first time in the contract documents (ORS and BCS) or omitted entirely (KAF)."  Mot. for Cert. at 17.

///

1    Regus argues that common questions do not predominate because

2  many of the proposed class members had no trouble viewing the Terms

3  and Conditions, did not even attempt to view the Terms and

4  Conditions (for example, because they did not download them when

5  completing an online version of the OSA), or were able to enhance

6  the size of the font if viewing the Terms and Conditions from their

7  computer.  Further, Regus has presented evidence that some of the

8  OSA's disclosed the mandatory fees at issue in the comments section

9  of the OSA itself, making the font size of the Terms and Conditions

10  irrelevant.

11    Regus's argument that common questions do not predominate

12  because at least some class members read the Terms and Conditions

13  is unavailing because whether printing the Terms and Conditions in

14  small font is <u>likely to deceive the public</u> is a question common to

15  the class even if certain class members successfully read the Terms

16  and Conditions notwithstanding their small font.  As already

17  mentioned, whether absent class members were actually deceived is

18  immaterial to Plaintiffs' ability to prove its UCL claim.  <u>See</u> <u>In</u>

19  <u>re Tobacco II Cases</u>, 46 Cal. 4th at 319-20.

20    Regus's second argument -- that the font size of the Terms and

21  Conditions could not have been a fraudulent business practice with

22  regard to OSA's that disclosed the mandatory fees in the comments

23  section of the OSA -- is more promising.  Plaintiffs claim that the

24  small font size of the Terms and Conditions was fraudulent because

25  the Terms and Conditions disclosed mandatory fees or referred

26  customers to other documents which disclosed mandatory fees.

27  Insofar as the mandatory fees were disclosed on the face of the OSA

28  itself, however, the font size of the Terms and Conditions is

1   irrelevant to whether class members were deceived.  Plaintiffs'

2   proposed class definitions are therefore overbroad insofar as they

3   encompass OSA's that disclosed mandatory fees in the comments

4   section of the OSA itself.  For that reason, common questions of

5   fact and law do not predominate as to this claim.

6           ii.     **Unfair Business Practices in Violation of**

7                   **the UCL: Failure to Adequately Disclose**

8                   **Fees**

9       In its April 22, 2013 Order, the Court found that Plaintiffs'

10  allegations that Defendants failed to adequately disclose certain

11  fees without justification states a claim for violation of the

12  unfairness prong of the UCL.  4/22/13 MTD Order at 14.

13      "The test of whether a business practice is unfair involves an

14  examination of [that practice's] impact on its alleged victim,

15  balanced against the reasons, justifications and motives of the

16  alleged wrongdoer."  South Bay Chevrolet v. General Motors

17  Acceptance Corp., 72 Cal. App. 4th 861, 886 (1999).

18      Plaintiffs argue that common questions of fact and law

19  predominate on this issue because "[w]hatever justification Regus

20  had [if any] for its practice of hiding fees in the . . . Terms and

21  Conditions . . . would apply equally to all class members."  Mot.

22  for Cert. at 19.

23      Regus counters that common questions do not predominate

24  because some of the OSA's signed by potential class members --

25  albeit a minority -- disclosed one or more of the mandatory fees in

26  the comments section of the OSA.  The Court agrees with Regus for

27  the same reasons provided in the Court's discussion in the previous

28  section: Plaintiffs' class definitions are overbroad because they

**United States District Court**
For the Northern District of California

encompass potential class members whose OSA disclosed the mandatory fees in the comments section of the OSA itself.  Accordingly, the Court finds that common issues of law and fact do not predominate as to this claim.

### iii.   Unlawful Business Practice in Violation of the UCL: Failure to Comply with the CPUC

In its April 22, 2013 Order, the Court found that Plaintiffs' allegations that Regus failed to comply with the requirements set forth in CPUC section 2890 for the contents of telephone bills states a claim for violation of the unlawful prong of the UCL. 4/22/13 MTD Order at 14-15.

Plaintiffs argue that common questions of law and fact predominate as to this claim because whether Regus's standard invoicing system complied with the CPUC is a matter of law that would apply equally to all class members.

As Plaintiffs acknowledge, however, "not all class members purchased phone service and so not all of them were damaged by the claimed practice."  Mot. for Cert. at 20.  As a result, the Court finds that Plaintiffs' proposed classes are overbroad as to this claim insofar as they encompass potential class members who were not exposed to the allegedly unlawful telephone bills.

### iv.   False Advertising Claims in Violation of the UCL and FAL: Representations on Regus's Website

In its April 22, 2013 Order, the Court found that the representations allegedly made on Regus's website "that their Office Agreements are one page, their offices are fully equipped, and their bills are all inclusive" may be false and misleading in

United States District Court
For the Northern District of California

1  violation of Cal. Bus. & Prof. Code section 17500.  4/22/13 MTD
2  Order at 20-21.  The Court further found that Regus would have
3  violated Cal. Bus. and Prof. Code section 17509 if it "advertised
4  office space [on its website] while failing to disclose that
5  renters would also be required to purchase kitchen amenities,
6  office restoration, and business continuity service in connection
7  with that office space."  Id. at 22-23.

8       In the context of false or misleading advertisement claims, a
9  class definition will be considered overbroad insofar as it is not
10  "defined in such a way as to include only members who were exposed
11  to [the allegedly deceptive] advertising . . . ."  Mazza v.
12  American Honda Motor Co., 666 F.3d 581, 596 (9th Cir. 2012); see
13  also In re Clorox Consumer Litig., 301 F.R.D. 436, 444 (N.D. Cal.
14  2014) (denying certification where plaintiffs sought to certify an
15  "all purchasers" UCL class on the basis of an allegedly misleading
16  advertisement where the evidence showed that a substantial portion
17  of class members likely never saw the advertisement); Davis-Miller
18  v. Automobile Club of S. Cal., 201 Cal. App. 4th 106, 125 (2011)
19  ("An inference of classwide reliance [under the UCL] cannot be made
20  where there is no evidence that the allegedly false representations
21  were uniformly made to all members of the proposed class.").

22       Mazza v. American Honda Motor Co. is instructive.  In Mazza,
23  the Ninth Circuit reversed a district court's decision to certify a
24  class of all consumers who purchased or leased Acura RLs equipped
25  with a Collision Mitigation Braking System ("CMBS").  Plaintiffs
26  alleged that certain advertisements misrepresented the
27  characteristics of the CMBS and omitted material information on its
28  limitations in violation of UCL and other statutes.  Plaintiffs

30

United States District Court
For the Northern District of California

1  further argued that class certification was appropriate because

2  reliance as to the class as a whole could be inferred in a UCL

3  class action.  The Ninth Circuit, however, held that the class

4  definition was overbroad insofar as it was not "defined in such a

5  way as to include only members who were exposed to [the]

6  advertising . . . ."  Mazza, 666 F.3d at 596.

7      Plaintiffs argue that common questions of fact and law

8  predominate on this claim because "Plaintiffs evidence regarding

9  the Regus web site is inherently applicable to the whole class."

10  Mot. for Cert. at 21.  Regus counters that the proposed class is

11  hopelessly overbroad because it includes individuals who never saw

12  Regus's website.  The Court agrees with Regus.

13      Plaintiffs point out that where a named plaintiff alleges

14  exposure to a long-term advertising campaign,[3] "the plaintiff is

15  not required to plead with an unrealistic degree of specificity

16  that the plaintiff relied on particular advertisements or

17  statements."  Tobacco II, 46 Cal. 4th at 328.  Furthermore, the

18  California Supreme Court has held that absent class members do not

19  need to show individualized injury, deception, or reliance.  Id. at

20  315-316.  These points are inapposite, however, because all

21  plaintiffs -- including absent class members -- must have at least

22  been exposed to the allegedly deceptive advertisement at issue.

23  See Mazza, 666 F.3d at 596; In re Clorox Consumer Litig., 301

24

25  [3] The Court is highly skeptical that the alleged advertising
    campaign at issue in this case is sufficiently widespread to fall
26  within the exception set out in Tobacco II.  In any case, all
    plaintiffs -- including absent class members -- must have been
27  exposed to a deceptive advertisement even if (by operation of the
    exception set out in Tobacco II) named plaintiffs are not required
28  to state specifically which deceptive advertisements or statements
    they relied upon.

31

1  F.R.D. at 444; <u>Davis-Miller</u>, 201 Cal. App. 4th at 125 (2011); <u>see</u>

2  <u>also</u> <u>In re Tobacco II Cases,</u> 46 Cal. 4th at 324 (presuming reliance

3  where "[t]he class, as certified, consists of members of the public

4  who were exposed to defendants' allegedly deceptive advertisements

5  and misrepresentations").

6     Here, Plaintiffs admit that many members of the proposed class

7  did not see the alleged representations on Regus's website.

8  Further, Regus has presented evidence that none of the alleged

9  misrepresentations were on the website between December 2007 to

10  March 2009 and from December 2010 to June 2014.  <u>See</u> Cert. Opp'n at

11  11.  As a result, the class definition is overbroad as it pertains

12  to this claim and common questions of fact and law do not

13  predominate.

14                    **b.   Superiority of Class Action**

15     The final Rule 23(b)(3) requirement is that a class action is

16  superior to other available methods for fairly and effectively

17  adjudicating the controversy.  Relevant to determining the

18  superiority of the class action are: (a) the class members'

19  interests in individually controlling the prosecution or defense of

20  separate actions; (b) the extent and nature of any litigation

21  concerning the controversy already begun by or against class

22  members; (c) the desirability or undesirability of concentrating

23  the litigation of the claims in the particular forum; and (d) the

24  likely difficulties in managing a class action. Fed. R. Civ. P. 23;

25  <u>see also</u> <u>Jones v. ConAgra Foods, Inc.</u>, No. C 12-01633 CRB, 2014 WL

26  2702726, at *23-24 (N.D. Cal. June 13, 2014).

27     Here, the individual claims are expected to be less than

28  $3,000 each and the expected recovery in an individual action would

1    likely not be more than available through a class action.  In

2    addition, because of the small size of each claim compared to the

3    costs of litigating the issues, having the matter handled in a

4    single forum has distinct economies of scale.  Further, it is

5    desirable for all parties to have a single adjudication of the

6    legal question so multiple suits would not be advantageous to

7    either side.

8        At present, the Court is unaware of any other litigation

9    concerning the issues raised by this case.  No other cases,

10   therefore, influence the Court's decision of whether a class action

11   is the preferable method of handling the issues presented.

12       There are limited class management issues in this case.  The

13   amount each class member paid and for what fees, the identity and

14   address of each class member, and most of the relevant evidence is

15   in Regus's records.  Thus, the large size of the class does not

16   create significant management issues.

17       For the foregoing reasons, the Court concludes that a class

18   action is superior to other available methods for fairly and

19   effectively adjudicating this controversy.

20       **D.    Conclusion on Motion for Class Certification**

21       For the reasons detailed in Part IV.C.2.a on predominance and

22   Part IV.C.1.c on typicality, the Court cannot certify Plaintiffs'

23   proposed classes as currently defined.  As a result, Plaintiffs'

24   Motion for Class Certification is DENIED WITHOUT PREJUDICE.

25   Plaintiffs may, if they choose, file a revised motion for class

26   certification within thirty (30) days of this order.  The revised

27   motion and class definitions cannot be overbroad, and the claims of

28   the named Plaintiffs must be typical of the class as a whole.

1    **V.  MOTION FOR SECURITY FOR COSTS**

2        Regus has moved the Court for an order requiring out-of-state

3    Plaintiff CTNY to furnish a written undertaking in the amount of

4    $76,825 to secure an award of costs.  This amount was calculated by

5    doubling the taxable costs Regus has incurred to date in defending

6    this lawsuit, which Regus claims is "a reasonable estimate of the

7    total amount of costs Regus will incur should this case proceed to

8    trial."  Mot. for Sec. at 3.

9        The Ninth Circuit has addressed the framework for the relief

10   sought herein:

11           There is no specific provision in the Federal Rules of
             Civil Procedure relating to security for costs.  However,
12           the federal district courts have inherent power to
             require plaintiffs to post security for costs.
13           "Typically federal courts, either by rule or by case-to-
             case determination, follow the forum state's practice
14           with regard to security for costs, as they did prior to
             the federal rules; this is especially common when a non-
15           resident party is involved."

16
     Simulnet E. Assocs. v. Ramada Hotel Operating Co., 37 F.3d 573, 574
17
     (9th Cir. 1994) (quoting 10 Wright, Miller & Kane, Federal Practice
18
     and Procedure: Civil 2nd § 2671).  Accordingly, the application of
19
     California procedure is a matter within the Court's discretion.
20
         Here, the Court is guided by California Code of Civil
21
     Procedure section 1030.  Section 1030 provides,
22
             [w]hen the plaintiff in an action . . . resides out of
23           the state, or is a foreign corporation, the defendant may
             at any time apply to the court by noticed motion for an
24           order requiring the plaintiff to file an undertaking to
             secure an award of costs and attorney's fees which may be
25           awarded in the action . . . .

26   "The purpose of the statute is to enable a California resident sued

27   by an out-of-state resident to secure costs in light of the

28   difficulty of enforcing a judgment for costs against a person who

                                      34

United States District Court
For the Northern District of California

1    is not within the court's jurisdiction and to prevent out-of-state

2    residents from filing frivolous lawsuits against California

3    residents." <u>Alshafie v. Lallande</u>, 171 Cal. App. 4th 421, 428

4    (2009) (quoting <u>Yao v. Superior Court</u>, 104 Cal. App. 4th 327, 331

5    (2002)).

6         A defendant seeking to require a plaintiff to file a bond must

7    establish a "reasonable possibility that the moving defendant will

8    obtain judgment in the action or special proceeding."  Cal. Code of

9    Civ. Proc. § 1030(b).  The "reasonable possibility" standard is

10   relatively low.  <u>See</u> <u>GeoTag, Inc. v. Zoosk</u>, No. C13-0217 EMC, 2014

11   U.S. Dist. LEXIS 24782, 2014 WL 793526, at *3 (N.D. Cal. Feb. 26,

12   2014).  Thus, a defendant need not show that there is "no

13   possibility" that plaintiff would win at trial, "but only that it

14   [is] reasonably possible that the defendant will win."  <u>Baltayan v.</u>

15   <u>Estate of Getemyan</u>, 90 Cal. App. 4th 1427, 1432 (2001).  However,

16   the Court "declines to read section 1030 so broadly as to require

17   every out-of-state litigant who brings a non-frivolous suit in

18   California to post a bond simply because there is a reasonable

19   chance the defendant may prevail."  <u>Wilson & Haubert, PLLC v.</u>

20   <u>Yahoo! Inc.</u>, 2014 U.S. Dist. LEXIS 47157, 2014 WL 1351210 (N.D.

21   Cal. Apr. 4, 2014).

22        As the Ninth Circuit has noted, "'[w]hile it is neither unjust

23   nor unreasonable to expect a suitor to put his money where his

24   mouth is, toll-booths cannot be placed across the courthouse doors

25   in a haphazard fashion.'"  <u>Simulnet</u>, 37 F.3d at 576 (quoting

26   <u>Aggarwal v. Ponce Sch. of Medicine</u>, 745 F.2d 723, 727-28 (1st Cir.

27   1984)).  This is because courts must take care "not to deprive a

28   plaintiff of access to the federal courts."  <u>Id.</u>  Accordingly, the

1   Court agrees with those district courts in California which have

2   held that, in applying section 1030, a court must consider the

3   "degree of probability/improbability of success on the merits, and

4   the background and purpose of the suit." Gabriel Technologies,

5   2010 U.S. Dist. LEXIS 98229, 2010 WL 3718848, at *2; see also

6   Susilo v. Wells Fargo Bank, N.A., No. CV 11-1814 CAS (PJWx), 2012

7   U.S. Dist. LEXIS 166638, 2012 WL 5896577 (C.D. Cal. Nov. 19, 2012)

8   (same); Plata v. Darbun Enterprises, Inc., No. 09cv44-IEG(CAB),

9   2009 U.S. Dist. LEXIS 89608, 2009 WL 3153747, at *12 (same).

10       First, as detailed in Part II, the Court rejects Regus's

11   argument that Plaintiffs lack standing to assert their claims.

12   Second, to the extent that the parties dispute whether Regus

13   adequately disclosed the mandatory fees at issue, Regus has shown a

14   possibility of success on the merits.  However, "this possibility

15   appears no greater on this record than any other case where the

16   parties' proffered facts are mutually disputed." Wilson & Haubert,

17   PLLC, 2014 U.S. Dist. LEXIS 47157, at *10-11.  Thus, Regus has not

18   shown a possibility of success on the merits which warrant the

19   posting of a bond.  See Gabriel Technologies, 2010 U.S. Dist. LEXIS

20   98229, 2010 WL 3718848, at *2 (stating that courts should consider

21   the "degree of probability/improbability of success on the merits,

22   and the background and purpose of the suit").  Nor is there any

23   showing that the background or purpose of this suit is improper.

24       Finally, while not expressly articulated in section 1030, the

25   Court finds significant the fact that Regus has not demonstrated

26   that there is a risk that it would be unable to recover costs from

27   Plaintiff CTNY in the event it prevails in this action.  See

28   Susilo, 2012 U.S. Dist. LEXIS 166638, 2012 WL 5896577, at *2

**United States District Court**
For the Northern District of California

1   ("Without any particularized showing that there is a real risk of

2   defendants being unable to recover costs and attorney's fees to

3   which they are entitled, there is simply no basis on which to

4   require plaintiff to post a bond."); <u>Plata</u>, 2009 U.S. Dist. LEXIS

5   89608, 2009 WL 3153747, at *12 (denying a section 1030 motion, in

6   part, because "Defendant has not set forth any details regarding

7   its legitimate need for the prophylaxis of a bond in its moving

8   papers").

9        Accordingly, Defendants Motion for Security Costs is DENIED.

10

11   **VI.   CONCLUSION**

12        For the forging reasons, the Court finds as follows:

13   - Regus's Motion to Dismiss is DENIED.

14   - Regus's Motion for Summary Judgment on its counterclaims is
     DENIED.

15

16   - Regus's Motion for Sanctions is DENIED AS MOOT.

17   - Plaintiffs' Motion to Exclude Testimony is DENIED.

18   - Plaintiffs' Motion for Class Certification is DENIED WITHOUT
     PREJUDICE.  Plaintiffs may, if they choose, file a new motion
     for class certification with revised class definitions within
19   thirty (30) days of this order.

20   - Regus's Motion for Security for Costs is DENIED.

21

22   IT IS SO ORDERED.

23

24   Dated: October 29, 2015              _____

25                                        UNITED STATES DISTRICT JUDGE

26

27

28