UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CIRCLE CLICK MEDIA LLC, et al.,<br><br>   Plaintiffs,<br><br>  v.<br><br>REGUS MANAGEMENT GROUP LLC, et al.,<br><br>   Defendants. | Case No. 12-cv-04000-EMC<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION**<br><br>Docket No. 381 |

## I. INTRODUCTION

Before the Court is Plaintiffs Circle Click Media LLC's and CTNY Insurance Group's motion for leave to file a motion for reconsideration of the Court's March 11, 2016 order denying Plaintiffs' motion for class certification. Docket No. 381 (Mot.). Plaintiffs bring their motion pursuant to Federal Rule of Civil Procedure 60 and Civil Local Rule 7-9(b)(3), on the ground that this Court "failed to consider material facts and dispositive legal arguments set forth in Plaintiffs' Motion for Class Certification." Mot. at 1.

For the reasons stated below, Plaintiffs' motion for leave to file a motion for reconsideration is **DENIED**.

## II. BACKGROUND

Plaintiffs filed the instant suit against Defendants Regus Management Group LLC, Regus Business Centre LLC, Regus PLC, and HQ Global Workplaces LLC (collectively, Regus) based on Regus's leasing practices. Docket No. 65 (Second Amended Complaint) (SAC). Specifically, Plaintiffs allege that Regus regularly charged more than the monthly amount stated in Regus's Office Service Agreement (OSA) because Regus charges mandatory fees that are not adequately disclosed until after the lease is signed. *See* Docket No. 386 (Class Certification Motion) (Cert.

Mot.) at 2. Based on these allegations, Plaintiffs brought claims for violations of California's Unfair Competition Law (UCL), the California False Advertising Law (FAL), and unjust enrichment. Cert. Mot. at 15-18.

Plaintiffs moved for class certification before this Court, alleging that Regus failed to adequately disclose three required service fees: (1) the Kitchen Amenities Fee (KAF), (2) the Office Restoration Service (ORS), and the Business Continuity Service (BCS). Cert. Mot. at 3-4. The KAF was disclosed in a Services Price Guide (SPG), while the ORS and BCS was disclosed in the Terms & Conditions printed on the back side of the printed OSA or accessible by hyperlink in the online version of the OSA. *Id.* at 3. Plaintiffs focused on Regus's "highly centralized and tightly controlled business model," which included a "common global standard" sales process, and Regus's "failure to adequately disclose the KAF, ORS and BCS fees, which may confuse consumers." *Id.* at 4, 19.

The Court ultimately denied class certification, on the ground that Plaintiffs failed to satisfy Rule 23(b) predominance. Docket No. 374 (Class Certification Order) (Cert. Ord.) at 17. The Court found that Plaintiffs' UCL and FAL claims were "based on Regus's failure to adequately disclose the KAF, ORS, and BCS fees," and that "their claim is also based on the documents the *way* the documents are *presented*, which includes the salesperson's pitch to the individual customer." *Id.* at 17-18. Thus, the issue was whether all class members were exposed to Regus's standard documents -- the OSA, the Terms & Conditions, and the SPG -- and the way those documents were presented to the individual customers, *i.e.*, the failure to disclose the three disputed fees. *Id.* at 20-21. However, the Court found two problems defeating predominance. First, there was a problem with the standard documents because many of the documents changed over time, such as the increase of the font size of the Terms & Conditions and changing headers in the SPG. *Id.* at 21. *Id.* at 21. Second, there was "substantial evidence of variability in what documents were presented and how they were described and discussed by Regus salespersons." *Id.* at 22. This included instances where the disputed fees were affirmatively disclosed. *Id.* at 23. Because there was such variability in how the sales documents were presented, and Plaintiffs had failed to present any evidence of Regus salespeople regularly failing to disclose the disputed fees,

2

*i.e.*, by providing consumer surveys showing a consistent practice in the field, the Court found the way the documents were presented "requires fact-based determinations as to each class member in order to resolve whether the particular mix of information presented would likely deceive the consumer." *Id.* at 23-24.

### III.   DISCUSSION

A.   Legal Standard

Under Civil Local Rule 7-9(b)(3), a party seeking leave to file a motion for reconsideration must show "a manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order." Plaintiffs' motion is based on the Court's purported failure to consider dispositive legal arguments and material facts presented with their class certification motion.

The Rules prohibit a party from repeating arguments already presented to the Court. Civ. L.R. 7-9(c). Furthermore, a motion for reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). Thus, "a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999).[1]

B.   Analysis

Plaintiffs make three arguments that this Court failed to consider material facts and dispositive legal arguments. First, Plaintiffs contend that they had a "document-only claim[, which] should have been addressed separately from claims that related to the Regus sales practice." Mot. at 1. Second, Plaintiffs allege that the Court derived its predominance requirements from common law fraud cases rather than unfair business practice cases. *Id.* Finally, Plaintiffs argue that because the class was "universally exposed to the same misleading OSA," they were not required to show a universal lack of knowledge nor a universal failure to orally

---

[1] The Court notes that Plaintiffs' 16-page motion for leave reads more as an improper motion for reconsideration.

3

disclose the disputed fees. *Id.*

### 1. Document-Only Claim

Plaintiffs seek reconsideration based on "parts of two claims which rely exclusively on the form of OSA which was the same for all class members." Mot. at 3. Thus, Plaintiffs now disown their claims that were based on the Regus sales process or the KAF, and instead focus solely on "the failure of the OSA price to include the ORS and BCS fees." *Id.* Plaintiffs also disclaim any claim on the part of unnamed class members who signed Regus's OSA from 2014 on, after the Terms & Conditions' font size was increased and a class action waiver was added to the contract.[2] *Id.* at 4.

In short, Plaintiffs seek yet again to change the theory of their case to be based solely on the OSA, and nothing else. During oral arguments on this matter, when pressed on the theory of their case, Plaintiffs explained that "our real claim is: You've given us these documents in a way that causes you to think you don't need to read them." Docket No. 372 (Transcript) at 7:14-15; *see also id.* at 7:20-22 ("our claim is that the terms and conditions, the way they are presented to you is misleading and causes you to think that you don't have to look in there for a fee"); *id.* at 8:6-8 ("part of the mix is that they're trained to tell people: You don't have to worry about the services fees."). Thus, Plaintiffs' claim, as presented to this Court, was based not only on the OSA but how the OSA was *presented*, *i.e.*, the failure of Regus to inform people that the Terms & Conditions included fees that were not listed on the front of the OSA. What Plaintiffs are seeking then is new consideration of their legal claims as recasted, not reconsideration of a presented claim.

---

[2] Plaintiffs suggest that the Court determined "that the named plaintiffs could not represent persons with the waiver contracts," and therefore "[t]he result is that every member of the classes of which the named plaintiffs are proper class representatives received the same font size Terms and Conditions." Mot. at 4. To clarify, the Court's concern was with creating a subclass of persons who signed the waiver contracts, not that those persons could not be a part of the larger California and New York classes. As Plaintiffs argued in their renewed motion for class certification, the class action waiver subclasses were only suggested for administrative purposes, and it was "not necessary to certify them as separate subclasses" at all. Cert. Mot. at 23. In short, the Court's finding of atypicality was limited to Plaintiffs' proposal of creating and representing a *subclass*. However, for purposes of this motion, the Court treats Plaintiffs' proposal as waiving the claims of persons who signed later versions of the OSA which had Terms & Conditions in larger font size.

Even assuming that Plaintiffs had in fact alleged and asserted a document-only claim, Plaintiff cannot simply ignore the oral representations made by Regus, such as when a salesperson *affirmatively informed* a consumer of the disputed fees. "As Plaintiffs concede[d], a customer who is affirmatively told about the fee is not deceived." Ord. at 23 (citing Transcript at 11:15-18 (MR. VISHER: "in order for them to not be misleading, you would have to have some -- the salesperson would have to do something affirmatively to dispel your belief that you don't have to read those terms and conditions.")). Thus, even if Plaintiffs were to rely solely on the documents, that does not prevent Regus from arguing that whether a class member had a claim based on the lack of adequate disclosure of the ORS and BCS fees is an individualized issue that depends in part on whether a salesperson did in fact disclose the fees.

Plaintiffs' reliance on *Kingsbury v. U.S. Greenfiber, LLC* is not to the contrary. Mot. at 5. In *Kingsbury*, the plaintiff alleged a UCL claim based on the defendant's failure to disclose in its standard purchase agreement that the insulation would be installed wet and that long-term water retention was a problem that could cause a substantial risk of mold contamination, monetary loss, and property damage. CV 08-151 AHM (JTLx), 2011 U.S. Dist. LEXIS 71058, at *5-6 (C.D. Cal. May 23, 2011). The court certified a class based on the standard written purchase agreement, noting that the plaintiff "d[id] not rely on oral representations made by various individuals to establish fraud and false advertising." *Id.* at *19. However, the class definition itself excluded individuals who had received an oral disclosure, as the Court granted certification as to only a "narrow class" of "Original purchasers of residential structures . . . installed with Cocoon insulation . . . who: (1) *were not informed* that the Cocoon insulation installation in their home would be 'wet-blown'; [and] (2) *were not informed* of the risks of long-term water retention, mold contamination, and a loss of money and property due to moisture damage associated with Cocoon insulation . . . ." *Id.* at *21 (emphasis added). But unlike *Kingsbury*, Plaintiffs here would include in the proposed class persons who were affirmatively informed of the existence of the fees, even though Plaintiffs conceded that such persons would not be deceived. *See* Transcript at 11:15-18; *see also id.* at 10:14-15 ("MR. VISHER: No, what I'm saying is I'm relying on what they didn't say."); 11:19-23 ("THE COURT: So you would be prepared to try this case without the icing on

5

the cake, without any testimony that we got a simple one-page agreement, worry about the optional stuff later, just solely on the -- and *you didn't tell them about these fees*. Correct? MR. VISHER: Yes.") (emphasis added).

Instead, this case is comparable to *Berger v. Home Depot USA, Inc.*, where the plaintiff alleged that Home Depot automatically imposed a ten percent surcharge for a damage waiver on tool rentals, and that Home Depot failed to inform customers of the optional nature of the surcharge. 741 F.3d 1061, 1064 (9th Cir. 2014). Home Depot in turn responded that notice was given by the sales associate, by signs in the Home Depot stores, and within the sales contract. *Id.* at 1066. In finding that individual issues predominated over common issues, the Ninth Circuit found:

> Whether Home Depot's receipt of funds for the damage waiver was unjust or inequitable, thereby justifying restitution, depends on whether Home Depot told its tool rental customers that the waiver was an optional product. This determination, as explained above, necessarily rests on individualized determinations about the language of the contract signed by the customer, the placement and content of any signs, and the oral representations from Home Depot employees relating to the damage waiver. As with the UCL and CLRA [Consumers Legal Remedies Act] claims, the individual issues could reasonably be found to predominate over the common questions in the common-law claims . . . .

*Id.* at 1070. In short, whether an individual customer was exposed to misleading information was dependent not only on the automatic charging of the surcharge or the content of the contracts, but also whether individual customers were given "any oral notice . . . by Home Depot employees about the optional nature of the damage waiver during a particular rental transaction," which "would necessarily be a unique occurrence." *Id.* at 1069. Like *Berger*, whether a person was exposed to the allegedly misleading conduct is not based solely on the OSA, but whether a Regus salesperson informed the person of the disputed fees. Thus, even if Plaintiffs were to focus their claim solely on the documents, this does not eliminate the individualized inquiry of whether a person was in fact told about the disputed fees (thereby no longer being misled by the OSA).[3]

---

[3] This is not to suggest that claims based on oral representations can never be certified as a class action; this Court only holds in this case where the alleged oral statements play a material role in

2. <u>Reliance</u>

Next, Plaintiffs contend that this Court incorrectly required reliance by the entire class when in a UCL action, only the named plaintiffs need to show damage by the unfair conduct. Mot. at 8. However, the Court did articulate and apply the correct standard, which is that "[t]o state a claim under the UCL based on false advertising or promotional practices, it is necessary only to show that members of the public are likely to be deceived." Ord. at 18 (internal quotations omitted). However, "while individualized proof of deception, reliance, and injury is not required to seek relief under the UCL, the question of likely deception does not automatically translate into a class-wide problem, such as when there is variation in whether class members were actually *exposed* to the challenged business practices." *Id.* (internal quotations omitted) (emphasis added). Thus, to the extent that the Court found that there was no predominance, it was not on the basis of a failure to show reliance but the *threshold* question of what information the class was exposed to. *See id.*; Trans. at 35:19-24. "In short, before determining whether there is a likelihood of deception, it must first be determined what the customer saw and/or heard." Ord. at 18. That is because "[i]f the customer was not exposed to a particular misrepresentation, then he or she has no standing to challenge that representation." *Id.* (citing *Davis-Miller v. Auto. Club of S. Cal.*, 201 Cal. App. 4th 106, 121 (2011)). As discussed above, whether such exposure exists cannot be limited solely to the OSA, but must also take into account oral representations by Regus salespeople, which includes affirmative disclosures of the fees that Plaintiffs contend were not adequately disclosed. The extent to which members of the class were exposed to a mix of representations varies substantially among individuals.

To the extent that Plaintiffs challenge the Court's citation of *Vaccarino v. Midland National Life Insurance Co.*, the Court merely used *Vaccarino* as an example of a case where there was sufficient uniformity of the sales experience of all purchasers to warrant class certification. Ord. at 19-20 (citing Case No. CV 11-5858 CAS (MANx), 2013 U.S. Dist. LEXIS 88612 (C.D.

---

determining the mix of information to which consumers were exposed and there is no persuasive evidence of a uniform or consistent pattern of oral statements, certification is not appropriate. *See* Ord. at 24-25.

Cal. June 17, 2013)). The Court did not import a reliance requirement from *Vaccarino*.[4]

### 3. Universal Exposure

Finally, Plaintiffs contend that "unfair business practice law does not require a lack of knowledge nor a universal failure to orally disclose," especially where "the class has been universally exposed to the same OSA." Mot. at 1; *see also id.* at 11-13. Plaintiffs rely on *Ewert v. eBay, Inc.*, a case that was never presented to the Court. *Id.* at 11 (citing No. C-07-02198 RMW, 2010 U.S. Dist. LEXIS 108838 (N.D. Cal. Sept. 30, 2010)). In *Ewert*, the plaintiffs alleged that eBay failed to disclose the existence of delays to sellers, resulting in sellers not receiving the full duration requested for their auction listings. *Id.* at *4. Based on that failure to disclose, the plaintiffs asserted claims for breach of contract, violation of the UCL, violation of the FAL, and violation of the CLRA. *Id.* at *4-5. eBay asserted that class certification of these claims was inappropriate because class members who knew that auctions could be delayed did not rely upon the allegedly fraudulent representations in auction listings, and thus an individualized inquiry would predominance. *Id.* at *21. The district court rejected this argument because "it rest[ed] upon a faulty premise -- that individual proof of reliance is required to recover under the UCL and under the FAL." *Id.* at *21-22. Thus, the "plaintiffs need not establish lack of knowledge by individual class members to recover under either the UCL or the FAL."

However, again the Court is not requiring individual proof of reliance. Rather, the Court found that there was an individualized issue of what people were exposed to -- for example, if they were exposed only to the OSA, or if they received the OSA and were orally informed by a Regus salesperson that they would be charged a ORS or BCS separate from the price listed in the OSA. Thus, there are individualized issues of what mix of information Regus presented each class member with. This is a question distinct from the reliance inquiry, or whether an individual class member did act in reliance on the OSA or were in fact deceived by the OSA.

---

[4] Furthermore, while the Court cited to portions of the *Vaccarino's* decision with respect to the plaintiffs' common law fraud claim, the *Vaccarino* court notably came to the same conclusion as to the plaintiffs' UCL claim "[b]ecause plaintiffs' claims under the fraud prong of the UCL are premised on the same allegations and evidence as their common law fraud claim." 2013 U.S. Dist. LEXIS 88612, at *48-49.

4. Ascertainability

In addition, Plaintiffs request that the Court make a ruling on the issue of ascertainability. Mot. at 13. This Court previously assumed ascertainability, but noted that there could be a problem from Plaintiffs' exclusion of "corporate accounts" from the class definition, given Regus's evidence that it was unable to determine if clients were formerly considered a corporate account. Ord. at 12. Plaintiffs now suggest that there was "actually no necessity for the class definition to exclude corporate accounts," and that the corporate accounts could have been included without destroying class cohesion. Mot. at 15. Thus, Plaintiffs ask that the Court make a ruling on the ascertainability issue "[i]f the Court . . . believes that an ascertainability issue exists that is not addressable by, for example, a change in the class definition to remove the corporate account exclusion." Mot. at 15.

The Court denies this request. This is a completely inappropriate request to make in a motion for leave, as Plaintiffs are *again* changing their theory and proposed class definition, a class definition that was not before the Court in the renewed motion for class certification. The Court will not make a ruling on a hypothetical class definition that was never presented to it in Plaintiffs' briefing on the renewed motion for class certification.

## IV.   CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiffs' motion for leave to file a motion for reconsideration.

**IT IS SO ORDERED**.

Dated: May 5, 2016

_____
EDWARD M. CHEN
United States District Judge

9