UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CIRCLE CLICK MEDIA LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>REGUS MANAGEMENT GROUP LLC, et al.,<br><br>Defendants. | Case No. 12-cv-04000-EMC<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Docket No. 393 |

## I.   INTRODUCTION

Plaintiffs Circle Click Media, LLC and CTNY Insurance Group filed the instant putative class action against Defendants Regus Management Group, LLC, Regus Business Centre LLC, Regus PLC, and HQ Global Workplaces LLC (collectively, Regus). Docket No. 65 (Second Amended Complaint) (SAC). Regus is in the business of leasing fully equipped commercial office space using an Office Service Agreement (OSA). *See* SAC at ¶¶ 34-41. The OSA identifies the office location, lease term, initial payment amount, and monthly payment amount. *Id.* at ¶ 23; *e.g.*, Docket No. 346 (Aalaei Dec.), Exh. 1. Plaintiffs allege that the actual monthly payment amount (as stated in Regus's monthly invoices) exceed the monthly amount stated on the OSA because Regus charges mandatory fees that are not adequately disclosed until after the lease is signed. Based on these allegations, Plaintiffs brought claims for: (1) violations of California Business & Professions Code section 17200 (Unfair Competition Law) (UCL); (2) violations of California Business & Professions Code section 17500 (California False Advertising Law) (FAL), and (3) unjust enrichment.

Regus now moves for partial summary judgment as to whether Circle Click[1] may seek injunctive relief under the UCL, and whether Circle Click could seek an injunction against Regus on behalf of anyone other than itself. Docket No. 393 (Mot.). Regus's motion for partial summary judgment came on for hearing before the Court on June 30, 2016. For the reasons stated below, the Court **GRANTS** Regus's motion for summary judgment.

## II.     BACKGROUND

In July 2015, Regus moved to dismiss Plaintiffs' claims for lack of standing under Article III. Docket No. 271. Regus argued that Plaintiffs lacked standing to seek injunctive relief on behalf of themselves and the putative classes because there was no threat of future harm, as both Plaintiffs had shown that they did not plan to rent office space from Regus in the future. *Id.* at 14. Plaintiffs did not dispute this or otherwise suggest that they intended to rent office space from Regus, but instead argued that the fact that the plaintiffs are aware of the false and misleading nature of the advertisements did not preclude injunctive relief under Article III. Docket No. 295 at 24. In so arguing, Plaintiffs relied on *Henderson v. Gruma Corp.*, in which the district court had rejected an argument that a plaintiff lacks standing to seek injunctive relief where a plaintiff was now aware of the misleading label, as to otherwise hold would be to preclude federal courts from enjoining false advertising under California consumer protection laws. CV 10-04173 AHM (AJWx), 2011 U.S. Dist. LEXIS 41077, at *19-20 (C.D. Cal. Apr. 11, 2011). In denying Regus's motion to dismiss, Judge Conti agreed with the *Henderson* decision's reasoning and found that Plaintiffs met the requirements for standing and could seek injunctive relief. Docket No. 335 (Conti Ord.) at 14.

Plaintiffs in turn moved for class certification, seeking certification of a California class and a New York class. Docket No. 238. In the same order denying Regus's motion to dismiss, Judge Conti denied Plaintiffs' motion for class certification without prejudice, finding problems

---

[1] CTNY is a Connecticut limited liability company doing business in New York, and was not a proposed representative for the California claims. *See* SAC at ¶¶ 8, 79 (stating that Circle Click brought Claims I-IV (UCL, FAL, intentional misrepresentation, and unjust enrichment) on behalf of the California class, and that CTNY brought claims V (unjust enrichment) on behalf of the New York class). Thus, the focus of the motion is on Circle Click's ability to seek injunctive relief under the UCL, rather than CTNY (which does not bring claims under the UCL).

2

with typicality and predominance. Conti Ord. at 21-33.

Plaintiffs then brought a renewed motion for class certification before this Court. Docket No. 345. On March 11, 2016, the Court denied the motion, finding that in addition to a potential ascertainability problem, Plaintiffs could not show predominance. Docket No. 374 (Cert. Ord.) at 12, 17. The Court subsequently denied Plaintiffs' motion for leave to file a motion for reconsideration of the Court's order denying class certification. Docket No. 395 (Recons. Ord.) at 5, 7.

### III.  DISCUSSION

A.  Standard of Review

The Court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.* at 252. At the same time, "all reasonable inferences must be drawn in favor of the non-movant." *John v. City of El Monte*, 515 F.3d 936, 941 (9th Cir. 2008).

The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party has the ultimate burden of proof, the moving party may prevail on a motion for summary judgment by pointing to the non-moving party's failure "to make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* at 322.

B.  Article III Standing to Seek Injunctive Relief

In general, Article III standing requires the party invoking federal jurisdiction to show that it has "suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 472 (1982) (internal citations and quotations omitted). Where a

3

plaintiff is seeking injunctive relief, the plaintiff "must demonstrate that they are realistically threatened by a repetition of the violation." *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006) (internal quotation omitted); *see also Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) ("to establish standing to pursue injunctive relief . . . [the] plaintiff must demonstrate a real and immediate threat of repeated injury in the future") (internal quotation omitted).

Here, Regus argues that Circle Click lacks Article III standing to seek an injunction under the UCL because Circle Click no longer has a contractual relationship with Regus. Mot. at 5. Plaintiffs did not respond substantively to the argument, but instead contend that because Judge Conti previously decided the issue in favor of Plaintiffs, Regus is bringing an improper motion for reconsideration.[2] Docket No. 397 (Opp.) at 3. At the hearing, Plaintiffs argued that it would be unfair to decide the standing issue without allowing Plaintiffs to brief the issue.

The Court finds that it is appropriate to decide the standing issue without further briefing. Standing is a matter of subject matter jurisdiction, which affects the Court's ability to review Plaintiffs' injunction claims. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121 (9th Cir. 2010) ("The Article III case or controversy requirement limits federal courts' subject matter jurisdiction by requiring, inter alia, that plaintiffs have standing and that claims be 'ripe' for adjudication"); *see also Breeden v. Kirkpatrick & Lockhart LLP (In re Bennett Funding Grp., Inc.)*, 336 F.3d 94, 102 (2d Cir. 2003) (rejecting argument that "the district court could not dismiss on standing grounds after denying a Rule 12(b) motion on the same ground" because "[d]enial of the motion to dismiss on standing grounds does not preclude later consideration on

---

[2] Plaintiffs state that "the Court in December of 2015 denied defendants' request to file a motion to reconsider Judge Conti's order on injunction standing." Opp. at 1. This is, at best, a gross mischaracterization. Regus's motion for leave to file a motion for reconsideration contended that Judge Conti "erred when ruling on Plaintiffs' standing to pursue claims based on various fees, because the Order lumps all of the fees at issue together and fails to separately analyze standing with respect to each particular fee." Docket No. 340 at 2 (Regus Mot. for Leave). In denying the motion for leave, this Court explained that "Defendants propose that the Court must examine standing in the context of each *individual* fee[, and that] Defendants fail to provide any law in support of this proposition, and the Court did not find any cases suggesting that it is appropriate to parse out standing based on every individual fee charged." Docket No. 343 at 2. Neither Regus's motion for leave nor the Court's order denying the motion for leave considered standing for injunctive relief.

4

summary judgment or indeed at trial as standing is an aspect of subject matter jurisdiction"). Standing under Article III can be raised at any time, even *sua sponte* because of the jurisdictional nature of the question. *City of Los Angeles v. Cnty. of Kern*, 581 F.3d 841, 845 (9th Cir. 2009) (explaining that Article III standing is a jurisdictional limit that "cannot be waived by any party, and there is no question that a court can, and indeed must, resolve any doubts about this constitutional issue sua sponte").

Further, Plaintiffs had ample opportunity to brief the issue, whether in their opposition papers or their motion to file supplemental briefing; instead of responding on the merits, Plaintiffs doubled down on their position that Regus's motion was an improper motion for reconsideration, and never addressed the substance of the argument. Plaintiffs made this decision despite being put on notice that the standing issue would be raised in the instant motion for summary judgment; during the March 24, 2016 status conference, the Court observed that "[t]here may be a standing issue as well," which Regus stated it would brief. Docket No. 392 (March 24, 2016 Trans.) at 18:4-6. In short, the Court may and indeed must determine if Circle Click has Article III standing to seek injunctive relief, an issue that Plaintiffs chose to ignore on the merits but which goes to jurisdiction.

The Court concludes that Circle Click lacks standing to seek injunctive relief. To be sure, this Court has previously recognized that "[t]he UCL statutory standing requirements differ from standing requirements in federal court." *Freeman v. ABC Legal Servs.*, 877 F. Supp. 2d 919, 923 (N.D. Cal. 2012). California Business & Professions Code section 17204 provides that a plaintiff "who has suffered injury in fact and has lost money or property as a result of the unfair competition" has standing to seek relief under the UCL. Further, the California Supreme Court has made clear that a plaintiff need not prove eligibility for restitution in order to have standing to seek injunctive relief. *See Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 790 (2010) ("Nothing in the [UCL's] language conditions a court's authority to order injunctive relief on the need in a given case to also order restitution. Accordingly, the right to seek injunctive relief under section 17203 is not dependent on the right to seek restitution; the two are wholly independent remedies."). Thus, "[i]n California state courts, a Plaintiff may seek an injunction if he merely satisfies the

harm requirements of § 17204, whether or not restitution is also available." *Freeman*, 877 F. Supp. 2d at 924 (internal quotation omitted).

However, the Ninth Circuit has found that notwithstanding satisfaction of section 17204's harm requirements which permits relative broad standing in state court, this does not automatically permit a plaintiff to pursue injunctive relief under the UCL in *federal* court. In federal court, Article III jurisdiction must obtain; the Ninth Circuit has so held.

In *Hangarter v. Provident Life and Accident Insurance Co.*, the plaintiff was a chiropractor who operated her own business, and who had obtained an "own occupation" disability insurance policy from the defendants. 373 F.3d 998, 1003 (9th Cir. 2004). After the plaintiff became disabled, the defendants abruptly terminated the benefits based upon the opinion that the plaintiff was not "totally disabled." *Id.* The plaintiff brought a UCL claim and other common law claims, and the jury ultimately returned a verdict in the plaintiff's favor. *Id.* The district court also issued a permanent injunction under the UCL, ordering the defendants "to 'obey the law' and refrain from 'future violations, including, but not limited to, targeting categories of claims or claimants, employing biased medical examiners, destroying medical reports, and withholding from claimants information about their benefits.'" *Id.* at 1005, 1021.

The Ninth Circuit concluded that "[t]he district court erred in concluding that [the plaintiff] had Article III standing to pursue injunctive relief under the UC[L]." *Id.* at 1021. The Ninth Circuit explained that in the context of injunctive relief, Article III standing required that the plaintiff "demonstrate a *real or imminent threat* of an irreparable injury." *Id.* (internal quotation omitted). As applied to the facts of the case, the plaintiff "currently has no contractual relationship with Defendants, and therefore is not personally threatened by their conduct." *Id.* at 1022. Thus:

> Even if Cal. Bus. & Prof. Code § 17204 permits a plaintiff to pursue injunctive relief in California state courts as a private attorney general even though he or she currently suffers no individualized injury as a result of a defendant's conduct, a plaintiff whose cause of action under § 17204 is perfectly viable in state court under state law may nonetheless be foreclosed from litigating the same cause of action in federal court, if he cannot demonstrate the requisite injury to establish Article III standing.

*Id.* Because the plaintiff lacked Article III standing to pursue a claim for injunctive relief under

1   the UCL, the Ninth Circuit required the district court to vacate the injunction. *Id.*

2   Applying *Hangarter*, this Court in *Freeman* found that "UCL plaintiffs must satisfy federal constitutional standing requirements, including those pertinent to injunctive relief." 877 F. Supp. 2d at 924. There, the plaintiffs challenged the defendant's use of "sewer service," where a process server would fail to serve a debtor and then file a fraudulent affidavit attesting to service so that when the debtor later failed to appear in court, a default judgment would be entered against him. *Id.* at 921. The parties did not dispute that the plaintiffs satisfied the standing requirements of section 17204, and the plaintiffs argued that because they satisfied section 17204, they could seek injunctive relief under the UCL. *Id.* at 924. The Court found that "in federal court, a plaintiff must still demonstrate Article III standing to seek injunctive relief, even if she would otherwise have standing in state court." *Id.* While the Court acknowledged there was some variability between the district courts, Ninth Circuit authority was clear, such that Plaintiffs had to meet the federal constitutional standing requirement to assert their UCL claims for injunctive relief. *Id.* at 926. Thus, Plaintiffs were required "to show a 'real and immediate threat of repeated injury' in order to seek injunctive relief in federal court." *Id.* Applying this requirement, the Court concluded that Plaintiffs did not "show that *they personally* have a reasonable threat of facing future debt collection efforts," and thus would be subject to the defendants' sewer service practices. *Id.* a 927; *see also id.* at 928 ("whether [the plaintiffs] are subject to [the defendants'] purportedly unlawful conduct in the future depends largely on undefined contingencies"). The plaintiffs therefore lacked standing to seek injunctive relief. *Id.* at 929; *see also Delodder v. Aerotek, Inc.*, No. CV 08-6044 CAS (AGRx), 2009 WL 3770670, at *2-3 (C.D. Cal. Nov. 9, 2009) (applying *Hangarter* in employment case to find that the plaintiffs lacked standing to obtain prospective injunctive relief under the UCL because the plaintiffs were no longer employees of the defendant, and thus could not demonstrate a real or immediate threat of irreparable injury).

Here, while Circle Click may satisfy the standing requirements of section 17204, it lacks Article III standing to seek injunctive relief under the UCL because it has not shown any threat of

1  future injury.[3] Like the plaintiff in *Hangarter*, Circle Click no longer has a contractual
2  relationship with Regus, and thus "is not personally threatened by [Regus's] conduct." 373 F.3d
3  at 1022. Furthermore, Circle Click has made no showing that it is willing to use Regus's services
4  in the future (one ground that some courts have held may be sufficient to find Article III
5  standing[4]), even if Regus was to modify the OSA so that it would reflect both the office price and
6  all service fees, including the disputed fees.[5] In short, Circle Click neither has an existing business

---

[3] To the extent Judge Conti relied upon *Henderson* to find Article III standing was satisfied, the Court respectfully disagrees. *Henderson* represented a minority view, which declined to require a threat of future injury because "[i]f the Court were to construe Article III standing for FAL and UCL claims as narrowly as the Defendant advocates, federal courts would be precluded from enjoining false advertising under California consumer protection laws because a plaintiff who had been injured would always be deemed to avoid the cause of the injury thereafter ('once bitten, twice shy') and would never have Article III standing." 2011 U.S. Dist. LEXIS 41077, at *19-20. However, *Henderson* has been rejected in recent years, as the courts have explained that "state policy objectives cannot trump the requirements of Article III." *Racies v. Quincy Bioscience LLC*, Case No. 15-cv-292-HSG, 2015 WL 2398268, at *6 (N.D. Cal. May 19, 2015); *see also Anderson v. The Hain Celestial Grp., Inc.*, 87 F. Supp. 3d 1226, 1234 (N.D. Cal. 2015) (explaining that while being "cognizant of the important state interest underlying California's consumer protection statutes, it almost goes without saying that such an interest can never overcome a constitutional standing prerequisite. Potential 'evisceration' of the intent underlying a statutory scheme may be unfortunate, but it is not a valid reason to confer standing . . . ."); *Makaeff v. Trump Univ., LLC*, Case No. 10cv0940 GPC (WVG), -- F. Supp. 3d --, 2015 WL 7302728, at *8 (S.D. Cal. Nov. 18, 2015) (declining to follow *Henderson* because "Supreme Court and Ninth Circuit precedent are clear that for a plaintiff to have standing to pursue injunctive relief, there must be a real and immediate threat of repeated injury," and there was no genuine dispute of material fact that the named plaintiffs intended to again purchase seminars or mentorships in the future). Because *Henderson* is directly contrary to controlling authority, including *Hangarter*, the Court declines to find that threat of future injury is not required.

[4] *See, e.g.*, *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012) (plaintiffs' stated intent to purchase the product in the future satisfied standing); *Lilly v. Jamba Juice Co.*, Case No. 13-cv-2998-JST, 2015 U.S. Dist. LEXIS 34498, at *13 (N.D. Cal. Mar. 18, 2015) (willingness to consider a future purchase sufficient for standing to seek injunctive relief); *cf. Jones v. Conagra Foods, Inc.*, No. C 12-1633 CRB, 2014 U.S. Dist. LEXIS 81292, at *48 (N.D. Cal. June 13, 2014) (finding no standing to seek injunctive relief because the plaintiff did not testify that he might purchase the product in the future if properly labeled); *Werdebaugh v. Blue Diamond Growers*, Case No.: 12-CV-2724-LHK, 2014 U.S. Dist. LEXIS 71575, at *33 (N.D. Cal. May 23, 2014) ("because [the plaintiff] has not alleged, let alone provided evidentiary proof, that he intends or desires to purchase [the product] in the future, there is no likelihood of future injury to Plaintiff that is redressable through injunctive relief, and Plaintiff lacks standing to pursue that remedy").

[5] The only information on the record regarding Circle Click's future intents is from Regus's original motion to dismiss, citing the following deposition testimony by Circle Click's principal, Anne Ward.

> Q: Okay. And what do you say to Mr. Petersen in forwarding the e-mail from Regus?

8

relationship nor any intent to have such a relationship with Regus, and thus there is no evidence that Circle Click is subject to a real or immediate threat by Regus because of Regus's continued use of an OSA which allegedly fails to adequately disclose the disputed fees. The Court finds that Circle Click lacks Article III standing in order to seek injunctive relief under the UCL.

C.   Injunctive Relief on Behalf of Others

Furthermore, even if there were Article III standing, the Court cannot issue injunctive relief on behalf of others as a matter of state law under the UCL without class certification. California Business & Professions Code section 17203, which authorizes injunctive relief by the courts, states in full:

> 17203.  Injunctive Relief—Court Orders
>
> Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition. **Any person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of Section 17204 and complies with Section 382 of the Code of Civil Procedure**, but these limitations do not apply to claims brought under this chapter by the Attorney General, or any district attorney, county counsel, city attorney, or city prosecutor in this state.

(Emphasis added). In *Arias v. Superior Court*, the California Supreme Court made clear that "the statement in section 17203, as amended by Proposition 64, that a private party may pursue a representative action under the [UCL] only if the party 'complies with Section 382 of the Code of Civil Procedure' . . . mean[s] that such an action must meet the requirements for a class action." 46 Cal. 4th 969, 980 (2009). In so concluding, the *Arias* court thoroughly explained the history of

---

A: You want me to read it?
Q: Yes.
A: "They f[---]ing suck."
Q: And who were you referring to?
A: I was referring to Regus.

Docket No. 271 at 15.

1 Proposition 64, reviewing the Voter Information Guide and the official title and summary of

2 Proposition 64. As noted above, the Court denied class certification, so injunctive relief on behalf

3 of others is not obtainable under § 17203.

4 Despite *Arias*, Plaintiffs argue that as long as section 17204's standing requirement is

5 satisfied, a plaintiff may receive broad injunctive relief under section 17203 regardless of class

6 certification because section 17203 permits a court to issue an injunction to prevent the use of any

7 practice which constitutes unfair competition. However, just because one can receive section

8 17203 relief does not mean that one can also seek 17203 relief *on behalf of others*. Instead,

9 injunctive relief -- even to stop an unfair business practice -- can have different scopes, preventing

10 a business from engaging in an unfair business practice with respect to a particular individual or

11 with respect to *every* individual. In short, there is a difference between requiring Regus to stop

12 using the OSA with respect to Circle Click, versus requiring Regus to stop using the OSA at all as

13 to all consumers.[6] Plaintiffs' argument that section 17203 permits the latter broad relief simply by

14 virtue of satisfying section 17204, would render meaningless the language added by Proposition

15 64 requiring class certification in order to seek relief on behalf of others. Plaintiffs' reading is also

16 contrary to *Arias*. Plaintiffs' attempt to distinguish *Arias* as applicable only to restitution cases is

17 unconvincing, as *Arias* (or any other case) and the language of section 17203 make no distinction

---

[6] A different analysis may be required if, in order to give Circle Click relief that it was entitled to, broad injunctive relief requiring Regus to stop using the OSA entirely was necessary in order to afford relief to Circle Click. In *Bresgal v. Brock*, the Ninth Circuit acknowledged that "[t]here is no general requirement that an injunction affect only the parties in the suit." 843 F.2d 1163, 1170 (9th Cir. 1987). However, "[w]here relief can be structured on an individual basis, it must be narrowly tailored to remedy the specific harm shown. On the other hand, an injunction is not necessarily made over-broad by extending benefit or protection to persons other than prevailing parties in the lawsuit -- even if it not a class action -- *if such breadth is necessary to give prevailing parties the relief to which they are entitled*. *Id.* at 1170-71 (original emphasis). In *Bresgal*, broad injunctive relief was required because there was no way to enforce a limited injunction because the plaintiffs were migrant laborers who could be involved with contractors all over the country. *Id.* However, there is no indication here that a broad injunction enjoining Regus from ever using the OSA is necessary to afford *Circle Click* relief even if it was entitled to an injunction, when the Court could instead tailor an injunction to require Regus to not use an OSA with respect to Circle Click specifically. *Compare with L.A. Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 665 (9th Cir. 2011) (finding that an injunction which would bar the defendant from enforcing a hospice cap regulation against individuals other than the named plaintiff was too broad because an order declaring the challenged regulation invalid, enjoining further enforcement against the named plaintiff, and requiring the defendant to recalculate the named plaintiff's liability in conformance with the statute "would have afforded the plaintiff complete relief").

between restitution and other injunctive relief in requiring class certification.

Equally unconvincing are the cases cited by Plaintiffs in support of their argument that a UCL public injunction can be obtained in an individual case, regardless of the language of section 17203. First, *Clayworth* did not address public injunctions, and there is no indication that the plaintiffs there even sought broad injunctive relief on behalf of others. Instead, *Clayworth* simply stands for the proposition that "the right to seek injunctive relief under section 17203 is not dependent on the right to seek restitution; the two are wholly independent remedies." 49 Cal. 4th at 764.

Second, although *Ferguson v. Corinthian Colleges, Inc.* involved a public injunction, the Ninth Circuit did not decide whether such injunctive relief would be permitted absent class certification. 733 F.3d 928 (9th Cir. 2013). In compelling the public injunction relief sought to arbitration, the Ninth Circuit stated that if the arbitrator concluded that it lacked authority to issue the requested injunction, the plaintiffs could return to the district court to seek the public injunctive relief. *Id.* at 937. However, the Ninth Circuit also specifically "decline[d] to resolve in advance the question of what, if any, court remedy Plaintiffs might be entitled to should the arbitrator determine that it lacks the authority to issue the requested injunction" as being beyond the scope of the appeal. *Id.* Thus, *Ferguson* did not decide whether a public injunction could be issued in an individual case; it only acknowledged that the plaintiffs had made the request.

Finally, Plaintiffs reliance on *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899 (2015), is inapposite. There, the California Supreme Court considered whether an arbitration agreement requiring individual arbitration was unconscionable, including a provision which allowed arbitral grants of injunctive relief to be subjected to a second arbitration. *Id.* at 907, 917. In finding the provision not unconscionable, the *Sanchez* court explained that although the provision disproportionately affected buyers as buyers were more likely to seek injunctive relief, the seller's concern about the broad impact of injunctive relief requiring the seller to change its business practices warranted the additional review. *Id.* at 917. However, the *Sanchez* court did not discuss whether such relief would be a public injunction or the effect of section 17203. It is also unclear if section 17203 was even applicable in *Sanchez*, as that case concerned the

11

1  *arbitrator's* ability to issue a broad injunction whereas section 17203 concerns the ability of the
2  *court* to enjoin unfair competition.
3  In order to obtain injunctive relief on behalf of others under the UCL, generally a plaintiff
4  must comply with class certification requirements. This conclusion is consistent with the
5  language of section 17203 and California Supreme Court authority. To read otherwise, as
6  Plaintiffs urge, would be to read out the language added by Proposition 64. While there may be
7  circumstances where broad injunctive relief which happens to affect others is warranted where
8  necessary to provide a plaintiff with the complete relief to which it is entitled, this is not such a
9  case. Thus, even if Circle Click had constitutional standing to seek an injunction, it cannot seek
10 injunctive relief on behalf of others under the UCL.

D. <u>Injunctive Relief under the FAL and Unjust Enrichment Claims</u>

Finally, the parties dispute whether Plaintiffs can seek an injunction as a remedy to the false advertising and unjust enrichment causes of action. With respect to the FAL, Plaintiffs acknowledge that violations of the FAL are also violations of the UCL. Thus, the availability of a public injunction on the FAL claims is the same as under the UCL. Opp. at 13. Accordingly, for the same reasons stated above as to injunctive relief under the UCL, Plaintiffs cannot seek injunctive relief under the FAL.

As for the unjust enrichment claims, Plaintiffs argue that because "[u]njust enrichment comes under the Court's general equity jurisdiction rather than a particular statute providing for injunctive relief[, b]road injunctive relief may be available without a certified class under the Court's general equity powers." *Id.* It is unclear why the ability to give relief on an unjust enrichment claim means that the Court can also give injunctive relief when these are separate remedies. *Cf. Clayworth*, 49 Cal. 4th at 790 ("the right to seek injunctive relief under section 17203 is not dependent on the right to seek restitution; the two are wholly independent remedies").

### IV. <u>CONCLUSION</u>

Circle Click lacks standing under Article III to seek injunctive relief. In any event, it cannot seek broad injunctive relief under the UCL or the FAL without satisfying class certification requirements. Further, the Court finds that Plaintiffs lack standing to seek injunctive relief based

1  on their unjust enrichment claims, and that Plaintiffs have not demonstrated that broad injunctive
2  relief would be permitted based on those claims in any case.  Accordingly, the Court **GRANTS**
3  Regus's motion for partial summary judgment, and concludes that Plaintiffs cannot seek injunctive
4  relief in this case.

5      This order disposes of Docket No. 393.

7      **IT IS SO ORDERED**.

9  Dated: July 18, 2016

                                      EDWARD M. CHEN
                                      United States District Judge