United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CIRCLE CLICK MEDIA LLC, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>REGUS MANAGEMENT GROUP LLC, et al.,<br><br>　　　　　Defendants. | Case No. 12-cv-04000-EMC<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT**<br><br>Docket No. 408 |

## I.   INTRODUCTION

Plaintiffs Circle Click Media, LLC and CTNY Insurance Group filed the instant putative class action against Defendants Regus Management Group, LLC, Regus Business Centre LLC, Regus PLC, and HQ Global Workplaces LLC (collectively, Regus), alleging that Defendants charged various fees that were not adequately disclosed to prospective renters. Docket No. 65 (Second Amended Complaint) (SAC). Pending before the Court is Plaintiffs' Motion for Leave to File Third Amended Complaint (Motion), Docket No. 408. The Court **DENIES** the motion.

## II.   FACTUAL AND PROCEDURAL HISTORY

This case has been pending before this Court for over four years, as Regus removed Plaintiffs' initial complaint on July 30, 2012. Docket No. 1. Regus is in the business of leasing fully equipped commercial office space using an Office Service Agreement (OSA). *See* SAC at ¶¶ 34-41. The one-page OSA, in printed form, has a front page identifying basic information (*i.e.*, the office location and term of lease) and the office's monthly price. *See, e.g.*, Docket No. 34, Ex. A. The OSA incorporates by reference the Terms & Conditions, which are either on the back side of the printed OSA or accessible by hyperlink in the electronic OSA. *Id.*; *see also* Docket No. 34, Ex. B (Terms and Conditions). The Terms & Conditions, in turn, state that the operative

agreement "is comprised of the front page describing the accommodation(s), the present terms and conditions and the House Rules." Terms & Conditions ¶ 1.1. The Terms & Conditions require the customer to comply with the House Rules, and further specify that due dates for certain fees for additional services are listed in the House Rules. *Id.* ¶ 1.2; 8.9. The House Rules are a five-page document which is available, but not normally given, to customers. *See id.* at ¶ 1.2 (stating that the House Rules "can be requested locally"). The House Rules also provide that the fees for certain "fixed, recurring services" are listed in another document, the Services Price Guide (SPG). Docket No. 34, Ex. C at ¶ 35; *see also* Docket No. 346-4 (SPG).

At issue in this case are three mandatory service fees, which are not disclosed on the face of the form OSA. First, Regus imposes a mandatory Kitchen Amenities Fee (KAF), which "allows clients and visitors access to self-service coffee and tea." House Rules at ¶ 13. The KAF is not mentioned in the OSA or Terms & Conditions, but is mentioned in the House Rules, which states that the KAF "is mandatory and will be charged per office occupant." *Id.* The House Rules do not list the amount of the KAF; instead, the amount is listed on the second page of the SPG, which states that the KAF is "required," and costs $30 per person, per month. SPG at 2. Second, Regus imposes a fee for "normal wear and tear," according to which "Regus will charge an Office Restoration Service (ORS) fee to cover normal cleaning and testing and to return the accommodation(s) to its original state." Terms & Conditions at ¶ 1.7. The ORS is disclosed in the Terms & Conditions, but no price is listed. Instead, the pricing is found in the House Rules, which lists the ORS as $2.00 per square foot. House Rules at ¶ 37. Third, Regus charges a fee for its Business Continuity Service (BCS) fee, in which Regus forwards the customer's calls, mail, faxes, and visitors after the customer ceases doing business with Regus. Terms & Conditions at ¶ 1.7. The service lasts for three months after the end of the date of the agreement. Like the ORS, the price is not listed in the Terms & Conditions, but rather in the House Rules. The BCS is "equivalent to three times the published monthly rates for [Regus's] standard Virtual Office Program, not to exceed $420 per month." House Rules at ¶ 38. However, if the customer receives no calls, mail, faxes, or visitors during the customer's stay, Regus does not charge the BCS fee. Terms & Conditions at ¶ 1.7.

2

Plaintiffs' claims are based on allegations that Regus failed adequately to disclose these three required service fees. Based on this contention, Plaintiffs initially brought claims for: (1) violations of California Business & Professions Code section 17200 (Unfair Competition Law) (UCL); (2) violations of California Business & Professions Code section 17500 (California False Advertising Law) (FAL); and (3) unjust enrichment.

The parties have already litigated multiple motions to dismiss and motions for class certification, among others. Plaintiffs first moved for class certification in June 2015, seeking certification of a California class and a New York class. Docket No. 238. Judge Conti denied Plaintiffs' motion for class certification without prejudice, finding problems with typicality and predominance. Docket No. 335 at 21-33. After the case was reassigned to the undersigned, Plaintiffs filed a renewed motion for class certification in December 2015. Docket No 345. This Court again denied certification on March 11, 2016, ruling that, since Plaintiffs' claim was based not only on the disclosures in the documents, but also on the "way the documents are presented, which includes the salesperson's pitch to the individual consumer," Plaintiffs could not satisfy the predominance requirement of Federal Rule of Civil Procedure 23(b). Docket No. 373. The Court then denied Plaintiffs' subsequent motion for reconsideration. *See* Docket No. 395. The Court held that to the extent Plaintiffs had asserted a "document-only" theory of liability, predominance was still not satisfied because whether each class member "had a claim based on the lack of adequate disclosure of the ORS and BCS fees is an individualized issue that depends in part on whether a salesperson did in fact disclose the fees." *Id.* at 5.

In their present motion, Plaintiffs seek to amend their complaint to add claims for breach of contract and breach of the implied covenant of good faith and fair dealing, and to add a predicate UCL violation of Cal. Civ. Code § 1950.7.

### III. DISCUSSION

A.  Legal Standard

"After a party has amended a pleading once as a matter of course, it may only amend further after obtaining leave of the court, or by consent of the adverse party." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051–52 (9th Cir. 2003). Such amendments are governed by

Federal Rule of Civil Procedure 15, which provides that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit has instructed that "this policy is to be applied with extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.,* 244 F.3d 708, 712 (9th Cir.2001) (quoting *Morongo Band of Mission Indians v. Rose,* 893 F.2d 1074, 1079 (9th Cir.1990)).

At the same time, "[l]iberality in granting a plaintiff leave to amend is subject to the qualification that the amendment not cause undue prejudice to the defendant, is not sought in bad faith, and is not futile." *Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999). Another factor to be considered is "undue delay," *see Foman v. Davis*, 371 U.S. 178, 182 (1962), but "[u]ndue delay by itself . . . is insufficient to justify denying a motion to amend," *Bowles*, 198 F.3d at 758. For that reason, where district courts have denied amendment on the basis of undue delay, the Ninth Circuit has reversed "where the district court did not provide a contemporaneous specific finding of prejudice to the opposing party, bad faith by the moving party, or futility of the amendment." *Id.* "Further, '[t]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.'" *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) (quoting *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989)). In short, the Court retains some discretion to prohibit multiple bites at the apple.

B.   Undue Delay

"In assessing timeliness, we do not merely ask whether a motion was filed within the period of time allotted by the district court in a Rule 16 scheduling order. Rather, in evaluating undue delay, we also inquire 'whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading.'" *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) (quoting *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990)).

Plaintiffs concede that their proposed Third Amended Complaint (3AC) is "based generally on the same facts" as the SAC, which was filed on January 23, 2013. Motion at 10. They further concede that they already raised the issue of Defendants' breach of contract as an

4

affirmative defense to Defendants' counterclaims, which Plaintiffs filed on January 15, 2014. *See* Docket No. 122. Plaintiffs maintain, however, that they lacked evidence of "class-wide breach" until the completion of discovery. *See* Plaintiffs' Reply, Docket No. 414 at 4. Specifically, at the hearing, Plaintiffs asserted that they were unable to bring their claim before learning, in March 2015, that the House Rules were generally not provided to customers prior to, or at the time of, execution of the Office Agreement. In addition, Plaintiffs claim that they "did not receive the foundational evidence regarding the number of contracts disclosing fees and other statistical evidence regarding the form contracts until on or around May 14, 2015." *Id.* This argument is unavailing.

First, Plaintiffs knew the facts of their own transactions. They could have alleged in their complaint, as they had as an affirmative defense to the counterclaims, a claim for breach of contract.

Second, even as to allegations of breach of contract on a class basis, on Plaintiffs' own account, the evidence they acquired in Spring 2015 was not a revelation, but rather further proof of a theory that Plaintiffs had already been pursuing through discovery requests for at least a year. Plaintiffs have not demonstrated they did not have a basis under Fed. R. Civ. P. 11 to allege a classwide claim of breach of contract.

Third, even on the (doubtful) assumption that Plaintiffs could not reasonably have sought to amend prior to May 2015, they have no explanation for their failure to do so for the *fifteen months following that date*. Plaintiffs state only that they "did not wish to disrupt the class certification schedule after it had been scheduled on December 5, 2014" and that they accordingly thought it "prudent to ascertain the outcome of Plaintiffs' class certification motion prior to seeking leave." Motion at 13. But there was nothing to prevent them from seeking to amend during the certification process, particularly after October 2015, when the parties began a second round of briefing on Plaintiffs' renewed motion for class certification after the case was transferred to the undersigned. Instead, it appears that Plaintiffs delayed simply to hedge their bets on their renewed motion for class certification.

The Ninth Circuit has held that an eight month delay between obtaining a relevant fact and

seeking leave to amend constituted an unreasonable delay. *See Texaco, Inc. v. Ponsoldt,* 939 F.2d 794, 799 (9th Cir.1991). In this case, even on the most generous reading of the record, Plaintiffs waited 15 months from the date when they admittedly knew all relevant facts to seek leave to amend. The Court concludes that this constitutes unreasonable delay.

C.    Prejudice

In determining whether to grant leave to amend, "it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *DCD Programs, Ltd. v. Leighton,* 833 F.2d 183, 185 (9th Cir.1987)). Indeed, "[p]rejudice is the 'touchstone of the inquiry under rule 15(a).'" *Id.* (quoting *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001)).

An amendment does not prejudice the opposing party where it "cause[s] no delay in the proceedings and require[s] no additional discovery." *Owens v. Kaiser Foundation Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2003). By contrast, however, the Ninth Circuit has found prejudice where an amendment "would have unfairly imposed potentially high, additional litigation costs . . . that could have easily been avoided had [Plaintiff] pursued its [new] theory in its original complaint or reply." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 953 (9th Cir. 2006); *see also* 6 Charles Alan Wright, Arthur R. Miller et al., Federal Practice and Procedure § 1487 (3d ed. 1998) ("[I]f the amendment substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation, the court may deem it prejudicial.").

In this case Plaintiffs advance a new theory late in the proceedings that will impose substantial yet avoidable litigation costs on Regus. Plaintiffs acknowledge that if leave to amend is granted, they will again seek class certification on the basis of the newly added claims. *See* Motion at 14. During the hearing, Regus asserted that it spent over $200,000 litigating Plaintiffs' previous motion for class certification. If certification is granted, Regus will be put to further expense relitigating the class certification for the fourth time (two prior motions to certify the class and on motion to reconsider denial of class certification). As in *AmerisourceBergen*, these additional costs "could have easily been avoided had [Plaintiff] pursued its [breach of contract]

theory in its original complaint or reply." 465 F.3d at 953.  As discussed above, Plaintiffs had all of the facts necessary to support their current claims before litigating *either* of their two motions for class certification, or their motion for reconsideration.  Had they moved to amend at any of those earlier points, the parties could have litigated the certification issue on the breach of contract claims alongside the previous claims.  Regus cannot reasonably be required to litigate seriatim separate certification motions on distinct theories of liability.  *Cf. Aguilar v. Boulder Brands, Inc.*, No. 3:12-CV-01862-BTM, 2014 WL 4352169, at *5 (S.D. Cal. Sept. 2, 2014) (finding no prejudice where "Defendant faces no risk of being forced to re-litigate the motion for class certification, which will not be briefed, heard, or resolved before the instant motion to amend is ruled on").

In addition, allowing Plaintiffs to amend will likely necessitate further discovery and motion practice, and may require the trial – currently set for May 8, 2017 – to be delayed.  A Third Amended Complaint will likely precipitate another motion to dismiss which would have to be resolved before proceeding to a new class certification motion.  Regus indicated at hearing that it would require additional class discovery, including expert reports regarding the provision of the House Rules to prospective customers.  To have the discovery completed, the briefing filed and the class certification motion decided in time so as to allow compliance with the pretrial deadlines previously settled by this Court appears doubtful.  "Numerous courts have held that allowing a party to amend to introduce a new theory of liability requiring additional discovery at a late stage of litigation is unduly prejudicial."  *Synopsys, Inc. v. Atoptech, Inc.*, No. C-13-2965 MMC, 2015 WL 5526040, at *4 (N.D. Cal. Sept. 17, 2015).

The Court therefore finds that Regus would be unfairly prejudiced if the Court were to allow Plaintiffs leave to amend.

D.  Bad Faith

Finally, the Court finds that Plaintiffs' motion for leave to amend was taken in bad faith, as a "last ditch attempt," *Trans Video Elecs., Ltd. v. Sony Elecs., Inc.*, 278 F.R.D. 505, 510 (N.D. Cal. 2011), to salvage its class claims and relitigate the denial of class certification.  As noted above, the present motion is Plaintiffs' *fourth* request to amend; in addition, the parties have fully briefed

7

1    and argued two separate motions for class certification, as well as a motion for reconsideration of
2    this Court's denial of class certification. In denying Plaintiffs' motion for reconsideration, this
3    Court observed that "Plaintiffs seek yet again to change the theory of their case." Docket No. 395
4    at 4. They have done so twice more with respect to the present motion. First, as already
5    explained, Plaintiffs breach of contract raises a new legal theory based on facts long known to
6    Plaintiffs. Second, in the course of litigating this motion, Plaintiffs have changed their
7    characterization *of that claim*. In their briefing, Plaintiffs describe their claim as turning on
8    whether the House Rules and the SPG were incorporated by reference into the OSA. If not, as
9    Plaintiffs argued, then the relevant contract consisted solely of the OSA, and Regus would have
10   breached the price term listed there by charging for the additional services. However, at hearing,
11   Plaintiffs for the first time asserted that they could prevail on their breach of contract claim
12   *whether or not* the additional documents were incorporated by reference.

   The Court notes that this argument undercuts Plaintiffs' own claim for the timeliness of
their request for amendment; if Regus breached the contract even if the House Rules were
incorporated, then the information revealed in March 2015 about the provision of the House Rules
to prospective customers was irrelevant. More significantly, Plaintiffs' constant recasting of its
claims leaves the impression that it is attempting to game the court and hedge its position,
recharacterizing it when faced with resistance. This Court has previously found this sort of
"tactical shifting of positions troubling and contrary to this Court's effort to eliminate . . . 'shifting
sands' litigation tactics," and thus indicative of bad faith under Rule 15. *Trans Video Elecs.*, 278
F.R.D. at 510.

   The Court thus finds that Plaintiffs' motion was brought in bad faith.[1]

---

[1] Though it need not reach the issue, the Court further notes that Plaintiffs' proposed amendment is likely futile. As briefed, Plaintiffs' theory depends on an argument that the House Rules and SPG were not incorporated by reference into the OSA. But contrary to Plaintiffs' representation, in prior rulings this Court repeatedly held that those documents *were* incorporated by reference. As the Court has repeatedly explained, the Terms & Conditions clearly indicate that the House Rules form part of the agreement, and, "[a]s a general rule, a party is bound by the provisions of an agreement which he signs, even though he does not read them and signs unaware of their existence." *Chan v. Drexel Burnham Lambert*, 178 Cal.App.3d 632, 641 (1986). Moreover, even if this were not the case, and the incorporation or not of the House Rules and SPG turns on the facts of each transaction, Plaintiffs' contemplated class certification motion is likely futile as well,

## IV. CONCLUSION

The parties have been litigating this case for over four years.  As the Ninth Circuit has stated, "[a]t some point, a party may not respond to an adverse ruling by claiming that another theory not previously advanced provides a possible grounds for relief and should be considered." *Mir v. Fosburg*, 646 F.2d 342, 347 (9th Cir. 1980).  This case has reached that point.  Plaintiffs unduly delayed filing their motion; amendment would prejudice Regus; and Plaintiffs' conduct amounts to bad faith.  The motion is therefore **DENIED.**

This order disposes of Docket No. 408.

**IT IS SO ORDERED**.

Dated: October 7, 2016

_____
EDWARD M. CHEN
United States District Judge

---

as it would likely fail for the same reason that Plaintiffs' prior motion failed – individual questions regarding which customers actually received or were notified about the House Rules would predominate over any class-wide issues.